IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMI ALMAKHADHI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 1:07-cv-00078-JJF |
| | : | |
| DELAWARE PARK LLC, | : | |
| | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |
| | : | |

**PLAINTIFF SAMI ALMAKHADHI'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION FOR LEAVE TO AMEND HIS PRO SE COMPLAINT**

## I.    INTRODUCTION

Plaintiff Sami Almakhadhi respectfully submits this Memorandum of Law in

support of his Motion for Leave to Amend his Pro Se Complaint.  After obtaining

counsel, Mr. Almakhadhi now seeks to clarify the factual and legal allegations of his Pro

Se Complaint.  Mr. Almakhadhi's proposed Amended Complaint describes his claims

with more specificity than allowed on the form complaint which Mr. Almakhadhi

completed by filling in certain blanks and marking certain boxes. (Mr. Almakhadhi's

proposed Amended Complaint is attached as Exhibit A.)

The proposed Amended Complaint will enable the parties and the Court to

proceed without undue difficulty or confusion.  Moreover, because all the facts and

legal allegations in the proposed Amended Complaint are fairly within both Mr.

Almakhadhi's Pro Se Complaint and his Delaware Department of Labor Charge of Discrimination, Mr. Almakhadhi's proposed amendments cause no prejudice to Defendant Delaware Park LLC ("Delaware Park").

Unfortunately, Mr. Almakhadhi was unsuccessful in obtaining Defendant Delaware Park's consent to file his Amended Complaint, making necessary this Motion.[1]

## II.        RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff Sami Almakhadhi was born in Yemen, and emigrated to the United States in 1996. Although Mr. Almakhadhi is educated, English is his second language. He speaks with a heavy accent and has difficulty understanding certain phrases and terms of art. Additionally, his ability to read and write is below average.

On January 18, 2002, Delaware Park hired Mr. Almakhadhi as a Booth Cashier. Mr. Almakhadhi began suffering discrimination shortly after he began working at Delaware Park. After failing to achieve any satisfaction through Delaware Park's internal complaint mechanisms, Mr. Almakhadhi filed a Charge of Discrimination with the Delaware Department of Labor on April 26, 2006. (See Exhibit B.) On September 29, 2006, the Delaware Department of Labor issued a Final Determination and Right to Sue Notice. (See Exhibit C.) The U.S. Equal Employment Opportunity Commission issued its Dismissal and Notice of Suit Rights on January 16, 2007. (See Exhibit D.) Because Mr.

---

[1]        On October 2, 2007, Mr. Almakhadhi provided to counsel for Delaware Park a copy of his proposed Amended Complaint in its entirety.

Almakhadhi was unable to obtain counsel, he filed timely his original Complaint pro se, using a complaint form provided by the Clerk of Court. (See Exhibit E.)

On March 21, 2007, Delaware Park filed a Motion to Dismiss Mr. Almakhadhi's Pro Se Complaint based upon a technical service of process issue. Mr. Almakhadhi corrected the problem and on April 13, 2007, Delaware Park filed its Answer.

On June 24, 2007, this Court entered a Scheduling Order. Thereafter, the parties engaged in discovery. Delaware Park served interrogatories and document requests, to which Mr. Almakhadhi has responded. Mr. Almakhadhi likewise served written discovery requests on Delaware Park. Delaware Park has not fully responded to those requests. Discovery is scheduled to end on October 31, 2007.  The Court has scheduled a Pretrial Conference for February 7, 2008.

On September 12, 2007, the undersigned filed a Motion for Pro Hac Vice Admission on behalf of Mr. Almakhadhi. That motion is pending. Because the close of discovery is near, however, Mr. Almakhadhi believes it is necessary to seek expeditiously the Court's permission to amend his Pro Se Complaint.

Accordingly, Mr. Almakhadhi now seeks to clarify the factual and legal allegations of his Pro Se Complaint.

## III. ARGUMENT

### A. The Legal Standards.

#### 1. <u>Federal Rule of Civil Procedure 15</u>

The Federal Rules of Civil Procedure provide for the liberal amendment of pleadings. Rule 15(a), in pertinent part, provides: "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires*." FED. R. CIV. P. 15(a) (emphasis added). The Supreme Court has broadly interpreted Rule 15:

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep . . . may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. . . . The Rules themselves provide that they are to be construed "to secure the just, speedy, and inexpensive determination of every action." Rule 1.
>
> * * *
>
> In the absence of any declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

<u>Foman v. Davis</u>, 371 U.S. 178, 181-82 (1962) (internal citations omitted). The Third Circuit Court of Appeals has simplified this standard to an even narrower band of consideration: "Unless the opposing party will be prejudiced, leave to amend should generally be allowed." <u>Charpentier v. Godsil</u>, 937 F.2d 859, 864 (3d Cir. 1991).

2. **The Amendment of Claims Arising under Title VII of the Civil Rights Act of 1964**

When a plaintiff's claims arise under Title VII of the Civil Rights Act, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation . . . ." Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984). The Third Circuit Court of Appeals, however, has "rejected the view that the EEOC investigation sets an outer limit on the scope of the civil complaint." Id. Rather, in keeping with the spirit of the Federal Rules, in Howze the Court of Appeals made clear:

> Whether the actual EEOC investigation uncovered any evidence of [the alleged conduct] is of no consequence. . . . [Instead,] a district court may assume jurisdiction over additional charges if they are reasonably within the scope of the claimant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims.

Id. at 1212 (citing Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976), cert. denied, 429 U.S. 1041.

B. **The Allegations In Mr. Almakhadhi's Amended Complaint Expand Upon Those In His Pro Se Complaint And Are Reasonably Within The Scope Of His Original Charges.**

Mr. Almakhadhi's claims fall into two broad categories: disability and race/national origin. His proposed amendments expand upon the allegations in his Delaware Department of Labor Charge and his Pro Se Complaint. Because Mr. Almakhadhi's

proposed amendments are reasonably within the scope of his original charges, this Court should grant Mr. Almakhadhi's Motion for Leave to Amend.

Specifically, Mr. Almakhadhi seeks only to clarify the allegations contained in his Delaware Department of Labor Charge and his Pro Se Complaint by providing eight discrete counts. To the extent the Court deems any of these Counts to be additional charges, each Count is reasonably within the scope of Mr. Almakhadhi's original charges, as discussed below.

**1.  Count I, Title VII (National Origin Discrimination; Hostile Work Environment; Retaliation)**

Mr. Almakhadhi alleged National Origin Discrimination in his Charge of Discrimination (which was dual-filed with the Equal Employment Opportunity Commission) and in his Pro Se Complaint (titled "Complaint under Title VII of the Civil Rights Act of 1964"). Accordingly, the amendment of this Count to clarify the factual and legal allegations supporting it in no way prejudices Delaware Park.

**2.  Count II, The Delaware Discrimination in Employment Act (National Origin Discrimination; Hostile Work Environment; Retaliation)**

Count II of the proposed Amended Complaint is simply the state law corollary to Mr. Almakhadhi's Title VII National Origin discrimination claim.[2]  This Count in no way prejudices Delaware Park.

_____

[2]    This court has supplemental jurisdiction over all of Mr. Almakhadhi's state law claims pursuant to 28 U.S.C. § 1367.

### 3. Count III, Title VII (Race Discrimination; Hostile Work Environment; Retaliation)

Mr. Almakhadhi's Race Discrimination claim reasonably arises from his Charge of Discrimination. Although Mr. Almakhadhi selected only "national origin" on his Charge form, National Origin discrimination claims under Title VII often overlap with Race Discrimination claims. As explained in the EEOC's Compliance Manual, "discrimination based on physical traits or ancestry may be both national origin and racial discrimination." (See EEOC Compliance Manual, Section 13, Directive No. 915.003 (2002), http://www.eeoc.gov/policy/docs/national-origin.html.) Because of the overlapping nature of claims such as Race and National Origin, "[t]he failure to check a particular box is not fatal to a Title VII action, and courts in the Third Circuit liberally construe EEOC charges." Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 499 (W.D. Pa. 2007). (See also Anjelino v. New York Times Co., 200 F.3d 73, 93-96 (3d Cir. 1999); Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999) ("The[] administrative exhaustion requirement . . . is tempered by a fairly liberal construction given to EEOC charges. Indeed, the failure to check a particular box on an EEOC charge, such as is the case here, is not necessarily indicative of a failure to exhaust the mandatory administrative remedies.")

Mr. Almakhadhi was born and raised in Yemen. Although Mr. Almakhadhi studied the English language while in Yemen, he speaks with a heavy accent, and has limited comprehension of written English. He is not a lawyer, and had no experience

with the American justice system before he filed the instant lawsuit. Moreover, he

submitted his Charge of Discrimination to the Delaware Department of Labor without

the aid of a lawyer. The <u>Shouten</u> court's analysis is apt:

> . . . it seems at least possible, if not probable, that Schouten,
> who is unschooled in the technical distinction between racial
> and national origin discrimination, assumed that the actions
> on the part of [defendant] constituted the former as opposed
> to the latter. In such situations, "not to allow the lawsuit
> would . . . penalize . . . a lay person for not attaching the
> correct conclusion to [his] claim and thus would . . .
> constitute . . . an improperly narrow construction of Title
> VII." <u>Rodriguez v. Am. Parts Sys.</u>, 1986 U.S. Dist. LEXIS
> 17635, (E.D. Pa. Nov. 19, 1986).

