IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMI ALMAKHADHI, | : |
| Plaintiff, | : |
| v. | : No. 1:07-cv-00078-JJF |
| DELAWARE PARK LLC, | : |
| Defendant. | : |

**PLAINTIFF SAMI ALMAKHADHI'S REPLY TO
DELAWARE PARK LLC'S PARTIAL OPPOSITION TO HIS
MOTION FOR LEAVE TO AMEND HIS PRO SE COMPLAINT**

**I.    INTRODUCTION**

On October 2, 2007, Sami Almakhadhi submitted his Motion for Leave to Amend his Pro Se Complaint after Defendant Delaware Park, LLC, ("Delaware Park") refused to provide its consent.[1] On October 22, 2007, Delaware Park filed its Partial Opposition to Mr. Almakhadhi's motion. Specifically, Delaware Park does not oppose the addition of: Count V; the Family and Medical Leave Act retaliation portion of Count VII; or Count VIII.

Delaware Park does, however, object to the inclusion of hostile work environment claims in Counts I and III, all of Mr. Almakhadhi's state law claims (Counts II; Count IV; and VI), and

---

[1] Delaware Park implies that it had only a short time to consider Mr. Almakhadhi's proposed amendments. This is not true. Counsel for Mr. Almakhadhi provided details of his proposed amendments to Delaware Park's counsel on several occasions both by telephone and e-mail. Indeed, for more than a week before the filing of Mr. Almakhadhi's Motion for Leave to Amend, the undersigned engaged in vigorous efforts to garner Delaware Park's consent, including a discussion of the factual and legal bases for the claims.

the Family and Medical Leave Act Improper Denial of Leave claim in Count VII. Delaware Park asserts that these claims are futile and prejudicial. Mr. Almakhadhi respectfully disagrees.

## II. REPLY

### A. Mr. Almakhadhi's Hostile Work Environment Claims in Counts I and III Are Well Pled and Reasonably Within the Scope of his Charge of Discrimination.

Delaware Park goes to great pains, over many pages, to argue that Mr. Almakhadhi's hostile work environment claims are futile. Unfortunately, Delaware Park misses the salient procedural point, which is that Mr. Almakhadhi's Motion is to amend his Complaint—he did not move for summary judgment. At the time Mr. Almakhadhi's Motion was filed, and Delaware Park responded, written discovery was not yet complete. Indeed, there are still outstanding discovery requests to Delaware Park. Delaware Park's implications that the factual inquiries in this case are at an end are simply mistaken, as well as procedurally improper.

As the Supreme Court recently reiterated in Erickson v. Pardus:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, . . . 2007 U.S. LEXIS 5901, *21 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

127 S. Ct. 2197, 2200 (U.S. 2007). To the extent further development of the allegations is required, such additional details are the appropriate subject of discovery. If discovery does not show the facts to support a plaintiff's allegations, then summary judgment is the appropriate remedy.

Accordingly, to amend his Complaint Mr. Almakhadhi is not required to prove that there is no genuine issue of material fact about his hostile work environment claims, as Delaware Park seeks to have him do. The Rules require only that Mr. Almakhadhi allege sufficient facts to give Delaware Park fair notice of his claims. He has done so in his Amended Complaint.

Moreover, contrary to Delaware Park's assertions, Mr. Almakhadhi exhausted his administrative remedies on his hostile work environment claims. Indeed, in response to the Department of Labor's ("DOL") investigation, Delaware Park produced records discussing Mr. Almakhadhi's allegations of a hostile work environment. (See, e.g., DP0033-DP0034, attached as Exhibit A.) Accordingly, Mr. Almakhadhi's hostile work environment allegations were within the reasonable scope of the DOL's investigation.

