IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMI ALMAKHADHI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 07-78-JJF |
| DELAWARE PARK LLC, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS**

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

On February 12, 2007, Plaintiff Sami Almakhadhi initiated this lawsuit pro se, alleging, among other things, race and national origin discrimination by Defendant Delaware Park LLC ("Delaware Park"). On June 24, 2007, this Court entered a Scheduling Order. Relevant here, the Court ordered that written discovery "shall be commenced so as to be completed by October 31, 2007." The Court also set a dispositive motion deadline of November 27, 2007.

On September 4, 2007, Mr. Almakhadhi filed and served his First Request for Production of Documents, First Request for Admissions, and First Set of Interrogatories. (See, collectively, Exhibit A.)

On September 12, 2007, undersigned counsel filed a Motion for Pro Hac Vice appearance, which the Court granted on October 2, 2007.

On October 2, 2007, by and through counsel, Mr. Almakhadhi filed a Motion for Leave to Amend his Pro Se Complaint. On October 22, 2007, Delaware Park filed its Partial

Opposition to that Motion. On November 1, 2007, Mr. Almakhadhi filed his Reply. Mr. Almakhadhi's Motion for Leave to Amend is outstanding.

On October 4, 2007, Delaware Park served its responses and objections to Mr. Almakhadhi's discovery requests, promising the later production of additional documents. (See, collectively, Exhibit B.) Because those responses were lacking, on October 18, 2007, the undersigned wrote to Delaware Park's counsel seeking clarification of Delaware Park's responses as well as additional responsive documents. (See Exhibit C.) On November 5, 2007, Delaware Park's counsel responded, but provided only a single additional document. (See Exhibit D.) Accordingly, because Delaware Park's responses remained deficient, on November 10, 2007, the undersigned again wrote to Delaware Park's counsel in a continuing good-faith effort to resolve the discovery dispute without the Court's intervention. (See Exhibit E.) Delaware Park has not yet responded to the November 10, 2007 letter.[1]

Because Delaware Park's improper and incomplete discovery responses have prejudiced Mr. Almakhadhi's ability to prepare a dispositive motion, and because the Court's dispositive motion deadline is near, Mr. Almakhadhi now seeks an Order compelling Delaware Park to produce responsive discovery. Mr. Almakhadhi also requests that the Court provide him additional time after Delaware Park's production to consider, and if necessary prepare and file, a dispositive motion. Finally, Mr. Almakhadhi asks the Court to sanction Delaware Park for its willful failure to respond fully to Mr. Almakhadhi's discovery requests by awarding him $1,000 for the costs of preparing this Motion, as well as issuing any other sanction the Court deems appropriate.

_____

[1]     Mr. Almakhadhi is aware of the holiday on November 12, 2007.

## II.   MR. ALMAKHADHI'S POSITION AND REASONING ON THE ISSUES

Despite Mr. Almakhadhi's proper requests for discovery, Delaware Park has failed to produce relevant documents and responses. Instead, Delaware Park has limited largely its responses to boiler-plate objections and produced (with minor exception) only documents that it submitted to the Delaware Department of Labor.[2] These responses are not responsive to Mr. Almakhadhi's requests and make it impossible for him to file a dispositive motion— apparently Delaware Park's intended effect.

By way of example, Delaware Park has failed and refused to produce documents concerning Mr. Almakhadhi's worker's compensation claim and his FMLA status, other than those contained in Mr. Almakhadhi's personnel file. Delaware Park asserts that these topics are not "relevant to his present claims." As explained in the correspondence attached hereto, these topics are central to Mr. Almakhadhi's claims because Mr. Almakhadhi alleges, among other things, that Delaware Park obstructed and denied his worker's compensation claim, obfuscated the availability of light duty, and obfuscated his eligibility for leave time, as part of its discrimination and retaliation against him.

Delaware Park's production to date demonstrates its effort to withhold relevant discovery. Based upon references contained in the documents Delaware Park has produced, there obviously are, for example and not by way of limitation, additional e-mails pertaining to Mr. Almakhadhi's discrimination claims; additional investigative files concerning Mr. Almakhadhi's numerous complaints of discrimination; additional documents concerning

---

[2]     In addition to a duplicate copy of the materials it produced to the Delaware Department of Labor, Delaware Park only produced Mr. Almakhadhi's personnel file, a handful of select e-mails taken from a larger context (and not including the complete e-mail chains), and a copy of portions of a collective bargaining agreement which Delaware Park had piecemeal produced to the Department of Labor.

Mr. Almakhadhi's requests for FMLA leave; and additional documents concerning

Delaware Park's obstruction and denial of Mr. Almakhadhi's worker's compensation claim.

Indeed, Delaware Park has even refused and failed to produce documents that it promised

to provide. (See Exhibit B.)

### III.  CONCLUSION

Wherefore, Mr. Almakhadhi respectfully requests that the Court compel Delaware

Park to provide any information it has responsive to Mr. Almakhadhi's discovery requests;

extend Mr. Almakhadhi's dispositive motion deadline until 30 days after Delaware Park's

complete responses to his discovery requests; order Delaware Park to pay to

Mr. Almakhadhi $1,000 for the costs associated with the filing of this Motion; and order any

other sanctions the Court deems appropriate.

Respectfully submitted,

/s/ Frank Conley
Frank J. Conley, Esquire
**THE CONLEY FIRM**
7715 Crittenden Street, Suite 113
Philadelphia, PA 19118
(215)  836-4789
FConley@ConleyFirm.com

Glenn Brown, Esquire
Bar No. 4669
**Real World Law**
916 N. Union St #2
Wilmington, DE 19805
(302) 225-8340
glenn.brown@realworldlaw.com

Date: 14 November 2007



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SAMI ALMAKHADHI,         )
                              )
       Plaintiff,          )
                              )
     v.                  )     C.A. No. 07-78 ( JJF)
                              )
DELAWARE PARK LLC,      )
                              )
       Defendant,      )

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2007 SEP -4  PH 4:03

## Plaintiff SAMI ALMAKHADHI'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO THE DEFENDANT DELAWARE PARK LLC

====================================================

BY: -----------------------------------

--

        SAMI ALMAKHADHI
        P.O.BOX7392
        NEWARK,DE 19714

1.    Any and all documents identified by the defendant in his rule 26(a) initial.

**RESPONSE:**

2.    Any and all documents regarding the request for FMLA from 2004 until my termination.

**RESPONSE:**

3.    Any and all documents provided by defendant to The Department of Labor regards to my charge of discrimination filed on April 26,2006.

1

**RESPONSE:**

4.    Any and all documents in or reviewed in preparation for defendant responses to plaintiff's first set of interrogatories directed to the defendant.

**RESPONSE:**

5.    Any and all documents reviewed in preparation for defendant's  response to plaintiff's first requests  for admission directed to defendant.

**RESPOSE:**

5.    Any and all documents  evidencing or relating in any way to defendant 's request regarding my FMLA.

**RESPONSE:**

3

6.    Any and all documents evidencing or relating in any way to defendant's claim that I violate Delaware Park policy by working beyond my restriction.

**RESPONSE:**

7.  Any and all documents evidencing or relating  in any way to my termination on Feb 12,2006 and March 10,2006.

**RESPONSE:**

4

8. Any and all documents related to the plaintiff request for light duty on April 29,2005.

**RESPONSE:**

9. Any and all documents between Ms. Shannon Delucia and Ms. Karlyn Dixon or my Management regarding my light duty and my termination.

**RESPONSE:**

5

# CERTIFICATE OF SERVICE

I , SAMI ALMAKHADHI, hereby certify this 4th day of September , 2007 , that the foregoing **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT** was delivered to the court and two (2) true and correct copies were delivered by hand to the following:

Wendy K. Voss
POTTER ANDERSON&CORROON LLP
Hercules Plaza, Sixth Floor
1313North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

--------------------------------
**Sami Almakhadhi**
P.O. Box 7392
Newark, Delaware 19714
 (302)293-5064

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SAMI ALMAKHADHI,                    )
                                    )
    Plaintiff,                   )
                                    )
    v.                           )        C.A. No. 07-78 ( JJF)
                                    )
DELAWARE PARK LLC,                  )
                                    )
    Defendant,                   )

**Plaintiff SAMI ALMAKHADHI'S FIRST REQUEST FOR ADMISSION DIRECTED TO THE DEFENDANT DELAWARE PARK LLC**

=======================================================

BY: --------------------------------------

      **SAMI ALMAKHADHI**
      **P.O.BOX7392**
      **NEWARK,DE 19714**

1.    Admit that I was terminated on February 12, 2006.

**RESPONSE:**

2.    Admit that I was terminated again on March 10th, 2006.

**RESPONSE:**

3.    Admit that the termination on March 10th, 2006 was made up on

March 30,2006

**RESPONSE:**

4.    Admit that I have document from human Resources stating that

My last day of employment was   February 12, 2006.

**RESPONSE:**

5.    Admit that my health insurance coverage was

terminated effective February28, 2006.

**RESPONSE:**

2

6.    Admit that Delaware Park failed to inform me about the Termination on February12, 2006.

**RESPONSE:**

7.    Admit that Delaware Park failed for the second  time to inform me about the termination on March 10th, 2006. until I called on March 30,2006 concerning about my employment then a letter was send to me.

**RESPONSE:**

8.    Admit that Delaware Park told me on their letter to me dated on March 30, 2006 that I supposed to receive a letter from human resources several weeks ago advising me about the termination on March 10th, 2006 and that was not true.

**RESPONSE:**

9.    Admit that Delaware Park force me to go home on September02, 2006. and inform me to call in each day to advise my supervisor that I will be out and verify whether my restrictions could be accommodated and return to work or if I remain out of work. Then terminate my job because I was calling out every day leave of absence(LOA).

**RESPONSE:**

4

10.    Admit that Ms Karlyn Dixon is the one who made the

decision to not  accommodate my restriction on September 02,

2006.

**RESPONSE:**

11.    Admit that Delaware Park told me that they have my

address wrong and they send the termination letter on February 12,

2006. to the wrong address and all that lie because there was no

Letter sends.

5

**RESPONSE:**

12.     Admit that  I had the interview for the position in main bank on January,2005 after I was told by my supervisor that the positions were filed  and I was not chosen  and that was a management team decision.
**RESPONSE:**

13.     Admit that I was told by my management that I should have some success as a Satellite Cashier before I apply for Main Bank job and in the same time the Candidate who were chosen none of them was a Satellite Cashier.

6

**RESPONSE:**

14.   Admit that you told the department of labor that I had grievance rights referring me as a union member and that's not true.

**RESPONSE:**

15.   Admit that I never violated Delaware Park policy regarding  light duty simply because I never had light duty.

**RESPONSE:**

7

16.    Admit that Delaware Park was denying my worker's compensation claim from 5/18/04 until 11/8/05.

**RESPONSE:**

17.    Admit that when I was send home on September 1,2005 I was not under worker's compensation  benefits.

**RESPONSE:**

8

18.    Admit that I request light duty on April 29, 2005 and after a few minutes later  I was called to the office and kicked out from the company.

