## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMI ALMAKHADHI, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. A. No. 07-78-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE PARK, | ) | **CORRECTED VERSION** |
| | ) | |
| Defendant, | ) | |

---

## OPENING BRIEF IN SUPPORT OF
## DEFENDANT DELAWARE PARK, L.L.C.'S
## MOTION FOR SUMMARY JUDGMENT

---

POTTER ANDERSON & CORROON LLP
Wendy K. Voss (#3142)
Jennifer Wasson (#4933)
Hercules Plaza – Sixth Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
wvoss@potteranderson.com – Email
jwasson@potteranderson.com - Email

*Attorneys for Defendant Delaware Park, L.L.C.*

Dated: November 27, 2007
834181v1 / 14672-132

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iv

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF ARGUMENT ................................................................................... 2

STATEMENT OF FACTS .......................................................................................... 3

    A.    Plaintiff's Employment History And Applications For Promotion ....................... 3

    B.    Plaintiff's Internal Complaints of Discrimination ................................................ 5

    C.    Plaintiff's Worker's Compensation Claims, Requests for Light Duty, And FMLA Leave ............................................................................................................... 7

    D.    Delaware Park's Subsequent Decisions Regarding Light Duty And The Termination Of Plaintiff's Employment ............................................................ 9

ARGUMENT ............................................................................................................ 11

I.    SUMMARY JUDGMENT IS APPROPRIATE WHEN A PARTY FAILS TO ESTABLISH ANY ELEMENT OF ITS CASE ................................................. 11

II.    DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ADA CLAIMS ..................................................................................................... 11

    A.    Plaintiff Does Not Have An ADA-Qualifying Disability ................................... 12

    B.    Plaintiff Has No Record of a Disability ............................................................. 15

    C.    Delaware Park Did Not Regard Plaintiff As Disabled ...................................... 16

III.    DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII CLAIMS BASED ON THE TERMINATION OF HIS EMPLOYMENT ..... 17

    A.    Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination ...................... 17

    B.    Plaintiff Has No Evidence of Pretext ................................................................. 18

    C.    Plaintiff Cannot Support His Claim for Retaliatory Discharge ........................... 22

IV.    DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII CLAIMS BASED ON FAILURE TO PROMOTE ....................................... 23

i

A.    Plaintiff Has No Evidence In Support Of His Discrimination Claims ..................23

B.    Plaintiff Cannot Produce Evidence In Support Of His Retaliation Claims ...........26

V.    DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
TITLE VII CLAIMS BASED ON THE DENIAL OF LIGHT DUTY ............................27

A.    Plaintiff Cannot Support His Discrimination Claim ...............................................27

B.    Plaintiff Cannot Support His Retaliation Claim ......................................................30

VI.    DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
WORKERS' COMPENSATION RETALIATION CLAIM.................................................31

A.    Plaintiff Cannot Show He Was Terminated Because He Filed A Workers'
Compensation Claim...............................................................................................31

B.    Plaintiff's Claim Under 19 Del. C. § 2365  Is Limited To His Termination .........34

VII.    DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
FMLA RETALIATION CLAIM.......................................................................................36

CONCLUSION ..........................................................................................................................39

## TABLE OF AUTHORITIES

**CASES**

**Pages**

*Adly v. SuperValu, Inc.,*
    2007 U.S. Dist. LEXIS 57011 (D. Minn. Aug. 3, 2007) ..........................................................19

*Amtrak v. Morgan,*
    536 U.S. 101 (2002)....................................................................................................................27

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)....................................................................................................................11

*Benko v. Portage Area Sch. Dist.,*
    2007 WL 2041977 (3d Cir. July 17, 2007) ...............................................................................16

*Bensel v. Allied Pilots Association,*
    387 F.3d 298 (3d Cir. 2004) ......................................................................................................35

*Brewer v. Quaker State Oil Refining Corp.,*
    72 F.3d 326 (3d Cir. 1995).........................................................................................................17

*Brokenbaugh v. Exel Logistics N. Am.,*
    174 Fed. Appx. 39 (3d Cir. 2006)..............................................................................................29

*Clark County Sch. Dist. v. Breeden,*
    532 U.S. 268 (2001)....................................................................................................................22

*Conroy v. Township of Lower Merion,*
    77 Fed. Appx. 556 (3d Cir. 2003) ..............................................................................................38

*Constant v. Mellon Fin. Corp.,*
    2007 WL 2570810 (3d Cir. Sept. 7, 2007) ...............................................................21, 36, 37

*Dunsmuir v. May Dep't Stores Co.,*
    120 Fed. Appx. 927 (3d Cir. 2005)............................................................................................31

*Fuentes v. Perskie,*
    32 F.3d 759 (3d Cir. 1994)..................................................................................... 18, 24, 29

*Gaul v. Lucent Techs., Inc.,*
    134 F.3d 576 (3d Cir. 1998)......................................................................................................11

*Gordon v. National R.R. Passenger Corp.,*
    564 F. Supp. 199 (E.D. Pa. 1983)........................................................................................22, 23

*Johnson v. Penske Truck Leasing Co.,*
    949 F. Supp. 1153 (D.N.J. 1996)...............................................................................................30

*Kelly v. Drexel Univ.*,
    94 F.3d 102 (3d Cir. 1996)..................................................................................16

*Kidd v. MBNA Am. Bank, N.A.*,
    93 Fed. Appx. 399 (3d Cir. March 25, 2004) ...............................................23, 24

*Ledbetter v. Goodyear Tire & Rubber Co., Inc.*,
    127 S. Ct. 2162 (2007)......................................................................................27

*Love v. City of Dallas*,
    1997 U.S. Dist. LEXIS 21982 (N.D. Tex. May 14, 1997) ...............................37

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990)...........................................................................................20

*Madeirense DO Brasil S/A v. Stulman-Emrick Lumber Co.*,
    147 F.2d 399 (2d Cir. 1945)..............................................................................11

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*,
    842 F.2d 590 (2d Cir. 1988)........................................................................22, 26

*Marinelli v. City of Erie*,
    216 F.3d 354 (3d Cir. 2000)...................................................................11, 13, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..........................................................................................11

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)...................................................................................17, 27, 31

*Miller v. Personal-Touch of Virginia, Inc.*,
    342 F. Supp. 2d 499 (E.D. Va. 2004) ..............................................................37

*Moss v. Formosa Plastics Corp.*,
    99 F. Supp. 2d 737 (M.D. La. 2000) ................................................................37

*Panzullo v. Modell's PA, Inc.*,
    968 F. Supp. 1022 (E.D. Pa. 1997) ............................................................13, 14

*Ragsdale v. Wolverine World Wide, Inc.*,
    535 U.S. 81 (2002).......................................................................................19, 37

*Red v. Potter*,
    2006 U.S. App. LEXIS 28700 (3d Cir. Nov. 20, 2006)....................................28

*Rubinstein v. Administrators of Tulane Educ. Fund*,
    218 F.3d 392 (5th Cir. 2000) .....................................................................26, 30

*Sewall v. Chicago Transit Auth.,*
    2001 U.S. Dist. LEXIS 330 (N.D. Ill. Jan. 16, 2001) .................................................19

*Spencer v. Verizon Connected Solutions, Inc.,*
    138 Fed. Appx. 449 (3d Cir. 2005) ..........................................................................15

*St. Mary's Honor Ctr. v. Hicks,*
    509 U.S. 502 (1993) .................................................................................................17

*Steinke v. Septa,*
    85 Fed. Appx. 808 (3d Cir. 2003) ...........................................................................13

*Sutton v. United Air Lines, Inc.,*
    527 U.S. 471 (1999) .................................................................................................16

*Taylor v. Proctor & Gamble Dover Wipes,*
    184 F. Supp. 2d 402 (D. Del.) .........................................................................25, 26, 28

*Tice v. Centre Area Transp. Auth.,*
    247 F.3d 506 (3d Cir. 2001) ................................................................................15, 16

*Toyota Motor Mfg. Kentucky Inc. v. Williams,*
    534 U.S. 184 (2002) .................................................................................................12

*Urey v. Grove City Coll.,*
    94 Fed. Appx. 79 (3d Cir. 2004) .............................................................................32

*Voorhees v. Time Warner Cable Nat'l Div.,*
    1999 WL 673062 (E.D. Pa. Aug. 30, 1999) ............................................................38

*Weiler v. R&T Mech., Inc.,*
    2007 U.S. App. LEXIS 25803 (3d Cir. Nov. 5, 2007) ........................................22, 30

*Williams v. Channel Master Satellite Sys., Inc.,*
    101 F.3d 346 (4th Cir. 1996) ...................................................................................13

## STATUTES

29 C.F.R. 1630.2(j)(3)(i).................................................................................................13

19 *Del. C.* § 711 .............................................................................................................1

19 *Del. C.* § 720 .............................................................................................................2

19 *Del. C.* § 2365 .................................................................................................2, 33, 34

29 U.S.C. § 2617(c)(1)....................................................................................................36

42 U.S.C. § 12102(2) ................................................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(c) ...............................................................................................35

Fed. R. Civ. P. 56(c) ...............................................................................................11

Title VII of the Civil Rights Act of 1964 ("Title VII") ........................................ *passim*

## NATURE AND STAGE OF THE PROCEEDINGS

This discrimination case is brought by Plaintiff Sami Almakhadhi ("Plaintiff"), a former employee of Delaware Park, L.L.C. ("Delaware Park").    On April 26, 2006, Plaintiff filed a Charge of Discrimination against Delaware Park with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC"). (A169)[1]  In his Charge, Plaintiff alleged claims for race and national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and disability discrimination under the Americans With Disabilities Act ("ADA") all based on the denial of light duty assignments, failure to be promoted, and termination from employment. (A169-170)  On September 29, 2006, the DDOL issued a finding in favor of Delaware Park and a Delaware Right to Sue notice. (A171)  The EEOC adopted the findings of the DDOL and issued a federal Right to Sue notice on January 16, 2007.  (A173)

On February 12, 2007, Plaintiff filed the form Title VII complaint for *pro se* plaintiffs in this Court. (D.I. 1)  Delaware Park filed its Answer on April 13, 2007, denying all claims asserted against it. (D.I. 14)  On June 24, 2007, the Court entered a Scheduling Order in the case (D.I. 21), pursuant to which written discovery closed on October 31, 2007.  (*Id.*)  The pretrial conference is scheduled for February 7, 2008; no trial date has yet been set.  (D.I. 22)

Plaintiff subsequently retained Delaware and Pennsylvania counsel to represent him, who entered their appearance on September 12, 2007.  (D.I. 40)  On October 2, 2007, Plaintiff filed a Motion for Leave to Amend and submitted his proposed First Amended Complaint, by which he sought to add claims for hostile work environment on the basis of his race and national origin, claims under the Delaware Discrimination in Employment Act, 19 *Del. C.* § 711 *et seq.*, and the

---

[1]  Pertinent documentary evidence, excerpts from Plaintiff's deposition transcript and supporting affidavits are included in Defendant's Appendix to its Opening Brief in Support of its Motion for Summary Judgment, referred to herein as ("A__"), and filed contemporaneously herewith.