<u>Schouten</u>, 58 F. Supp. 2d at 616.

Mr. Almakhadhi should not be prejudiced by the Delaware Department of

Labor's selection (or lack thereof) of certain check-mark boxes on a form charge of

discrimination, or his own understanding of which boxes to mark on a form Pro Se

Complaint. As cogently stated by the court in <u>Doe v. Kohn Nast & Graf, P.C.</u>, "We

decline to hold that the failure to place a check mark in the correct box is a fatal error. In

the context of Title VII, no one . . . should be boxed out." 866 F. Supp. 190, 196 (E.D. Pa.

1994) (citation omitted).

**4.  Count IV, The Delaware Discrimination in Employment Act (Race Discrimination; Hostile Work Environment; Retaliation)**

Count IV of the proposed Amended Complaint is simply the state law corollary to Mr. Almakhadhi's Title VII Race discrimination claim.[3]  This Count in no way prejudices Delaware Park.

**5.  Count V, Americans With Disabilities Act (Disabled; Record of Disability; Regarded As Disabled)**

Mr. Almakhadhi alleged Disability Discrimination in his Charge of Discrimination. This claim was within the scope of his Charge, and was investigated by the Delaware Department of Labor. Accordingly, the amendment of this Count to clarify the factual and legal allegations supporting it in no way prejudices Delaware Park.

**6.  Count VI, The Delaware Handicapped Persons Protection in Employment Act (Disabled; Record of Disability; Regarded As Disabled)**

Count IV of the Amended Complaint is simply the state law corollary to Mr. Almakhadhi's Americans With Disabilities Act claim.  This Count in no way prejudices Delaware Park.

**7.  Count VII, The Family and Medical Leave Act (Improper Denial of Leave; Retaliation)**

Mr. Almakhadhi's allegations that Delaware Park violated the Family and Medical Leave Act were within the reasonable scope of Mr. Almakhadhi's Charge of Discrimination. Indeed, the Delaware Department of Labor investigated those

---

[3]    This court has supplemental jurisdiction over all of Mr. Almakhadhi's state law claims pursuant to 28 U.S.C. § 1367.

allegations and discussed them in the Department's Final Determination letter.  (See Exhibit C.) Accordingly, Delaware Park cannot make any reasonable argument that Mr. Almakhadhi's FMLA claim was not within the reasonable scope of the Department of Labor's investigation. This Count in no way prejudices Delaware Park.[4]

8. **Count VIII, The Delaware Worker's Compensation Act (Wrongful Termination )**

Like Mr. Almakhadhi's FMLA claim, the Delaware Department of Labor investigated Mr. Almakhadhi's allegations that Delaware Park had denied Mr. Almakhadhi's request for light duty work in retaliation for his pursuit of worker's compensation rights. Also, Mr. Almakhadhi pursued this allegation from the inception of discovery. Accordingly, Delaware Park cannot make any reasonable argument that it would be prejudiced by Mr. Almakhadhi's clarification of the factual and legal allegations of his Pro Se Complaint through this amended claim.

---

[4]     Moreover, even if Delaware Park could reasonably argue that Mr. Almakhadhi's FMLA claim was not within the reasonable scope of Mr. Almakhadhi's Charge and the Delaware Department of Labor's investigation, which it cannot, Mr. Almakhadhi is within the FMLA's statute of limitations for filing suit. Because Mr. Almakhadhi's FMLA claim arises from the same operative facts as his other claims, it should be part of this lawsuit.

**C.  This Court Should Grant Mr. Almakhadhi Leave To Amend Because His Motion Does Not Suffer From Undue Delay, Bad Faith, Or Dilatory Motive On His Part, The Amendments Are Not Futile, And Delaware Park Will Suffer No Undue Prejudice By Virtue Of Allowance Of The Amendments.**

Mr. Almakhadhi's proposed amendments are not made in bad faith, nor has Mr. Almakhadhi been dilatory. Instead, Mr. Almakhadhi has conscientiously prosecuted his case pro se while continuing his efforts to find a lawyer to assist him. Mr. Almakhadhi obtained counsel for the first time on September 12, 2007. Counsel has moved expeditiously upon entry into this case, and this Motion was filed at the first available opportunity after Delaware Park refused to provide its consent to amend.[5]

Nor are Mr. Almakhadhi's amendments futile. As discussed above, every proposed amendment is based upon facts within the reasonable scope of Mr. Almakhadhi's Charge of Discrimination and his Pro Se Complaint, and upon information within Delaware Park's control and which it produced in response to the Charge of Discrimination. These facts establish a prima facie case on each of his claims. Notably: although Delaware Park saw fit to contest in a lengthy motion the technical deficiencies in Mr. Almakhadhi's first attempt at service of process, it did not see fit to

---

[5]     Even if the Court finds that Mr. Almakhadhi was dilatory, however, the Court of Appeals has held that delay alone is an insufficient ground upon which to deny a motion to amend. See Cornell and Co., Inc., v. Occupational Safety and Health Review Comm'n, 573 F.2d 820 (3d Cir. 1978). Rather, the touchstone is whether the non-moving party will be prejudiced if the amendment is allowed. Id. at 823. As discussed supra and infra, none of Mr. Almakhadhi's proposed amendments prejudices Delaware Park.

seek a more definite statement from Mr. Almakhadhi or, indeed, move to dismiss his lawsuit. Accordingly, Delaware Park cannot now reasonably argue futility.

Finally, there is no reasonable basis upon which Delaware Park may argue generally that it will suffer prejudice by these proposed amendments. The discovery period has not closed, and Delaware Park has not yet taken Mr. Almakhadhi's deposition. To the extent Delaware Park has expended certain resources, those expenditures cannot rise to the level of prejudice: while Mr. Almakhadhi remains unemployed following Delaware Park's termination of his employment, Delaware Park's 2006 revenues were $306.67 million (placing it 4th in the United States for racetrack casino revenue). (See Exhibit F.) Accordingly, Mr. Almakhadhi's amendments will not prejudice Delaware Park.

## IV.  CONCLUSION

Mr. Almakhadhi's proposed Amended Complaint merely expands upon his Delaware Department of Labor Charge of Discrimination and his Pro Se Complaint. He has established a prima facie case on each of his claims; has not unduly delayed in presenting his amendments (his Motion was filed as expeditiously as possible after he was able to obtain counsel); and the amendments do not prejudice Delaware Park because the discovery period is still open and to date Delaware Park has expended minimal resources in its defense of Mr. Almakhadhi's lawsuit. As stated by the Supreme Court, "If the underlying facts or circumstances relied upon by a plaintiff may be a

proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Accordingly, Mr. Almakhadhi respectfully requests that this Court grant his Motion for Leave to Amend his Pro Se Complaint and allow him to test his claims on the merits.

Respectfully submitted,

/s/ Frank Conley
Frank J. Conley, Esquire
*Pro hac vice*
The Conley Firm
7715 Cheltenham Avenue, Suite 133
Philadelphia, PA 19118
(215) 836-4789

/s/ Glenn Brown
Glenn Brown, Esquire
Real World Law
916 N. Union St #2
Wilmington, DE 19805
(302) 225-8340

Date: 2 October 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____

SAMI ALMAKHADI                          :
                    Plaintiff           :        No. 1:07-cv-00078-JFF
                                        :
        v.                              :
                                        :        JURY TRIAL DEMANDED
DELAWARE PARK, LLC                      :
                    Defendant           :
_____

COUNSEL'S AVERMENT PURSUANT TO LOCAL FEDERAL RULE OF CIVIL
PROCEDURE 7.1.1.

        Proposed pro hoc vice counsel has been in communication with counsel for the

Defendant in an attempt to resolve the dispute giving rise to the attached motion.

Counsel now believes that the intervention of the Court is necessary.

                                        REAL WORLD LAW, PC
                                        /s/ Glenn A. Brown, Esquire_____
                                        GLENN A. BROWN, DMD, ESQUIRE
                                        No. 4669
                                        916 North Union Street
                                        No. 2
                                        Wilmington, DE  19805
                                        (302) 225-8340
                                        Attorney for Plaintiff

Dated: October 2, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMI ALMAKHADHI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 07-78-JJF |
| | : | |
| DELAWARE PARK, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

AND NOW this _____ day of _____, 2007, it is hereby

ORDERED that Plaintiff's Motion for Leave to Amend his Pro Se Complaint is

GRANTED, and Plaintiff's Amended Complaint is deemed filed with the Clerk of the

Court.