Mr. Almkahadhi's allegations are sufficient for the purposes of notice pleading under Rule 8, and are clearly not futile based upon Delaware Park's own production of documents. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Accordingly, this Court should grant Mr. Almakhadhi leave to amend his race and national origin Counts to clarify his claims for hostile work environment.[2]

**B.   Mr. Almakhadhi's FMLA Denial of Leave Claim is Not Futile.**

In its argument against part of Mr. Almakhadhi's FMLA claim, Delaware Park again misapprehends the procedural posture of this case in arguing that it provided leave "substantially in excess" of that required by the FMLA. This is not the appropriate time to present evidence refuting Delaware Park's assertion (nor can Mr. Almakhadhi reasonably be expected to do so given the five-page limit of this Rely). Instead, Delaware Park's argument on this Count should be stricken because the parties are still engaged in discovery and the Court should grant Mr. Almakhadhi's request for leave to amend to include this claim.

---

[2] The cases cited by Delaware Park support Mr. Almakhadhi's position: Anatol v. Perry, 82 F.3d 1291 (3d Cir. 1996), Revis v. Slocomb Indus., Inc., 814 F. Supp. 1209 (D.Del. 1998); Ramon v AT&T Broadband, 195 Fed. Appx. 860 (11th Cir. 2006) and Moon v. Del. River & Bay Auth., 2006 WL 462551 (D.Del. Feb. 24, 2006) were all cases properly decided at summary judgment, and not on a motion to dismiss or otherwise using the futility standard.

Even if the Court does not strike this portion of Delaware Park's argument, it is clear that Mr. Almakhadhi has satisfied his pleading requirements and that his amendment is not futile. To wit, in paragraphs 30 through 32 of his proposed Amended Complaint, Mr. Almakhadhi alleges that he had additional leave time available because Delaware Park sent him home without further direction. Delaware Park never informed Mr. Almakhadhi that it was using his FMLA leave, and Delaware Park never alerted Mr. Almakhadhi to any absence issues. Indeed, even in its lengthy argument on this count Delaware Park points to no evidence that it informed Mr. Almakhadhi that it was using his FMLA leave or that the absences required and imposed by the company would jeopardize his job. Accordingly, his claim is not futile and the Court should grant Mr. Almakhadhi's request for leave to amend to include this claim.

### C. Mr. Almakhadhi Withdraws his State Law Discrimination Claims.

Based upon the holding in <u>Phillips v. Household Finance Corp.</u>, 2007 U.S. Dist. LEXIS 46058 (No. 06-100-JJF, June 25, 2007), Mr. Almakhadhi respectfully withdraws Counts II, IV, and VI without prejudice.[3]

---

[3] Mr. Almakhadhi respectfully offers to further brief this issue if the Court so orders. Mr. Almakhadhi respectfully submits that the implications of the recently enacted 19 Del. C. § 714(c) are unclear. Clearly Delaware law requires a plaintiff to "elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation." Likewise, clearly "A charging party is barred by this election of remedies from filing cases in **both** Superior Court and the federal forum." 19 Del. C. § 714(c) (emphasis added). Mr. Almakhadhi, however, is not seeking simultaneously to pursue his claims in state court, nor is he seeking a double recovery. Instead, by including the state law claims Mr. Almakhadhi is merely exercising his Rule 8 right to plead in the alternative. The District Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, and other than issues of comity, the State of Delaware has no authority to limit this Court's jurisdiction or authority.

**III. CONCLUSION**

Delaware Park has failed to meet its burden of showing that Mr. Almakhadhi's hostile work environment claims in Counts I and III and his FMLA denial of leave claim in Count VII are either futile or prejudicial. Accordingly, Mr. Almakhadhi respectfully requests that this Court deny Delaware Park's Opposition and grant him leave to include those claims.[4]  Mr. Almakhadhi ought to be afforded an opportunity to test his claim on the merits.

                        Respectfully submitted,

                        /s/ Frank Conley
                        Frank J. Conley, Esquire
                        *Pro hac vice*
                        The Conley Firm
                        7715 Cheltenham Avenue, Suite 133
                        Philadelphia, PA 19118
                        (215) 836-4789

                        /s/ Glenn Brown
                        Glenn Brown, Esquire
                        Real World Law
                        916 N. Union St #2
                        Wilmington, DE 19805
                        (302) 225-8340

Date: 1 November 2007

---

[4] Delaware Park does not object to the discrimination, harassment, or retaliation portions of Counts I and III. Nor does Delaware Park object to the retaliation portion of Count VII. Delaware Park raised no objections to Count V or Count VIII. Mr. Almakhadhi withdraws, without prejudice, Counts II, IV, and VI.