**RESPONSE:**

19.    Admit that Delaware Park   was talking about my old FMLA during the investigation by Department of Labor and never  mentioned that  I was entitle to a new FMLA.

**RESPONSE:**

9

20.    Admit that Delaware Park never informed me that they are using my FMLA time after I was send home on September 02, 2005.

**RESPONSE:**

21.    Admit that Delaware Park was using my FMLA leave as excuse to not promote me.

**RESPONSE:**

10

21.    Admit that Delaware Park was using my right under the

applicable Collective Bargaining Agreement to return to Booth

Cashier as excuse to not promote me

**RESPONSE:**




22.    Admit that  during the investigation by Frank Penta,

Employee Relation Manager after I complain from

discrimination because I did not get the job of Impress

Supervisor Mr. Penta was told that I did not fill a transfer form

and that was not true.

**RESPONSE:**

11

23.    Admit that Delaware Park extended my Benefits until the

end of March. 2006. to fit their story about my termination on

March 10th ,2006.

**RESPONSE:**

24.    Admit that I never signed a documents acknowledgment

that make me responsible for complying with any restrictions

because I was not under any worker's compensation policy.

**RESPONSE:**

12

25.    Admit that when I was under restriction dated on 5 /17 /05

I was under FMLA and that's why I did not inform the company

about it also I t was personal and not consider worker's

compensation at that time

**RESPONSE:**

25.    Admit that you never said or even mentioned any thing

about my termination on February 12, 2006 during the

investigation by Department of Labor.

**RESPONSE:**

13

26.    Admit that  Delaware Park use the Bathroom as spot for light duty.

**RESPONSE:**

27.Admit that at least Two Booth Cashiers were given light duty in the Delaware Park Bathrooms.

**RESPONSE:**

14

## CERTIFICATE OF SERVICE

---

I , SAMI ALMAKHADHI, hereby certify this 4th day of September , 2007 , that the foregoing **PLAINTIFF'S FIRST REQUEST FOR ADMISSION   DIRECTED TO DEFENDANT** was delivered to the court and two (2) true and correct copies were delivered by hand  to the following:

Wendy K. Voss
POTTER ANDERSON&CORROON LLP
Hercules Plaza, Sixth Floor
1313North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

-----------------------------------

**Sami  Almakhadhi**
P.O. Box 7392
Newark, Delaware 19714
 (302)293-5064

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SAMI ALMAKHADHI,                          )
                                          )
      Plaintiff,                   )
                                          )
      v.                            )   C.A. No. 07-78 ( JJF)
                                          )
DELAWARE PARK LLC,                        )
                                          )
      Defendant,                   )

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2007 SEP -4 PM 4: 03

## Plaintiff SAMI ALMAKHADHI'S FIRST SET OF INTERROGATORIES DIRECTED TO THE DEFENDANT DELAWARE PARK LLC

========================================================

BY: ------------------------------------

**SAMI ALMAKHADHI**
**P.O.BOX7392**
**NEWARK,DE 19714**

1.    Explain the true story about my termination and identify the

following:

      A. exact date , reason and the name who made the decision.
      B. Whether or not was a letter sent to me.
      C. Whether or not this information had been discussed
         during the investigation by the department of labor.

**RESPONSE:**

2.    Explain why other co-workers were given light duty in the

same time I was told nothing available.

**RESPONSE:**

1

3.   Provide the following information regarding all (Satellite , Main Bank and Booth cashiers) who were given light duty during the period of May 18,2004 until my termination and for each individual identify the following:

A. Name, address and phone number.

B. The medical restriction for each one

C. Delaware Park opinion about the severity of their restrictions comparing with mine.

D. Whether or not Delaware Park terminate their job and after how long.

**RESPONSE**

2

3.    Any  state, federal or Delaware Park policy govern the period time allow employer to fire any employee after an injury at the job.

**RESPONSE:**

4. Describe with particularity all facts supporting the defendant's allegation that I violate Delaware Park policy during the time I was denied my claim.

**RESPONSE:**

3

5. Provide the following information regarding all inquires to transfer to another job during my employment at Delaware Park:

    A. The date and manner of such contacts

    B. The entity to which the inquiry was made.

    C. The result from that inquiry.

    D. The reason if it was denied.

**RESPONSE:**

4

6.    Provide the names , address and phone number for any (Satellite ,Main Bank and Booth cashier) who never given light duty during the period of May 18,2004 until my termination.

**RESPOSE:**

7.    Explain why I did not received my holiday gift two weeks before the Christmas and when I asked about it I got terminated .

**RESPONSE:**

5

8. Explain why I did not have interview for surveillance officer when I filed transfer form on 4/5/2005.

**RESPONSE:**

9. Explain why you provide incorrect information regarding the employees who denied light duty such as ( Hayes, Antionette and Keeley, Stephanie and Dowell, kristy ) and some names unknown like Haskins, Marsalis and Beavers, Laurie even you went beyond the Relevant period like Ms. Twaddell who was terminated on August, 2006.

**RESPONSE:**

6

10.    for each of Plaintiff's request  for Admission that you do not unequivocally admit, state all facts supporting your decision not to admit.

**RESPONSE:**

7

# CERTIFICATE OF SERVICE

I , SAMI ALMAKHADHI, hereby certify this 4th day of September , 2007 , that the foregoing **PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT** was delivered to the court and two (2) true and correct copies were delivered by hand to the following:

Wendy K. Voss
POTTER ANDERSON&CORROON LLP
Hercules Plaza, Sixth Floor
1313North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

------------------------------------

**Sami Almakhadhi**
P.O. Box 7392
Newark, Delaware 19714
 (302)293-5064

B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMI ALMAKHADHI, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. A. No. 07-78-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE PARK, | ) | |
| | ) | |

DEFENDANT DELAWARE PARK LLC'S RESPONSES
AND OBJECTIONS TO PLAINTIFF SAMI ALMAKHADHI'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Delaware Park, L.L.C. ("Delaware Park") or ("Defendant"), by and through its undersigned counsel, hereby submits its responses and objections to Plaintiff Sami Almakhadhi's First Request for Production of Documents.

GENERAL LIMITATIONS AND OBJECTIONS

1.    Delaware Park's specific objections set forth below are in addition to the general limitations and objections set forth in this section. These limitations and objections form a part of the response to each and every request. Thus, the absence of a reference to a general limitation or objection should not be construed as a waiver of the general limitation or objection as to a specific request.

2.    Delaware Park submits these responses and objections without conceding the relevancy or materiality of the subject matter of any request for production and without prejudice to Delaware Park. Delaware Park expressly reserves the right to object to further discovery into the subject matters of the requests for production or to object to the introduction into evidence of any information or documents produced.

3.      These responses are based on Delaware Park's knowledge and information as of the date hereof.  Delaware Park reserves the right to amend and supplement all of its objections and responses to the requests as additional responsive information or documents are found by way of discovery or otherwise.

4.      Delaware Park objects to the requests to the extent that they seek information or documents protected by the attorney-client privilege or work-product doctrine, documents that constitute trial preparation materials, and/or documents that are otherwise privileged or protected and not subject to discovery.

5.      Delaware Park objects to the requests to the extent that they seek information or documents not within Delaware Park's possession, custody or control.

6.      Delaware Park objects to the requests as unduly burdensome and oppressive, especially insofar as they seek information or documents already in Plaintiff's possession, custody or control and as easily accessible to Plaintiff as to Delaware Park.

7.      Delaware Park objects to the requests to the extent that they seek discovery that is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.

8.      Delaware Park objects to the requests to the extent that they seek information about or contained in documents that no longer exist.

9.      Delaware Park objects to the requests to the extent that they seek information, documents and/or evidence that is not relevant to the parties' claims and defenses, nor reasonably calculated to lead to the discovery of admissible evidence in this litigation.

10.    Delaware Park objects to the requests to the extent that they are vague, ambiguous, overly broad, and do not identify the subject of inquiry with any reasonable particularity.

11.    Delaware Park objects to the use of "every," "all," "each," "ever," "any," or other similar words of expansion as overly broad, unduly burdensome, and harassing, particularly because, in some cases, the information sought covers an undefined period of time and/or location.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Any and all documents identified by the defendant in his rule 26(a) initial.

**RESPONSE:**

Delaware Park agrees to produce responsive documents.

2.    Any and all documents regarding the request for FMLA from 2004 until my termination.

**RESPONSE:**

Defendant objects to Request number 2 on the grounds that it is vague, ambiguous, unintelligible, overly broad, and unduly burdensome. Furthermore, Defendant objects on the grounds that this request is not relevant to the claims and defenses in this litigation and therefore is not reasonably calculated to lead to the discovery of admissible evidence.

3.    Any and all documents provided by defendant to The Department of Labor regards to my Charge of Discrimination filed on April 26,2006.

**RESPONSE:**

Defendant agrees to produce responsive documents.

3

4.    Any and all documents in or reviewed in preparation for defendant responses to plaintiff's first set of interrogatories directed to the defendant.

**RESPONSE:**

Defendant objects to Request number 4 to the extent it seeks documents subject to the work product or attorney-client privilege(s). Subject to and without waiving its objections, Defendant agrees to produce responsive, non-privileged documents.

5A.    Any and all documents reviewed in preparation for defendant's response to plaintiff's first requests for admission directed to defendant.

**RESPONSE:**

Defendant objects to Request number 5A to the extent it seeks documents subject to the work product or attorney-client privilege(s). Subject to and without waiving its objections, Defendant agrees to produce responsive, non-privileged documents.

5B.    Any and all documents evidencing or relating in any way to defendant's request regarding my FMLA.

**RESPONSE:**

Defendant objects to Request number 5B on the grounds that it is vague, ambiguous, unintelligible, overly broad, and unduly burdensome. Furthermore, Defendant objects on the grounds that this request is not relevant to the claims and defenses in this litigation and therefore is not reasonably calculated to lead to the discovery of admissible evidence.

6.    Any and all documents evidencing or relating in any way to defendant's claim that I violate Delaware Park policy by working beyond my restriction.

**RESPONSE:**

Defendant agrees to produce responsive documents.

4

7.    Any and all documents evidencing or relating in any way to my termination on February 12, 2006 and March 10, 2006.

**RESPONSE:**

Defendant agrees to produce responsive documents.


8.    Any and all documents related to the plaintiff request for light duty on April 29, 2005.

**RESPONSE:**

Defendant agrees to produce responsive documents.


9.    Any and all documents between Ms. Shannon DeLucia and Ms. Karlyn Dixon or my Management regarding my light duty and my termination.

**RESPONSE:**

Defendant agrees to produce responsive documents.