Delaware Handicapped Persons Protection Act, 19 *Del. C.* § 720 *et seq.*, claims for retaliation and denial of leave under the Family and Medical Leave Act ("FMLA"), and claims for retaliation under the Delaware Workers' Compensation Act, 19 *Del. C.* § 2365. (D.I. 41)  On October 22, 2007, Delaware Park filed its Brief In Partial Opposition To Plaintiff's Motion To Amend, in which it objected to Plaintiff's proposed hostile environment and state law discrimination claims, and his proposed claim for improper denial of FMLA leave. (D.I. 43)  In his reply brief, Plaintiff withdrew his state law discrimination claims. (D.I. 44)  The Court has not yet ruled on that motion.

However characterized, and regardless of which claims may go forward, Plaintiff essentially seeks relief as to the following alleged wrongful acts by Delaware Park: (1) failure to promote Plaintiff to various positions; (2) failure to provide Plaintiff with light duty assignment(s); and (3) termination from employment. The parties have exchanged written discovery and documents productions, and Plaintiff was deposed on November 8, 2007.  Plaintiff conducted no depositions.  Delaware Park now moves for summary judgment on all claims currently pending and including Plaintiff's proposed claims for workers' compensation and FMLA retaliation.  This is Delaware Park's Opening Brief in Support of its Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

I.     Delaware Park is entitled to summary judgment on Plaintiff's ADA claims because Plaintiff cannot establish that he is a qualified individual with a disability.  Moreover, even if Plaintiff were disabled under the ADA, he has no evidence to show that Delaware Park discriminated against him in any way on the basis of a disability.

II.    Delaware Park is entitled to summary judgment on Plaintiff's discrimination and retaliation claims under Title VII based on his termination from employment. Plaintiff cannot establish a *prima facie* case of discrimination or retaliation under the relevant standards, and has no evidence to call into question Delaware Park's legitimate business reasons for his termination of employment or to show that the decision was more likely than not based on his national origin or race.

III.    Delaware Park is entitled to summary judgment on Plaintiff's discrimination and retaliation claims based on failure to promote and denial of light duty work, as he has no competent evidence to support these claims.

IV.    Delaware Park is entitled to summary judgment on Plaintiff's retaliation claim under the Delaware Workers' Compensation Act. Plaintiff cannot adduce any evidence of causation, which is necessary to state a *prima facie* case.

V.    Delaware Park likewise is entitled to summary judgment on Plaintiff's retaliation claim under the Family Medical Leave Act. Plaintiff cannot make out a *prima facie* case because he cannot show a causal connection between his FMLA leave and the decision at issue.

## STATEMENT OF FACTS[2]

**A.    Plaintiff's Employment History And Applications For Promotion.**

Sami Almakhadhi (hereinafter "Plaintiff") was hired by Delaware Park in January 2002. (Pl. Dep. at 27, A38)  For the majority of the time he was employed, he worked as a Booth Cashier (Pl. Dep. at 8, A30; 32-34, A39-41; Dixon Aff. ¶2, A13-14), which is a position within Delaware Park's Cage Operations (or banking) Department (Job Description, DP0023, A199) During the relevant time period, he reported to a variety of Shift Managers (including Darla

---

[2]    Additional facts that are relevant to certain of Plaintiff's claims are set forth in the body of the brief.

Cherry, Noel Lafferty, and Mark Joswick), the Assistant Cage Manager (Stacy Suhr), the Cage

Manager (Beverly Pope, who began her employment with Delaware Park in May 2005), and

through them to the Assistant Director of Accounting Operations or Director of Accounting

Operations (Karlyn Dixon, who was promoted to the latter position in March 2005), and Vice

President of Finance (Kevin DeLucia).  (Pope Aff. ¶¶1-2, A22-23; Dixon Aff. ¶2, A13-14)

    In 2004, Plaintiff applied for and was awarded the position of Satellite Cashier (Am.

Compl, D.I. 41 ¶19; Pl. Dep. at 32, A39; Dixon Aff. ¶3, A14), which commanded a higher rate

of pay under the applicable collective bargaining agreement ("CBA") and was considered a

promotional opportunity. (CBA, Schedule A Wages, DP0025, A176; Pl. Dep. at 32, A39; Dixon

Aff. ¶3, A14)  After completing the training period for the new position, however, Plaintiff

exercised his right under the CBA to return to his former position.  (Pl. Dep. at 33-34, A40-41;

A223; Dixon Aff. ¶3, A14)  Thereafter, in January 2005, Plaintiff applied for positions as both a

Main Bank Cashier and Impress Supervisor.  (Transfer Req., DP00245-DP00246, A211-212;

Tab 13, DP02840 Forms, A213; Pl. Dep. at 85-88, A69-72; 89, A73)  Plaintiff was not selected

for any of these positions.  (*See* Pl. Dep. at 8, A30)

    Finally, in August 2005, Plaintiff applied again to be an Impress Supervisor.  (DP0376-

DP0382, A215-217; Pl. Dep. at 86-87, A70-71; Pope Aff.¶4, A23-24).  The candidate selected in

lieu of Plaintiff (and several other candidates, *see* DP0204, A264) was Penny Payne.  (Pl. Dep. at

161, A113; Dixon Aff.¶9, A16; Pope Aff.¶5, A24)  Ms. Payne had over seven years' supervisory

experience, previous experience working in Las Vegas as a Cage Cashier, experience with

Delaware Park working on a regular basis as a Satellite Cashier and, in the latter position,

experience working closely with Delaware Park Impress Clerks.  (Pope Aff.¶5, A24; Dixon

Aff.¶9, A16; DP0028-29 at DP0029, A241)  Plaintiff did not share any of these qualifications. (Dixon Aff.¶9, A16)

The decision to select Ms. Payne was made by Beverly Pope, who recently had been hired as the Cage Manager.  (Pope Aff. ¶4, A23-24)  Ms. Pope first interviewed each of the candidates and reviewed certain documentation related to their applications. (Pope Aff.¶4, A23-24)  Based on that information, as well as her day-to-day observations of their performance, she selected Ms. Payne for the position.  (Pope Aff.¶¶4-5, A23-24)  She then discussed the selection with Shift Managers Noel Lafferty, Darla Cherry and Mark Joswick, who agreed with her selection. (Pope Aff.¶7, A25)  Finally, she reported her selection to Karlyn Dixon and to Stacy Suhr.  (Pope Aff. ¶8, A25)  Both Ms. Dixon and Mr. DeLucia ultimately approved the decision. (Pope Aff.¶8, A25)  At the time Ms. Pope made this decision, she <u>did not know</u> about Plaintiff's prior complaints of discrimination, and <u>did not know</u> that he had filed the worker's compensation claims or taken the FMLA leave discussed below.  (Pope Aff. ¶10, A25-26)  She knew only that Plaintiff recently had been on leave, but did not know the nature of that leave.  (*Id.*)

**B.**    **Plaintiff's Internal Complaints of Discrimination.**

Beginning in February 2005, Plaintiff made several internal complaints of discrimination, claiming that Ms. Dixon had discriminated against him when he was not selected for the position of Main Bank Cashier and, later, Impress Supervisor.  (DP0028-29, A240-241; DP0030-32, A224-226; DP0033-35, A227-229; Pl. Dep. at 88-91, A72-75; 95-96, A76-77; 141-145, A106-110)  Specifically, in February 2005, Plaintiff complained to Micki Nardo, Delaware Park's Director of Human Resources, that he had not been selected for the Main Bank position because of "discrimination."  However, he identified as a factual basis for his complaint only that he felt Ms. Dixon did not "like" him (*see* Human Resources Incident Reports dated 2/22/2005 and

3/15/2005, DP0030-32, A224-226; DP0033-35, A227-229).    This complaint was duly investigated, but Ms. Nardo found no evidence to support Plaintiff's claim of discrimination. (DP0030-32, A224-226; DP0033-35, A227-229)    Thereafter, Ms. Nardo, Ms. Dixon, and Kevin DeLucia all met with Plaintiff to try to clarify the basis for the decisions at issue and how he might successfully pursue other opportunities.    (Incident Report, DP0033-35, A227-229; Pl. Dep. at 144-145, A109-110)

Despite their reassurances, in July 2005, Plaintiff wrote in the employee comments section of his annual performance review that Karlyn Dixon needed "to learn how to respect her emploees [sic] and stop discriminate me [sic] because of my worker's comp. or my race." (DP0036-DP0038 at DP0038, A236)    Shortly thereafter, he complained to the Cashier Training Supervisor that Ms. Dixon and Ms. Suhr had discriminated against him by not selecting him for certain positions. (DP0028-DP0029, A240-241; Pl. Dep. at 136-137, A102-103)    Again, a Human Resources representative followed up with Plaintiff to try to address any concerns he had. (*See* DP0028-DP0029, A240-241)    At that time, Plaintiff also complained that he had been passed over for the position of Impress Supervisor.    (*Id.*)    Further investigation revealed that, Plaintiff did not have an active application on file for the Impress Supervisor position when it most recently had been filled[3], and Plaintiff was invited to submit another application if he continued to be interested in the position.    (*Id.*, Deft.'s Resp. to Req. for Adm. No. 22, A164) Plaintiff did so, but as discussed above, Ms. Payne was selected for the position.

---

[3] Applications for transfer are active for a period of 90 days. (CBA, DP0191, A175)  The position had most recently been filled in May 2005.