_____
                                                                      J.



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMI ALMAKHADHI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 07-78-JJF |
| | : | |
| DELAWARE PARK, | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant. | : | |
| | : | |

## FIRST AMENDED COMPLAINT

Plaintiff Sami Almakhadhi files this Amended Complaint against his former

employer, Defendant Delaware Park, seeking declaratory relief, punitive and

compensatory damages, attorney's fees, and other relief because of Delaware Park's

discrimination against him because of his national origin and race; Delaware Park's

discrimination against him because of his disability; Delaware Park's retaliation against

him because of his complaints about discrimination in the workplace; Delaware Park's

retaliation against him because of his Family and Medical Leave Act ("FMLA") use;

Delaware Park's interference with his FMLA rights; and Delaware Park's wrongful

termination of him because he filed a worker's compensation claim.

Mr. Almakhadhi brings this action under Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000(e), *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C.

§ 1981(a) ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*,

("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA");

the Delaware Worker's Compensation Law, 19 DEL. CODE. ANN. § 2365, the Delaware

Discrimination in Employment Act, 19 DEL. CODE. ANN. § 710, *et seq.*; and the Delaware

Handicapped persons Protection in Employment Act, 19 DEL. CODE. ANN. § 720, *et seq.*

## I.   JURISDICTION AND VENUE

1.      This court has original jurisdiction over Mr. Almakhadhi's federal law
claims pursuant to 28 U.S.C. § 1331.

2.      This court has supplemental jurisdiction over Mr. Almakhadhi's state law
claims pursuant to 28 U.S.C. § 1367.

3.      Mr. Almakhadhi has fulfilled all conditions precedent to the filing of this
lawsuit.  Specifically, on September 29, 2006, the Delaware Department of Labor
issued a Final Determination and Notice of Right to Sue.  Mr. Almakhadhi filed his
original Complaint, pro se, within ninety days of that Notice.

## II.  THE PARTIES

### A. <u>Plaintiff Sami Almakhadhi</u>

4.      At the time of filing his original Complaint, Plaintiff Sami Almakhadhi
was a citizen and resident of the State of Maryland.  He has since moved to the State
of Delaware.

5.      Mr. Almakhadhi was born in Yemen.  One of five children, Mr. Almakhadhi attended Sana'a' University in Yemen's capital city of Sana'a'. There, he studied international relations, receiving a bachelor's degree in 1994.  After receiving his degree, Mr. Almakhadhi worked as the University's Station Manager.

6.      Mr. Almakhadhi married in 1995.  In 1996, Mr. Almakhadhi and his wife decided to move to America to make a better life for their family.  They settled in Newark, Delaware. Mr. Almakhadhi worked a variety of jobs to support his family, including gas station attendant, car salesman, and clerk in a Lion Food-Mart. He eventually worked for Defendant Delaware Park.

7.      In 2006, Mr. Almakhadhi became a naturalized U.S. Citizen.

**B.  <u>Defendant Delaware Park</u>**

8.      Defendant Delaware Park is a gambling and casino operation.  It hosts thoroughbred horse racing and betting, a casino, and a golf course.  Delaware Park owns and operates its business at 777 Delaware Park Boulevard, Stanton, Delaware.

9.      At all times relevant herein, Delaware Park acted by and through its agents, servants, and employees, each of whom acted in the course and scope of his or her employment with Delaware Park.

## III. FACTS

10.      The foregoing paragraphs are incorporated as if fully set forth herein.

11.     On January 18, 2002, Mr. Almakhadhi began working for Defendant Delaware Park as a Booth Cashier. As a Booth Cashier, Mr. Almakhadhi handled coins used by patrons of the casino, including the exchange of currency for coins and cashing casino chips.

12.     Mr. Almakhadhi performed his job in an exemplary manner. He received high marks on his performance reviews and got along well with his co-workers. Indeed, over the course of his employment Mr. Almakhadhi moved up the seniority chain until he was the seventh most senior Booth Cashier out of approximately thirty Booth Cashiers.

13.     Despite his hard work and dedication to both his job and his new country, Mr. Almakhadhi suffered continuous and on-going discrimination at work. For example, a Satellite Cashier named Keisha told Mr. Almakhadhi that this was not his country. Another, named Janet (Cashier Supervisor), referred to Mr. Almakhadhi as "the terrorist of Delaware Park."

14.     Mr. Almakhadhi had suffered discrimination in Yemen because his family is originally from Jordan. Accordingly, he did his best to ignore the discrimination at Delaware Park and simply concentrate on improving his life and doing a good job.

15.     In April 2004 Mr. Almakhadhi suffered a work-related injury. Booth Cashiers are required to lift bags of coins. While lifting such a bag, Mr. Almakhadhi hurt his back.

- 4 -

16.     Mr. Almakhadhi reported his back pain to Delaware Park.

17.     Over the following months, Mr. Almakhadhi saw several doctors. Because of the difficulty in diagnosing back injury, it was not until after Mr. Almakhadhi received an MRI in May 2005 that it was determined Mr. Almakhadhi had herniated a spinal disc at the L4-L5 level.  Mr. Almakhadhi's doctor issued restrictions on his physical activity.

18.     Even though Mr. Almakhadhi's doctor had identified an injury and provided restrictions, Delaware Park contested Mr. Almakhadhi's claim and refused to pay worker's compensation. Mr. Almakhadhi was compelled to obtain an attorney and appeal Delaware Park's refusal to pay benefits.

19.     After his work-related injury, Delaware Park "promoted" Mr. Almakhadhi to a Satellite Cashier position to which he had applied prior to his injury.  The Satellite Cashier position required lifting and standing beyond the restrictions imposed by Mr. Almakhadhi's doctor.  Mr. Almakhadhi attempted to perform the job, but because the lifting and standing exacerbated his injury he requested to return to the Booth Cashier position.  Upon information and belief, Delaware Park's reasons for assigning Mr. Almakhadhi to a Satellite Cashier position were to retaliate for his worker's compensation claim, and to show that Mr. Almakhadhi was not injured.

20.    Despite Mr. Almakhadhi's best efforts to succeed at work, Delaware Park's discrimination prevented him from moving forward.  In January 2005, Mr. Almakhadhi applied for the job of Impress Supervisor.  This job was a promotion for which Mr. Almakhadhi was qualified, and which did not involve the heavy lifting restricted by his doctor.  Nevertheless, Mr. Almakhadhi's supervisors, Karlyn Dixon, Director of Accounting Operations, and Stacy Suhr, Assistant Manager of Cage Ops, refused to promote Mr. Almakhadhi under the pretext that Mr. Almakhadhi was not qualified, despite his years of experience as a booth cashier.  Instead, upon information and belief, Ms. Dixon placed into the position two people: an 18 year old Security Officer, and an Impress Clerk.  Neither of these persons had any supervisory experience.

21.    Mr. Almakhadhi complained to Delaware Park's Human Resources Department about the discrimination against him.  Delaware Park's investigation was pro forma.  Indeed, Mr. Almakhadhi was not interviewed about the discrimination he had suffered.  Instead, Human Resources personnel spoke to Mesdames Dixon and Suhr and relied on incorrect and inaccurate information provided by them.  On February 14, 2005, Micki Nardo from Human Resources informed Mr. Almakhadhi that the Department had found no discrimination.

22.    In February 2005, Mr. Almakhadhi applied for the position of Main Bank Cashier—a promotion for which he was qualified, and which would not have

- 6 -

aggravated his work-related injury. Again, Mesdames Dixon and Suhr denied Mr. Almakhadhi's application. Notably, Ms. Dixon refused to interview Mr. Almakhadhi for the position until *after* she had filled it.

23.     Again, Mr. Almakhadhi complained to Delaware Park's Human Resources Department about this discriminatory and retaliatory treatment.  Again, Delaware Park dismissed cursorily Mr. Almakhadhi's allegations.

24.     Because Mesdames Dixon and Suhr's discrimination and retaliation continued, Mr. Almakhadhi filed additional complaints with Delaware Park's Human Resources Department.  Again, these complaints were perfunctorily denied.

25.     Mesdames Dixon and Suhr increased their discriminatory and retaliatory actions following Mr. Almakhadhi's complaints.  For example, Ms. Dixon would raise her voice and speak to Mr. Almakhadhi in a disrespectful manner in front of other employees and customers. Ms. Dixon did not treat other employees the same way. Mr. Almakhadhi again complained to Delaware Park's Human Resources Department about this discriminatory treatment, and again was denied any satisfaction.

26.     Because of his work injury, Mr. Almakhadhi took FMLA leave between April 13, 2005 and June 13, 2005.  (Mr. Almakhadhi had previously taken FMLA leave separately to care for his father, and his then-pregnant wife.) Because Delaware

Park refused to pay worker's compensation, Mr. Almakhadhi had no income during this time.

27.     He returned to work on June 14, 2005. His new FMLA period began on October 12, 2005.

28.     Because of his excellent work performance, Delaware Park was unable to substantively discipline Mr. Almakhadhi. Instead, Mesdames Dixon and Suhr sought to harass Mr. Almakhadhi until he quit, or to terminate Mr. Almakhadhi's employment on a technicality.