# Exhibit A

5/22/2006

# Incident Report

REDACTED

| | | | | | |
|---|---|---|---|---|---|
| Name/SSN: | ALMAKHADHI, SAMI | | | | |
| Department: | 112   Cage Operations | Gender: | M | Union: | Yes |
| Ethnicity: | 0 | Position: | BOOTH CASHIER | | |
| Date of Hire: | 1/18/2002 | Age: | 37 | | |

| | | | |
|---|---|---|---|
| Date of Incident: | 3/15/2005 | Incident Type: | Miscellaneous |
| Disposition: | Concern | Dispos. Date: | 3/15/2005 |
| Witnesses: | | | |

Details:  Recorded Date: 3/17/2005 10:13:37 AM
Recorded By: mnardo
Incident Date: 3/15/2005
Incident Type: Miscellaneous
HR Rep: M NARDO
Disp Date: 3/15/2005
Disposition: Concern
ECN IncType: N/A

Mr. A. came to the HR office at Kirkwood Services Building on 3/14/05 at approximately 4PM. to meet with Micki N. He was still upset that he was not considered for a Main Bank position he applied for and felt that it was due to discrimination. Micki explained that she found no evidence to support his allegations. Micki suggested that if he was not satisfied with the outcome of his meeting with Stacy Suhr, Assistant Cage Manager, he should move up the chain of command and speak to Karlyn Dixon, Director of Accounting Operations. He said no, Karlyn does not like him and always yells at him. She speaks to him in a disrespectful manner. Micki said that he needs to address that with Karlyn. He again reiterated the fact that he did not agree with the Main Bank choices his management made, he feels that he can do the job, he feels that he has enough experience to move on from Booth Cashier. I told him that he needs to again apply for Satelite. He said "I know that job, I trained people in that job. I have trained Supervisors like Billy Joyner. They promote people that are not smart and know the job better than me like Doreen Casson." Micki said that while she respects his opinion, it is just that, his opinion. His management has the right to choose who they feel suits the job best and they do not have to explain their decisions where other people are concerned. They gave him advice as to how to proceed moving forward if he wants to enhance his career within his department. Just because he disagrees, does not change their guidelines for him. He continued to debate the point with Micki and Micki told him that there was nothing more to discuss. She extended the courtesy to meet with him without an appointment and now she must end there meeting (it was 4:45PM). Micki asked what he wanted from HR? He responded that he wanted to tell me that he still feels he is being discriminated against. Micki said that she already clarified that she found no evidence of discrimination. Her advice is to meet with Karlyn Dixon. He refused that advice and said he wants to meet with Kevin DeLucia, Vice President of Accounting Operations and he wants Micki to be there as a witness. Micki said she would contact Kevin but makes no promises. His scheduled is Tuesday -Saturday 3:30P to 11:30P.
3/15/05 Micki telephoned Kevin DeLucia and explained the meeting and desires of Mr. A. Kevin suggested that Karlyn, He and Micki meet with Mr. A to try to put an end to his concerns. Micki called Karlyn D to try to set up an appointment today after Mr. A arrives for his scheduled shift.

3/15/05 meeting notes: in the presence of Kevin DeLucia, Vice President Accounting , Karlyn Dixon, Director, Accounting Ops.

DF0033

This meeting took place at 3:30PM in the office of K.DeLucia. Micki stated, "We are meeting today to discuss some concerns that Sami has relating to not being chosen for the Main Bank position, the way his interview was conducted and the fact that he feels discriminated against in his as well as issues of disrespect he has with Karlyn Dixon."