POTTER ANDERSON & CORROON LLP


By: _____
     Wendy K. Voss (#3142)
     Jennifer C. Wasson (#4933)
     Hercules Plaza, Sixth Floor
     1313 North Market Street
     P.O. Box 951
     Wilmington, DE  19899
     (302) 984-6000 – Telephone
     (302) 658-1192 – Facsimile
     wvoss@potteranderson.com - Email
     jwasson@potteranderson.com - Email

*Attorneys for Defendant Delaware Park, L.L.C.*


Dated:  October 4, 2007
PAC823417 / 14672-132


5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMI ALMAKHADHI, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. A. No. 07-78-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE PARK, | ) | |
| | ) | |
| Defendant, | ) | |

## DEFENDANT DELAWARE PARK LLC'S RESPONSES
## AND OBJECTIONS TO PLAINTIFF SAMI ALMAKHADHI'S
## FIRST REQUESTS FOR ADMISSION

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant Delaware Park, L.L.C. ("Delaware Park" or "Defendant"), by and through its undersigned counsel, hereby submits its responses and objections to Plaintiff Sami Almakhadhi's First Requests for Admission, as follows:

## GENERAL OBJECTIONS

Delaware Park submits these responses and objections without conceding the relevancy or materiality of the subject matter of any request and without prejudice to Delaware Park. Delaware Park expressly reserves the right to object to further discovery into the subject matters of the requests or to object to the introduction into evidence of any information provided.

## REQUESTS FOR ADMISSION

1.      Admit that I was terminated on February 12, 2006.

**RESPONSE:**

Admitted that plaintiff's employment with Delaware Park was terminated effective February 12, 2006; denied that all administrative steps in the termination process were completed by February 12, 2006. With the apparent exception of a letter to Plaintiff advising him in writing

of his termination, such administrative steps were completed between approximately March 10 and 15, 2006. By way of further clarification, Delaware Park states as follows: On or about March 10, 2006, Plaintiff spoke by telephone with Delaware Park's Director of Risk Management, Shannon DeLucia. In that conversation, Ms. DeLucia advised Plaintiff that his employment had been terminated effective February 12, 2006. Plaintiff reported to Ms. DeLucia that he had not received written or other notice of his termination. Ms. DeLucia therefore decided that, because he had not received notice in accordance with normal company procedure, as a courtesy to Plaintiff she would modify his termination date to the time when Plaintiff reasonably was on notice of the termination. Since that date had not yet been determined, Ms. DeLucia advised Plaintiff only that his termination date would be modified. After further investigation, Ms. DeLucia concluded that Plaintiff had not reasonably been on notice of the termination until their conversation on March 10, 2006. Thereafter, Ms. DeLucia tried several times to reach Plaintiff by telephone to advise him that his termination date would be modified to March 10, 2006, but she was not successful in reaching him. On March 30, 2006, Ms. DeLucia was advised by a member of Delaware Park's Benefits Department that Plaintiff had incurred medical expenses in the month of March 2006, which had been denied by the insurance carrier. In order to finally conclude the matter and to ensure that Plaintiff's medical benefits would be extended through the end of March, Ms. DeLucia sent a letter to Plaintiff that day which provided him with written notice that his employment was terminated effective March 10, 2006. Delaware Park's employee database and certain other internal records were not updated at that time; therefore, these records continue to show that Plaintiff was terminated effective February 12, 2006.

      2.     Admit that I was terminated again on March 10th, 2006.

**RESPONSE:**

Denied that Plaintiff was terminated "again." Admitted that plaintiff was advised by letter from Delaware Park's Director of Risk Management, Shannon DeLucia, that his employment was terminated effective March 10, 2006. By way of clarification, please also see response to Request number 1.

      3.     Admit that the termination on March 10th, 2006 was made up on March 30, 2006.

**RESPONSE:**

Delaware Park objects to this request on the grounds that it is vague, ambiguous, unintelligible, and argumentative. Subject to and without waiving its objections, Delaware Park states as follows: Admitted that Plaintiff was first advised by letter dated March 30, 2006 that his termination date had been modified to March 10, 2006. Denied that the decision to modify Plaintiff's termination date to March 10, 2006 was made on March 30, 2006. By way of clarification, please also see response to Request number 1.

4.    Admit that I have document from human Resources stating that My last day of employment was February 12, 2006.

**RESPONSE:**

Delaware Park objects to this request on the grounds that it has no knowledge regarding documents Plaintiff may have in his possession. Subject to and without waiving its objection, Delaware Park states as follows: Admitted that in April 2006, Delaware Park's Human Resources Department provided a statement to Plaintiff indicating that his employment had been terminated effective February 12, 2006.

5.    Admit that my health insurance coverage was terminated effective February 28, 2006.

**RESPONSE:**

Admitted that Plaintiff's participation in Delaware Park's group health insurance plan was terminated effective February 28, 2006. However, as a courtesy to Plaintiff, this health insurance coverage was subsequently reinstated through March 31, 2006. Please also see response to Request number 1.

6.    Admit that Delaware Park failed to inform me about the Termination on February 12, 2006.

**RESPONSE:**

Denied. Shannon DeLucia spoke with Plaintiff by telephone on March 10, 2006, at which time she informed him that his employment had been terminated effective February 12, 2006. Delaware Park's Human Resources Department later provided a statement to Plaintiff indicating that his employment had been terminated effective February 12, 2006. By way of clarification, please also see responses to Request numbers 1 and 4.

7.    Admit that Delaware Park failed for the second time to inform me about the termination on March 10, 2006. until I called on March 30,2006 concerning about my employment then a letter was send to me.

**RESPONSE:**

Delaware Park objects to this Request on the grounds that it is compound and argumentative. Subject to and without waiving its objections, Delaware Park states that by letter

3

dated March 30, 2006, Shannon DeLucia informed plaintiff in writing that his employment was terminated effective March 10, 2006.   By way of clarification, please also see response to Request number 1.

8.   Admit that Delaware Park told me on their letter to me dated on March 30, 2006 that I supposed to receive a letter from human resources several weeks ago advising me about the termination on March 10th, 2006 and that was not true.

**RESPONSE:**

Delaware Park admits that, by letter from Shannon DeLucia dated March 30, 2006, plaintiff was advised that Delaware Park's Human Resources Department should have advised him several weeks ago that his employment was terminated.  Delaware Park denies that this statement was not true.  The usual practice of Delaware Park's Human Resources Department is to complete its administrative process, including a letter to the employee providing written notice of termination, shortly after the effective date of the termination.   Such a letter should have been sent to Plaintiff when Delaware Park went through its administrative process of  documenting the termination, and apparently was not.

9.  Admit that Delaware Park force me to go home on September02, 2006. and inform me to call in each day to advise my supervisor that I will be out and verify whether my restrictions could be accommodated and return to work or if I remain out of work.  Then terminate my job because I was calling out every day leave of absence (LOA).

**RESPONSE:**

Delaware Park objects to this Request on the grounds that it is compound, vague and ambiguous, and argumentative.  Subject to and without waiving its objections, Delaware Park states as follows:  Admitted that Plaintiff was sent home on September 2, 2005 and instructed to call his department during his absence.  Admitted that Plaintiff's employment was terminated. Denied that Plaintiff was required to verify his restrictions each day between September 2, 2005 and his termination and/or to ask each day whether he would be assigned work that accommodated such restrictions.  Denied that Plaintiff employment was terminated because he called in repeatedly to his department during his absence.  By way of further response, Delaware Park states that on September 2, 2005, in response to Plaintiff's questions regarding the availability of light duty work, and because Plaintiff seemed unwilling to accept the decision that he would not be offered a light duty assignment, Plaintiff was told he could also discuss these issues with his department.  Plaintiff's employment was terminated on February 12, 2006 (and later modified to March 10, 2006) as a result of Plaintiff's long period of absence and continuing inability to return to work. The fact that Plaintiff called in repeatedly to his department during his absence was not a factor in Delaware Park's decision to terminate Plaintiff's employment.  In making its decision to terminate Plaintiff's employment, Delaware Park considered the following information:  (1) Plaintiff  had not been actively at work since August 2005, (2) Plaintiff

4

continued to be subject to medical restrictions that were inconsistent with his job duties; further, Plaintiff had represented that he was unable to perform those duties, and (3) based on the information available to Delaware Park, it appeared that Plaintiff would not be released from his medical restrictions or able to perform his job duties in the foreseeable future.

10. Admit that Ms. Karlyn Dixon is the one who made the decision to not accommodate my restriction on September 02, 2006.

**RESPONSE:**

Denied. Shannon DeLucia made this decision.

11. Admit that Delaware Park told me that they have my address wrong and they send the termination letter on February 12, 2006. to the wrong address and all that lie because there was no letter sends.

**RESPONSE:**

Denied. In response to Plaintiff's inquiry, a Delaware Park employee advised Plaintiff that his termination letter might have been sent to the wrong address and that he (the employee) would check to see if that was the case. The employee told Plaintiff he would receive a letter, but did not tell Plaintiff a letter had been sent on February 12, 2006.

12.    Admit that I had the interview for the position in main bank on January,2005 after I was told by my supervisor that the positions were filed and I was not chosen and that was a management team decision.

**RESPONSE:**

Delaware Park objects to this Request on the grounds that it is compound, vague and ambiguous, irrelevant and not reasonably calculated to lead t the discovery of admissible evidence. Subject to and without waiving its objections, Delaware Park states as follows: Admitted that Plaintiff was interviewed for a Main Bank Cashier position in January or February 2005. Admitted that the successful candidate was chosen prior to Plaintiff's interview. Admitted that the management team in the Cage Department made the decision regarding the successful candidate. By way of further response, Delaware Park apologized to Plaintiff for this error in procedure.

5

13.    Admit that I was told by my management that I should have some success as a Satellite Cashier before I apply for Main Bank job and in the same time the Candidate who was chosen none of them was a Satellite Cashier.

**RESPONSE:**

Delaware Park objects to this request on the grounds that it fails to identify the time period to which it is directed. Subject to and without waiving the foregoing objection, Delaware Park agrees to respond to this request in regard to the time period January/February 2005 when a Main Bank Cashier position was posted at Delaware Park for which Plaintiff applied, and states as follows: Denied that Plaintiff was told prior to applying for a Main Bank Cashier position in January 2005 that he needed to have some success as a Satellite Cashier before making such application. Admitted that Plaintiff was told by one of his supervisors in February 2005, i.e., after another candidate was selected for the Main Bank Cashier Position, that the Cage Department wanted Plaintiff to have some success as a Satellite Cashier before he moved to a higher-level position. Admitted that the candidates who were selected for the Main Bank Cashier position(s) in February 2005 did not have experience as Satellite Cashiers. By way of clarification, Plaintiff was advised of the reasons that he was not selected for the position. See document Bates number DP0027. Subsequently, Plaintiff was informed of the various factors that were considered in selecting the successful candidates. Plaintiff was further was advised that, although being a Satellite Cashier was not a prerequisite for a higher-level position, it would be a good strategic move for him if he wished to move up. See Bates number DP0034. In February 2005, Plaintiff's supervisor invited Plaintiff to apply for Satellite positions that were open at that time.