**C.    Plaintiff's Worker's Compensation Claims, Requests for Light Duty, And FMLA Leave.**

In December 2003, Plaintiff allegedly suffered a workplace injury to his back. (Pl. Dep. at 35-36, A42-43) However, he failed to report this injury until May 2004 at which time he filed a worker's compensation claim. (Pl. Dep. at 82-84, A66-68; DP0039, A206; DeLucia Aff. ¶4, A2-3) That claim was denied by Delaware Park's worker's compensation insurance carrier, based on evidence that Plaintiff had received medical treatment for the alleged injury prior to the date it allegedly had occurred. (DeLucia Aff. ¶4, A2-3) In May 2004, Plaintiff missed no more than one or two days of work, after which he returned to full-duty work. (Pl. Dep. at 37-38, A44-45)

In April 2005, Plaintiff made a second claim for workers' compensation benefits based on an injury or aggravation of his back injury. (Pl. Dep. at 51, A49) This second claim was also denied pending an investigation by Delaware Park's insurer, due to Plaintiff's prior back problems and the lack of evidence that Plaintiff had suffered a work-place injury. (DeLucia Aff. ¶4, A2-3) Regardless, Plaintiff was unable to work full duty. Beginning April 13, 2005, he was frequently (if not continuously) excused from work by his doctor. (Pl. Dep. at 100, A78; 2005 Attendance Chart, DP0539a–539aa, A210; DeLucia Aff. ¶4, A2-3), and on or about April 29, 2005, Plaintiff requested light duty (Pl. Dep. at 100-102, A78-80; *see also* Dixon Aff. ¶12, A17). At that time Plaintiff stated that he should already have been working with restrictions, but had not been doing so. (Email, DP00661-0662, A230-231) However, Delaware Park reserves light duty assignments to workers injured on the job. (DeLucia Aff. ¶5, A3; Dixon Aff. ¶12, A17) Therefore, since Delaware Park had no information at that time to establish a workplace injury, Plaintiff was advised by Stacy Suhr as well as a member of the Risk Management Department to

contact the Human Resources Department regarding the possibility of FMLA leave. (Pl. Dep. at 100-102, A78-80; Email, DP0661-662, A230-231)

Plaintiff's request for FMLA leave was approved for the period April 13 until June 13, 2005. (DP0042, A232; A239; *see also* Pl. Dep. at 58-62, A56-60)    Effective June 13, 2005, Plaintiff exhausted his FMLA leave, having previously used FMLA time to care for both his terminally ill father and for his pregnant wife and infant son. (Letter, A310; DP0890-918, A281-309; Pl. Dep. at 62, A60; 105, A83; Letter, DP0042, A232)    Thereafter, on June 14, 2005 Plaintiff returned to work. When he did so, he presented  a full release from his doctor. (Pl. Dep. at 62-63, A60-61; DP0660, A233; DP0043, A239, Dixon Aff. ¶13, A17)

When he returned, Plaintiff resumed his regular job duties, and he performed them without notable incident. (Dixon Aff. ¶13, A17)    Indeed, Delaware Park had no reason to believe that he was not fully capable of performing the duties of his position since he was doing so without particular complaint. (Dixon Aff. ¶13, A17; Pope Aff.¶2, A22-23; DeLucia Aff. ¶9, A5)    In August 2005, however, Shannon DeLucia, Delaware Park's Director of Risk Management, received a report from Delaware Park's workers' compensation insurance carrier regarding a defense  medical expert report the insurer had obtained on behalf of the Company. (DeLucia Aff. ¶6, A3-4; DP0044-47, A251-254; Heckler Ltr, DP0108-0111, A246-249) That report indicated that Plaintiff likely had suffered a workplace injury and should be working subject to certain restrictions (including limited lifting, standing, walking, bending, and twisting), which essentially were the same as those imposed by his physician in April in conjunction with his FMLA leave. (Heckler Ltr, DP0108, A246); Townsend Rpt., DP0777-780, A242-245 *see also* DP0044-47, A251-254; FMLA Cert., A311-315) Based on this information, it appeared to

Ms. DeLucia that Plaintiff's restrictions were continuing, and that he should not have been working his full duty job. (DeLucia Aff. ¶¶7-8, A4-5; Def. Res. to Pl. Int. No. 2, A157-158)

Regardless, Ms. DeLucia also understood from the report that it would be appropriate to acknowledge Plaintiff's pending worker's compensation claim. (DeLucia Aff. ¶6, A3-4) Therefore, on September 12, 2005, Delaware Park gave approval to its worker's compensation insurer to raise its reserves, thereby accepting Plaintiff's claim. Delaware Park was later advised by its insurer that it formally accepted the claim on October 31, 2005, including coverage for lost wages beginning in April 2005. (DeLucia Aff. ¶6, A3-4; Def. Resp. to Req. for Adm. No. 16, A163; Supp. Ltr. Resp., A167)

## D.    Delaware Park's Subsequent Decisions Regarding Light Duty And The Termination Of Plaintiff's Employment.

Upon learning that Plaintiff should be working subject to restrictions, Ms. DeLucia instructed that he be sent home until his situation could be clarified. (DeLucia Aff. ¶9, A5; A237-238)  Thereafter, on September 2, 2005, Plaintiff provided a note from his physician detailing his restrictions. (DP0105, A250) Again, these restrictions were essentially the same as those imposed by Plaintiff's doctor in April and as prescribed by the defense medical examiner. (*Compare* FMLA Cert., A311-315; 5/17/05 Dr. Note, A214; *and* 9/02/02 Dr. note, DP0105, DP0105, A250; Pl. Dep. at 109-111, A84-86; Pl. Resp. to Def. Req. Adm. No. 4, A151)  After discussion with Ms. Dixon, Ms DeLucia came to the conclusion that light duty work within these restrictions would be difficult or impossible to identify. Further, given the evidence that Plaintiff apparently had failed to abide by his restrictions in the past, Ms. DeLucia and Ms. Dixon were concerned that he might continue to work outside his restrictions. (DeLucia Aff. ¶¶10-11, A5-6; Dixon Aff. ¶14, A18, Def. Resp. to Pl. Int. No. 2, A157-158)  Ms. DeLucia therefore directed that Plaintiff would not be permitted to return to work until his medical situation was reevaluated

9

or he was released by his physician to full duty. (DeLucia Aff. ¶¶9-12, A5-7; 09/02/05 Email, DP0044, A251) From that date forward, *i.e.,* September 2, 2005, Plaintiff was on leave.[4] (Pl. Dep. at 11, A33; Pl. Resp. to Def. Req. for Adm. No. 12, A153) While on leave and through his termination from employment on February 12, 2006,[5] Plaintiff continued to receive his medical and other health and welfare benefits. (Pl. Resp. to Def. Req. for Adm. 8-14, A152-154; DeLucia Aff. ¶12, A6-7)

At the time Plaintiff was placed on leave, it was Delaware Park's understanding that his physician had recommended surgery, which might resolve his back problem and permit his return to work. (DeLucia Aff. ¶13, A7; Emails, DP0045-46, A252-253) Therefore, Ms. DeLucia made the decision to wait until he had had the opportunity to recuperate from surgery to reevaluate his status, with the goal of bringing him back to work if he was able to do so. (DeLucia Aff. ¶13, A7; *see also* Heckler ltr., A247) In early December 2005, however, Ms. DeLucia learned that Plaintiff had elected not to have surgery, and that his medical situation apparently had not changed. (DeLucia Aff. ¶13, A7; *see also* DP0044-47, A251-255) In early February 2006, when Delaware Park had received no further information regarding Plaintiff's situation, Ms. DeLucia advised his department managers to give Plaintiff a deadline of February 12, 2006 to return to work, and further to advise him that he would need a full release from his physician to do so. (DeLucia Aff. ¶14, A7; Pope Aff. ¶9, A25; *see also* A259-260; A263) Plaintiff responded that his physician would not release him to full duty and that he would be unable to return to work. (Pope Aff. ¶9, A25; A259-260; A263; Adm. 10, 11, 13, 14, A152-154)

---

[4] Plaintiff characterizes this leave and his FMLA leave in April-June 2005 as "suspensions," although no disciplinary action was involved. (Pl. Dep. at 9, A31; 101, A79)

[5] Ms. DeLucia subsequently modified Plaintiff's termination date to March 10, 2006, and extended his medical benefits through the end of March. (Term Ltr., DP0052, A263; DeLucia Aff. ¶¶17-18, A8-9; Pl. Resp. to Req. for Adm. 10, 11, 13, 14, A152-154)

Since there was no reason to believe at that point that he might return to work and he had long since exhausted any available leave, Ms. DeLucia made the decision to terminate his employment. (DeLucia Aff. ¶15, A7-8) Prior to Plaintiff's termination from employment, Ms. DeLucia had no knowledge whatsoever that Plaintiff had previously complained of discrimination. (DeLucia Aff. ¶19, A9; *see also* Pl. Dep. at 208, A131; Pl. Resp. to Def. Req. Adm. No. 1, A150; Dixon Aff. ¶19, A20)

## ARGUMENT

### I. SUMMARY JUDGMENT IS APPROPRIATE WHEN A PARTY FAILS TO ESTABLISH ANY ELEMENT OF ITS CASE.

Summary judgment is appropriate when it is established through pleadings, affidavits, depositions, and other discovery that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, the moving party has the burden to show that no material factual issues exist for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), *cert. denied*, 481 U.S. 1029 (1987). That burden may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof. *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325). The ruling on summary judgment "is to be made on the record the parties have actually presented, not on one potentially possible." *Madeirense DO Brasil S/A v. Stulman-Emrick Lumber Co.*, 147 F.2d 399, 405 (2d Cir. 1945).

### II. DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ADA CLAIMS.

To state a *prima facie* case of disability discrimination, Plaintiff must first show that he is "disabled" within the meaning of the ADA. *See Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580

(3d Cir. 1998). The Third Circuit has held that "only extremely limiting disabilities . . . qualify for protected status under the ADA." *Marinelli v. City of Erie*, 216 F.3d 354, 362 (3d Cir. 2000). Because Plaintiff cannot demonstrate that his back injury, or any other alleged impairment, renders him disabled, his ADA claim fails at the outset.