29.     The discrimination intensified after Mr. Almakhadhi was granted a hearing on his worker's compensation claim and Delaware Park finally acknowledged his injury. (As a result of his successful appeal, Mr. Almakhadhi received worker's compensation benefits for the period between September 1, 2005 and August 25, 2006.)

30.     On September 2, 2005, Mr. Almakhadhi's doctor reiterated his work restrictions and Mr. Almakhadhi again requested light duty. Although Delaware Park routinely made light duty available for other employees, it refused to provide Mr. Almakhadhi any light duty work and sent him home. Delaware Park required him to call daily Mesdames Dixon and Suhr to check for light duty work. Mr. Almakhadhi was denied any such work.

31.      In early February 2006, Delaware Park's Risk Management Department

consulted with Mesdames Dixon and Suhr who decided to terminate Mr.

Almakhadhi on the technicality that he had exhausted all of his available leave time.

Notably, Delaware Park made its termination decision with no prior warning and no

timely notification to Mr. Almakhadhi.  Indeed, Mr. Almakhadhi only learned of

Delaware Park's termination of his employment after he was denied medical

benefits for his infant son.

32.      Delaware Park's reasons for its termination of Mr. Almakhadhi's

employment are pretext for its discrimination and retaliation.  Indeed, Mr.

Almakhadhi had an additional *twelve weeks* of FMLA leave time available to him at

the time Delaware Park decided to terminate his employment.

## COUNT I

**(Title VII—National Origin Discrimination; Hostile Work Environment; Retaliation)**

33.      The foregoing paragraphs are incorporated as if fully set forth herein.

34.      Based on the foregoing, Delaware Park has engaged in unlawful

employment practices in violation of Title VII because of Mr. Almakhadhi's national

origin, including, but not limited to, perpetuating a hostile work environment,

subjecting Mr. Almakhadhi to unlawful national origin discrimination and

harassment, subjecting Mr. Almakhadhi to more onerous working conditions after

he complained about the discrimination and harassment, and terminating Mr.

- 9 -

Almakhadhi's employment in retaliation for opposing the discrimination and harassment.

35.    As a direct result of Delaware Park's unlawful discriminatory and retaliatory practices in violation of Title VII, Mr. Almakhadhi has, among other things, sustained lost earnings, severe emotional and psychological distress, loss of self esteem, and loss of future earnings power. Mr. Almakhadhi has also lost back pay, front pay, and interest due thereon.

## COUNT II

**(Delaware Discrimination in Employment Act—National Origin Discrimination; Hostile Work Environment; Retaliation)**

36.    The foregoing paragraphs are incorporated as if fully set forth herein.

37.    Based on the foregoing, Delaware Park has engaged in unlawful employment practices in violation of the Delaware Discrimination in Employment Act. Delaware Park's unlawful practices include, but are not limited to, perpetuating a hostile work environment, subjecting Mr. Almakhadhi to unlawful national origin discrimination and harassment, subjecting Mr. Almakhadhi to more onerous working conditions after he opposed discrimination and harassment in the workplace, and terminating Mr. Almakhadhi's employment in retaliation for opposing the discrimination and harassment.

38.    As a direct result of Delaware Park's willful and unlawful discriminatory and retaliatory practices in violation of Delaware law, Mr. Almakhadhi has sustained

lost earnings, severe emotional and psychological distress, loss of self esteem, and loss of future earnings power. Mr. Almakhadhi has also lost back pay, front pay, and interest due thereon.

## COUNT III

### (Title VII—Race Discrimination; Harassment; Hostile Work Environment; Retaliation)

39. The foregoing paragraphs are incorporated as if fully set forth herein.

40. Based on the foregoing, Delaware Park has engaged in unlawful practices in violation of Title VII because of Mr. Almakhadhi's race including, but not limited to, perpetuating a hostile work environment, subjecting Mr. Almakhadhi to unlawful race discrimination and harassment, subjecting Mr. Almakhadhi to more onerous working conditions after he complained about the discrimination and harassment, and terminating Mr. Almakhadhi's employment in retaliation for opposing racial discrimination and harassment.

41. As a direct result of Delaware Park's unlawful discriminatory practices in violation of Title VII, Mr. Almakhadhi has sustained loss of earnings, severe emotional and psychological distress, loss of self esteem, loss of future earnings power, plus back pay, front pay, and interest due thereon.

## COUNT IV

### (Delaware Discrimination in Employment Act—Race Discrimination; Hostile Work Environment; Retaliation)

42.     The foregoing paragraphs are incorporated as if fully set forth herein.

43.     Based on the foregoing, Delaware Park has engaged in unlawful employment practices in violation of the Delaware Discrimination in Employment Act.  Delaware Park's unlawful practices include, but are not limited to, perpetuating a hostile work environment, subjecting Mr. Almakhadhi to unlawful race discrimination and harassment, subjecting Mr. Almakhadhi to more onerous working conditions after he opposed discrimination and harassment in the workplace, and terminating Mr. Almakhadhi's employment in retaliation for opposing the discrimination and harassment.

44.     As a direct result of Delaware Park's willful and unlawful discriminatory and retaliatory practices in violation of Delaware law, Mr. Almakhadhi has sustained lost earnings, severe emotional and psychological distress, loss of self esteem, and loss of future earnings power.  Mr. Almakhadhi has also lost back pay, front pay, and interest due thereon.

## COUNT V

### (ADA - Has a Disability; Record of Having a
### Disability; Regarded as Having a Disability)

45.     The foregoing paragraphs are incorporated as if fully set forth herein.

46.     Because of the injury he suffered at Delaware Park, Mr. Almakhadhi has a

physical impairment that substantially limits one or more of his major life activities;

has a record of such an impairment; and Delaware Park regarded him as having

such an impairment.

47.     Among other effects on his major life activities, Mr. Almakhadhi's

disability substantially limits his ability to stand for uninterrupted periods.

48.     Among other effects on his major life activities, Mr. Almakhadhi's

disability substantially limits his ability to twist and lift.

49.     Delaware Park willfully refused to provide Mr. Almakhadhi promotions,

light duty work, or both, because of his disability, because of his record of having a

disability, and because it regarded him as unable to perform a broad class of jobs.

50.      As a direct result of Delaware Park's intentional and unlawful

discriminatory employment practices in violation of the ADA, Mr. Almakhadhi

sustained permanent and irreparable harm.  Because of the loss of his employment,

Mr. Almakhadhi suffered a loss of earnings and the value of certain benefits, the loss

of future earning power, back pay, front pay and interest due thereon.

51.     As a further direct result of Delaware Park's intentional and unlawful discriminatory employment practices in violation of the ADA, Mr. Almakhadhi suffered, among other things, severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT VI

### (Delaware Handicapped Persons Protection in Employment Act - Has a Disability; Record of Having a Disability; Regarded as Having a Disability)

52.     The foregoing paragraphs are incorporated as if fully set forth herein.

53.     As a direct result of Delaware Park's intentional and unlawful discriminatory employment practices in violation of the Delaware's Handicapped Persons Protection in Employment Act, Mr. Almakhadhi sustained permanent and irreparable harm.  Because of the loss of his employment, Mr. Almakhadhi suffered a loss of earnings and the value of certain benefits, the loss of future earning power, back pay, front pay and interest due thereon.

54.     As a further direct result of Delaware Park's intentional and unlawful discriminatory employment practices in violation of the Delaware's Handicapped Persons Protection in Employment Act, Mr. Almakhadhi suffered, among other things, severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT VII

### (FMLA—Improper Denial of Leave; Retaliation)

55.     The foregoing paragraphs are incorporated as if fully set forth herein.

56.     Mr. Almakhadhi took a medical leave of absence pursuant to the Family and Medical Leave Act for work-related injuries.

57.     Among other of its pretextual reasons for wrongfully terminating Mr. Almakhadhi's employment, Delaware Park claimed that Mr. Almakhadhi was not eligible for FMLA time.  He was.

58.     In violation of the FMLA, Delaware Park denied Mr. Almakhadhi FMLA time to which he was entitled.

59.     In violation of the FMLA, Delaware Park retaliated against Mr. Almakhadhi for taking medical leave by terminating pretextually his employment. By its termination of Mr. Almakhadhi's employment, Delaware Park also sought to prevent incurring costs concerning any future medical leaves Mr. Almakhadhi might have.

60.     As a direct result of Delaware Park's intentional and unlawful practices in violation of the FMLA, Mr. Almakhadhi sustained permanent and irreparable harm. Because of the loss of his employment, Mr. Almakhadhi suffered, among other things, a loss of earnings and the value of certain benefits, the loss of future earning power, back pay, front pay and interest due thereon.

## COUNT VIII

### (Delaware Worker's Compensation Act—Wrongful Termination)

61.    The foregoing paragraphs are incorporated as if fully set forth herein.

62.    Delaware Park terminated Mr. Almakhadhi's employment because he filed a worker's compensation claim.

63.    Delaware Park's retaliatory actions were in violation of the Delaware Worker's Compensation Act.

64.    As a direct result of Delaware Park's intentional and unlawful practices in violation of the Delaware Worker's Compensation Act, Mr. Almakhadhi sustained permanent and irreparable harm.  Because of the loss of his employment, Mr. Almakhadhi suffered, among other things, a loss of earnings and the value of certain benefits, the loss of future earning power, back pay, front pay and interest due thereon.