Sami: Well, I want to know why I did not get the position at Main Bank. Stacy told me I must be satelite. I worked Satelite job for two weeks and I fill in for satelite all the time. I had to give it back because my father was ill, he died in December, I was using FMLA, my federal right. I was interviewed by Roberta after choice was made. Why? That is like giving someone a cell phone with no battery. Here go use cell phone...but no battery, so it is no use."
Micki: We already acknowledged that the circumstances surrounding your interview was a mistake, it should not have happened and it will not happen again." (Karlyn and Kevin nodded in support)
Sami: Yes, it was mistake, very upprofessional.
Micki: So what is it that you want to happen as a result of this mistake?
Sami: Just make sure that they (Kevin & Karlyn) know this happened. I don't understand why these two females got this job, I think it is because you like them.
Karlyn: First of all being a Satelite cashier is not a pre-requisite for working in the main bank. There are many things that are looked at like work history (here at DP and outside of DP) variances, attendance, interpersonal relations or how you get along with co-workers, customer service.
Sami: I had variances in the beginning. I worked too fast trying to give good service. People would jump in my line because I was fast. I realized that I must slow down. That was long ago, those write ups went away. I been here three years, longer than other two women that got job.
Karlyn: You recovered the progressive discipline, but the variances stay part of your bio for the remainder of your employment. And time in your position is taken into account but again is not the sole reason you were not chosen. We look at apples as apples. In other words, you fill in as satelites so did the two females, they may not have had variances, you have had your issues with getting along with others.
Sami interrupts: That one time was misunderstanding but that was only one time and it was not my doing, it was other person who made statement that I should go back to my own country. She got Final Warning with 3 day suspension and she apologized. I did not get disciplined because I did not do anything. I will be American Citizen next year, I am resident now..I want to work hard and have a good living in this country.
Karlyn: You applied for the satelite position last year. Other satelite positions came open, why have you not applied again? Openings have come up since December.
Sami: It is too late for me now. I am making almost what satelite makes and I am 7th in seniority. If I go to satelite now I go to bottom of seniority. Main Bank makes more hourly and there is plenty opportunity for overtime.

Kevin: While a satelite position is not a prerequisite, it is a good strategic step to move up within the Cage department. You now have a bank worth $30,000. Satelite is $250,000 and Main Bank is even more. The volume and responsibility increases with the position.
Sami: I understand that, and I am good at what I do. I see you have education (speaking to Kevin looking a Degree hung on the wall), so do I, in my country not count for some reason in United States. But this job is easy to me, (giggling) it is fun, it comes easy.
Kevin: Look Sami, we have a lot of responsibility (indicating Kevin and Karlyn) we are not going to give a person a position because we like them and jeopardize our careers our family wellbeing.
Sami: So why did these women get the job over me?
Karlyn: Because we felt they were more qualified.
Sami: Okay, more qualified than me? I don't know, Karlyn, I just felt like you don't like me. You have yelled at me in the past, saying to get back to your window, in front of my co-workers.
Karlyn: No, you are mistaking, I don't talk to people like that. (She kept shaking her head saying no, I don't do that kind of stuff).

DP0034

Sami: Well, I guess that's it then.

It was 4:15PM and Karlyn and Kevin had a meeting to go to that started at 4PM. We had to end the meeting at that point but Sami thanked them and he was encouraged (by Karlyn and Kevin) to apply for positons within department as well as outside of the department He did not respond to this suggestion.

## CERTIFICATE OF SERVICE

I hereby certify that on 1 November 2007, a true and correct copy of the foregoing was filed electronically via the Court's ECF system, which will send notification of such filing, and that the document is available for downloading and viewing, to counsel of record:

>Wendy Voss
>Potter Anderson & Corroon LLP
>Hercules Plaza
>1313 North Market Street, 6th Floor
>Wilmington Delaware • 19801

>/s/ Glenn Brown
>_____
>Glenn Brown, Esquire
>Real World Law
>916 N. Union St #2
>Wilmington, DE 19805
>(302) 225-8340

Date: 1 November 2007