14.    Admit that you told the department of labor that I had grievance rights referring me as a union member and that's not true.

**RESPONSE:**

Admitted that Delaware Park told the Delaware Department of Labor that plaintiff had grievance rights. Denied that Delaware Park told the Delaware Department of Labor that plaintiff was a "union member" or made any statement that was not true. In response to a request for information from the Delaware Department of Labor, Delaware Park stated as follows: "Mr. Almakhadhi was a member of the bargaining unit represented by the UFCW. Pursuant to the UFCW's Collective Bargaining Agreement with Delaware Park, Mr. Almakhadhi had grievance rights, which he did not exercise." Delaware Park did not state that plaintiff was a "union member," which Delaware Park understands to require a voluntary election on the part of the employee concerned and agreement to pay dues to the union. The bargaining unit concerned includes video lottery operations and/or slot machine employees in defined positions. Plaintiff's position with Delaware Park, Booth Cashier, is explicitly identified in the pertinent collective bargaining agreement (at Section 1.2) as a bargaining unit position. Pursuant to that same agreement (as provided in Article 24) all employees in the collective bargaining unit have grievance rights.

6

15.    Admit that I never violated Delaware Park policy regarding light duty simply because I never had light duty.

**RESPONSE:**

Admitted that Plaintiff was never assigned light duty. Denied that Plaintiff did not violate Delaware Park policies. Plaintiff acknowledged to Delaware Park on at least two occasions that he had been working in a full duty capacity when he knew he should have been working subject to medical restrictions, and that he had not advised Delaware Park of such restrictions. Employees are expected to advise Delaware Park of medical restrictions that are inconsistent with the requirements of their positions and otherwise to engage in safe work place behaviors.

16.    Admit that Delaware Park was denying my worker's compensation claim from 5/18/04 until 11/8/05.

**RESPONSE:**

Delaware Park objects to this Request on the grounds that it is irrelevant to the claims and defenses in the litigation.

17.    Admit that when I was send home on September 1,2005 I was not under worker's compensation benefits.

**RESPONSE:**

Delaware Park objects to this Request on the grounds that it is irrelevant to the claims and defenses in the litigation.

18.    Admit that I request light duty on April 29, 2005 and after a few minutes later I was called to the office and kicked out from the company.

**RESPONSE:**

Admitted that plaintiff requested light duty on or about April 29, 2005. Denied that plaintiff was kicked out from the company. At that time, plaintiff was subject to medical restrictions that prohibited him from performing all the functions of his job, and Delaware Park placed him on FMLA leave for the period April 13, 2005 through June 13, 2005. Plaintiff returned to his position on June 14, 2005.

7

19.     Admit that Delaware Park was talking about my old FMLA during the investigation by Department of Labor and never mentioned that I was entitle to a new FMLA.

**RESPONSE:**

Delaware Park objects to this request as vague and ambiguous because it does not explain the terms "old" and "new" FMLA. Delaware Park further objects to this Request on the grounds that it is irrelevant to the claims and defenses in the litigation.

20.     Admit that Delaware Park never informed me that they are using my FMLA time after I was send home on September 02, 2005.

**RESPONSE:**

Delaware Park objects to this Request on the grounds that it is irrelevant to the claims and defenses in the litigation.

21A.    Admit that Delaware Park was using my FMLA leave as excuse to not promote me.

**RESPONSE:**

Delaware Park objects to this Request on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome, to the extent it fails to identify the promotional decisions at issue. Subject to and without waiving its objections, Delaware Park agrees to respond in regard to positions for which Plaintiff applied in 2005, and states as follows: Denied. By way of further response, Delaware Park states that it selected those individuals it believed were the best candidates for those positions. In making these decisions, Delaware Park did not consider FMLA leave or any impermissible factor.

21B.    Admit that Delaware Park was using my right under the applicable Collective Bargaining Agreement to return to Booth Cashier as excuse to not promote me

**RESPONSE:**

Delaware Park objects to this Request on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome, to the extent it fails to identify the promotional decisions at issue. Subject to and without waiving its objections, Delaware Park agrees to respond in regard to positions for which Plaintiff applied in 2005, and states as follows: Denied. By way of further response, Delaware Park states that it selected those individuals it believed were the best candidates for those positions. In making these decisions, Delaware Park did not consider

8

Plaintiff's bargaining rights or any impermissible factor. To the extent Delaware Park considered Plaintiff's decision to resign from his position as a Satellite Cashier and return to his former position as Booth Cashier, Delaware Park was concerned because Plaintiff had stated that the Satellite Cashier schedule would not work for him and the job was too demanding for him. In Delaware Park's opinion, the other jobs for which Plaintiff applied in 2005 were even more demanding and presented similar scheduling issues.

22.    Admit that during the investigation by Frank Penta, Employee Relations Manager after I complain from discrimination because I did not get the job of Impress Supervisor Mr. Penta was told that I did not fill a transfer form and that was not true.

**RESPONSE:**

Delaware Park objects to this Request on the grounds that it is compound, vague, and ambiguous. Subject to and without waiving its objections, Delaware Park states as follows: Admitted that Plaintiff complained in or around August 2005 because he had not been selected for the position of Impress Supervisor, and that this complaint was investigated by Frank Penta. Admitted that Mr. Penta determined that, at the time that position most recently had been filled, i.e., in May 2005, Plaintiff did not have an active transfer request on file. Denied that information provided to Mr. Penta or Mr. Penta's determination was mistaken or untrue. By way of further response and for clarification, on or about January 30, 2005, Plaintiff submitted a transfer request form for the position of Impress Supervisor. Pursuant to the terms of the collective bargaining agreement between Delaware Park and UFCW Local 27, that application was active for a period of 90 days. During the time that application was active, Plaintiff was considered for the position of Impress Supervisor, but two other candidates were selected. After Plaintiff's application expired, additional candidates were considered for the position and, in May 2005, another candidate was selected. When Plaintiff spoke with Mr. Penta, he did not specify exactly when he felt he should have been selected for the Impress Supervisor position. Mr. Penta understood Plaintiff to be complaining about the selection of the other candidate in May 2005, and limited his investigation to this time period.

23.    Admit that Delaware Park extended my Benefits until the end of March, 2006. to fit their story about my termination on March 10th , 2006.

**RESPONSE:**

Denied. Delaware Park extended Plaintiff's benefits until the end of March 2006 as a courtesy to him, after it learned that he had not received written notification of his termination (effective February 12, 2006), and that he had incurred medical expenses in March 2006, which the insurance carrier denied. By way of further response and for purposes of clarification, please also see response to Request number 1.

9

24.    Admit that I never signed a documents acknowledgement that make me responsible for complying with any restrictions because I was not under any worker's compensation policy.

**RESPONSE:**

Delaware Park objects to this Request on the grounds that it is compound, vague, ambiguous, and unintelligible. Subject to and without waiving its objections, Delaware Park states as follows: Admitted that Plaintiff did not sign a specific document that addressed or concerned his obligation to comply with any medical restrictions. Admitted that Plaintiff was not assigned light/modified duty as part of Delaware Park's modified duty management program. Denied that Plaintiff was not responsible for engaging in safe work place behaviors. Delaware Park's personnel handbook and training programs instruct employees that they are responsible for safe conduct at all times.

25A.    Admit that when I was under restriction dated on 5/17/05 I was under FMLA and that's why I did not inform the company about it also I t was personal and not considered worker's compensation at that time.

**RESPONSE:**

Delaware Park objects to this request on the grounds that it is compound, vague, ambiguous, argumentative and requires Delaware Park to ascertain Plaintiff's state of mind.

25B.    Admit that you never said or even mentioned any thing about my termination on February 12, 2006 during the investigation by Department  of Labor.

**RESPONSE:**

Admitted.  By way of clarification,  Delaware Park informed the Department of Labor that Plaintiff had been advised that he needed to return to work by February 12, 2006 with a full medical release, that he was unable to do so, that this was the grounds for his termination, and that Delaware Park had made the decision to terminate his employment in February 2006. The fact that Delaware Park later modified Plaintiff's date of termination as a courtesy to him was not relevant to the issues under investigation.

26.    Admit that Delaware Park use the Bathroom as spot for light duty.

**RESPONSE:**

Denied that Delaware Park uses bathroom duty as light duty for all employees or for employees who are similarly situated to Plaintiff.  Pursuant to the collective bargaining

10

agreement with UFCW Local 27, Delaware Park is required to consider light duty assignments "within the employee's own department." Bathroom duties are a function of the housekeeping department, and therefore such duty is not assigned to Cage Department employees, whether in the form of light duty or otherwise.


27.    Admit that at least Two Booth Cashiers were given light duty in the Delaware Park Bathrooms.

**RESPONSE:**

Delaware Park objects to this request as irrelevant, vague, and ambiguous, overly broad and unduly burdensome. The request is without time limitation, and fails to identify any Booth Cashiers with sufficient particularity to allow Delaware Park to respond. By way of further response, Delaware Park refers Plaintiff to its response to Request number 26.


POTTER ANDERSON & CORROON LLP

By: _____
   Wendy K. Voss (#3142)
   Jennifer C. Wasson (#4933)
   Hercules Plaza, Sixth Floor
   1313 North Market Street
   P.O. Box 951
   Wilmington, DE  19899
   (302) 984-6000 – Telephone
   (302) 658-1192 – Facsimile
   wvoss@potteranderson.com - Email
   jwasson@potteranderson.com - Email

   *Attorneys for Defendant Delaware Park, L.L.C.*

Dated:  October 4, 2007
816700v1 / 14672-132

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SAMI ALMAKHADHI,                         )
                                         )
                  Plaintiff,             )        Civ. A. No. 07-78-JJF
                                         )
        v.                               )
                                         )
DELAWARE PARK,                           )
                                         )
                  Defendant,             )

### DEFENDANT DELAWARE PARK LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF SAMI ALMAKHADHI'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Delaware Park, L.L.C. ("Delaware Park" or "Defendant"), by and through its undersigned counsel, hereby submits its responses and objections to Plaintiff Sami Almakhadhi's First Set of Interrogatories.

### GENERAL LIMITATIONS AND OBJECTIONS

1.   Delaware Park's specific objections set forth below are in addition to the general limitations and objections set forth in this section. These limitations and objections form a part of the response to each and every interrogatory. Thus, the absence of a reference to a general limitation or objection should not be construed as a waiver of the general limitation or objection as to a specific interrogatory.

2.   Delaware Park submits these responses and objections without conceding the relevancy or materiality of the subject matter of any interrogatory and without prejudice to Delaware Park. Delaware Park expressly reserves the right to object to further discovery into the

subject matters of the interrogatories or to object to the introduction into evidence of any information or documents provided.