### A.    Plaintiff Does Not Have An ADA-Qualifying Disability.

An individual is disabled within the meaning of the ADA only if he or she: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2); *Toyota Motor Mfg. Kentucky Inc. v. Williams*, 534 U.S. 184, 193 (2002). Here, Plaintiff has no evidence demonstrating that he is disabled, by any measure.

For example, in January 2006 (shortly before Delaware Park requested that Plaintiff return to work), one of Plaintiff's doctors noted that Plaintiff's pain had eased and he was off all medications. (Dr. Khella Report, DP0745-0746, A256-257)[6] The reporting doctor diagnosed Plaintiff with "[m]ild chronic ... radiculopathy" and noted his strength was 5 of 5 in the four extremities and the absence of other serious symptoms. (*Id.*) Such diagnosis obviously does not comport with the meaning of a disability within the ADA.

Plaintiff's deposition testimony also belies any assertion that his back injury constitutes an impairment that substantially limits any of his major life activities. For example, Plaintiff testified that he can perform ordinary tasks associated with taking care of his property, such as mowing the lawn. (Pl. Dep. at 52, A50) He can feed, bathe, and play with his children, and he can "absolutely" dress, bathe, and care for himself. (Pl. Dep. at 53, A51) While Plaintiff alleges

---

[6]  In his deposition, Plaintiff stated he could not remember the one date on which he saw Dr. Khella, but denied it was in January 2006. (Pl. Dep. at 170, A116) However, Dr. Khella's appointment calendar demonstrates otherwise. (Dr. Khella Calendar, DP0781; A258)

in his Amended Complaint that his disability affects his ability to stand and to lift (Am. Compl. ¶¶47-48), Plaintiff testified that he is capable of standing for seven to eight hours (and did so on his final day of active employment in August 2005) (Pl. Dep. at 54-55, A52-53) and also is capable of lifting 20 to 25 pounds (Pl. Dep. at 17, A36). He can even lift heavy objects "occasionally," but not multiple times. (Pl. Dep. at 52, A50)

The inability to lift more than 20 to 25 pounds repetitively or to stand for more than seven or eight hours is not a substantial limitation on a major life activity. *See, e.g., Steinke v. Septa*, 85 Fed. Appx. 808, 810-11 (3d Cir. 2003) (affirming summary judgment for employer on plaintiff's ADA claims; despite back injury, plaintiff could perform variety of tasks central to daily living and therefore was not disabled); *Marinelli*, 216 F.3d at 364 (entering judgment as a matter of law in favor of employer on ADA claim where employee was subject to 10-pound lifting restriction, as such limitation was not sufficiently different from the general population to establish disability). Here, as in the cited cases, Plaintiff's testimony unequivocally demonstrates that his back condition does not substantially limit him from performing normal day-to-day activities.

To the extent Plaintiff alleges he is substantially limited in the major life activity of working, he cannot adduce evidence sufficient to make this showing. To be substantially limited in the ability to work, a plaintiff must prove that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. 1630.2(j)(3)(i). As an initial matter, the mere fact that certain of Plaintiff's physicians imposed and/or continue to impose "light duty" restrictions does not demonstrate a substantial limitation on Plaintiff's ability to work. *See Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996)

(finding as a matter of law that 25-pound lifting restriction does not constitute a substantial limitation on the major life activity of working); *Panzullo v. Modell's PA, Inc.*, 968 F. Supp. 1022, 1024 (E.D. Pa. 1997) (granting employer's motion for summary judgment on plaintiff's ADA claim, finding that neither a "general weightlifting or light-duty work limitation nor a restriction against performing heavy work per se constitutes a disability under the ADA").

Instead, the relevant inquiry is "whether the particular impairment constitutes for the particular person a significant barrier to employment." *Panzullo*, 968 F. Supp. at 1024 (internal citations omitted). Plaintiff's back injury has not been a significant impairment either in the performance of his job duties at Delaware Park or in his attempts to obtain other employment. Although Plaintiff injured his back in December 2003, he worked his full duty job without making Delaware Park aware of any restrictions until April 2005. (Pl. Dep. at 135, A101) When he returned to work from his April - June 2005 FMLA leave, Plaintiff obtained a release from a back specialist returning him to full duty. (Dr. Release Note, DP0660, A233; Pl. Dep. at 237, A135) Plaintiff acknowledged telling this doctor that he could do his job at Delaware Park, notwithstanding the lifting, standing, and bending requirements associated therewith. (Pl. Dep. at 62-63, A60-61; 65, A62; DP0040, A207.) Thereafter, from June 14, 2005 (the day he returned from his FMLA leave) until his last full day of active employment, on or about August 29, 2005, Plaintiff performed his job duties without incident. (Pl. Dep. at 54-55, A52-53; Dixon Aff. ¶13-14, A17-18)

Indeed, Plaintiff's own actions in applying for and obtaining other employment confirm that he is not substantially limited from working. Since September 2005, Plaintiff has applied for a broad range of jobs in various classes, all of which he testified he is qualified for and able to do. (Pl. Dep. at 10, A32; 16-18, A35-37; Pl. Resp. to Def. First Int. No. 9, A147) These jobs

14

include a management position at 7-Eleven involving physical activities such as stocking and helping with deliveries, a position as a forklift operator, a corrections officer, and even a position in the cash office at a Lowe's Home Improvement store, where he represented during the interview he could lift 20-25 pounds and "could manage" even heavier lifting requirements. (Pl. Dep. at 10, A32; 16-18, A35-37; Pl. Resp. to Def. First Int. No. 9, A147)  In addition, Plaintiff completed the coursework and the driving skills class to obtain his CDL license in late 2005 (while still employed by Delaware Park, albeit on leave of absence for his injury) (Pl. Dep. 11-12, A33-34) and he recently worked thirty hours in a week at a pizza shop, where he did "everything." (Pl. Dep. at 6-7, A28-29)  Plaintiff never once indicated that he believed he would be unable to meet the physical requirements of these positions, or that he would have obtained these jobs but for his physical limitations.  Thus, Plaintiff's own testimony confirms that his back condition has not limited his ability to work.  *See Spencer v. Verizon Connected Solutions, Inc.*, 138 Fed. Appx. 449, 451 (3d Cir. 2005) (affirming grant of summary judgment for employer on plaintiff's ADA claim because plaintiff "asserted several times that he could work despite his back injury, and the record indicates that [plaintiff] was employed elsewhere at various times throughout this litigation"); *Marinelli*, 216 F.3d at 364 (affirming trial court conclusion that plaintiff could not simply point to his restrictions to establish that he was substantially limited in the major life activity of working; plaintiff could not show his impairment disqualified him from a class of jobs).  In light of these facts, Plaintiff cannot show that he suffers from a disability within the meaning of the ADA.

### B.   Plaintiff Has No Record of a Disability.

Similarly, Plaintiff does not qualify under the second prong of the disability analysis because he has no "record of" a disabling impairment.  "A plaintiff attempting to prove the

existence of a 'record' of a disability still must demonstrate that the former impairment is a 'disability' within the meaning of the ADA." *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001). Plaintiff cannot show that his back condition is or ever was a disability under the ADA, so he cannot demonstrate that he has a record of a disability. *See id.*

### C.    <u>Delaware Park Did Not Regard Plaintiff As Disabled.</u>

Neither can Plaintiff show that Delaware Park regarded him as disabled. For an individual to be "regarded as" disabled under the ADA, the individual must demonstrate either that the employer erroneously believes he has an impairment arising to the level of a disability when he does not, or that the individual has a non-limiting impairment that the employer mistakenly believes substantially limits a major life activity. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). Again, Plaintiff has no evidence to prove that Delaware Park regarded him as disabled.

Indeed, Plaintiff's only evidence in support of his "regarded as" claim is that certain of Delaware Park's managers "knew" of his back injury during his employment. (Pl. Dep. at 136-137, A102-103) This contention, however, is not sufficient to meet the "regarded as" standard under the ADA. "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) (affirming summary judgment for employer where plaintiff who walked with a limp could not show he was disabled or that his employer regarded him as such) (internal citations omitted); *see also Benko v. Portage Area Sch. Dist.*, 2007 WL 2041977, at *5 (3d Cir. July 17, 2007) (affirming grant of summary judgment for employer on plaintiff's ADA claims under "regarded as" prong in part because plaintiff returned from his sabbatical, which he took for

16

medical reasons, to resume his prior position without accommodation or restriction). In fact, Delaware Park had no reason to consider Plaintiff disabled (Dixon Aff. ¶13, A17-18; Pope Aff. ¶2, A22-23; DeLucia Aff. ¶¶8-9, A4-5), and his unsupported contentions to the contrary cannot save his claims.

### III. DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII CLAIMS BASED ON THE TERMINATION OF HIS EMPLOYMENT.

#### A. Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination.

To establish a *prima facie* case of discriminatory discharge on the basis of race or national origin under Title VII,[7] Plaintiff must demonstrate, for example, that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was discharged; and (4) other similarly situated employees outside of his protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff does so, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* If the defendant meets its burden, any presumption of discrimination drops from the case and the plaintiff must point to some evidence from which a reasonable finder of fact could either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that a discriminatory reason, more likely than not, was a determinative cause of the employer's action. *See id.* at 804; *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir. 1995). Notwithstanding these shifting burdens, the ultimate burden of persuading the finder of fact that the employer intentionally discriminated remains at all times with the plaintiff. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

---

[7] Plaintiff identified himself as "white" on his employment application. (A204) Because Plaintiff focuses on his Middle Eastern ethnicity in alleging both his race and national origin claims, Delaware Park will address these claims together.

Here, Plaintiff's *prima facie* case of discrimination fails because he cannot show that similarly situated individuals – *i.e.*, who have exhausted available leave time and cannot return to work – are not terminated from employment. To the contrary, Plaintiff admits that Delaware Park routinely terminates such employees, and other record evidence supports his admission. (Pl. Dep. at 122, A91; *See* DeLucia Aff. ¶15, A7-8; List of Terminated Employees, DP0061, A266; Termination Letters, DP149-160, DP0669-700, A267-280)

In fact, Delaware Park allowed Plaintiff to remain on leave beyond the point where he had exhausted his leave, based on its understanding that he was going to have back surgery, and the expectation that he would be able to return to full duty work after his recovery. (DeLucia Aff. ¶13, A7; Heckler Ltr., A247). Even then, Plaintiff's employment was not terminated until February 12, 2006, weeks after Delaware Park learned that Plaintiff had declined to undergo surgery and only after Plaintiff confirmed he remained unable to do his job. (DeLucia Aff. ¶14-15, A7-8; Almakhadhi Surgical Discussion, DP0049, A255 Pope Aff. ¶9, A25; Emails, A259-260) Thus, Plaintiff has no evidence that he was treated any less favorably than similarly situated employees outside of his protected class.