## IV. PRAYER FOR RELIEF

65.    The foregoing paragraphs are incorporated as if fully set forth herein.

WHEREFORE, Mr. Almakhadhi requests that this Court enter a judgment in his favor and against Delaware Park and order:

a.    That Delaware Park compensate, reimburse, and otherwise make Mr. Almakhadhi whole for any pay and benefits he would have received (including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits,

training, promotions, reinstatement, and seniority) had it not been for Delaware Park's illegal actions.

    b.  That Delaware Park reinstate Mr. Almakhadhi to the position to which he would have been entitled had he not been subjected to Delaware Park's unlawful discrimination, including a rate of pay, pay increases, promotions, benefits, bonuses, insurance, training, seniority and other emoluments of employment that he would have received.

    c.  An award of actual damages as well as damages for the pain, suffering, inconvenience, mental anguish, humiliation, loss of employment, and other non-pecuniary losses caused by Delaware Park's actions.

    d.  An award of punitive damages in an amount believed by the Court or the trier of fact to punish appropriately Delaware Park for its deliberate, malicious, and outrageous conduct and to deter it and other employers from engaging in such misconduct in the future.

    e.  An award of liquidated damages under the Family and Medical Leave Act.

    f.  That Delaware Park pay $3,000 to the Workers' Compensation Fund.

    g.  An award of attorney's fees and costs.

    h.  Any such other and further relief as this Court deems appropriate.

## V. JURY DEMAND

Mr. Almakhadhi demands a trial by jury.

Respectfully submitted,

/s/ Frank Conley
_____
Frank J. Conley, Esquire
*Pro hac vice pending*
The Conley Firm
7715 Cheltenham Avenue, Suite 133
Philadelphia, PA 19118
(215) 836-4789

/s/ Glenn Brown
_____
Glenn Brown, Esquire
Real World Law
916 N. Union St #2
Wilmington, DE 19805
(302) 225-8340

Date: 2 October 2007



| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | 0604019W 17C-2006-00837 |

| Delaware Department of Labor | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Sami Almakhadhi | (302) 293-5064 | 06-20-1968 |

| Street Address | City, State and ZIP Code |
|---|---|
| 200 Westcreek Village Apts E6, Elkton, MD 21921 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| DELAWARE PARK | 500 or More | (302) 355-1001 |

| Street Address | City, State and ZIP Code |
|---|---|
| 777 Delaware Park Blvd., Attn: Nancy L Myshko, Vp-Hr, Wilmington, DE 19804 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

| [ ] RACE | [ ] COLOR | [ ] SEX | [ ] RELIGION | [X] NATIONAL ORIGIN |
|---|---|---|---|---|
| [X] RETALIATION | [ ] AGE | [X] DISABILITY | [ ] OTHER (Specify below.) | |

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **02-12-2006**   Latest **02-12-2006**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Jurisdiction: Charging Party was employed at Respondent's Delaware facility as a Both cashier since 1/18/02

Charging Party's protected class: Retaliation, Disability, National Origin ( Middle East )

Adverse employment action: Terms and Conditions of Employment, Reasonable Accommodation, Denied promotion, Discharge

Brief statement of allegations: Charging Party states that he was discriminated against based on national origin, disability and retaliation when he was denied a reasonable accommodation. Charging Party alleges that after incurring an injury on the job and presenting doctor prescribed medical restrictions to the Respondent he was denied a reasonable accommodation. Charging Party states that unlike for him the Respondent has provided light duty accommodations in the past for other individuals. Further, Charging Party alleges that based on national origin, disability and retaliation he was denied promotions after applying for various positions. Charging Party alleges that ultimately he was discharged.

Respondent's explanation: No light duty

Applicable law(s): Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act, The Handicapped Persons Protection in Employment Act, and the Delaware Discrimination in Employment Act

Comparators(s) or other specific reason(s) for alleging discrimination: Charging Party alleges that based on national origin, disability and retaliation he was discriminated against when he was denied transfer options (light duty) by the Respondent as reasonable accommodations for his job related injury.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Apr 26, 2006** _____ 4/26/06 Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | 06C4C190W 17C-2006-00837 |

| Delaware Department of Labor | and EEOC |
|---|---|
| *State or local Agency, if any* | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

_Apr 26, 2006_     X _____

Date          Charging Party Signature

NOTARY – *When necessary for State and Local Agency Requirements*

BRENDA L. SANDS
NOTARY PUBLIC, STATE OF DELAWARE
My Commission Expires   2/3/07

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

X _____

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

4/26/06



**STATE OF DELAWARE**
**DEPARTMENT OF LABOR**
**DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION PROGRAM**

---

Mr. Sami Almakhadhi
200 Westcreek Village, Apt. E6
Elkton, MD 21921
vs.
Delaware Park
777 Delaware Park Blvd.
Wilmington, DE 19804

State Case No: 06040190W

---

### FINAL DETERMINATION AND RIGHT TO SUE NOTICE

Pursuant to 19 Del. C. § 710, *et seq.*, the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

#### *No-Cause Determination and Dismissal with Corresponding Right to Sue Notice.*

In this case, the Department has completed its investigation and found that there is no reasonable cause to believe that an unlawful employment practice has occurred. The Department hereby issues a No-Cause Determination and Dismissal and provides the Charging Party with a Delaware Right to Sue Notice.

This No Cause determination is based on the following facts: In this discrimination case, Charging Party must show that Respondent discriminated against him because of his disability and national origin. The Charging Party further alleges the Respondent retaliated against him after he opposed an alleged discriminatory practice. He can show this by demonstrating that he was treated more harshly than similarly situated co-workers of another national origin. Additionally, Charging Party must show that he was denied a reasonable accommodation for his impairments. The Charging Party contends he was denied a 'light-duty' assignment as an accommodation. The Respondent provided evidence that both the Charging Party and other employees were denied light duty according to company guidelines and availability of such positions. Additionally, Respondent provided evidence that Charging Party's discharge was an administrative decision because he exhausted all of his available leave. The Respondent also submitted credible evidence indicating the Charging Party misrepresented the fact his physician cleared him to return to duty when he had not. Also, Respondent provided substantial evidence to support the contention the Charging Party was included in their interview process for a promotion. However, the Respondent selected another more qualified candidate. Conclusively, Respondent has shown the Charging Party was afforded leave time to address his medical condition and that they did not discriminate against him because of his membership within any protected class or because of participation in a legally protected activity. Therefore, Charging Party has failed to establish that illegal disability, national origin and/or retaliation.

See the attached Notice of Rights.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Program.

_____          _____
Date issued 9/29/06               Julie Klein Cutler, Administrator

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

DOL Form C-12NC : 01/06



Case 1:07-cv-00078-JJF     Document 1     Filed 02/12/2007     Page 4 of 5

EEOC Form 161 (3/98)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

# DISMISSAL AND NOTICE OF RIGHTS

To: **Sami Almakhadhi**
    **200 Westcreek Village Apts E6**
    **Elkton, MD 21921**

From: **Philadelphia District Office - 530**
      **21 South 5th Street**
      **Suite 400**
      **Philadelphia, PA 19106**

☐ *On behalf of person(s) aggrieved whose identity is*
  *CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17C-2006-00837 | **Charles Brown, III,**<br>**State & Local Coordinator** | **(215) 440-2842** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐  While reasonable efforts were made to locate you, we were not able to do so.

☐  You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*(signature)*                                               **January 16, 2007**

Enclosure(s)

**Marie M. Tomasso,**          *(Date Mailed)*
**District Director**

cc:  **Wendy K. Voss, Esq.**
     **Attorney for Respondent**
     **POTTER ANDERSON & CORROON**
     **1333 North Market Street**
     **P.O. Box 951**
     **Wilmington, DE 19899**



(Del. Rev.12/93)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

S'Ami ALmaKhadhi

_____
(Name of Plaintiff or Plaintiffs)

v.