3.     These responses are based on Delaware Park's knowledge and information as of the date hereof. Delaware Park reserves the right to amend and supplement all of its objections and responses to the interrogatories as additional responsive information is found by way of discovery or otherwise.

4.     Delaware Park objects to the interrogatories to the extent that they seek information protected by the attorney-client privilege, work-product doctrine, information that constitutes trial preparation materials, and/or information that is otherwise privileged or protected and not subject to discovery.

5.     Delaware Park objects to the interrogatories as unduly burdensome and oppressive, especially insofar as they seek information already in Plaintiff's possession and as easily accessible to Plaintiff as to Delaware Park.

6.     Delaware Park objects to the interrogatories to the extent that they seek discovery that is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.

7.     Delaware Park objects to the interrogatories to the extent that they seek information about or contained in documents that no longer exist.

8.     Delaware Park objects to the interrogatories to the extent that they seek information that is not relevant to the claims or defenses of the parties, nor reasonably calculated to lead to the discovery of admissible evidence in this litigation, nor limited to the relevant time period.

9.    Delaware Park objects to the requests to the extent that they are vague, ambiguous, overly broad, and do not identify the subject of inquiry with any reasonable particularity.

10.    Delaware Park objects to the use of "every," "all," "each," "ever," "any," or other similar words of expansion as overly broad, unduly burdensome, and harassing, particularly because, in some cases, the information sought covers an undefined period of time and/or location.

## INTERROGATORIES

1.  Explain the true story about my termination and identify the following:

   a.    Exact date, reason and the name who made the decision.
   b.    Whether or not was a letter sent to me.
   c.    Whether or not this information had been discussed during the investigation by the department of labor.

**RESPONSE:**

   a.    Plaintiff's employment with Delaware Park was terminated effective February 12, 2006 because he had not been able to fully perform the essential duties of his position for a period in excess of five months. In addition, Plaintiff had informed Delaware Park that he continued to be unable to perform such duties, and had provided no information that might establish when, if ever, he would be able to do so. The decision to terminate Plaintiff's employment was made by Shannon DeLucia, Director of Risk Management. As a courtesy to Plaintiff and to extend his health insurance coverage through the end of March 2006, Ms. DeLucia later modified Plaintiff's date of termination to March 10, 2006, the date on which Plaintiff reasonably was on notice of his termination.

   b.    Ms. DeLucia sent a letter to Plaintiff, dated March 30, 2006, advising him that his employment was terminated effective March 10, 2006.

   c.    Delaware Park advised the Delaware Department of Labor that Plaintiff's employment was terminated effective March 10, 2006, identified Ms. DeLucia as the decision-maker, discussed the reasons for Plaintiff's termination, and stated that the decision was made in February 2006.

3

2.     Explain why other co-workers were given light duty in the same time I was told nothing available.

**RESPONSE:**

Delaware Park objects to this Interrogatory on the grounds that it is vague and ambiguous, overly broad and unduly burdensome. In an attempt to be responsive, and without waiving its objections, Delaware Park interprets this Interrogatory as requesting information regarding the basis for Delaware Park's decisions regarding light duty assignments in the Cage Department where Plaintiff was employed during the period beginning on or about April 29 and through June 13, 2005 and/or from September 1, 2005 through Plaintiff's termination of employment, and states as follows:

The information available to Delaware Park at the time Plaintiff requested light duty in April 2005 did not support a finding that Plaintiff had suffered a workplace injury. The Cage Department offers light duty assignments only to employees who were injured on the job. During the period April 29 through June 13, 2005, Delaware Park received no further information that would establish a workplace injury. Other individuals who were given light duty assignments in the Cage Department during that time period had suffered workplace injuries.

Near the end of August 2005, Delaware Park received information that supported Plaintiff's claim of a workplace injury suffered in 2004, or possibly earlier, and that described appropriate medical restrictions for Plaintiff, including limitations on lifting, standing, bending and twisting. This information further indicated that Plaintiff's condition was continuing and that he had been treated by multiple healthcare providers who at times had provided duplicative services over a period of several months. Because the most recent information provided by Plaintiff to Delaware Park (in June 2006) indicated Plaintiff had no medical restrictions, Delaware Park sought clarification. Plaintiff then presented a note that confirmed he was subject to restrictions which were essentially the same as those noted above. Further, in a conversation with Ms. DeLucia Plaintiff made statement indicating that he knew he should have been working subject to restrictions, but had not provided Delaware Park with that information.

Delaware Park's Risk Management Department then sought information regarding light duty opportunities in the Cage Department, and was advised such opportunities were limited and that it would be difficult to identify work consistent with Plaintiff's restrictions. Because appropriate light duty work would have been difficult to identify in the Cage Department; and because Plaintiff previously had performed duties that were not consistent with his ongoing medical restrictions, and because Plaintiff already had been working in full duty status for approximately two and one-half months when it appeared he should have been subject to medical restrictions; and because the maximum period of light duty that is generally considered for employees with workplace injuries is 90 days; and because it is Delaware Park's general policy to not offer light duty to individuals who have violated their medical restrictions and/or sought treatment from multiple medical care providers for duplicative services, Delaware Park did not offer light duty work to Plaintiff.

4

To the best of Delaware Park's knowledge, other individuals to whom light duty assignments were offered in the period September 2005 through Plaintiff's termination from employment had suffered work place injuries, but had not provided inconsistent medical information, had not treated with multiple care providers, and had not worked in apparent violation of existing medical restrictions.

3A.     Provide the following information regarding all (Satellite, Main Bank and Booth cashiers) who were given light duty during the period of May 18, 2004 until my termination and for each individual identify the following:

        a.     Name, address and phone number.

        b.     The medical restriction for each one

        c.     Delaware Park opinion about the severity of their restrictions comparing with mine.

        d.     Whether or not Delaware Park terminate their job and after how long.

**RESPONSE:**

Delaware Park objects to this Interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, harassing, overly broad, and unduly burdensome. Delaware Park further objects to the extent that the Interrogatory calls upon Delaware Park to make a comparison between Plaintiff and other individuals, when in fact Delaware Park never made such a comparison. Subject to and without waiving the foregoing objections, Delaware Park identifies the following employees who were provided light duty assignments in the Cage Department during the identified period:

Samuel Brackbill, Booth Cashier

Helen Brown, Satellite Cashier

Andrew Davis, Satellite Cashier

Donna DiOrio, Booth Cashier

Christie Dow, Booth Cashier

Charlotte Foley, Main Bank

Kathleen Hannah, Satellite Cashier

Antoinette Hayes, Booth Cashier

Renee Hayes, Booth Cashier

Steveni Keeley, Satellite Cashier

5

Holly Lea, Booth Cashier

Natalya Love, Satellite Cashier

Shelby Rayfield, Booth Cashier

Janet Small, Satellite Cashier

Heather Steele, Booth Cashier

Michael Thompson, Booth Cashier

Michele Thompson, Booth Cashier

Holly Twaddell, Booth Cashier

Lawrence Young, Booth Cashier

Delaware Park identifies the following individuals whose employment was terminated during the period May 2005 through August 2006, after each employee had been provided with and exhausted available medical leave, but was unable to return to full duty:

Kenneth Bonds, Security Department

Joshua Y. Dean, Cage Department, Booth Cashier

Mary C. Glenn, Slots Department, Floor Attendant

Wilson T. Jackson, Slots Department, Players Club Representative

Donald Lloyd, Housekeeping Department

Lorraine McHugh, Player Development Department, Host

Deborah Navecky, Slots Department, VLT Technician

Thomas C. Payne, Emergency Medical Technician

Sandra L. Prince, Food & Beverage Department, Cocktail Server

Cynthia Smith, Slots Department, Floor Attendant

Michael Talley, Restorer

Holly Twaddell, Cage Department, Main Bank

Corrinne Williams, Surveillance Shift Supervisor

Please also see documents with Bates numbers DP-0149 - 0160 and DP0669 - 0670.

6

3B.    Any state law, federal law or Delaware Park policy govern the period time allow employer to fire any employee after an injury at the job.

**RESPONSE:**

Delaware Park objects to this Interrogatory to the extent it requests information regarding state and federal law on the grounds that it is burdensome, harassing, and oppressive and would require Delaware Park to perform legal research for Plaintiff. Delaware Park further objects to the extent this Interrogatory assumes or implies that Delaware Park terminates or has terminated the employment of any individual because that individual suffered an injury on the job. Delaware Park does not have any policy calling for the termination of employees because they have suffered a work-place injury and has not done so.

By way of further response, and without waiving its objections, Delaware Park states that it has no  written policy governing non-disciplinary discharge proceedings for employees who are medically unable to perform the duties of their positions, as was the case with Plaintiff.   However, in the case of employees who have been injured on the job, it is Delaware Park's usual practice to wait until the employee has exhausted any available leave and/or the employee's condition is medically stabilized before making any decision regarding his or her continued employment.  Employees who have exhausted  available leave, are medically stabilized, and who are still unable to perform the duties of their positions (with or without reasonable accommodation) are terminated from employment.

4.    Describe with particularity all facts supporting the defendant's allegation that I violate Delaware Park policy during the time I was denied my claim.

**RESPONSE:**

Delaware Park objects to this Interrogatory on the grounds that it is vague and ambiguous.  By way of further response, and without waiving its objection, Delaware Park refers Plaintiff to its  response to Interrogatory number 2 and states as follows:  On or about June 14, 2005 Plaintiff presented a note from Dr. George Bohatiuk to Delaware Park that released him to full duty.  Thereafter, during the period June 14 through August 30, 2005, Plaintiff worked in his regular position in a full duty capacity.  In late August 2005, however, Delaware Park was provided with a report from Dr. John Townsend regarding Plaintiff (conducted in conjunction with Plaintiff's then-pending worker's compensation claim), in which Dr. Townsend indicated that Plaintiff should not be released to full duty work, but rather should be working subject to certain medical restrictions.  Delaware Park understood Dr. Townsend's report to mean that those restrictions had been continuous and medically necessary during the entire period related to Plaintiff's worker's compensation claim (i.e., from at least late April 2005 through the date of Delaware Park's receipt of the report).  On or about September 2, 2005, at Delaware Park's request, Plaintiff presented Delaware Park with a note from another of his personal physicians, Dr. Mary C. Leddy, which confirmed that Plaintiff continued to be subject to medical

7

restrictions, including lifting, standing, bending, and twisting. Therefore, it appeared to Delaware Park that Plaintiff had been working in violation of ongoing medical restrictions during the period June 14 through August 30, 2005. Further, in both April 2005 and early September 2005, Plaintiff had made statements to Delaware Park personnel indicating that he was aware that he should be working subject to medical restrictions, but had not advised Delaware Park of such restrictions.

     5.    Provide the following information regarding all inquiries to transfer to another job during my employment at Delaware Park:

        a.    The date and manner of such contacts.
        b.    The entity to which the inquiry was made.
        c.    The result from that inquiry.
        d.    The reason if it was denied.