**B.    Plaintiff Has No Evidence of Pretext.**

Even if Plaintiff could somehow make out a *prima facie* case, however, he cannot show that Delaware Park's legitimate, non-discriminatory reasons for his termination (*i.e.*, the exhaustion of available leave, Plaintiff's inability to return to work, and a business need to fill the position) were a pretext for race or national origin discrimination. (Term Ltr., A263; DeLucia Aff. ¶15, A7-8) To show that Delaware Park's proffered reasons for his termination are a pretext, Plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in those reasons such that a reasonable fact finder could rationally find them

18

unworthy of credence. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). He utterly fails to do so.

Plaintiff attempts to support his claim of pretext with the bare allegation that he had an additional twelve weeks of FMLA leave available to him at the time of his termination. (Am. Compl. ¶32.) That assertion is untenable, as Plaintiff has no evidence whatsoever that Delaware Park believed he was entitled to any additional FMLA leave at that juncture. Further, it cannot be supported in light of: (1) Plaintiff's admission that he exhausted his FMLA leave on June 13, 2005 (A310); (2) his testimony that he first took FMLA leave on October 12, 2004 (Pl. Dep. at 105, A83); (3) Plaintiff's allegation that he was eligible for a "new" twelve-week period of leave as of October 12, 2005 (Am. Compl. ¶27); and (4) the record evidence that Delaware Park observes a rolling leave year looking forward for individuals who, like Plaintiff, are employed in a collective bargaining unit position (A290-291). Assuming without conceding that Plaintiff's allegation regarding his entitlement to a "new" FMLA period is true,[8] Plaintiff received well more than twelve weeks of FMLA-qualifying leave before his termination in February 2006.[9] *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 95 (2002) (holding FMLA requires only that employees be permitted a maximum of twelve weeks of leave).

---

[8] Delaware Park disputes that Plaintiff was entitled to any FMLA leave on or after September 2, 2005. Eligibility for leave under the FMLA is determined at the outset of the leave, in this case no later than September 2, 2005. *See Adly v. SuperValu, Inc.*, 2007 U.S. Dist. LEXIS 57011, at *11-12 (D. Minn. Aug. 3, 2007) (denying employee's motion for summary judgment on FMLA claim and rejecting argument that employee became eligible for FMLA leave in the middle of his uninterrupted leave of absence; "[r]etrospectively recharacterizing a portion of an employee's leave in order to create a new leave-commencement date is completely inconsistent with § 825.110(d)"); *Sewall v. Chicago Transit Auth.*, 2001 U.S. Dist. LEXIS 330, at *5-6 (N.D. Ill. Jan. 16, 2001) (rejecting employee's argument that the court should "pick a date in the middle of his absence to determine the beginning of his FMLA leave").

[9] During this leave period, Plaintiff received all benefits and rights to which he was entitled under the FMLA, including health insurance coverage, the right to participate in Delaware Park's 401k and other benefit plans, and the right to return to his position. (Pl. Resp. to Def. First Req. Adm., Nos. 10, 13, 14, A152-154 DeLucia Aff. ¶12, A6-7)

Plaintiff also attempts to demonstrate pretext by arguing that the real decision-maker(s) with regard to his termination were Ms. Dixon and/or Ms. Suhr, not Ms. DeLucia. (Am. Compl. ¶31.) When asked for facts to substantiate this assertion, Plaintiff testified:

- that Ms. Dixon and Ms. Suhr required him to call out every day during his leave (Pl. Dep. at 121, A90);

- that he called to inquire about his Christmas bonus in February 2006 and spoke to Ms. Dixon's assistant about it (Pl. Dep. at 123-124, A92-93);

- that Ms. Dixon approved the standard Personnel Action Notification ("PAN") form documenting his termination (Pl. Dep. at 128-129, A97-98);[10] and

- that he believed Ms. Dixon and Ms. Suhr were the head decision-makers of his department. (Pl. Dep. at 136, A102)

This purported evidence, however, does not relate in any way to whether these individuals actually were responsible for the decision to discharge Plaintiff or whether such decision was due to discrimination. In fact, the record evidence shows that Ms. DeLucia made the decision to terminate Plaintiff's employment, and is devoid of any evidence of discrimination on her part. (*See* Dixon Aff. ¶17, A19; DeLucia Aff. ¶15, A7-8; 20, A9-10) Plaintiff's conclusory assertions about Ms. Dixon and Ms. Suhr cannot save his claims from summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Finally, Plaintiff alleges that Delaware Park's reasons for terminating him are pretextual because he was discharged without prior warning and never received a formal notice of discharge until after he called Delaware Park to inquire about the termination of his health insurance. (Am. Compl. ¶31.) Although this allegation does nothing to show that the reasons

---

[10] These forms must be completed for all significant employee status changes, such as wage increases and terminations. While the directors of the relevant department must sign off these standard forms, their signatures merely acknowledge the change at issue and are not probative evidence of a substantive role in the decision-making process. (PAN Form, DP0658, A262; Dixon Aff. ¶18, A19-20)

for his termination were pretextual, Delaware Park did in fact notify Plaintiff to return to full

duty work by February 12, 2006, and he could not do so. (Pl. Dep. at 124-126, A-93-95; 216-

217, A133-134; Emails, DP0100-101, A259-260; Pope Aff. ¶9, A25).[11]  Regardless, Plaintiff has

set forth no facts whatsoever linking this alleged lack of warning to his race or national origin,

and these allegations of pretext thus are meritless.

In an attempt to show pretext, Plaintiff also may point to the March 30, 2006 termination

letter he received (DP0052, A263) and a dispute over the exact date(s) he communicated with

Ms. DeLucia.  These events, however, occurred after Ms. DeLucia had decided to terminate

Plaintiff's employment.  Plaintiff has no evidence showing that these events were somehow part

of a plan to disadvantage him, and any disagreement as to these after-the-fact events simply is

not material to the analysis. *See, e.g., Constant v. Mellon Fin. Corp.*, 2007 WL 2570810, at *7

(3d Cir. Sept. 7, 2007) (affirming grant of summary judgment for employer on FMLA retaliation

claims; noting issues of fact did not overcome the lack of evidence of pretext).  Moreover, any

confusion surrounding Plaintiff's termination date inured to his benefit, as his health coverage

was extended for an additional month as a result.  (DeLucia Aff. ¶18, A9; Pl. Dep. at 207, A130;

Pl. Resp. First Req. Adm., No. 10, A152)  Therefore, Plaintiff has no evidence to support his

claim for discriminatory discharge on the basis of race and national origin, and summary

judgment should be granted in favor of Delaware Park.

---

[11] Although Plaintiff claims that he did not believe he would be terminated as a result of his failure
to report, he admits that he asked if he was terminated when he called Delaware Park on February
12, 2006. (Pl. Dep. at 125-127, A94-96; Email, DP0655, A261)  In response, he was told to call
his supervisors, Ms. Suhr and Ms. Dixon, but never did because "I didn't want to talk to them."
(Pl. Dep. at 127, A96; Email, DP0655, A261)

C.    **Plaintiff Cannot Support His Claim for Retaliatory Discharge.**

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show:  (1) that he engaged in a protected activity; (2) that his employer took materially adverse action against him; (3) that a causal link exists between the protected conduct and the adverse action. *Weiler v. R&T Mech., Inc.*, 2007 U.S. App. LEXIS 25803, at *5 (3d Cir. Nov. 5, 2007). Plaintiff claims that he was terminated in retaliation for complaining in February and March of 2005 and again in July and/or August of 2005 about alleged race and/or national origin discrimination by Ms. Dixon and Ms. Suhr.  (Am. Compl. ¶32; Pl. Dep. at 88, A72)  However, because Plaintiff cannot show any causal link between his termination and these complaints, Delaware Park is entitled to summary judgment on this claim.

First, courts have held as a general rule that an inference of causation arises only if an employer's adverse action occurs extremely close in time to the plaintiff's protected activity. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).    In contrast, Plaintiff's employment at Delaware Park was terminated nearly seven months after he made his last internal complaint of discrimination.  Thus, Plaintiff cannot rely on the timing of these circumstances to establish his *prima facie* case.

More fundamentally, however, Plaintiff's retaliation claim fails because he cannot show that the decision-maker responsible for his termination, Ms. DeLucia, was aware of his discrimination complaints.[12]  *See Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (holding that, to make out a *prima facie* case of retaliation, the employer must be aware of plaintiff's protected activity); *Gordon v. National R.R. Passenger*

---

[12]    To the extent Plaintiff relies on his unsupported allegation that Ms. Dixon and/or Ms. Suhr made the decision regarding his termination, for the reasons set forth in Section III.B., *supra*, this allegations also fails to provide any support for his claim.

*Corp.*, 564 F. Supp. 199, 204 (E.D. Pa. 1983) (same).  As Director of Risk Management, Ms.

DeLucia was not involved in the employee performance review process and was not advised of

internal complaints of discrimination.  (DeLucia Aff. ¶19, A9)  She did not know, nor would she

have reason to know, about Plaintiff's complaints.  (DeLucia Aff. ¶19, A9; Dixon Aff. ¶19, A20)

Further, Plaintiff testified that he and Ms. DeLucia "talked about discrimination" only once, in or

around April 4, 2006, well after the termination decision had been made.  (Pl. Dep. at 208, A131;

Pl. Resp. to Def. Req. for Adm. No. 1, A150)  Plaintiff also testified that this discussion pertained

only to his failure to receive a formal termination letter in February, not to the discrimination

complaints he made against Ms. Dixon and Ms. Suhr.  (*Id.*)  Therefore, because Plaintiff cannot

establish the causal link necessary to prove retaliation for his internal complaints of discrimination,

his claim must fail.