Delaware Park

_____
(Name of Defendant or Defendants)

CIVIL ACTION No. _____

0 7 - 7 8

Jury Trial

### COMPLAINT UNDER TITLE VII
### OF THE CIVIL RIGHTS ACT OF 1964

1.    This action is brought pursuant to *Title VII of the Civil Rights Act of 1964*, as amended, for employment discrimination. Jurisdiction exists by virtue of 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2.    Plaintiff resides at  200 W. Creek Village E6
                          (Street Address)
ELKToN    MD    21921
(City)   (County)   (State)   (Zip Code)
(302) 293-5064
(Area Code) (Phone Number)

3.    Defendant resides at, or its business is located at  777 Delaware ParK Blvd
                                                          (Street Address)
Wilmington    DE    19804
(City)   (County)   (State)   (Zip Code)

4.    The discriminatory conduct occurred in connection with plaintiff's employment at, or application to be employed at, defendant's  Delaware ParK  place of business
                                                                              (Defendant's Name)
located at 777 Delaware ParK Boulevard
           (Street Address)
Wilmington    DE    19804
(City)   (County)   (State)   (Zip Code)

Case 1:07-cv-00078-JJF     Document 1     Filed 02/12/2007     Page 2 of 5

5.    The alleged discriminatory acts occurred on _____ , _____ , 2005 – 2006
                                                  (Day)      (Month)      (Year)

6.    The alleged discriminatory practice   ○ is   ● is not  continuing.

7.    Plaintiff filed charges with the Department of Labor of the State of Delaware,
Division of Industrial Affairs   4425 N. Market ST.
(Agency)            (Street Address)        (City)
Wilmington        DE      19802                                    , regarding
(County)          (State)      (Zip Code)
defendant's alleged discriminatory conduct on _____ , _____ , _____
                                              (Day)      (Month)      (Year)

8.    Plaintiff filed charges with the Equal Employment opportunity Commission of the United States
regarding defendant's alleged discriminatory conduct on: _____ , _____ , _____
                                                         (Day)      (Month)      (Year)

9.    The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue letter
which was received by plaintiff on: __18__ , __1__ , _2007_ .
                                    (Day)      (Month)      (Year)

*(NOTE:   ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)*

10.   The alleged discriminatory acts, in this suit, concern:

      A.    ◉  Failure to employ plaintiff.

      B.    ●  Termination of plaintiff's employment.

      C.    ●  Failure to promote plaintiff.

      D.    ○  Other acts (please specify below)

_____

_____

_____

_____

_____

11.    Defendant's conduct is discriminatory with respect to the following:

A.    ● Plaintiff's race

B.    ○ Plaintiff's color

C.    ○ Plaintiff's sex

D.    ○ Plaintiff's religion

E.    ● Plaintiff's national origin

12.    A copy of the charges filed with the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim.

13.    If relief is not granted, plaintiffs will be irreparably denied rights secured by Title VII of the 1964 CivilRights Act, as amended.

14.    Plaintiff's has no adequate remedy at law to redress the wrongs described above.

**THEREFORE,  Plaintiff prays as follows: (Check appropriate letter(s))**

A.    ○ That all fees, cost or security attendant to this litigation be hereby waived.

B.    ○ That the Court appoint legal counsel.

C.    ● That the Court grant such relief as may be appropriate, including injunctive orders, damages, cost and attorney's fees.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: __2/12/07_____

_____
(Signature of Plaintiff)

_____
(Signature of additional Plaintiff)

Case 1:07-cv-00078-JJF     Document 1     Filed 02/12/2007     Page 4 of 5

EEOC Form 161 (3/98)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  Sami Almakhadhi                                   From:   Philadelphia District Office - 530
     200 Westcreek Village Apts E6                             21 South 5th Street
     Elkton, MD 21921                                          Suite 400
                                                               Philadelphia, PA 19106

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17C-2006-00837 | Charles Brown, III, State & Local Coordinator | (215) 440-2842 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*[signature: Marie M. Tomasso]*                              **January 16, 2007**

Enclosure(s)
                    Marie M. Tomasso,                        *(Date Mailed)*
                    District Director

cc:  Wendy K. Voss, Esq.
     Attorney for Respondent
     POTTER ANDERSON & CORROON
     1333 North Market Street
     P.O. Box 951
     Wilmington, DE 19899

Enclosure with EEOC
Form 161 (3/98)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS --** **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you **receive this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day
period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an
attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the
date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent
that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is
signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after
talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement
of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the
charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.
Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be
brought where relevant employment records are kept, where the employment would have been, or where the
respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk
of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy
decisions for you.

## PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit **before**
7/1/02 -- *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is
separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also
plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90
days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION -- Title VII and the ADA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*





# AMERICAN GAMING ASSOCIATION
### Building a better understanding of casino entertainment through education and advocacy

1299 Pennsylvania Ave., NW
Suite 1175
Washington, D.C. 20004
202-552-2675

About Us : **Industry Information** : Responsible Gaming : Diversity : Press Room : Publications : Events

 Fact Sheets
 Surveys
Federal Issues
State Information
Third Party Resources
Private

## INDUSTRY INFORMATION
FACT SHEETS : STATISTICS

**Factsheet:**   Top 10 U.S. Racetrack Casino Markets by ... ▼

## TOP 10 U.S. RACETRACK CASINO MARKETS BY ANNUAL REVENUE

Gross revenue is earnings before taxes, salaries and expenses are paid — the equivalent of sales, not profit.

| RACETRACK CASINO MARKET | 2006 ANNUAL REVENUES |
|---|---|
| 1 Charles Town, W. Va. | $448.23 million |
| 2 Dover/Harrington, Del. | $345.07 million |
| 3 Providence, R.I. | $329.36 million |
| 4 Delaware Park/Wilmington, Del. | $306.67 million |
| 5 Chester, W. Va. | $257.97 million |
| 6 Wheeling, W. Va. | $201.87 million |
| 7 Council Bluffs, Iowa | $186.06 million |
| 8 Des Moines, Iowa | $182.59 million |
| 9 Lake Charles, La. | $168.02 million |
| 10 Saratoga Springs, N.Y. | $118.83 million |

**Source:** The Innovation Group (4/06)

Note: New Mexico does not report revenue by individual facility.

▷ Back

IN THIS SECTION:

▷ All Fact Sheets
▷ **Statistics**
▷ Industry Issues
▷ General Info

Search        Go

▷ Topic Search
▷ Site Map

© 2003 American Gaming Association   ◆ Members Only Content   **Privacy Policy**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMI ALMAKHADHI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 07-78-JJF |
| | : | |
| DELAWARE PARK, | : | |
| | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |
| | : | |

## FIRST AMENDED COMPLAINT

Plaintiff Sami Almakhadhi files this Amended Complaint against his former employer, Defendant Delaware Park, seeking declaratory relief, punitive and compensatory damages, attorney's fees, and other relief because of Delaware Park's discrimination against him because of his national origin and race; Delaware Park's discrimination against him because of his disability; Delaware Park's retaliation against him because of his complaints about discrimination in the workplace; Delaware Park's retaliation against him because of his Family and Medical Leave Act ("FMLA") use; Delaware Park's interference with his FMLA rights; and Delaware Park's wrongful termination of him because he filed a worker's compensation claim.

Mr. Almakhadhi brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C.

§ 1981(a) ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*,

("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA");

the Delaware Worker's Compensation Law, 19 DEL. CODE. ANN. § 2365, the Delaware

Discrimination in Employment Act, 19 DEL. CODE. ANN. § 710, *et seq.*; and the Delaware

Handicapped persons Protection in Employment Act, 19 DEL. CODE. ANN. § 720, *et seq.*

## I.    JURISDICTION AND VENUE

1.      This court has original jurisdiction over Mr. Almakhadhi's federal law

claims pursuant to 28 U.S.C. § 1331.

2.      This court has supplemental jurisdiction over Mr. Almakhadhi's state law

claims pursuant to 28 U.S.C. § 1367.

3.      Mr. Almakhadhi has fulfilled all conditions precedent to the filing of this

lawsuit.  Specifically, on September 29, 2006, the Delaware Department of Labor

issued a Final Determination and Notice of Right to Sue.  Mr. Almakhadhi filed his

original Complaint, pro se, within ninety days of that Notice.

## II.    THE PARTIES

### A.    **Plaintiff Sami Almakhadhi**

4.      At the time of filing his original Complaint, Plaintiff Sami Almakhadhi

was a citizen and resident of the State of Maryland.  He has since moved to the State

of Delaware.

5.     Mr. Almakhadhi was born in Yemen.  One of five children, Mr. Almakhadhi attended Sana'a' University in Yemen's capital city of Sana'a'. There, he studied international relations, receiving a bachelor's degree in 1994.  After receiving his degree, Mr. Almakhadhi worked as the University's Station Manager.

6.      Mr. Almakhadhi married in 1995.  In 1996, Mr. Almakhadhi and his wife decided to move to America to make a better life for their family.  They settled in Newark, Delaware. Mr. Almakhadhi worked a variety of jobs to support his family, including gas station attendant, car salesman, and clerk in a Lion Food-Mart. He eventually worked for Defendant Delaware Park.

7.     In 2006, Mr. Almakhadhi became a naturalized U.S. Citizen.

**B.  Defendant Delaware Park**

8.     Defendant Delaware Park is a gambling and casino operation.  It hosts thoroughbred horse racing and betting, a casino, and a golf course.  Delaware Park owns and operates its business at 777 Delaware Park Boulevard, Stanton, Delaware.

9.     At all times relevant herein, Delaware Park acted by and through its agents, servants, and employees, each of whom acted in the course and scope of his or her employment with Delaware Park.