**RESPONSE:**

Delaware Park objects to this Interrogatory on the grounds that it is it is vague, ambiguous, and unintelligible. To the extent Plaintiff intends to request information regarding any transfer request made by any employee during Plaintiff's tenure at Delaware Park, Delaware Park further objects on the grounds that the Interrogatory is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Delaware Park agrees to respond to the best of its knowledge and recollection regarding transfer requests made by Plaintiff during the time he was employed at Delaware Park, and states as follows:

In 2004, Plaintiff filled out a transfer application for a Satellite Cashier (Cage Department) position. After a diligent search of its records, Delaware Park has been unable to locate this or related documentation in its files. Plaintiff was selected for this position.

On or about January 16, 2005 Plaintiff filled out a transfer application for a Main Bank Cashier (Cage Department) position. This request was submitted to the Human Resources on January 18, 2005, and forwarded to the Cage Department shortly thereafter. This request was denied. In a meeting with Plaintiff on February 18, 2005, Stacy Suhr explained the reasons Plaintiff was not selected for this position. Please see document Bates number DP0027.

On or about January 30, 2005 Plaintiff filled out a transfer application for an Impress Supervisor (Cage Department) position. This request was submitted to Delaware Park's Human Resources Department on February 2, 2005, and forwarded to the Cage Department shortly thereafter. Plaintiff's transfer request was denied for the reasons identified above, which were of continuing concern to Delaware Park.

On or about April 5, 2005, Plaintiff filled out a transfer application for a position in the Surveillance Department. This request was submitted to Delaware Park's Human Resources Department on or about April 6, 2005, and was forwarded to the Surveillance Department shortly thereafter. Plaintiff's transfer request was denied. Individuals in the Surveillance Department

8

who are responsible for the recruiting process do not have a specific recollection of Plaintiff's request for transfer or the reason it was denied.

On or about August 11, 2005, Plaintiff filed a transfer application for an Impress Supervisor (Cage Department) position. This request was submitted to Delaware Park's Human Resources Department on August 15, 2005, and was forwarded to the Cage Department shortly thereafter. Plaintiff's transfer request was denied because a candidate deemed to have stronger qualifications and experience was selected.

6.      Provide the names , address and phone number for any (Satellite ,Main Bank and Booth cashier) who never given light duty during the period of May 18, 2004 until my termination.

**RESPONSE:**

Delaware Park objects to this request on the grounds that it is vague, ambiguous, unintelligible, harassing, overly broad and unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Read literally, this request could call on Delaware Park to identify every individual who worked in the positions indicated, irrespective of whether they ever requested a light duty assignment. Further, Delaware Park does not keep records of those individuals who have requested but been denied light duty assignments. Subject to and without waiving the foregoing objections, Delaware Park agrees, to the best of its knowledge and recollection to identify those individuals who requested light duty during 2005 and 2006, and refers Plaintiff to document Bates number DP0099. Delaware Park further notes the following corrections to the names of certain individuals listed in that document:

Stephanie Keeley should read Stevani Keeley.
Kristy Dowell should read Christie Dow.

7.      Explain why I did not receive my holiday gift two weeks before the Christmas and when I asked about it I got terminated .

**RESPONSE:**

Delaware Park objects to this request on the grounds that it is vague and ambiguous, argumentative, and assumes facts as true which are not true. In an attempt to be responsive, and without waiving its objections, Delaware Park interprets this Interrogatory as requesting information about payment to Plaintiff of the 2005 cash gift for bargaining unit members, as provided in Delaware Park's collective bargaining agreement with UFCW Local 27. Delaware Park's procedure is to issue checks approximately two weeks before Christmas to members of the bargaining unit who were on the active payroll as of November 15 of the year in question. Plaintiff was not on the active payroll as of November 15, 2005, as he had been on leave since September of that year. Once notified by Plaintiff that he had not been paid and that he believed he was entitled to the holiday gift, Delaware Park made payment to Plaintiff. Plaintiff's request

9

for payment of the 2005 "holiday gift" was not a factor in the decision to terminate his employment.

       8.     Explain why I did not have interview for surveillance officer when I filed transfer form on 4/5/05.

**RESPONSE:**

        Delaware Park is unable to provide specific information in response to this Interrogatory. Individuals responsible for the recruiting process in the Surveillance Department have no specific recollection of Plaintiff's request for transfer or the reasons he was not interviewed for the position. Delaware Park has confirmed that Plaintiff submitted a transfer application for a Surveillance position to Delaware Park's Human Resources Department on or about April 6, 2005, and that the application form was forwarded to the Surveillance Department shortly thereafter.

       9. Explain why you provide incorrect information during the investigation by Department of Labor regarding the employees who denied light duty such as ( Hayes, Antionette and Keeley, Stephanie and Dowell, kristy) and some names unknown like Haskins, Marsalis and Beavers, Laurie even you went beyond the Relevant period like Ms. Twaddell who was terminated on August, 2006.

**RESPONSE:**

        Delaware Park objects to this Interrogatory on the grounds that it is vague, ambiguous, unintelligible, overly broad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, it is argumentative and assumes facts as true which are not true. Delaware Park denies that it is provided incorrect information to the Delaware Department of Labor during the agency's investigation.

       10.     For each of Plaintiff's request for Admission that you do not unequivocally admit, state all facts supporting your decision not to admit.

**RESPONSE:**

       Delaware Park incorporates as though fully set forth herein its responses to Plaintiff's First Requests for Admission, and refers Plaintiff to those responses.

POTTER ANDERSON & CORROON LLP

By: _____

Wendy K. Voss (#3142)
Jennifer C. Wasson (#4933)
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000 – Telephone
(302) 658-1192 – Facsimile
wvoss@potteranderson.com - Email
jwasson@potteranderson.com - Email

*Attorneys for Defendant Delaware Park, L.L.C.*

Dated: October 4, 2007
816708v2 / 14672-132

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SAMI ALMAKHADHI,                )
                                )
          Plaintiff,            )
                                )          Civ. A. No. 07-78-JJF
     v.                         )
                                )
DELAWARE PARK,                  )
                                )
          Defendant,            )

### VERIFICATION

STATE OF DELAWARE        )
                         ) SS.
COUNTY OF NEW CASTLE     )

I, Nancy Myshko, being duly sworn, depose and state that I am Senior Vice President of Delaware Park Management Company LLC (successor in interest to Delaware Park, LLC), and that I previously served as Vice President and Senior Vice President of Delaware Park LLC. I verify Defendant Delaware Park LLC's Response and Objections to Plaintiff Sami Almakhadhi's First Set of Interrogatories for and on behalf of Delaware Park LLC. I further state that I am duly authorized to do so; that some or all of the facts and matters set forth therein are not within my personal knowledge; that the facts and matters set forth therein have been assembled by authorized employees and counsel of Delaware Park LLC and/or Delaware Park Management Company LLC, and that I am informed that the facts and matters set forth therein are true.

_____
Nancy Myshko

SWORN TO AND SUBSCRIBED before a Notary Public for the County of New Castle on this _3rd_ day of October, 2007.

Kathleen a Van Levonee

Notary Public                    11/25/09
My Commission Expires

```
KATHLEEN A. VANLEUVANEE
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Nov. 25, 2009
```

822508v1



# THE CONLEY FIRM

7715 CRITTENDEN STREET
SUITE 113
PHILADELPHIA, PA 19118-4421
www.conleyfirm.com

FRANK J. CONLEY

TELEPHONE 215.350.5885
FACSIMILE 215.689.0946
E-MAIL fconley@conleyfirm.com

18 October 2007

Wendy Voss
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington Delaware • 19801

Re:     **Almakhadhi v. Delaware Park LLC**, D.DE. No. 07-78-JJF

Dear Ms. Voss:

We write to seek clarification concerning several of Delaware Park's discovery responses. In an effort to avoid any dispute, we want to document our specific concerns and, where appropriate, to offer clarification. We present our concerns in a good faith effort to resolve these disputes.

Concerning Delaware Park's Responses and Objections to Mr. Almakhadhi's First Request for Production, initially we note that Delaware Park produced documents that it had submitted to the Department of Labor. Although we appreciate this production, it is only responsive to Request for Production No 3, and not fully responsive to the remainder of Mr. Almakhadhi's requests. At this point, because Delaware Park responded that it "agrees to produce responsive documents," we assume that more documents are forthcoming. Please advise us when we can expect the additional documents.

Also, several of Delaware Park's responses indicated that it is withholding privileged documents. We have not, however, received a privilege log. Please provide one.

Additionally, we have the following specific concerns. First, regarding Delaware Park's Responses to Mr. Almakhadhi's Request for Production:

Request for Production No. 2: Delaware Park's non-specific, boiler-plate objections to this request are inapposite. Mr. Almakhadhi's request for documents concerning his FMLA leave are relevant to his claims of discrimination and Delaware Park's

*Wendy Voss*
*18 October 2007*
*Page 2*

allegedly pretextual reasons for his termination. Accordingly, please produce documents responsive to this request.

Request for Production No. 5B: For the same reasons provided above concerning Request for Production No. 2, please produce documents responsive to this request.

Concerning Delaware Park's Responses to Mr. Almakhadhi's Interrogatories:

Interrogatory No. 3A: Please respond completely to the Interrogatory by providing the name, address, and telephone number for each person identified in Delaware Park's response; provide the nature of the medical restriction for each person identified in Delaware Park's response; and provide the termination date for each, person identified in Delaware Park's response, along with the period of time between the first instance of light duty and the termination of the person's employment.

Interrogatory No. 5: Please respond completely to the Interrogatory by providing information concerning job inquiries Mr. Almakhadhi made in 2002 and 2003. Also, please respond completely to the Interrogatory by identifying the "[i]nividuals in the Surveillance Department who are responsible for the recruiting process . . . ."; identify to whom in Human Resources Mr. Almakhadhi's transfer was forwarded; and identify the candidate ultimately selected.

Concerning Delaware Park's Responses to Mr. Almakhadhi's First Request for Admissions:

Request for Admission No. 1: Please clarify Delaware Park's position concerning Mr. Almakhadhi's termination date because Delaware Park's response to Request No. 1 is in contradiction to its response to Request No. 2. Also, please provide a citation to any document or thing supporting Delaware Park's statement that Ms. DeLucia spoke with Mr. Almakhadhi on March 10, 2006.

Request for Admission No. 3: Please provide a citation to, or a copy of, the March 30, 2006, letter referenced in this Admission.

*Wendy Voss*
*18 October 2007*
*Page 3*

Request for Admission No. 5: Please clarify Delaware Park's statement that it extended Mr. Almakhadhi's health insurance coverage "as a courtesy." Specifically, identify who made the decision to extend this "courtesy."

Request for Admission No. 9: Please provide a citation to any document, thing, and provide the name and contact information for all witnesses supporting Delaware Park's denial that it required Mr. Almakhadhi to verify his restrictions each day of his absence.