## IV.    DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII CLAIMS BASED ON FAILURE TO PROMOTE.

### A.    Plaintiff Has No Evidence In Support Of His Discrimination Claims.

Plaintiff also has failed to adduce any competent evidence in support of his failure to

promote claims.  Although Delaware Park concedes for purposes of this motion only that

Plaintiff can establish a *prima facie* case in regard to his application in August 2005 for the

position of Impress Supervisor,[13] Plaintiff will be unable to show (as he must) any evidence of

pretext or discriminatory animus.  Indeed, to avoid summary judgment Plaintiff must produce

evidence which: (1) casts sufficient doubt upon each reason proffered by Delaware Park for its

decision, so that a fact finder could reasonably conclude that each reason was fabrication; or (2)

allows a fact finder to infer that discrimination was more likely than not a motivating or

determinative cause of action.  *Kidd v. MBNA Am. Bank, N.A.*, 93 Fed. Appx. 399, 401 (3d Cir.

---

[13]    Plaintiff's Charge of Discrimination was filed on April 26, 2006.  Therefore, any Title VII discrimination or retaliation claims must be based on events that occurred after June 30, 2005.

March 25, 2004) (*citing Fuentes v. Perskie, 32 F.3d 759* (3d Cir. 1994)).  Plaintiff has no such proof.

Simply stated, the person responsible for the decision, Beverly Pope, picked the best candidate for the job, and that was not Plaintiff.  (Pope Aff. ¶5, A24; Dixon Aff. ¶9, A16)  The candidate selected, Penny Payne, had the following qualifications, none of which were shared by Plaintiff:

- over seven years' supervisory experience;
- experience working in Las Vegas as a Cage Cashier;
- experience with Delaware Park working on a regular basis as a Satellite Cashier (a higher level position than Plaintiff's position); and
- experience working closely with Delaware Park's Impress Clerks, with whom she had established a positive working relationship.

(Pope Aff. ¶5, A24; Dixon Aff. ¶9, A16)  Indeed, the decision-maker, Beverly Pope, found Ms. Payne to be a far superior applicant than <u>any</u> of the others who applied – not just Plaintiff.  (Pope Aff. ¶5, A24)

Tellingly, Plaintiff conceded in his deposition that Ms. Payne was a "good candidate" for the job (Pl. Dep. at 160, A112) and that he had no reason to believe that Ms. Pope would discriminate against him  (Pl. Dep. at 87, A71).  In fact, Plaintiff's only evidence in support of his claim is his personal opinion that he was qualified for the job.  (Pl. Dep. at 164-165, A114-115)  His opinion, however, fails to call into question Delaware Park's reasons for its decision.  *Igwe v. E.I. du Pont de Nemours & Co.,* Appx. 353, 356 (3d. Cir. May 11, 2006) (affirming summary judgment for employer, holding "disagreement, without more, does not rebut [defendant's] legitimate non-discriminatory reasons").

Similarly, Plaintiff's assertion that he was treated differently from other employees because he allegedly was required to be a Satellite Cashier before being selected for

any of the other positions he sought is not evidence of pretext, as well as being factually incorrect. (*See* Pl. Dep. at 103-104, A81-82; 140-141, A105-106; Pl. Resp. to Int. No. 5, A145-146) In fact, in March 2005 Ms. Dixon and Mr. DeLucia explained to Plaintiff that there was no such requirement – rather, they thought experience as a Satellite Cashier would better position him to move up within the department. (Incident Rpt., DP0034, A228)  The fact that Plaintiff's supervisors thought this additional experience would make him better qualified for even higher-level positions does not raise an issue of pretext as to the selection of Ms. Payne as the better candidate for Impress Supervisor.  Indeed, Ms. Payne had the relevant experience as a Satellite Cashier.

Finally, Plaintiff can be expected to rely on his deposition testimony, where he asserted that Ms. Dixon once told him that "Americans don't like to be supervised by Arabs" and "all Americans hate Arabs." (Pl. Dep. at 76, A63)  Although he stated he did not recall when Ms. Dixon allegedly made these comments, his further testimony indicated that the probable time period was sometime in 2002, prior to the time he applied for transfer to other positions.  (Pl. Dep. at 76-78, A63-65)  However, Ms. Dixon denies that she made these comments (Dixon Aff. ¶20, A20), and Plaintiff has no evidence to substantiate his testimony.  Plaintiff cannot name any witnesses to the purported comments.  (Pl. Dep. at 76-77, A63-64; 132-133, A99-100)  He also admits – despite evidence of many other internal complaints – that he never complained to Delaware Park about these alleged comments.  (Pl. Dep. at 77, A64)  Further, Plaintiff's unsubstantiated allegation is wholly absent from all of Plaintiff's prior submissions, including Plaintiff's Charge of Discrimination, Complaint, discovery responses, and proposed First Amended Complaint.  This self-serving testimony should not be considered by the Court.  *See Taylor v. Proctor & Gamble Dover Wipes*, 184 F. Supp. 2d 402, 413 (D. Del.), *aff'd*, 53 Fed.

Appx. 649 (3d. Cir. 2002) (determining that alleged discriminatory statement did not constitute circumstantial evidence of discrimination, in part because plaintiff failed to include statement in EEOC complaint).

Even if it is considered, however, it is no more than a stray remark, made remotely in time by a non-decision maker and does not save Plaintiff's claims from summary judgment. *See Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000) (affirming summary judgment for employer where alleged comment was not made proximate in time to disputed action). Otherwise stated, Plaintiff has no evidence to tie Ms. Pope to such statements or to establish that she acted from a discriminatory motive. Therefore, Delaware Park is entitled to summary judgment on Plaintiff's race and national origin discrimination claims based on this promotion decision.

**B.     Plaintiff Cannot Produce Evidence In Support Of His Retaliation Claims.**

Similarly, Plaintiff has no evidence to show that the decision not to promote him to Impress Supervisor was in retaliation for his internal complaints. Beverly Pope, who was responsible for the decision (in consultation with the Shift Managers who reported to her), had no knowledge that Plaintiff had made such complaints. (Pope Aff. ¶10, A25-26)  Further, there is no evidence that any of the individuals with whom she consulted prior to making her decision harbored such motives. Although Plaintiff can be expected to argue that Ms. Dixon (or Ms. Suhr) was in fact the decision-maker, as discussed above he has no evidence of this point other than his own speculation. (*See* DP0029, A241)  T*o* the contrary, the evidence shows that Ms. Dixon merely accepted the recommendation of Ms. Pope. (Pope Aff. ¶8, A25; Dixon Aff. ¶10, A16-17.  Thus, Plaintiff will be unable to show a causal connection between his complaints and the decision not to promote him, and his claim therefore fails. *Manoharan*, 842 F.2d at 593.

**V.    DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII CLAIMS BASED ON THE DENIAL OF LIGHT DUTY.**

**A.    Plaintiff Cannot Support His Discrimination Claim.**

Plaintiff also cannot sustain his race and/or national origin discrimination claims based on the denial of his request for light duty work in September 2005.[14]  Like his other discrimination claims, Plaintiff must state a *prima facie* case for denial of a light duty assignment using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Assuming for purposes of this motion only that denial of light duty work constitutes an adverse action under Title VII, Plaintiff's *prima facie* case fails because he cannot show that similarly situated employees outside of his protected class were treated more favorably than he.

Plaintiff asserts that he is the only one of his fellow employees who sustained a workplace injury at Delaware Park who was denied a light duty assignment.  (Pl. Dep. at 139, A104)  In an attempt to prove this allegation, Plaintiff identified in his discovery responses several individuals with workplace injuries who received light duty jobs.  (Pl. Resp. to Def. First Req. for Prod., Ex. A3, A139-143)  Merely identifying individuals who received light duty, however, does not establish that these individuals were similarly situated to Plaintiff or that other employees, not in Plaintiff's protected class, were not denied light duty.  Otherwise stated,  there is no evidence to show that, like Plaintiff, the other employees who were granted light duty

---

[14] Given that Plaintiff filed his Charge of Discrimination on April 26, 2006, any claim based on the denial of light duty in April 2005 is untimely.  (Pl. Resp. to First Req. Admission, No. 17, A155)  To the extent Plaintiff alleges that the denial of his requests for light duty somehow constitute a continuing violation, he is mistaken, as each such denial was a discrete and independent act.  *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S. Ct. 2162, 2175 (2007) (holding acts which are separately identifiable and actionable must each be timely alleged); *Amtrak v. Morgan*, 536 U.S. 101, 113-14 (2002) (holding "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").

neglected to timely report their injuries or that Delaware Park had a reasonable basis to believe that they were less than forthright about their work restrictions or might work outside those restrictions.

In fact, the evidence establishes that as a result of Plaintiff's failure to timely report his workplace injury and restrictions, evidence that he likely had worked outside of his restrictions, and the very limited availability of light duty in his department, Ms. DeLucia denied Plaintiff a light duty assignment to avoid the very real risk that he would exacerbate his injury by working in excess of his limitations. (DeLucia Aff. ¶11, A5-6)  This denial was completely consistent with Delaware Park's policy of denying, and the evidence showing that it in fact has denied, light duty work to individuals whose conduct violated safety rules or who were not forthright about the nature and/or extent of their injuries, or where appropriate light duty work was not available. (DeLucia Aff. ¶11, A5-6; Workers' Comp. Policy, DP0082, A186; List of Denials, DP0099, A265).  In short, Plaintiff has no evidence that other employees who received light duty work engaged in similar conduct and/or that Delaware Park was aware of same.  (Pl. Dep. at 36, A43; 44-45, A46-47; DeLucia Aff. ¶11, A5-6)  Because Plaintiff cannot show that he was treated any differently than this true comparators, his claim must fail.  *See Red v. Potter*, 2006 U.S. App. LEXIS 28700, at *5 (3d Cir. Nov. 20, 2006) (affirming summary judgment for employer; holding comparators must be similarly situated in all relevant respects of employment); *Taylor*, 184 F. Supp. 2d at 410 (holding comparators must be similarly situated in all regards before inference of discrimination will arise).