**III.  Facts**

10.     The foregoing paragraphs are incorporated as if fully set forth herein.

11.     On January 18, 2002, Mr. Almakhadhi began working for Defendant Delaware Park as a Booth Cashier.  As a Booth Cashier, Mr. Almakhadhi handled coins used by patrons of the casino, including the exchange of currency for coins and cashing casino chips.

12.     Mr. Almakhadhi performed his job in an exemplary manner.  He received high marks on his performance reviews and got along well with his co-workers. Indeed, over the course of his employment Mr. Almakhadhi moved up the seniority chain until he was the seventh most senior Booth Cashier out of approximately thirty Booth Cashiers.

13.     Despite his hard work and dedication to both his job and his new country, Mr. Almakhadhi suffered continuous and on-going discrimination at work.  For example, a Satellite Cashier named Keisha told Mr. Almakhadhi that this was not his country.  Another, named Janet (Cashier Supervisor), referred to Mr. Almakhadhi as "the terrorist of Delaware Park."

14.     Mr. Almakhadhi had suffered discrimination in Yemen because his family is originally from Jordan.  Accordingly, he did his best to ignore the discrimination at Delaware Park and simply concentrate on improving his life and doing a good job.

15.     In April 2004 Mr. Almakhadhi suffered a work-related injury.  Booth Cashiers are required to lift bags of coins.  While lifting such a bag, Mr. Almakhadhi hurt his back.

16.     Mr. Almakhadhi reported his back pain to Delaware Park.

17.     Over the following months, Mr. Almakhadhi saw several doctors. Because of the difficulty in diagnosing back injury, it was not until after Mr. Almakhadhi received an MRI in May 2005 that it was determined Mr. Almakhadhi had herniated a spinal disc at the L4-L5 level.  Mr. Almakhadhi's doctor issued restrictions on his physical activity.

18.     Even though Mr. Almakhadhi's doctor had identified an injury and provided restrictions, Delaware Park contested Mr. Almakhadhi's claim and refused to pay worker's compensation. Mr. Almakhadhi was compelled to obtain an attorney and appeal Delaware Park's refusal to pay benefits.

19.     After his work-related injury, Delaware Park "promoted" Mr. Almakhadhi to a Satellite Cashier position to which he had applied prior to his injury.  The Satellite Cashier position required lifting and standing beyond the restrictions imposed by Mr. Almakhadhi's doctor.  Mr. Almakhadhi attempted to perform the job, but because the lifting and standing exacerbated his injury he requested to return to the Booth Cashier position.  Upon information and belief, Delaware Park's reasons for assigning Mr. Almakhadhi to a Satellite Cashier position were to retaliate for his worker's compensation claim, and to show that Mr. Almakhadhi was not injured.

20.     Despite Mr. Almakhadhi's best efforts to succeed at work, Delaware Park's discrimination prevented him from moving forward.  In January 2005, Mr. Almakhadhi applied for the job of Impress Supervisor.  This job was a promotion for which Mr. Almakhadhi was qualified, and which did not involve the heavy lifting restricted by his doctor.  Nevertheless, Mr. Almakhadhi's supervisors, Karlyn Dixon, Director of Accounting Operations, and Stacy Suhr, Assistant Manager of Cage Ops, refused to promote Mr. Almakhadhi under the pretext that Mr. Almakhadhi was not qualified, despite his years of experience as a booth cashier.  Instead, upon information and belief, Ms. Dixon placed into the position two people: an 18 year old Security Officer, and an Impress Clerk.  Neither of these persons had any supervisory experience.

21.     Mr. Almakhadhi complained to Delaware Park's Human Resources Department about the discrimination against him.  Delaware Park's investigation was pro forma.  Indeed, Mr. Almakhadhi was not interviewed about the discrimination he had suffered.  Instead, Human Resources personnel spoke to Mesdames Dixon and Suhr and relied on incorrect and inaccurate information provided by them.  On February 14, 2005, Micki Nardo from Human Resources informed Mr. Almakhadhi that the Department had found no discrimination.

22.     In February 2005, Mr. Almakhadhi applied for the position of Main Bank Cashier—a promotion for which he was qualified, and which would not have

aggravated his work-related injury. Again, Mesdames Dixon and Suhr denied Mr. Almakhadhi's application. Notably, Ms. Dixon refused to interview Mr. Almakhadhi for the position until *after* she had filled it.

23.    Again, Mr. Almakhadhi complained to Delaware Park's Human Resources Department about this discriminatory and retaliatory treatment.  Again, Delaware Park dismissed cursorily Mr. Almakhadhi's allegations.

24.    Because Mesdames Dixon and Suhr's discrimination and retaliation continued, Mr. Almakhadhi filed additional complaints with Delaware Park's Human Resources Department.  Again, these complaints were perfunctorily denied.

25.    Mesdames Dixon and Suhr increased their discriminatory and retaliatory actions following Mr. Almakhadhi's complaints.  For example, Ms. Dixon would raise her voice and speak to Mr. Almakhadhi in a disrespectful manner in front of other employees and customers. Ms. Dixon did not treat other employees the same way. Mr. Almakhadhi again complained to Delaware Park's Human Resources Department about this discriminatory treatment, and again was denied any satisfaction.

26.    Because of his work injury, Mr. Almakhadhi took FMLA leave between April 13, 2005 and June 13, 2005.  (Mr. Almakhadhi had previously taken FMLA leave separately to care for his father, and his then-pregnant wife.) Because Delaware

Park refused to pay worker's compensation, Mr. Almakhadhi had no income during this time.

27.    He returned to work on June 14, 2005.  His new FMLA period began on October 12, 2005.

28.    Because of his excellent work performance, Delaware Park was unable to substantively discipline Mr. Almakhadhi.  Instead, Mesdames Dixon and Suhr sought to harass Mr. Almakhadhi until he quit, or to terminate Mr. Almakhadhi's employment on a technicality.

29.    The discrimination intensified after Mr. Almakhadhi was granted a hearing on his worker's compensation claim and Delaware Park finally acknowledged his injury. (As a result of his successful appeal, Mr. Almakhadhi received worker's compensation benefits for the period between September 1, 2005 and August 25, 2006.)

30.    On September 2, 2005, Mr. Almakhadhi's doctor reiterated his work restrictions and Mr. Almakhadhi again requested light duty.  Although Delaware Park routinely made light duty available for other employees, it refused to provide Mr. Almakhadhi any light duty work and sent him home.  Delaware Park required him to call daily Mesdames Dixon and Suhr to check for light duty work.  Mr. Almakhadhi was denied any such work.

31.     In early February 2006, Delaware Park's Risk Management Department consulted with Mesdames Dixon and Suhr who decided to terminate Mr. Almakhadhi on the technicality that he had exhausted all of his available leave time. Notably, Delaware Park made its termination decision with no prior warning and no timely notification to Mr. Almakhadhi.  Indeed, Mr. Almakhadhi only learned of Delaware Park's termination of his employment after he was denied medical benefits for his infant son.

32.     Delaware Park's reasons for its termination of Mr. Almakhadhi's employment are pretext for its discrimination and retaliation.  Indeed, Mr. Almakhadhi had an additional *twelve weeks* of FMLA leave time available to him at the time Delaware Park decided to terminate his employment.

## COUNT I

**(Title VII—National Origin Discrimination; Hostile Work Environment; Retaliation)**

33.     The foregoing paragraphs are incorporated as if fully set forth herein.

34.     Based on the foregoing, Delaware Park has engaged in unlawful employment practices in violation of Title VII because of Mr. Almakhadhi's national origin, including, but not limited to, perpetuating a hostile work environment, subjecting Mr. Almakhadhi to unlawful national origin discrimination and harassment, subjecting Mr. Almakhadhi to more onerous working conditions after he complained about the discrimination and harassment, and terminating Mr.

Almakhadhi's employment in retaliation for opposing the discrimination and harassment.

35.     As a direct result of Delaware Park's unlawful discriminatory and retaliatory practices in violation of Title VII, Mr. Almakhadhi has, among other things, sustained lost earnings, severe emotional and psychological distress, loss of self esteem, and loss of future earnings power.  Mr. Almakhadhi has also lost back pay, front pay, and interest due thereon.

## COUNT II

**(Delaware Discrimination in Employment Act—National Origin Discrimination; Hostile Work Environment; Retaliation)**

36.     The foregoing paragraphs are incorporated as if fully set forth herein.

37.     Based on the foregoing, Delaware Park has engaged in unlawful employment practices in violation of the Delaware Discrimination in Employment Act.  Delaware Park's unlawful practices include, but are not limited to, perpetuating a hostile work environment, subjecting Mr. Almakhadhi to unlawful national origin discrimination and harassment, subjecting Mr. Almakhadhi to more onerous working conditions after he opposed discrimination and harassment in the workplace, and terminating Mr. Almakhadhi's employment in retaliation for opposing the discrimination and harassment.

38.     As a direct result of Delaware Park's willful and unlawful discriminatory and retaliatory practices in violation of Delaware law, Mr. Almakhadhi has sustained

lost earnings, severe emotional and psychological distress, loss of self esteem, and loss of future earnings power.  Mr. Almakhadhi has also lost back pay, front pay, and interest due thereon.