Request for Admission No. 15: Please provide a citation to any document, thing, and provide the name and contact information for all witnesses supporting Delaware Park's response that Mr. Almakhadhi "acknowledged to Delaware Park on at least two occasions that he had been working in a full duty capacity when he knew he should have been working subject to medical restrictions, and that he had not advised Delaware Park of such restrictions."

Request for Admission No. 16: Delaware Park's non-specific, boiler-plate objection to this request is insufficient and inapposite. (Indeed, considering that many of Delaware Park's discovery responses include discussions of Mr. Almakhadhi's repeated doctor visits and repeated requests for light duty, Delaware Park's refusal to provide a responsive answer belies its relevancy objection.) Delaware Park's treatment of Mr. Almakhadhi's work-related injury is central to this litigation, as it was central to Mr. Almakhadhi's Department of Labor charge. Accordingly, please provide a responsive answer to this request.

Request for Admission No. 17: For the same reasons discussed concerning Delaware Park's failure to provide a responsive answer to Request for Admission No. 16, please provide a responsive answer to this request.

Request for Admission No. 19: Delaware Park's objection to this request is insufficient and inapposite. Mr. Almakhadhi's request for admission concerning his FMLA leave is relevant to his claims of discrimination and Delaware Park's pretextual reasons for his termination. Accordingly, please provide a responsive answer to this request.

*Wendy Voss*
*18 October 2007*
*Page 4*

To the extent Delaware Park genuinely requires clarification of Mr. Almakhadhi's reference to "old" and "new" FMLA, it is Mr. Almakhadhi's understanding that Delaware Park tracks FMLA leave on a non-calendar, annual basis. By way of further explanation and example, if an employee is hired in October, his "FMLA calendar" would run from October to October. Accordingly, Mr. Almakhadhi was entitled to 12 weeks of FMLA during the twelve month period from October 12 to October 12. He was entitled to a "new" 12 weeks of FMLA starting on October 12, 2005. Based upon this clarification, please provide a responsive answer to Mr. Almakhadhi's Request No. 19.

Request for Admission No. 20: As stated above, Delaware Park's objection to this request is insufficient and inapposite. Mr. Almakhadhi's request for admission concerning his FMLA leave is relevant to his claims of discrimination and Delaware Park's pretextual reasons for his termination. Accordingly, please provide a responsive answer to this request.

Request for Admission No. 21: Please provide a citation to any document, thing, and provide the name and contact information for all witnesses supporting Delaware Park's response that Mr. Almakhadhi allegedly said the Satellite Cashier position was too "demanding" for him.

Request for Admission No. 22: Please provide a clarification of Delaware Park's response that "plaintiff was considered for the position of Impress Supervisor. . . ." (Among other things, that assertion is contrary to Delaware Park's statements to the Department of Labor.)

Request for Admission No. 25A: Delaware Park's objection to this request is insufficient and inapposite because the Request does not require Delaware Park to respond about Mr. Almakhadhi's state of mind. Instead, this Request pertains to the work restrictions Delaware Park imposed on Mr. Almakhadhi and his FMLA leave. Accordingly, please provide a responsive answer to this request.

Request for Admission No. 27: Delaware Park's objection to this request is insufficient and inapposite and seeks to avoid improperly Delaware Park's obligations under Rule 36. To the extent Delaware Park actually requires additional information from Mr. Almakhadhi in order to review its own records concerning

*Wendy Voss*
*18 October 2007*
*Page 5*

the light duty assignments of Booth Cashiers, Mr. Almakhadhi provides the names of Shauna Copeer and Penny (Last Name Unknown.) Please provide a responsive answer to this request.

If you would like to discuss any of the issues raised in this letter, please feel free to call me. My direct dial is 215-836-4789.

Best regards,

Frank Conley

cc:    Sami Almakhadhi
       Glenn Brown, Esquire





Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Wendy K. Voss
Partner
Attorney at Law
wvoss@potteranderson.com
302 984-6076 Direct Phone
302 658-1192 Fax

November 5, 2007

<u>Via Electronic & First Class Mail</u>
Frank Conley, Esquire
The Conley Firm
7715 Crittendon Street, Suite 133
Philadelphia, PA 19118

Re:    *Almakhadhi v. Delaware Park,* Civil Action No. 07-78-JJF

Dear Frank:

I write in response to your letter of October 18, 2007 regarding Delaware Park's discovery responses. I will address each of your comments concerning the responses in the order in which they were raised, as follows.

<u>General comments</u>

Your initial assertion that Delaware Park has provided only documents produced to the Delaware Department of Labor is inaccurate. *See* DP0471-0670. Delaware Park has produced in good faith all documents responsive to Plaintiff's discovery requests insofar as they seek information relevant to his present claims. Should you have a legitimate reason to believe otherwise, please advise.

Also, your concerns regarding Delaware Park's privilege objections can be allayed without resort to production of a privilege log. These objections, which were asserted only in response to Plaintiff's Request for Production Nos. 4 and 5A, were necessary given the expansive scope of the requests, which seek "any and all documents reviewed in preparation for defendant's [discovery responses]." Under these broad requests, attorney work product and confidential attorney-client communications created in the course of preparing the responses would constitute responsive documents. Therefore, Delaware Park's objection on grounds of privilege was fully justified and necessary to protect privileged materials created in preparation of the responses. None of these materials have any factual relation to the subject matter of the requests.

Frank Conley, Esquire
November 5, 2007
Page 2

Comments with regard to specific discovery responses

        Request for Production Nos. 2 and 5B:  Delaware Park's objections to these requests on the grounds that they are vague, ambiguous, and unintelligible are not "boilerplate" or "inapposite," as you suggest.  Plaintiff's use of the term "the request for FMLA" in No. 4 is confusing given the time period referenced, and Plaintiff's phrase "defendant's request regarding my FMLA" in No. 5B is incomprehensible, as Plaintiff has never alleged (and Delaware Park has never asserted) that the Company made any requests concerning Plaintiff's FMLA leave. Delaware Park should not be forced to guess at what Plaintiff seeks in these unintelligible requests.  Furthermore, and more importantly, Plaintiff's request for documents pertaining to the notification/designation of Plaintiff's leave as FMLA-qualifying presumably relates to Plaintiff's claim for denial of FMLA leave, which is not relevant to Plaintiff's present Complaint.  I fail to see how Delaware Park's grant of FMLA leave to Plaintiff on each occasion he sought such leave is evidence of discrimination, and your unsupported assertion that Plaintiff's FMLA leave is relevant to his discrimination claims does not make it so.  Should the Court grant Plaintiff's motion to add the FMLA claim to his Complaint, Delaware Park will supplement its response, to the extent it is able, accordingly.

        Interrogatory No. 3A:  Delaware Park continues to believe that this Interrogatory is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, harassing, overly broad and unduly burdensome.  Subject to and without waiving its objections, Delaware Park agrees to supplement its initial response to provide contact information for individuals identified in Delaware Park's response to this interrogatory.  Please see Bates numbers DP0671 (enclosed), DP0150-160 and DP0669-670.

        Further, given the private nature of the medical information sought in regard to these individuals, Delaware Park agrees to provide information regarding these individuals' work restrictions, subject to your agreement to treat this information as "highly confidential/attorneys' eyes only" and to modify the stipulated protective order to provide for such designation. Specifically, subject to and without waiving its objections, Delaware Park will provide a general description of these individuals' workplace injuries and information on their work restrictions.

        With regard to your request for the termination dates of those individuals who received light duty, Delaware Park is attempting to gather this data.  Subject to and without waiving its objections, Delaware Park will produce responsive information if and when it is available.

        Interrogatory No. 5:  As an initial matter, Delaware Park objects to any and all claims of discrimination arising from job inquiries that Plaintiff made in 2002 or 2003 as untimely and therefore irrelevant.  Subject to and without waiving its objections, Delaware Park responds that, to the best of its knowledge, Plaintiff did not submit any transfer requests in 2002 or 2003.  Also, your request to identify the individuals responsible for the recruiting process with

Frank Conley, Esquire
November 5, 2007
Page 3

regard to Plaintiff's request to transfer to the Surveillance Department is outside the scope of Plaintiff's original interrogatory. Subject to and without waiving this objection and those raised in its response to this interrogatory, Delaware Park states that Dawn Casale, Vice President of Surveillance, and Sheva Ransom, Administrative Assistant, were the individuals responsible for the recruiting process in the Surveillance Department during the relevant time period; Rima Banner was the Human Resources representative who received Plaintiff's transfer request. Delaware Park further responds that no candidate was selected for a position in the Surveillance Department at the time Plaintiff applied.

      <u>Request for Admission No. 1</u>: Delaware Park's response to Request No. 1 explains the circumstances involving Plaintiff's initial termination date of February 12, 2006 and the subsequent modification of that termination date to March 10, 2006. Delaware Park's response to Request No. 2 references the revised termination date and directs Plaintiff to its response to Request No. 1. Please explain why you believe that Delaware Park's responses to Request Nos. 1 and 2 are "inconsistent."

      By way of further response, to the best of Delaware Park's knowledge, there are no documents regarding Ms. DeLucia's telephone conversation with Plaintiff on March 10, 2006, other than the letter notifying him of his termination from employment effective that date. *See* DP0149.

      <u>Request for Admission No. 3</u>: *See* DP0149.

      <u>Request for Admission No. 5</u>: Shannon DeLucia made the decision to modify Plaintiff's date of termination and to extend his health insurance benefits. *See* Delaware Park's response to Request for Admission No. 1.

      <u>Request for Admission No. 9</u>: I note that your request for document citations and witness information attempts to place burdens and obligations upon Delaware Park that are greater than those required by the Federal Rules of Civil Procedure. Delaware Park's factual basis for its denials fairly meets the requirements of Rule 36, and therefore no additional response is warranted. Regardless, as would be clear from a review of Delaware Park's document production, Delaware Park states that Sheryl Cartwright, Claims Coordinator, is a witness with knowledge relevant to this request. Ms. Cartwright is represented by this firm and may be contacted through counsel.

      <u>Request for Admission No. 15</u>: Again, I note that your request for document citations and witness information attempts to places burdens and obligations upon Delaware Park that are greater than those required by the Federal Rules of Civil Procedure. Delaware Park's factual basis for its denials fairly meets the requirements of Rule 36, and therefore no additional response is warranted. Regardless, Delaware Park states that Stacy Suhr, Assistant Cage Manager, Sheryl Cartwright, Claims Coordinator, and Shannon DeLucia, former Director of Risk Management, are witnesses with knowledge relevant to this request. These witnesses are

Frank Conley, Esquire
November 5, 2007
Page 4

represented by this firm and may be contacted through counsel. Delaware Park also refers
Plaintiff to DP0661.