Even if Plaintiff could state a *prima facie* case for discriminatory denial of light duty, however, his claim nonetheless could not survive summary judgment.  First, Delaware Park has put forth a legitimate, non-discriminatory reason for the denial of Plaintiff's request for light

duty. Second, and more importantly, Plaintiff cannot show that Ms. DeLucia's reasons for placing him on leave were a pretext for race and/or national origin discrimination. During his deposition, Plaintiff testified that he did not actually violate any of Delaware Park's safety policies and never worked outside any formal work restrictions. (Pl. Dep. at 157, A111; 174-175, A117-118) These self-serving assertions, however, do not show that Ms. DeLucia's decision to deny him light duty, even if mistaken, was riddled with "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" such that it is unworthy of belief. *See Fuentes*, 32 F.3d at 765; *accord Brokenbaugh v. Exel Logistics N. Am.*, 174 Fed. Appx. 39, 45 (3d Cir. 2006) (affirming summary judgment for employer on discriminatory discharge claim where employer believed plaintiff had lied about his whereabouts but was mistaken; "evidence which supports only an inference that the employer was wrong will not support a finding of pretext").

Similarly, the fact that Plaintiff was told to call in everyday (Am. Compl. ¶30) also is not evidence of discriminatory animus, but is consistent with Delaware Park's attendance policy. (Attendance Policy, DP0122, A177-181; DeLucia Aff. ¶12, A6-7)  On September 2, 2005, in response to Plaintiff's questions regarding the availability of light duty work, and because Plaintiff seemed unwilling to accept the decision that he would not be offered a light duty assignment, Plaintiff also was told to check for the availability of light duty work when he called in.  (DeLucia Aff. ¶12, A6-7; Email, DP0044, A251)  This instruction, which was given by a Claims Coordinator in the Risk Management Department, in no way evidences racially discriminatory animus on Ms. DeLucia's part in denying Plaintiff light duty work.

Finally, to the extent Plaintiff believes that Ms. Dixon, and not Ms. DeLucia, was the true decision-maker with regard to the denial of a light duty assignment, this assertion does nothing to advance his discrimination claim.  In this regard, Plaintiff may point to an email message from

Delaware Park's Claims Coordinator to Ms. Dixon, which discusses the availability of light duty work for Plaintiff. (Email, DP0044, A251-252) While Ms. Dixon was consulted about her knowledge of Plaintiff's work restrictions and the availability of light duty work in the Cage Department, she was not the ultimate decision-maker with regard to the denial of light duty. (DeLucia Aff. ¶¶11-12, A5-7; Dixon Aff. ¶¶15-16, A18-19) Furthermore, even if Ms. Dixon had been responsible for denying Plaintiff light duty work in September 2005, Plaintiff has no probative evidence showing any discriminatory motive on Ms. Dixon's part.[15] More importantly, he cannot show that Ms. Dixon's involvement would have changed the reason why the decision was made; namely, the general lack of such work and Delaware Park's concern over Plaintiff's lack of candor about the nature and extent of his injury and whether he had worked outside his restrictions. (*See* Dixon Aff. ¶14, A18; 16, A18-19) Therefore, because Plaintiff cannot show that the decision to deny him a light duty assignment was based on his race and/or national origin, summary judgment must be granted in favor of Delaware Park.

### B.    Plaintiff Cannot Support His Retaliation Claim.

Neither can Plaintiff show that Ms. DeLucia's denial of Plaintiff's request for a light duty assignment in September 2005 was in retaliation for his complaints of discrimination. As discussed above, Plaintiff must show a causal link between this purportedly adverse action and his protected activity. *Weiler*, 2007 U.S. App. LEXIS 25803, at *5. Like his claim for retaliatory discharge, Plaintiff's allegations are meritless because he cannot show that Ms. DeLucia, the

---

[15] To the extent that Plaintiff's relies on Ms. Dixon's alleged comments about Arabs (discussed *supra*) such alleged comments do not show pretext, as they are far too remote in time, isolated, and unrelated to Plaintiff's request for light duty work in September 2005. *See Rubinstein*, 218 F.3d at 400-01; *Johnson v. Penske Truck Leasing Co.*, 949 F. Supp. 1153, 1179-80 (D.N.J. 1996) (granting summary judgment to employer, explaining "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision") (internal citations omitted).

individual responsible for denying him light duty work, was aware of his complaints when she made this decision. Therefore, he cannot survive summary judgment on this claim.

Again, to the extent Plaintiff claims Ms. Dixon was the real decision-maker, he still cannot show that the decision was in retaliation for his complaints of discrimination. Ms. DeLucia and Ms. Dixon shared a concern that Plaintiff already had been working outside his restrictions and might continue to do so (DeLucia Aff. ¶11, A5-6; Dixon Aff. ¶14, A18), which is a legitimate reason for denying him light duty and consistent with Delaware Park's standing policies and practices. Plaintiff has no evidence to show this was not the true reason.

## VI.    DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S WORKERS' COMPENSATION RETALIATION CLAIM.[16]

### A.    Plaintiff Cannot Show He Was Terminated Because He Filed A Workers' Compensation Claim.

Generally, claims for retaliation in violation of a state workers' compensation statute are analyzed in the same manner as claims under Title VII, including the use of the burden shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Dunsmuir v. May Dep't Stores Co.*, 120 Fed. Appx. 927, 929 (3d Cir. 2005) (noting with approval district court's analogy of workers' compensation retaliation claim under Pennsylvania law to Title VII retaliation claim).[17] Here, Plaintiff cannot establish a *prima facie* case of workers' compensation retaliation because he cannot show that a causal link exists between his application for and receipt of worker's compensation benefits and his termination of employment.[18]

---

[16] Plaintiff alleged his workers' compensation retaliation claim for the first time in his proposed First Amended Complaint. Delaware Park did not oppose the addition of this claim.

[17] The Delaware Courts have not ruled on this issue.

[18] Plaintiff's termination is the only event relevant to his workers' compensation claim. To the extent Plaintiff relies on other actions to support this claim, they are time-barred, as discussed in Section VI. B., *infra*.

Plaintiff filed his first workers' compensation claim in May 2004, more than twenty months prior to his termination, and filed his most recent claim in April 2005, nearly nine months prior to his termination. (First Report of Injury, A206; DP0661-662, A230-231; Pl. Dep. at 47, A48; DeLucia Aff. ¶4, A2-3)  The timing of these events is far too attenuated to prove causation. *See Urey v. Grove City Coll.*, 94 Fed. Appx. 79, 81 (3d Cir. 2004) (affirming summary judgment for employer on worker's compensation retaliation claim, holding action taken six months after filing of workers' compensation claim did not support inference of improper motive).

Plaintiff's only other purported evidence is similarly flawed.  For example, Plaintiff testified to his belief that his being sent home on leave in September 2005 evidences Delaware Park's retaliatory intent. (Pl. Dep. at 195, A129)  Plaintiff's placement on leave, however, does not demonstrate that his ultimate termination in February 2006 was based on his workers' compensation claim.  Delaware Park had no obligation to manufacture light duty work or to keep Plaintiff in the workplace at the risk that Plaintiff might further injure himself.  Plaintiff has proffered no facts showing that the decision to place him on this leave was actually made to penalize him for filing a workers' compensation claim, or more importantly, that his termination after the leave was based on his workers' compensation status.  In fact, this leave permitted him to receive compensation under Delaware Park's worker's compensation insurance policy. (*See* DeLucia Aff.¶11, A5-6, Pl. Dep. at 118-120, A87-89)

Finally, to the extent that Plaintiff alleges that Delaware Park's initial investigation and denial of his workers' compensation claim was in itself a retaliatory action, this claim is meritless.  In his Amended Complaint, Plaintiff contends that he was "compelled to obtain an attorney" because Delaware Park contested his workers' compensation claim, and that he had no

income while on leave from April 13, 2005 to June 13, 2005 because Delaware Park denied his claim. (Am. Compl. ¶¶18; 26.) Delaware Park, however, has no duty to accept Plaintiff's (or any other employee's) worker's compensation claim simply by virtue of the fact that it has been filed. To suggest that an employer's preliminary denial and investigation of a claim (or that of its insurer) somehow violates the workers' compensation laws is nonsensical, as such a holding effectively would deprive employers and their insurers of their right to defend worker's compensation claims, no matter how frivolous. This obviously could not have been the legislative intent behind 19 *Del. C.* § 2365.

Moreover, even if Plaintiff could state a retaliation claim under this theory, such a claim would not succeed in light of the record facts. Plaintiff asserts that his claim for workers' compensation benefits, which was first filed in May 2004 and then again in April 2005, was the result of a workplace injury to his back occurring in December 2003. (Pl. Dep. at 44, A46) Plaintiff admits that he did not report this injury to Delaware Park at that time. (*Id.*) Plaintiff's failure to timely report this injury (until months after it occurred) naturally raised suspicions about the nature of this injury and the compensability of his claim. (DeLucia Aff. ¶4, A2-3; First Report of Injury, A206) Given these facts, Delaware Park's insurer's preliminary denial of Plaintiff's claim does not evidence bad faith. In addition, the record evidence establishes that, upon the recommendation of Delaware Park's defense medical examiner, Delaware Park timely acknowledged Plaintiff's claim for worker's compensation benefits without resort to a court hearing or any further dispute. (Pl. Dep. at 45, A47; 118, A87; DeLucia Aff. ¶6, A3-4) Plaintiff does not and cannot claim that he was denied any workers' compensation benefits to which he was entitled, or that Delaware Park interfered with or hindered Plaintiff's claim for worker's compensation benefits once it had received this information. (Pl. Dep. at 44-45, A46-47; 120,

A89). Therefore, even if the Delaware courts were to recognize a cause of action under 19 Del. C. § 2365 based solely on the initial denial and/or administration of a workers' compensation claim, which Delaware Park submits is dubious, Plaintiff still has no evidence to support his claim.

**B.      Plaintiff's Claim Under 19 Del. C. § 2365 Is Limited To His Termination.**

To the extent Plaintiff believes that Delaware Park took any other alleged adverse action against him, other than his termination, in retaliation for filing a workers' compensation claim, such claims are time-barred.[19]    Claims brought pursuant to the Delaware Workers' Compensation Act are governed by a two-year statute of limitations. *See* 19 Del. C. § 2365. Plaintiff first alleged his claim for workers' compensation retaliation in his proposed First Amended Complaint, filed on October 2, 2007 (D.I. 41), so the relevant time period for purposes of this claim begins on October 2, 2005. As such, the only pertinent event occurring after October 2, 2005 is Plaintiff's termination, as he was placed on leave in September 2005 and never returned to active employment before his discharge from Delaware Park.