## COUNT III

### (Title VII—Race Discrimination; Harassment; Hostile Work Environment; Retaliation)

39.    The foregoing paragraphs are incorporated as if fully set forth herein.

40.     Based on the foregoing, Delaware Park has engaged in unlawful practices in violation of Title VII because of Mr. Almakhadhi's race including, but not limited to, perpetuating a hostile work environment, subjecting Mr. Almakhadhi to unlawful race discrimination and harassment, subjecting Mr. Almakhadhi to more onerous working conditions after he complained about the discrimination and harassment, and terminating Mr. Almakhadhi's employment in retaliation for opposing racial discrimination and harassment.

41.    As a direct result of Delaware Park's unlawful discriminatory practices in violation of Title VII, Mr. Almakhadhi has sustained loss of earnings, severe emotional and psychological distress, loss of self esteem, loss of future earnings power, plus back pay, front pay, and interest due thereon.

## COUNT IV

**(Delaware Discrimination in Employment Act—Race Discrimination; Hostile Work Environment; Retaliation)**

42.     The foregoing paragraphs are incorporated as if fully set forth herein.

43.     Based on the foregoing, Delaware Park has engaged in unlawful employment practices in violation of the Delaware Discrimination in Employment Act.  Delaware Park's unlawful practices include, but are not limited to, perpetuating a hostile work environment, subjecting Mr. Almakhadhi to unlawful race discrimination and harassment, subjecting Mr. Almakhadhi to more onerous working conditions after he opposed discrimination and harassment in the workplace, and terminating Mr. Almakhadhi's employment in retaliation for opposing the discrimination and harassment.

44.     As a direct result of Delaware Park's willful and unlawful discriminatory and retaliatory practices in violation of Delaware law, Mr. Almakhadhi has sustained lost earnings, severe emotional and psychological distress, loss of self esteem, and loss of future earnings power.  Mr. Almakhadhi has also lost back pay, front pay, and interest due thereon.

## COUNT V

## (ADA - Has a Disability; Record of Having a Disability; Regarded as Having a Disability)

45.     The foregoing paragraphs are incorporated as if fully set forth herein.

46.     Because of the injury he suffered at Delaware Park, Mr. Almakhadhi has a physical impairment that substantially limits one or more of his major life activities; has a record of such an impairment; and Delaware Park regarded him as having such an impairment.

47.     Among other effects on his major life activities, Mr. Almakhadhi's disability substantially limits his ability to stand for uninterrupted periods.

48.     Among other effects on his major life activities, Mr. Almakhadhi's disability substantially limits his ability to twist and lift.

49.     Delaware Park willfully refused to provide Mr. Almakhadhi promotions, light duty work, or both, because of his disability, because of his record of having a disability, and because it regarded him as unable to perform a broad class of jobs.

50.      As a direct result of Delaware Park's intentional and unlawful discriminatory employment practices in violation of the ADA, Mr. Almakhadhi sustained permanent and irreparable harm.  Because of the loss of his employment, Mr. Almakhadhi suffered a loss of earnings and the value of certain benefits, the loss of future earning power, back pay, front pay and interest due thereon.

51.     As a further direct result of Delaware Park's intentional and unlawful discriminatory employment practices in violation of the ADA, Mr. Almakhadhi suffered, among other things, severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT VI

**(Delaware Handicapped Persons Protection in Employment Act -
Has a Disability; Record of Having a Disability; Regarded as Having a Disability)**

52.     The foregoing paragraphs are incorporated as if fully set forth herein.

53.     As a direct result of Delaware Park's intentional and unlawful discriminatory employment practices in violation of the Delaware's Handicapped Persons Protection in Employment Act, Mr. Almakhadhi sustained permanent and irreparable harm.  Because of the loss of his employment, Mr. Almakhadhi suffered a loss of earnings and the value of certain benefits, the loss of future earning power, back pay, front pay and interest due thereon.

54.     As a further direct result of Delaware Park's intentional and unlawful discriminatory employment practices in violation of the Delaware's Handicapped Persons Protection in Employment Act, Mr. Almakhadhi suffered, among other things, severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## <u>COUNT VII</u>

### (FMLA—Improper Denial of Leave; Retaliation)

55.    The foregoing paragraphs are incorporated as if fully set forth herein.

56.    Mr. Almakhadhi took a medical leave of absence pursuant to the Family and Medical Leave Act for work-related injuries.

57.    Among other of its pretextual reasons for wrongfully terminating Mr. Almakhadhi's employment, Delaware Park claimed that Mr. Almakhadhi was not eligible for FMLA time.  He was.

58.    In violation of the FMLA, Delaware Park denied Mr. Almakhadhi FMLA time to which he was entitled.

59.    In violation of the FMLA, Delaware Park retaliated against Mr. Almakhadhi for taking medical leave by terminating pretextually his employment. By its termination of Mr. Almakhadhi's employment, Delaware Park also sought to prevent incurring costs concerning any future medical leaves Mr. Almakhadhi might have.

60.    As a direct result of Delaware Park's intentional and unlawful practices in violation of the FMLA, Mr. Almakhadhi sustained permanent and irreparable harm. Because of the loss of his employment, Mr. Almakhadhi suffered, among other things, a loss of earnings and the value of certain benefits, the loss of future earning power, back pay, front pay and interest due thereon.

## COUNT VIII

### (Delaware Worker's Compensation Act—Wrongful Termination)

61.    The foregoing paragraphs are incorporated as if fully set forth herein.

62.    Delaware Park terminated Mr. Almakhadhi's employment because he filed a worker's compensation claim.

63.    Delaware Park's retaliatory actions were in violation of the Delaware Worker's Compensation Act.

64.    As a direct result of Delaware Park's intentional and unlawful practices in violation of the Delaware Worker's Compensation Act, Mr. Almakhadhi sustained permanent and irreparable harm.  Because of the loss of his employment, Mr. Almakhadhi suffered, among other things, a loss of earnings and the value of certain benefits, the loss of future earning power, back pay, front pay and interest due thereon.

## IV. Prayer for Relief

65.    The foregoing paragraphs are incorporated as if fully set forth herein.

**Wherefore**, Mr. Almakhadhi requests that this Court enter a judgment in his favor and against Delaware Park and order:

a.  That Delaware Park compensate, reimburse, and otherwise make Mr. Almakhadhi whole for any pay and benefits he would have received (including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits,

training, promotions, reinstatement, and seniority) had it not been for Delaware

Park's illegal actions.

    b.   That Delaware Park reinstate Mr. Almakhadhi to the position to which he

would have been entitled had he not been subjected to Delaware Park's unlawful

discrimination, including a rate of pay, pay increases, promotions, benefits, bonuses,

insurance, training, seniority and other emoluments of employment that he would

have received.

    c.   An award of actual damages as well as damages for the pain, suffering,

inconvenience, mental anguish, humiliation, loss of employment, and other non-

pecuniary losses caused by Delaware Park's actions.

    d.   An award of punitive damages in an amount believed by the Court or the

trier of fact to punish appropriately Delaware Park for its deliberate, malicious, and

outrageous conduct and to deter it and other employers from engaging in such

misconduct in the future.

    e.   An award of liquidated damages under the Family and Medical Leave Act.

    f.   That Delaware Park pay $3,000 to the Workers' Compensation Fund.

    g.   An award of attorney's fees and costs.

    h.   Any such other and further relief as this Court deems appropriate.

## V. JURY DEMAND

Mr. Almakhadhi demands a trial by jury.

Respectfully submitted,

/s/ Frank Conley
_____
Frank J. Conley, Esquire
*Pro hac vice pending*
The Conley Firm
7715 Cheltenham Avenue, Suite 133
Philadelphia, PA 19118
(215) 836-4789

/s/ Glenn Brown
_____
Glenn Brown, Esquire
Real World Law
916 N. Union St #2
Wilmington, DE 19805
(302) 225-8340

Date: 2 October 2007

<u>CERTIFICATE OF MAILING AND/OR DELIVERY</u>

  The undersigned certifies that on October 2, 2007, he caused the attached

Plaintiff's Motion to Amend Complaint to be filed with the Clerk using CM/ECF and

which will be delivered to the following persons electronically:

Names and Addresses of Persons Served:

Wendy K. Voss, Esquire     Jennifer C. Wasson, Esquire
Potter, Anderson & Corroon    Potter, Anderson & Corroon
1313 North Market Street     1313 North Market Street
6th Floor           6th Floor
Wilmington, DE  19899     Wilmington, DE  19899

Kenneth L. Dorsney, Esquire
Potter, Anderson & Corron
1313 North Market Street
6th Floor
Wilmington, DE  19899


         REAL WORLD LAW, PC
         /s/ Glenn A. Brown, Esquire_____
         GLENN A. BROWN, DMD, ESQUIRE
         No. 4669
         916 North Union Street
         No. 2
         Wilmington, DE  19805
         (302) 225-8340
         Attorney for Plaintiff