        <u>Request for Admission No. 16</u>: Contrary to your assertion, Delaware Park's
"discussions of Mr. Almakhadhi's doctor visits and repeated requests for light duty," to the
extent such statements were made, pertain directly to Plaintiff's allegations of failure to
accommodate, not to the administration or status of his workers compensation claim. Delaware
Park's or its insurer's management of Plaintiff's workers compensation claim was not "central"
in any respect to his Charge of Discrimination  Moreover, even assuming that the Court grants
Plaintiff's motion to add a workers compensation claim to his Complaint, this request seeks
information pertaining to the administration and status of Plaintiff's workers compensation
claim, which is irrelevant to proving unlawful retaliation. Subject to and without waiving its
objections, Delaware Park denies this request as stated. By way of further response, on
September 12, 2005, Delaware Park gave approval to its worker's compensation insurance
coverage provider to accept Plaintiff's claim. Delaware Park was later advised by its insurance
provider that it formally accepted the claim on October 31, 2005, including coverage for lost
wages beginning in April 2005.

        <u>Request for Admission No. 17</u>: Delaware Park objects to this request for the
reasons discussed in the preceding paragraph pertaining to Request for Admission No. 16.
Delaware Park also objects to this request on the grounds that it is vague and ambiguous, as the
meaning of the phrase "under worker's compensation benefits" is not reasonably discernable.
Subject to and without waiving its objections, Delaware Park admits that on September 1, 2005,
Plaintiff was not receiving payment from Delaware Park's worker's compensation coverage
provider.

        <u>Request for Admission No. 19</u>: Delaware Park's objections to this request as
vague and ambiguous are entirely proper, as Plaintiff provided no explanation of the terms "old"
and "new" with regard to FMLA leave, and the meaning of these terms was not reasonably
discernable. Your purported clarification is of no avail, as your assumptions are incorrect.
Further, to the extent this request actually relates to the notification/designation of Plaintiff's
leave as FMLA-qualifying, Plaintiff's present Complaint does not include a claim for denial of
FMLA leave, and information responsive to this request therefore is irrelevant until and unless
the Court grants Plaintiff's motion to add the FMLA denial of leave claim to his Complaint.

        Subject to and without waiving the foregoing objections, Delaware Park denies
this request as stated. By way of further response, Delaware Park states that its submission to the
DDOL included information on the status of Plaintiff's FMLA leave as of June 13, 2005, when
Delaware Park's records reflected that he had  exhausted all such available leave (see, e.g.
DP0043),  as well as information on the future date(s) on which Plaintiff might accrue additional
leave, if any (see, e.g., DP0043–45).

Frank Conley, Esquire
November 5, 2007
Page 5

      Request for Admission No. 20:  This request pertains to the notification/
designation of Plaintiff's leave as FMLA-qualifying.  Plaintiff's present Complaint does not
include a claim for denial of FMLA leave, and information responsive to this request therefore
will not be produced.  Should the Court grant Plaintiff's motion to add the FMLA claim to his
Complaint, Delaware Park will supplement its response, if appropriate.

      Request for Admission No. 21:  Delaware Park objects to your request for
document citations and witness information because it places burdens and obligations upon
Delaware Park which are greater than those required by the Federal Rules of Civil Procedure.
Delaware Park's factual basis for its denials fairly meets the requirements of Rule 36, and no
additional information therefore is warranted.  Subject to and without waiving this objection
and/or the objections set forth in its response, Delaware Park states that Stacy Suhr, Assistant
Cage Manager, and Karlyn Dixon, Director of Accounting, have knowledge of Plaintiff's request
to be returned to his former position after being promoted to Satellite Cashier.  Ms. Suhr and Ms.
Dixon are represented by this firm and may be contacted through counsel.  Delaware Park also
refers Plaintiff to DP0027.

      Request for Admission No. 22:  Contrary to your suggestion, Delaware Park
expressly stated in its Response to the Department of Labor's Request for Information that
Plaintiff was considered for the position of Impress Supervisor.  *See* DP0065 ("Mr. Almakhadhi
was considered for the position of Impress Supervisor.  He submitted a written Requests [sic] for
Transfer in January 2005 and August 2005.  He was considered for both positions.").  Please
explain why any further clarification is needed.

      Request for Admission No. 25A:  Delaware Park cannot respond to this request as
drafted because it requires Delaware Park to speculate regarding Plaintiff's reasons for failing to
provide his work restrictions.  Furthermore, your assertion that this request "pertains to the work
restrictions Delaware Park imposed on Plaintiff" is inaccurate -- Delaware Park did not impose
any restrictions on Plaintiff.  Subject to and without waiving its objections to this request,
Delaware Park admits that Plaintiff was on FMLA-qualifying leave on 5/17/05.  *See* DP0042.

      Request for Admission No. 27:  Delaware Park's objections to this request are
entirely proper given that the request is not limited to the relevant time period and fails to
identify any Booth Cashiers with sufficient particularity to allow Delaware Park to respond.
Moreover, Delaware Park referred Plaintiff to its response to Request No. 26, in which Delaware
Park denied using bathroom duty as light duty for *any* Cage Department employees.  Otherwise
stated, your comment on Delaware Park's response is merely an attempt to rewrite Plaintiff's
original request.  Regardless, subject to and without waiving its objections, Delaware Park denies
that Shauna Copeer and/or Penny [Payne] were assigned bathroom duty as light duty during the
time they worked in the Cage Department.

Frank Conley, Esquire
November 5, 2007
Page 6

       I trust that this letter addresses your concerns regarding Delaware Park's discovery responses. Should you wish to discuss these responses further, please contact me.

Sincerely yours,

Wendy K. Voss

WKV:drt

cc: Glenn A. Brown, Esquire (via electronic mail)

827995v1 / 14276-132



# THE CONLEY FIRM

7715 CRITTENDEN STREET
SUITE 113
PHILADELPHIA, PA 19118-4421
www.conleyfirm.com

FRANK J. CONLEY

TELEPHONE 215.350.5885
FACSIMILE 215.689.0946
E-MAIL fconley@conleyfirm.com

10 November 2007

Wendy Voss
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington Delaware • 19801

Re:    <u>Almakhadhi v. Delaware Park</u>, D.DE. No. 07-78 (JJF)

Dear Ms. Voss:

I write in response to your letter of November 5, 2007, which concerned Mr. Almakhadhi's request for clarification of Delaware Park's responses to his first set of discovery requests. This letter is yet another good-faith attempt by Mr. Almakhadhi to resolve these discovery issues.

Concerning your "general comments," our assertion remains that Delaware Park is improperly withholding relevant documents. Delaware Park's insistence that it has produced more documents than those produced to the Department of Labor is, at best, misleading. As you know, DP0471-0670 are Mr. Almakhadhi's personnel file, a handful of select e-mails taken from a larger context (and not including the complete e-mail chains), and a copy of portions of a collective bargaining agreement which Delaware Park had piecemeal produced to the Department of Labor. This "additional production" demonstrates Delaware Park's effort to withhold relevant discovery. Based upon references contained in the documents Delaware Park has produced, there obviously are, for example and not by way of limitation, additional e-mails pertaining to Mr. Almakhadhi's discrimination claims; there obviously are additional investigative files concerning Mr. Almakhadhi's numerous complaints of discrimination; there obviously are additional documents concerning Mr. Almakhadhi's requests for FMLA leave; and there obviously are additional documents concerning Delaware Park's obstruction and denial of Mr. Almakhadhi's worker's compensation claim. Delaware Park's relevancy objections to Mr. Almakhadhi's requests for this information are inapposite. For instance, Delaware Park is well aware that Mr. Almakhadhi alleges that, among other things, Delaware Park obstructed and denied his worker's compensation claim,

Wendy Voss
10 November 2007
Page 2

obfuscated the availability of light duty, and obfuscated his eligibility for leave time, as part of its discrimination and retaliation against him.

Concerning your "comments with regard to specific discovery requests":

**Request for Production Nos. 2 and 5B:** As discussed above, in his DDOL Charge, his Pro Se Complaint, and in his First Amended Complaint, Mr. Almakhadhi alleges that Delaware Park obstructed and denied his leave requests, and obfuscated the availability of leave time, as part of its discrimination and retaliation against him. Discovery on the topics raised in these requests is, accordingly, appropriate, and is not dependent upon the Court's ruling concerning Mr. Almakhadhi's Motion for Leave to Amend. To the extent Delaware Park has additional responsive information, please provide it.

**Interrogatory 3A:** Although I disagree with Delaware Park's objections, in the interest of expediting things I give you permission to sign my name to a confidentiality provision as outlined in your letter. Otherwise, please provide me with a confidentiality agreement to sign.

We continue to await Delaware Park's production of information concerning individuals who received light duty and their termination dates.

**Interrogatory 5:** Although we understand Delaware Park's position concerning discrimination Mr. Almakhadhi suffered in 2002 or 2003, Delaware Park's objections are inapposite. At the appropriate time the parties may present argument about the application of the equitable tolling doctrine and the continuing violation theory. Delaware Park's objections, however, do not obviate its current obligations to respond to Mr. Almakhadhi's request.

**Request for Admission 16:** As discussed above, in his DDOL Charge, his Pro Se Complaint, and in his First Amended Complaint, Mr. Almakhadhi alleges that Delaware Park obstructed and denied his leave requests, and obfuscated the availability of leave time, as part of its discrimination and retaliation against him. Discovery on the topics raised in this request is, accordingly, appropriate, and is not dependent upon the Court's ruling concerning Mr. Almakhadhi's Motion for Leave to Amend. Moreover, Delaware Park's assertion that the "administration and status of Plaintiff's workers compensation claim . . . is irrelevant to proving unlawful retaliation" is an inappropriate

Wendy Voss
10 November 2007
Page 3

objection and, at best, misguided. To the extent Delaware Park has additional
responsive information, please provide it. (See, e.g., Mr. Almakhadhi's Requests for
Production Nos. 6, 7, 8, and 9, all of which encompass communications between
Delaware Park and its insurance carrier, and which Delaware Park has yet to produce.)

**Request for Admission 19 and 20:** As discussed above, in his DDOL Charge, his Pro Se
Complaint, and in his First Amended Complaint, Mr. Almakhadhi alleges that Delaware
Park obstructed and denied his leave requests, and obfuscated the availability of leave
time, as part of its discrimination and retaliation against him. Discovery on the topics
raised in this request is, accordingly, appropriate, and is not dependent upon the
Court's ruling concerning Mr. Almakhadhi's Motion for Leave to Amend. To the extent
Delaware Park has additional responsive information, please provide it.

We remain willing to work with Delaware Park to address these issues. Because time is
running short, however, Mr. Almakhadhi will soon be compelled to file a motion with
the Court if these issues cannot be resolved amicably.

Best regards,

Frank Conley

cc:    Glenn Brown, Esquire (via e-mail)

## CERTIFICATE OF COMPLIANCE WITH RULE 37

The movant certifies that he has in good faith conferred or attempted to confer with the other party in an effort to resolve the matter without Court action.

/s/ Frank J. Conley