Any argument by Plaintiff that his (proposed) worker's compensation retaliation claim relates back to the original Complaint is of no avail. The Federal Rules of Civil Procedure state that "[a]n amendment of pleading relates back to the date of the original pleading when…(2) the claim or defense asserted in the amended pleading arose out of the same conduct, transaction, or

---

[19] Plaintiff does not include any other acts in Count I of his proposed First Amended Complaint, which is titled "Delaware Workers' Compensation Act – Wrongful Termination." (Am. Compl.) In this Count, he alleges only that "Delaware Park terminated Mr. Almakhadhi's employment because he filed a worker's compensation claim." (Am. Compl. ¶62 (emphasis added)). However, at his deposition, Plaintiff alleged that various other acts throughout his employment were in retaliation for having filed a worker's compensation claim, including his promotions to Satellite Cashier in 2004, not being selected for a Main Bank position in 2005, scrutiny by Delaware Park's surveillance department, and the decision not to give him light duty in September 2005. (Pl. Dep. 186-193, A121-128)

occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c).

In *Bensel v. Allied Pilots Association*, 387 F.3d 298 (3d Cir. 2004), *cert. denied*, 544 U.S. 1018

(2005), the Third Circuit stated that in applying this rule, courts should look to "whether the

opposing party has had fair notice of the general fact situation ***and legal theory*** upon which the

amending party proceeds." *Id.* at 310 (emphasis added).  Nowhere in the initial complaint (or

attached Charge of Discrimination) does Plaintiff allege that the acts of which he complains were

the result of retaliation for filing a workers' compensation claim, and the facts necessary to prove

Plaintiff's original claims of race, national origin, and disability discrimination are not

reasonably related to the facts necessary to demonstrate wrongful retaliation in violation of the

Delaware Workers' Compensation Act.  Moreover, in his response to Delaware Park's First Set

of Interrogatories, which was filed prior to his proposed amended complaint (D.I. 41),  Plaintiff

affirmatively stated that facts related to his workers compensation claim were not in issue.  (Pl.

Resp. Def. First Set of Interrogs., No. 6, A146 ("This case [is] about discrimination not about

workers comp.").)  As a result, Delaware Park did not have fair notice of the legal theories upon

which such claims might rest.  Therefore, the proposed worker's compensation claim does not

relate back to the original complaint, and only encompasses those acts occurring within the

applicable statute of limitations as calculated from October 2, 2007.

Even if Plaintiff's workers' compensation retaliation claim relates back to the filing date

of his original Complaint (February 12, 2007), however, his claim still cannot survive summary

judgment.  Plaintiff has no evidentiary support for a workers' compensation retaliation claim

based on any of the events described in his deposition (*see* note 19, *supra*), and his allegations in

this regard are supported by no more than speculation.

**VII.  DELAWARE PARK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FMLA RETALIATION CLAIM.[20]**

Delaware Park also is entitled to summary judgment on Plaintiff's claim for wrongful termination in retaliation for exercising his FMLA rights.[21]  To establish a *prima facie* case of retaliation under the FMLA, Plaintiff must show that:  (1) he took FMLA leave; (2) he suffered an adverse employment action; and (3) the adverse decision was causally related to his leave. *Constant*, 2007 WL 2570810, at *4.  Plaintiff contends that Delaware Park terminated him in retaliation for taking FMLA leave because "[t]hey let me use my FMLA to fire me. . . . [s]o there is nothing to protect my job, get terminated." (Pl. Dep. at 185, A120)  Plaintiff's theory that Delaware Park placed him on FMLA leave so that it could terminate him for taking such leave is flawed in several respects.

First, in 2004 and 2005 Plaintiff applied and was approved for FMLA leave to care for his sick father, wife, and infant son, and for his back injury.  (FMLA Certifications, A281-310)  Plaintiff should not be heard to complain that Delaware Park granted him leave that he sought. Second, Delaware Park placed Plaintiff on leave in September 2005 for the very same reasons he was given such leave in April – June 2005, namely, his back condition.  Although Plaintiff would rather have been assigned to light duty instead of given leave, Plaintiff's preferences do not alter Delaware Park's right to place him on leave, whether or not it is FMLA leave, if he is unable to perform his job. *See Moss v. Formosa Plastics Corp.*, 99 F. Supp. 2d 737, 741 (M.D. La. 2000) ("There is nothing in [the FMLA] or jurisprudence which prevents an employer from placing an

---

[20] Plaintiff alleged a claim for retaliation under the FMLA for the first time in his proposed First Amended Complaint.  Delaware Park did not oppose the addition of this claim.

[21] Like his claim for workers' compensation retaliation, Plaintiff's claim for FMLA retaliation does not relate back to the filing of his original complaint. *See* Sec. VI. B., *supra*.  Thus, the relevant time period begins two years prior to the filing of the proposed First Amended Complaint, and his FMLA retaliation claim is limited to the events surrounding his termination. *See* 29 U.S.C. § 2617(c)(1).

employee on unpaid leave."); *Love v. City of Dallas*, 1997 U.S. Dist. LEXIS 21982, at *17-18 (N.D. Tex. May 14,  1997) (granting summary judgment to employer on FMLA claim, where claim was based on allegation that "involuntarily placing plaintiffs on FMLA leave without request" violated FMLA).

Third, and most importantly, Plaintiff was not perfunctorily terminated, as he implies, but instead was permitted to remain out of work for months after his FMLA rights expired.[22]  Prior to his termination he was advised of the need to return within a time certain, and the evidence shows unequivocally that he could not have returned to work at any point during his leave, or thereafter. (Pl. Dep. at 208-209, A131-132;  Email, A259; DP0100-101 and DP0052, A259-260, A263).

Such action by an employer is fully permissible. *See Ragsdale*, 535 U.S. at 90. This fact holds true regardless of whether Plaintiff became eligible for a "new" twelve-week FMLA period beginning on October 12, 2005, as he alleges.[23]  (Pl. Dep. at 105, A83)  *See id*; *Constant*, 2007 WL 2570810, at *6 (noting that plaintiff had no evidence showing that employer's reasons for terminating her were manufactured in retaliation for her requested FMLA leave and affirming grant of summary judgment in favor of employer on FMLA retaliation claim); *Miller v. Personal-Touch of Virginia, Inc.*, 342 F. Supp. 2d 499, 515 (E.D. Va. 2004) (granting summary judgment in favor of employer; plaintiff was not denied rights under the FMLA where she received the full twelve week entitlement), *aff'd*, 153 Fed. Appx. 209 (4th Cir. 2005).

---

[22] Moreover, during his various leaves, Plaintiff received all rights and benefits to which he was or might have been entitled under the FMLA.  (Pl. Resp. Def.'s First Req. Admissions, No. 10, 13, 14, A152-154; DeLucia Aff. ¶12, A6-7)

[23] Delaware Park does not concede that Plaintiff was entitled to any FMLA leave as of October 12, 2005 as he alleges.  Eligibility for leave under the FMLA is determined at the outset of the leave, which for Plaintiff began no later than September 2, 2005. *See* note 8, *supra*.   Plaintiff admits that he had exhausted his available FMLA leave by this date. (A310)

Similarly, Plaintiff has no evidence to support his assertion that his employment was terminated "to prevent incurring costs concerning any future medical leaves [he] might have." (Am. Compl. ¶59.) Tellingly, Plaintiff testified at his deposition that he did not even understand the meaning of this statement (Pl. Dep. at 183, A119) and in any event has proffered no evidence to support this assertion. Regardless, it is irrelevant. *See Conroy v. Township of Lower Merion*, 77 Fed. Appx. 556, 559-60 (3d Cir. 2003) (affirming judgment as a matter of law for employer on FMLA retaliation claim when plaintiff had no evidence she was fired for exercising her FMLA rights or that employer's reasons for her discharge were pretextual); *Voorhees v. Time Warner Cable Nat'l Div.,* 1999 WL 673062, at *7 (E.D. Pa. Aug. 30, 1999) (granting summary judgment to employer on  FMLA retaliation claim because plaintiff could not show that employer's legitimate business reason for her termination, namely, that she could not return to work after her leave of absence expired, was pretextual; stating "[t]he fact that [employer] terminated [plaintiff] before she had returned from her second leave of absence is not evidence of pretext for retaliation because [plaintiff] had already used her entitled leave and was no longer protected under the FMLA. [Plaintiff] presented no evidence from which a reasonable jury could infer that she was terminated because she took leave under the FMLA."). Simply put, Plaintiff cannot show that he was terminated in retaliation for using FMLA leave.

## CONCLUSION

Wherefore, for the foregoing reasons, Delaware Park respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's proposed First Amended Complaint, in its entirety, with prejudice.

POTTER ANDERSON & CORROON LLP

By: _____
      Wendy K. Voss (#3142)
      Jennifer C. Wasson (#4933)
      Hercules Plaza 6th Floor
      1313 N. Market Street
      P.O. Box 951
      Wilmington, DE 19899-0951
      (302) 984-6000
      wvoss@potteranderson.com – Email
      jwasson@potteranderson.com - Email

*Attorneys for Defendant Delaware Park, L.L.C.*

Dated: November 27, 2007
834181v1 / 14672-132

## CERTIFICATE OF SERVICE

I hereby certify this 27th day of November, 2007, that true and correct copies of the foregoing **OPENING BRIEF IN SUPPORT OF DEFENDANT DELAWARE PARK, L.L.C.'S MOTION FOR SUMMARY JUDGMENT** was electronically filed with U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing System) which will send notification of such filing that the document is available for viewing and downloading via CM/ECF to the following counsel of record:

Glenn A. Brown, Esquire
Real World Law, PC
916 North Union Street, Suite #2
Wilmington, DE 19805

I further certify this 27th day of November, 2007, that a courtesy copy of the above-mentioned document was sent by electronic mail to the following:

Frank Conley, Esquire
The Conley Firm
7715 Crittendon Street, Suite 133
Philadelphia, PA 19118

Wendy K. Voss (#3142)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000 - Telephone
(302) 658-1192 - Facsimile
wvoss@potteranderson.com