## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SAMI ALMAKHADHI,                )
                                )
                    Plaintiff,  )          Civ. A. No. 07-78-JJF
                                )
        v.                      )
                                )
DELAWARE PARK,                  )
                                )
                    Defendant,  )

---

## REPLY BRIEF IN FURTHER SUPPORT OF
## DEFENDANT DELAWARE PARK, L.L.C.'S
## MOTION FOR SUMMARY JUDGMENT

---

POTTER ANDERSON & CORROON LLP
Wendy K. Voss (#3142)
Jennifer Wasson (#4933)
Hercules Plaza – Sixth Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware  19899
(302) 984-6000
wvoss@potteranderson.com – Email
jwasson@potteranderson.com - Email

*Attorneys for Defendant Delaware Park, L.L.C.*

Dated:  December 20, 2007
837855 / 14672-132

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ...............................................................................1

INTRODUCTION ............................................................................................1

ARGUMENT ...................................................................................................4

I.      PLAINTIFF'S ARGUMENT REGARDING THE STANDARD FOR SUMMARY
        JUDGMENT IN EMPLOYMENT CASES IS INAPT .......................................4

II.     PLAINTIFF FAILED TO POINT TO COMPETENT RECORD EVIDENCE TO SHOW
        HE IS DISABLED OR OTHERWISE TO SUPPORT HIS CLAIM OF DISABILITY
        DISCRIMINATION. ........................................................................................4

        A.    Plaintiff Has No Evidence Demonstrating He Is Disabled ...................................4

        B.    Plaintiff Has No Evidence Demonstrating A Record of A Disability ....................5

        C.    Plaintiff Has No Evidence Demonstrating That Delaware Park
              Regarded Him As Disabled ..............................................................................6

        D.    Plaintiff Has No Evidence Demonstrating Disability Discrimination ....................8

III.    PLAINTIFF FAILED TO POINT TO COMPETENT RECORD EVIDENCE TO
        SUPPORT HIS TITLE VII CLAIMS...................................................................8

        A.    Plaintiff Failed To Present Evidence To Show That Delaware Park's Actions
              Were Discriminatory, A Pretext For Discrimination, Or Retaliatory ....................8

              1.   Plaintiff's Termination Did Not Violate Title VII .............................................9

              2.   The Failure To Promote Plaintiff Did Not Violate Title VII ............................11

              3.   The Denial of Light Duty Work To Plaintiff Did Not Violate Title VII .........12

              4.   Plaintiff Has No Evidence Of Any Other Violation Of Title VII....................15

IV.     PLAINTIFF FAILED TO POINT TO COMPETENT RECORD EVIDENCE TO
        SUPPORT HIS WORKERS' COMPENSATION RETALIATION CLAIM...................16

V.      PLAINTIFF FAILED TO POINT TO COMPETENT RECORD EVIDENCE TO
        SUPPORT HIS FMLA RETALIATION CLAIM............................................19

VI.     PLAINTIFF'S REMAINING ARGUMENTS ARE WITHOUT LEGAL OR FACTUAL
        MERIT AND CANNOT SAVE HIS CLAIMS................................................20

CONCLUSION...................................................................................................20

i

# TABLE OF AUTHORITIES

**CASES**

**Pages**

*Andreoli v. Gates,*
    482 F.3d 641 (3d Cir. 2007)......................................................................5

*Billet v. CIGNA Corp.,*
    940 F.2d 812 (3d Cir. 1991), *abrogated on other grounds by*
    *St. Mary's Honor Ctr. v. Hicks,* 509 US. 502, 517-18 (1993) ...................20

*Bush v. Commonwealth Edison Co.,*
    990 F.2d 928 (7th Cir. 1993) ....................................................................13

*Chevron U.S.A. Inc. v. Echazabal,*
    536 U.S. 73 (2002)......................................................................................7

*Clark County Sch. Dist. v. Breeden,*
    532 U.S. 268 (2001)..................................................................................11

*Fuentes v. Perskie,*
    32 F.3d 759 (3d Cir. 1994).......................................................................14

*Gairola v. Virginia Dep't of Gen. Servs.,*
    753 F.2d 1281 (4th Cir. 1985) ..................................................................12

*Hanani v. New Jersey Dep't of Envtl. Prot.,*
    205 Fed. Appx. 71, (3d Cir. 2006)............................................................16

*Healy v. New York Life Ins. Co.,*
    860 F.2d 1209 (3d Cir. 1988)....................................................................10

*Keller v. Orix Credit Alliance, Inc.,*
    130 F.3d 1101 (3d Cir. 1997).....................................................................12

*Kelly v. Drexel Univ.,*
    94 F.3d 102 (3d Cir. 1996)..........................................................................6

*Lujan v. National Wildlife Fed'n,*
    497 U.S. 871 (1990)..................................................................................15

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973)....................................................................................9

*Meiri v. Dacon,*
    759 F.2d 989 (2d Cir.),
    *cert denied,* 474 U.S. 829 (1985) ...............................................................4

ii

*Narin v. Lower Merion Sch. Dist.*,
  206 F.3d 323 (3d Cir. 2000)..................................................................................4

*Quiroga v. Hasbro, Inc.*,
  934 F.2d 497 (3d Cir. 1991)................................................................................12

*R.G.H. v. Abbott Labs.*,
  No. 93 C 4361, 1995 U.S. Dist. LEXIS 1860 (N.D. Ill. Feb. 16, 1995)...................15

*Robinson v. Johnson*,
  313 F.3d 128 (3d Cir. 2002)................................................................................17

*Sherrod v. Philadelphia Gas Works*,
  57 Fed. Appx. 68 (3d Cir. 2003)..........................................................................19

*Simpson v. Kay Jewelers*,
  142 F.3d 639 (3d Cir. 1998)................................................................................13

*Smith v. American Express Co.*,
  853 F.2d 151 (2d Cir. 1988)..................................................................................4

*Taylor v. Pathmark Stores, Inc.*,
  177 F.3d 180 (3d Cir. 1999)..................................................................................7

*Tice v. Centre Area Transp. Auth.*,
  247 F.3d 506 (3d Cir. 2001)..................................................................................6

*Webner v. Titan Distrib., Inc.*,
  267 F.3d 828 (8th Cir. 2001) .................................................................................5

*Woodson v. Scott Paper Co.*,
  109 F.3d 913 (3d Cir. 1997)................................................................................19

**OTHER AUTHORITIES**

29 C.F.R. § 1630.2(k) ..............................................................................................6

FED. R. CIV. P. 12 (b) .............................................................................................17

Title VII of the Civil Rights Act of 1964 ("Title VII") ....................................... *passim*

## SUMMARY OF ARGUMENT

I.      Plaintiff failed to adduce competent record evidence in support of his claims and has failed to direct the Court to record evidence in support of most, if not all, of his arguments opposing summary judgment.  Even when such citations are offered, the citations fail to adequately support Plaintiff's assertions.

II.     Plaintiff's argument regarding the standard for summary judgment in employment cases is inapt.  This Court may grant summary judgment, even where intent is at issue.

III.    Plaintiff failed to present evidence that he is disabled within the meaning of the ADA, or that Delaware Park's actions were a pretext for disability discrimination.

IV.     Plaintiff fails to establish a *prima facie* case of national origin or race discrimination or retaliation, and presents no evidence showing that Delaware Park's actions were a pretext for such discrimination.

V.      Plaintiff failed to present evidence in support of his workers' compensation retaliation claim.

VI.     Plaintiff failed to present evidence in support of his FMLA retaliation claim.

VII.    Plaintiff's remaining arguments are without legal or factual merit, and cannot save his claims.

## INTRODUCTION

Plaintiff's Answering Brief in Opposition to Delaware Park's Motion for Summary Judgment (hereinafter "Answering Brief" or "AB") is an exercise in speculation and accusation that is unsupported by the record in this case.  Plaintiff's arguments thus amount to little more than diversionary tactics.  Indeed, the "facts" on which Plaintiff relies are misleading if not patently wrong, unsupported by record evidence, and often simply irrelevant.  While Delaware

1

Park cannot recount all such misstatements without exceeding its page limitation, it particularly

notes the following:

- In a futile attempt to link Karlyn Dixon to the decision to terminate his employment, Plaintiff asserts that Ms. Dixon requested Shannon DeLucia to terminate him. AB at 17. Plaintiff's citation to B21 provides no support whatsoever for this proposition. In fact, Plaintiff fails to cite to any record evidence that might rebut the ample evidence that Ms. DeLucia made the decision to terminate Plaintiff's employment.

- Again arguing that Ms. DeLucia was not the decision-maker in regard to his termination, Plaintiff asserts – without any record citation whatsoever – that she was without authority to make such a decision. AB at 19. Plaintiff further claims that Delaware Park falsely represented Ms. DeLucia's position to the Department of Labor. *Id.* The record evidence shows, however, that Ms. DeLucia was promoted to Executive Director of Human Resources in February 2006, the same month that Plaintiff was terminated. (DeLucia Aff. ¶ 2, A1.) Further, there is no record evidence whatsoever that as Director of Risk Management Ms. DeLucia was without authority to make such termination decisions. To the contrary, Ms. DeLucia testified that she was responsible for and made that decision (*id.* ¶ 15, A7-8), and other evidence of record supports this point (*see, e.g.,* DeLucia Statement, ¶ 2, 12, B 20-21; Def. Resp. Pl.'s First Int., No. 1, C24).[1]

- Plaintiff claims an elaborate conspiracy and cover-up scheme by Ms. DeLucia, Ms. Dixon, and Ms. Suhr regarding the reasons Plaintiff's termination date was modified. *See* AB at 20-21. Plaintiff makes no citations to the record in support of this speculative theory. In fact, the record shows Ms. DeLucia modified Plaintiff's termination date as a courtesy to him and to extend his health care coverage for an additional month. (DeLucia Aff. ¶ 16-18, A8-9; Pl. Dep. at 207-208, A130-131.)

- Plaintiff asserts that Beverly Pope (who was the relevant decision-maker in August 2005 regarding Plaintiff's application for promotion to Impress Supervisor) was not his supervisor. AB at 18. The record evidence shows to the contrary. (Pope Aff. ¶ 1-2, A22; Dixon Aff. ¶ 2, A13-14.)

- Plaintiff argues that Delaware Park's Human Resources Department failed to properly investigate his complaint and attempts to ascribe an anti-Arab mentality to the (former) Director of Human Resources, Micki Nardo. *See* AB at 12-13. This exaggerated claim is based on one Incident Report recording Ms. Nardo's interview of Plaintiff and her subsequent conversation with Shift Manager Stacey Suhr. (A224-226.) Plaintiff presents no evidence for his claim that this was the only investigation conducted by Ms. Nardo or to show that her investigation was inadequate. Further, the comments purportedly supporting Plaintiff's claim that Ms. Nardo held an anti-Arab bias show only that

---

[1]  Plaintiff's further claim that Delaware Park misrepresented to the DDOL that he was a union member, AB 19 n.19, is completely irrelevant, but also false. *See* Def. Resp. Pl.'s Req. Adm. No. 14, C29; B35-36.)

> Delaware Park expected Plaintiff to show respect for all its employees – including its
> female employees. Such comments are a far cry from anti-Arab bias.

In light of these and the many additional unsupported statements in Plaintiff's brief, Delaware

Park requests the Court to closely scrutinize the actual record of this case to distinguish those

facts that fairly appear in the record from those that are merely Plaintiff's bare, unsupported

allegations.

Further, Plaintiff's attempts to discredit Delaware Park and prejudice this Court through

his use of inflammatory language and repetitious and baseless allegations regarding Delaware

Park's alleged withholding of evidence and spoliation should not be countenanced by this Court.

In his Answering Brief, as well as in his prior motions to compel, Plaintiff fails to point to any

actual evidence of such misconduct. Rather, he asserts with no factual basis whatsoever that

such is the case[2] and, ironically, complains that Delaware Park failed to respond to his untimely

and impermissible discovery requests. Plaintiff's arguments in this regard are insupportable and

should be discounted.

Upon careful review, it is clear that Plaintiff's theories of wrongful conduct are without

record support, other than Plaintiff's self-serving and conclusory deposition testimony, and that

no true material question of fact exists that might prevent this Court from entering summary

judgment in favor of Delaware Park.

---

[2] As only one example, Plaintiff claims that it is "undisputed that Delaware Park has withheld
investigation files and electronic records." (AB at 3.) Delaware Park should not be called upon
to defend itself from such unsupported accusations, which are certainly not "undisputed."
Plaintiff conducted no custodial deposition and no depositions of fact witnesses by which he
might ascertain whether additional, relevant documents may exist, and failed to make valid
discovery requests for documents he now claims Delaware Park wrongfully failed to produce.
Regardless, Delaware Park denies that it has failed to respond properly to Plaintiff's actual
discovery requests, that it has spoliated documents, and that it has engaged in improper
"gamesmanship" as alleged by Plaintiff. By way of further response, Delaware Park
incorporates by reference its opposition to Plaintiff's motions to compel, D.I. 50 and 57.

## ARGUMENT

### I. PLAINTIFF'S ARGUMENT REGARDING THE STANDARD FOR SUMMARY JUDGMENT IN EMPLOYMENT CASES IS INAPT.

"[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829 (1985). Thus, when an employer provides convincing evidence to explain its conduct and the plaintiff rests upon purely conclusory allegations of discrimination, the court may conclude that no material issue of fact exists and it may grant judgment to the employer. *Smith v. American Express Co.*, 853 F.2d 151, 154 (2d Cir. 1988). Indeed, the Third Circuit has made clear that summary judgment is appropriate even when the employer's explanation of its actions is based on subjective criteria if the Plaintiff presents no evidence to establish that the employer's justification constituted pretext – as is the case here. *See, e.g., Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 333 & n.6 (3d Cir. 2000) (affirming grant of summary judgment to employer).

### II. PLAINTIFF FAILED TO POINT TO COMPETENT RECORD EVIDENCE TO SHOW HE IS DISABLED OR OTHERWISE TO SUPPORT HIS CLAIM OF DISABILITY DISCRIMINATION.

#### A. Plaintiff Has No Evidence Demonstrating He Is Disabled.

In his Answering Brief, Plaintiff does not identify any evidence demonstrating that his back or leg condition substantially limits his daily living. Rather, he asserts only that his light duty restriction, in combination with his limited education, language ability, and work experience, limits him to a narrow range of jobs and renders him disabled in the major life activity of working. AB at 26. Plaintiff's argument is discredited by his testimony that he is qualified for and capable of performing a wide variety of jobs (Pl. Dep. at 10, A32; 16-18, A35-37; Pl. Resp. to Def. First Int. No. 9, A147), owned his own business in the U.S. before being

4

employed at Delaware Park (Pl. Dep. at 23, C2), holds a University Degree from Sana'a University in Yemen (C31-32) and, indeed, prosecuted this case on his own behalf, including responding to and propounding discovery requests prior to engaging counsel.

In fact, Plaintiff presents no competent evidence that he is disabled in the major life activity of working, whether expert or otherwise, and the one case he cites is distinguishable. In that case, which was decided by the jury, the plaintiff's evidence included the testimony of a vocational expert regarding his ability to work. *See Webner v. Titan Distrib., Inc.*, 267 F.3d 828 (8th Cir. 2001). Here, however, Plaintiff presents no such expert testimony, and also fails to show the actual impact of his limitations on his ability to work. To the extent there is any evidence of his ability to work, it is in the form of Plaintiff's own testimony, and he asserts that he is both qualified for and capable of performing a broad range of jobs. *See* OB at 14-15. In light of this evidence, Plaintiff's theory that "his disability has kept him from obtaining a job," AB at 28, n.26, is nothing more than unsupported speculation.[3] Thus, Plaintiff's disability claim under the first prong of the ADA analysis fails. *See Andreoli v. Gates*, 482 F.3d 641, 651-52 (3d Cir. 2007) (affirming summary judgment for employer where plaintiff relied on her own deposition testimony, three medical evaluations, and her receipt of workers' compensation benefits to establish alleged disability; holding plaintiff had failed to show she was precluded from performing broad range of jobs).

**B.    Plaintiff Has No Evidence Demonstrating A Record of A Disability.**

---

[3] Indeed, Plaintiff's reference to his interview at Lowe's Home Improvement store, AB at 28 n. 26, does nothing to advance his claim. This quote, which is taken from Plaintiff's deposition testimony, shows only that Plaintiff believed he could routinely lift 20-25 pounds. It does not show, as Plaintiff improperly asserts, that his alleged disability prevented him from being hired. Neither can Plaintiff show that he quit his job at the pizza shop because the physical requirements were too onerous – instead, his testimony makes clear that he left that job voluntarily because "it wasn't a lot of hours . . . and I didn't know the area." AB at 6, A28.

Likewise, because Plaintiff cannot show that his back condition or any other impairment is or ever was a disability under the ADA, he cannot demonstrate that he has a record of a disability. *See Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001) (holding that former impairment must be a disability under ADA to sustain "record of" claim). This prong of the ADA analysis applies only to an individual who "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) (emphasis added). Here, Plaintiff alleges he has a current disability. He has never alleged, and the factual record does not demonstrate, that Plaintiff ever had a history of prior impairment(s) or that prior to the events at issue he had been misclassified as having a disability when he did not. As such, Plaintiff's argument with regard to Delaware Park's reliance on his "record" of medical treatments is fundamentally flawed and he cannot maintain this claim.

## C.    Plaintiff Has No Evidence Demonstrating That Delaware Park Regarded Him As Disabled.

Neither can Plaintiff show that Delaware Park regarded him as disabled. As discussed in Delaware Park's Opening Brief (hereinafter "Opening Brief" or "OB") at 16, Plaintiff cannot meet the "regarded as" standard merely by showing that certain of his managers knew about his back injury, and the evidence that Delaware Park was aware of (some of) his medical treatments does not advance his claims. AB at 27. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) (holding plaintiff's reliance on employer's awareness of impairment was insufficient to meet the "regarded as" standard).

Also unavailing is Plaintiff's unfounded assumption that Delaware Park regarded him as unable to perform his essential job functions because it sent him home on September 2, 2005. AB at 28. To the contrary, Delaware Park had no reason to regard Plaintiff as disabled because

he had apparently been working his full duty job without incident since June 2005, when he returned to work from a leave of absence with a full release from a back specialist. (Dixon Aff. ¶ 13, A17-18; Pope Aff. ¶ 2, A22-23; DeLucia Aff. ¶¶8-9, A4-5; DP0660, A233.) Delaware Park did not send Plaintiff home because it believed that he was somehow disabled, but because it did not believe he was an appropriate candidate for light duty and due to the risk of re-injury. *See* OB at 8-10 (and citations therein). Plaintiff's unsupported assertions to the contrary cast no doubt on this reason for Delaware Park's actions. Similarly, the record does not support Plaintiff's claim that because it made no effort to assign him light duty work, Delaware Park regarded him as disabled. Again, for all the reasons explained in Delaware Park's Opening Brief, he was not considered a suitable candidate for light duty work. *See id.*

Moreover, an identified risk of injury is a legitimate business reason for an employer's decision not to return an employee to work, regardless of whether or not the individual is disabled within the meaning of the ADA. *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002) (holding employer is permitted to preliminarily assess employee's ability to safely perform essential functions of job and act in accordance with that assessment, whether or not employee is disabled under ADA). Thus, the fact that Plaintiff was sent home and placed on medical leave does not demonstrate that Delaware Park regarded him as disabled.

Finally, Plaintiff's reliance on *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180 (3d Cir. 1999) is misplaced, and the case distinguishable. In *Taylor*, the employer's liability under the "regarded as" prong of the ADA rested on its mistake of fact that the employee's impairment precluded him from a broad range of jobs when it did not. *Id.* at 188. There is no evidence here that Delaware Park held such a belief regarding Plaintiff's abilities, or any other evidence that it regarded him as disabled.

### D.    Plaintiff Has No Evidence Demonstrating Disability Discrimination.

Even if Plaintiff were a qualified individual with a disability under the ADA, which he is not, his claims still could not survive summary judgment, as he has put forth no evidence showing discriminatory animus based on his alleged disability.    Plaintiff has not shown that Delaware Park's legitimate, non-discriminatory reasons for any of the alleged adverse actions are actually a pretext for disability discrimination, and nothing in the record supports such a claim. Therefore, summary judgment must be granted for Delaware Park on Plaintiff's ADA claims.[4]

## III.    PLAINTIFF FAILED TO POINT TO COMPETENT RECORD EVIDENCE TO SUPPORT HIS TITLE VII CLAIMS.

### A.    Plaintiff Failed To Present Evidence To Show That Delaware Park's Actions Were Discriminatory, A Pretext For Discrimination, Or Retaliatory.[5]

---

[4] To the extent Plaintiff also intended to assert a failure to accommodate claim based on his alleged request for the accommodation of lifting only one coin bag at a time (*see* AB at 18, 27), this claim is meritless.  Plaintiff never alleged in his Charge of Discrimination, Complaint, or proposed First Amended Complaint that Delaware Park failed to accommodate him in this way. Further, and more importantly, Plaintiff cannot show that he actually requested such an accommodation.  His citations to the record do not support this allegation (*see* A25; Pl. Dep. at 216, A233), he never testified that he made such a request (*see* Pl. Dep. at 124-26, A93-95; *see also* A259-60), and there is no other record evidence to support this notion.

[5] Plaintiff's proposed claim for hostile work environment is not currently before the Court.  His assertion that, because Delaware Park failed to move for summary judgment on this claim, he therefore is entitled to judgment in his favor shows a misapprehension of the status of this case as well as the summary judgment process.  *See* AB at 4, 29 n.27.  Regardless, the history of race-based comments he recites in his brief is greatly exaggerated and there is no evidence to show that the other actions of which he complains were based on his race, national origin, or any other protected status.  *See* AB at 10-11, 32-34.  In his brief, Plaintiff claims that he "commonly" was called a "terrorist" and that he was retaliated against after he complained.  However, Plaintiff testified that one individual made such comments on no more than two or three occasions and that he never complained.  (Pl. Dep. at 72-76, C10-14.)  In regard to the one other offensive comment made by a co-worker to the effect that this was not "his country," Plaintiff's supervisors referred this complaint to the Human Resources Department for further investigation, and the individual involved was given a final warning regarding her misconduct.  (Pl. Dep. at 73-75, C11-13; C33.)  His claim that he was criticized in a subsequent performance evaluation for being the cause of this confrontation, *see* AB at 10-11, is patently untrue (*see* B41), and based on Plaintiff's rank speculation regarding the basis for the actual comments contained in the review. (Pl Dep. at 31-32, C3-4.)    As set forth at OB 25-26, Plaintiff's unsubstantiated, last-minute

### 1. Plaintiff's Termination Did Not Violate Title VII.

Plaintiff incorrectly asserts in his Answering Brief that Delaware Park has conceded that he established a *prima facie* case of discrimination regarding his termination from employment and incorrectly identified individuals who have exhausted leave and cannot return to work as being similarly situated to Plaintiff (without offering any alternative way to define "similarly situated"). AB at 29-30.  In doing so, Plaintiff improperly attempts to shift the burden of proof to Delaware Park, for it is Plaintiff's burden to identify similarly situated individuals outside his protected class who were treated more favorably than he. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Plaintiff utterly fails to do so and, as pointed out in Delaware Park's Opening Brief at 18, has acknowledged that employees who have exhausted their leave time are routinely terminated by Delaware Park. (Pl. Dep. at 122, A91; *see also* DeLucia Aff. ¶15, A7-8; List of Terminated Employees, DP0061, A266; Termination Letters, A267-280.)

Since he cannot show that any similarly situated employees have been treated more favorably, Plaintiff instead argues that he did not exhaust his leave time prior to his termination. The only citation in Plaintiff's brief for this proposition is to an email authored by a member of Delaware Park's Benefits Department stating that Plaintiff "will not pick up any [FMLA] days until 10/12/05" (A239), which Plaintiff claims establishes he was entitled to "another 12 weeks of FMLA beginning October 12, 2005." AB at 9. However, this email shows only that Plaintiff might have been entitled to additional FMLA leave had he remained actively at work through that date. *See* OB at 19 & n.8; *id.* at 37, n.23.  Not surprisingly, Plaintiff cites to no statute, regulation, or case for his bald assertion of rights, as there is none.

---

testimony regarding Ms. Dixon's alleged race-based comments is of little, if any weight, and does not constitute circumstantial evidence in regard to the decisions at issue in this litigation.

9

Equally unavailing is his argument that Delaware Park failed to warn him that he might be terminated due to his extended absence. AB at 21 and n.23.[6] First, as discussed above, Plaintiff was well aware that employees who exhaust leave are terminated, and was equally aware he had been told he needed to return to work by a date certain and did not do so. Second, employers have no legal duty to warn employees of circumstances that might lead to their termination, and the failure to do so does not constitute evidence of pretext or discrimination. *See Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1216 (3d Cir. 1988) (affirming summary judgment for employer, rejecting argument that failure to warn showed pretext; employer was under no obligation to warn plaintiff of circumstances leading to termination).

Plaintiff's remaining arguments are equally without support. Although he claims that Ms. DeLucia had no authority to terminate him, *see* AB at 18-19, he in fact offers no evidence to that effect. *See supra,* at 2. His arguments that Ms. DeLucia had some bias or engaged in a conspiracy against him are similarly unsupported. *Id.*

Finally, Plaintiff presents no cognizable evidence that his termination was in retaliation for his complaints of race discrimination against Ms. Dixon and Ms. Suhr. He offers no competent evidence that Ms. Dixon was the real decision-maker or that Ms. DeLucia was aware of his complaints at the time she made the decision. The one email to which he points regarding Ms. Dixon is consistent with her testimony that her only involvement with the termination was to process the requisite Personnel Action Notice. (*See* B4-B5; Dixon Aff. ¶ 17, A19.) In that

---

[6] Plaintiff's assertion (AB 21, n.23) that Delaware Park's statement to the DDOL was in conflict with the actual evidence goes too far. As shown by the cited submission to the DDOL (B36), Delaware Park was describing its decision-making process in regard to non-disciplinary terminations from employment. That response did not concern the process whereby employees are notified of their termination(s). The fact that Plaintiff's termination letter was delayed has been addressed in detail, and shows only the kind of administrative error that might occur in any large company. Indeed, it inurred to Plaintiff's benefit because, as a result, he enjoyed an additional month of health coverage paid for in large part by Delaware Park.

email, Ms. Dixon requested a termination date from the Human Resources Department for the purpose of processing that paperwork, which evidence utterly fails to show that she was responsible for the actual decision.

In regard to Ms. DeLucia, he points only to a statement made to the Department of Labor by Delaware Park that Plaintiff used the word "discrimination" in a conversation with Ms. DeLucia. (B39) As explained, therein, however, Plaintiff did not relate this complaint to his race or national origin, and the mere use of the word "discrimination" to describe one's complaint is not enough to bring it within the purview of protected activity under Title VII. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (affirming summary judgment for employer on retaliation claim, explaining no reasonable person could have understood plaintiff's complaint to describe a violation of Title VII). Notably, Plaintiff testified that he had only one conversation with Ms. DeLucia, which took place <u>after</u> his termination, and Plaintiff confirmed that he did not discuss his earlier complaints of race or national origin discrimination with her. (Pl. Dep. at 196-197, 203-208, C15-22; *see also* Pl.'s Resp. Def.'s First Req. Adm. No. 1, A150.) Rather, he complained of "discrimination" because he had not been warned he might be terminated and had not (yet) received a letter advising him of that action. (*Id.* at 208, C22.) In short, Plaintiff has no evidence to establish that Ms. DeLucia was aware of his complaints of race discrimination at any time prior to his termination, and cannot establish the causal nexus necessary to show retaliation in violation of Title VII.

## 2. The Failure To Promote Plaintiff Did Not Violate Title VII.

Plaintiff also has no evidence to show that the failure to promote him was in violation of

Title VII. In regard to the one position at issue,[7] Plaintiff fails to present any evidence to show that he was more qualified than Penny Payne, the candidate who was selected, and fails to point to any evidence of pretext. Absent such evidence, Plaintiff's claim must fail. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (affirming summary judgment for employer on ADEA failure to promote claim, holding plaintiff had to show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."); *see also Gairola v. Virginia Dep't of Gen. Servs.*, 753 F.2d 1281, 1287 (4th Cir. 1985) (affirming judgment for employer on failure to promote claim, holding plaintiff failed to satisfy her burden to show she was better qualified for position).

Neither can Plaintiff show that this decision was retaliatory. He presents no evidence to show that Beverly Pope was not the decision-maker, and no evidence to show that Ms. Pope was aware of his prior complaints of race discrimination. Indeed, Plaintiff agrees that Ms. Pope held no bias against him. (Pl. Dep. at 87, A71.) Therefore, summary judgment should be granted to Delaware Park.

### 3. The Denial of Light Duty Work To Plaintiff Did Not Violate Title VII.[8]

As with his other claims under Title VII, Plaintiff offers no evidence that the decision not to grant him light duty in September 2005 was due to discrimination on the basis of his race or

---

[7] Plaintiff's attempt to rely on Delaware Park's "failure to promote Mr. Almakhadhi to over a dozen positions for which he was qualified," AB at 31, is an example of his diversionary tactics. As set forth at OB 23 n.13 (which Plaintiff makes no effort to refute), the applicable statute of limitations bars any claims based on these decisions. Moreover, Plaintiff has presented no evidence other than his rank speculation to support his allegation that such decisions were the result of bias. Such unsupported, conclusory allegations are insufficient to defeat a motion for summary judgment. *See Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991).

[8] Delaware Park notes that Plaintiff makes no legal argument in support of his Title VII claim based on the denial of light duty. Rather, Plaintiff discussion regarding this claim is limited to his Counter-Statement of the Facts at AB 13-17, which is unsupported by any legal authority and frequently misstates the record.

national origin (or any other protected factor). He points to the fact that light duty was provided to non-Arabs, AB at 15 and 31, but fails to point to any similarly situated individual – i.e., one who had presented inconsistent medical information and who apparently had worked outside existing restrictions for most of the normally allowable light duty period – who nonetheless was given light duty. In fact, the record evidence shows that individuals who were similarly situated to Plaintiff were routinely denied light duty assignments. *See* OB at 28. Further, and fatally, he completely ignores those witness statements he himself submitted through the discovery process that establish that other employees with Middle Eastern/Arab national origin also were granted light duty. (*See* A142-143.) *See Simpson v. Kay Jewelers*, 142 F.3d 639, 645-46 (3d Cir. 1998) (affirming summary judgment for employer, holding plaintiff failed to show pretext where his evidence arbitrarily excluded employees of his own race); *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931 (7th Cir. 1993) (same, in analyzing plaintiff's *prima facie* case).

To the extent Plaintiff claims that he never actually worked outside his restrictions, *see* AB at 15 n.14, he simply misses the point. From all appearances, Plaintiff went doctor-shopping in June 2005 so as to obtain a release to work, knowing full well that his condition had not materially changed. (Pl. Dep. at 61-65, C5-9; *compare* 6/1/05 Dr. report, C34 *with* 6/13/05 Dr. report, C35 *and* 6/12/05 Dr.'s full release, A233.)[9] After his examination by Delaware Park's defense medical expert, however, and at a time when his workers' compensation claim was scheduled for a hearing, he obtained a note from a different physician confirming that he was subject to restrictions that were essentially the same as those imposed in April 2005 and in May 2005. (*See* A312, A214; A250; Pl. Dep. at 109-11, A84-86.) When it learned that his medical condition had not changed in any significant regard throughout that time period, Delaware Park came to the not illogical

---

[9] Delaware Park was not privy to this entire history, but rather only knew that Plaintiff received a full release to work on June 12, 2005. (Dixon Aff. ¶ 13, A. 17.)

13

conclusion that Plaintiff should have been subject to restrictions the entire time, and only avoided

that outcome through his doctor-shopping. Further, from their observations, it appeared he had

been fully performing his job since his return to work. (Dixon Aff. ¶ 13, A17; Pope Aff. ¶ 2, A22-

23.) In short, Plaintiff was playing games and his behavior put him and Delaware Park at risk.

Even if Delaware Park were mistaken in its assessment, however – which seems to be Plaintiff's

assertion – such a mistake does not show pretext. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d

Cir. 1994) (employer's mistaken conclusion does not show pretext).

Plaintiff's arguments regarding the amount of light duty available in the department, *see*

AB at 20 (citing to B2-B3), also fails to show pretext. Given that the amount of light duty is

limited, Delaware Park generally permits employees no more than 90 days of such duty. (DeLucia

Aff. ¶ 11, A6.) In early September 2005, Plaintiff already had been working in apparent violation

of his restrictions (*i.e.*, in lieu of light duty) for nearly two and one-half months. Under all of the

circumstances, Ms. DeLucia did not believe it was appropriate to reserve a light duty spot for him.

(DeLucia Aff. ¶ 11, A6.) Her decision was in no way illogical, incoherent, or implausible, and

Plaintiff has failed to meet his burden of showing pretext. *See Fuentes*, 32 F.3d at 765.

Finally, plaintiff's argument that Delaware Park failed to follow its light duty policies is not

only mistaken, it relies for the most part on Delaware Park's treatment of Plaintiff and decisions

regarding light duty made in 2004 and the spring of 2005. *See* AB at 14-15. Any claim regarding

these events is time barred. In any event, as was explained by Delaware Park in its Opening Brief

at 7-9, it did not violate its policies.[10]

---

[10]    Until it had sufficient information to establish that Plaintiff had suffered a workplace injury,
policies relating to the treatment of employees with workplace injuries simply did not apply. Once
such information was received, Delaware Park reasonably determined not to provide light duty to
Plaintiff. The record evidence shows that such action was completely consistent with its light duty

### 4.  Plaintiff Has No Evidence Of Any Other Violation Of Title VII.

Although Plaintiff asserts at AB 30 that he suffered additional adverse actions in violation of Title VII, he fails to specifically identify those claims.  At most, Plaintiff alleges the following in his Counter Statement of the Facts:[11] (1) Ms. Dixon retaliated against him by directing the surveillance department to monitor him and by intimidating or embarrassing him; and (2) Delaware Park again retaliated against him in December 2005 when it failed to provide him with an annual Christmas gift.  Plaintiff's testimony and the record evidence, however, belie these allegations.

Specifically, Plaintiff testified that the surveillance department initiated calls to his department with concerns regarding his money handling practices, which his supervisors then brought to his attention.  (Pl. Dep. at 190-192, A125-27)  While Plaintiff testified to his belief that Ms. Dixon must have requested the surveillance department to watch him (*id.* at 191, A126), he has presented no evidence to support that theory, other than his own speculation.  Speculative or conclusory testimony that would require the finder of fact to make an impermissible leap of faith is insufficient to raise a triable issue of fact.  *See R.G.H. v. Abbott Labs.*, 1995 U.S. Dist. LEXIS 1860, at *34-35 (N.D. Ill. Feb. 16, 1995) (rejecting plaintiff's unsupported theory that supervisor was aware of certain relevant information); *see also Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (holding mere conclusory assertions that are unsupported by specific facts are not sufficient to defeat summary judgment).

---

policies and treatment of other employees.  (DeLucia Aff. ¶11, A5-6; Workers' Comp. Policy, DP0082, A186; Denials, DP0099, A265).

[11]  It is not clear whether Plaintiff asserts these acts were violations of Title VII or might relate to one of his other legal claims.  Regardless, Plaintiff has produced no evidence to show retaliatory animus on any theory.

Similarly, Plaintiff's testimony regarding Ms. Dixon's alleged intimidation and "disrespect" (*see* Pl. Dep. at 98-99, B66-67), fails to support his claim of retaliation. Other than his testimony that such conduct made him nervous, he presents no evidence of actual intimidation or disrespect. At most he testified that Ms. Dixon stood behind him and observed his work, inquired as to specific work activities, and used informal terms such as "Yo." (*Id.*) Oversight by a supervisor can be expected in the normal course, and the use of informal language such as that described by Plaintiff fails to make out or support a claim of retaliation. To make out his claim, Plaintiff cannot rely on conclusory statements, but must demonstrate that a reasonable employee would have found the challenged action materially adverse. *See Hanani v. New Jersey Dep't of Env. Prot.,* 2006 U.S. App. LEXIS 27960, at *24 (3d Cir. Nov. 9, 2006) (affirming summary judgment for employer on retaliation claim, holding plaintiff failed to make out *prima facie* case where evidence of supervisor's actions described only trivial harms).

Plaintiff's evidence regarding the Christmas bonus is similarly flawed. First, Plaintiff was not "entitled" to that bonus as he claims. Under the applicable collective bargaining agreement, only employees who are on the payroll immediately preceding the distribution date of the bonus and who were active employees on November 15 of the year in question are eligible for the gift. (A176.) As the record clearly shows, Plaintiff was neither an active employee on November 15 nor on the payroll immediately preceding distribution of the gift. Nonetheless, after Plaintiff inquired about the gift, it was paid to him. (Pl. Dep. at 123-124, A92-93; *see also* C36.) If anything, the evidence show favorable treatment to Plaintiff, and fails completely to establish adverse action or to buttress any of Plaintiff's other claims of wrongful treatment.

## IV.     PLAINTIFF FAILED TO POINT TO COMPETENT RECORD EVIDENCE TO SUPPORT HIS WORKERS' COMPENSATION RETALIATION CLAIM.

Plaintiff offers no evidence to show that his termination was casually connected to his workers' compensation claims or that Ms. DeLucia, the relevant decision-maker, harbored any discriminatory animus against him on the basis of his workers' compensation status. Plaintiff also makes no effort to show that his failure to be promoted is related in any way to his workers' compensation claims, or that Delaware Park's initial denial and/or administration of his workers' compensation claims is actionable under Delaware law. *See* AB at 35-37.

Instead, Plaintiff relies on conclusory allegations that Ms. Dixon and Ms. Suhr "specifically" retaliated against him for filing a workers' compensation claim by subjecting him to surveillance; denying he had injured himself at work and sending him home without pay (in April 2005); and denying him a light duty assignment (in September 2005) and forcing him to call in every day. AB at 37. Even assuming that a claim based on such actions is not time-barred,[12] none of these assertions can save his (proposed) claim.[13]

First, Plaintiff's belief that he was subjected to extraordinary surveillance is mere speculation. Plaintiff testified that the undue surveillance began at some unspecified time "after his injury" in 2004, but he has no evidence to show that this alleged practice occurred at all, that it occurred after he filed his workers' compensation claim, or that Ms. Dixon, the purported

---

[12] In a footnote, Plaintiff contends that Delaware Park has "waived" its relation back argument by failing to raise it in response to Plaintiff's Motion for Leave to Amend. AB at 40, n.32. Plaintiff does not cite a single case to support this proposition, and his analysis is off the mark. Rule 12(b) of the Federal Rules of Civil Procedure does not contemplate that a statute of limitations defense be raised in a pre-answer motion, and the Third Circuit only permits an exception to this rule if the statements in the complaint, on their face, clearly reveal that a cause of action is time-barred. *See* F.R.C.P. 12(b); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

[13] Plaintiff also asserts that he was assigned work that would exacerbate his injury in retaliation for having filed a workers' compensation claim. AB at 41, n.33. The only evidence to which he points concerns his brief service as a Satellite Cashier in June and July 2004. *See* AB at 37 n.33. Such a claim is in any event time-barred. Even if it were not, Plaintiff's own testimony shows that he applied for the position, wanted and believed he could perform the job, and was permitted to return to his former position as Booth Cashier at his request. (Pl. Dep. at 186-189, A121-24.)

17

initiator of such surveillance, knew of Plaintiff's May 2004 workers' compensation claim when the surveillance allegedly began or, indeed, directed such activity. (Pl. Dep. at 98-99, B66-67; Pl. Dep. at 191, A126.)

As to his claims regarding light duty, and as was discussed above, pursuant to Delaware Park policy, light duty is reserved only for those individuals who suffer workplace injuries. (DeLucia Aff. ¶ 5, A3.) Given that Plaintiff claimed to have injured his back in December 2003, failed to report it in timely fashion to Delaware Park, had already been treated for back problems by the time he did report the injury to Delaware Park, and had no objective evidence of a workplace injury, Delaware Park reasonably believed in April 2005 that Plaintiff had not sustained a workplace injury and was not entitled to light duty.[14]  (DeLucia Aff. ¶ 5, A3.) Plaintiff puts forth no facts showing that this reason for denying him light duty and instead providing unpaid leave instead is pretextual.

Likewise, as to Delaware Park's reasons for denying Plaintiff a light duty assignment in September 2005 and as discussed in its Opening Brief at 28, Plaintiff cannot show that Delaware Park's reasons were actually a pretext for discrimination based on his workers' compensation claim(s).    Finally, the fact that Plaintiff was told to call in everyday during his absence was consistent with Delaware Park's attendance policy (DP0122, A177), and Plaintiff has no evidence to show that other employees were not subject to the same requirement.[15]  Thus, because Plaintiff puts forth no evidence calling Delaware Park's actions into question, his

---

[14] Furthermore, Plaintiff was not placed on a disciplinary "suspension" at this time, as he appears to assert. (Pl.'s Br. at 14.)  In fact, Ms. Suhr, the allegedly discriminatory actor, recommended that he apply for FMLA leave so that he would not be disciplined for his absences.  (Pl. Dep. at 100-102, A78-80; DP0661-662, A230-231.)

[15] Plaintiff's assertion that he was required to check for light duty when calling in everyday, AB at 37, does not demonstrate retaliation absent evidence that similarly situated individuals were treated differently than he or that this "requirement" was motivated by discriminatory animus. Plaintiff has shown neither.

allegations fall far short of demonstrating workers' compensation retaliation and Delaware Park is entitled to summary judgment on this claim.

## V.    PLAINTIFF FAILED TO POINT TO COMPETENT RECORD EVIDENCE TO SUPPORT HIS FMLA RETALIATION CLAIM.

As with his other claims, Plaintiff has not presented evidence sufficient to sustain his (proposed) FMLA retaliation claim.  Plaintiff simply claims that he was entitled to additional FMLA leave at the time of his termination – which, as explained in Section III, *supra*, is mistaken as a matter of law – and states that if he had known that his employment might have been terminated, he would have used his FMLA time to seek another position in the Company.[16] Such allegations, even if true, fail altogether to show that Delaware Park terminated his employment or took any other action in retaliation for his exercise of FMLA rights.  Further, Plaintiff's reliance on statements made by Ms. Suhr in regard to a promotion decision in February 2005, AB at 39 (citing A225), fail to show retaliatory animus in regard to any of the decisions at issue in this case.[17]  Because Plaintiff has presented no evidence whatsoever in support of this (proposed) claim, summary judgment should be granted to Delaware Park.

---

[16] While Plaintiff claims he was "restrained" from seeking another job at Delaware Park, AB at 38, he fails to explain – because he cannot – why he did not use the seven months of leave provided to him between September 2005 and February 2006 to seek another position within the Company.  In fact, Plaintiff used this time to study for and obtain his CDL license.  (Pl. Dep. at 11-12, A33-34.)

[17]  Plaintiff was informed that he had not been selected for this position no later than February 6, 2005.  (Dixon Aff. ¶ 5, A14.)  Therefore, any claim based on these events is time-barred.  Even if it were not, however, in order make out his claim, Plaintiff must be able to show that consideration of his FMLA leave was a determinative factor in the decision not to promote him.  *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 935 (3d Cir. 1997) (explaining standard of proof in retaliation cases under Title VII); *see also Sherrod v. Philadelphia Gas Works*, 57 Fed. Appx. 68 (3d Cir. 2003) (holding framework for analyzing FMLA retaliation claim is the same as that under Title VII).  The one comment on which Plaintiff relies fails to show that Ms. Suhr was aware that time missed by Plaintiff was FMLA leave (*see* A225) and the record evidence establishes that there were multiple considerations for this decision (*id., see also* A223; Dixon Aff. ¶ 4, A14).  In short, any such claim fails.

## VI.    PLAINTIFF'S REMAINING ARGUMENTS ARE WITHOUT LEGAL OR FACTUAL MERIT AND CANNOT SAVE HIS CLAIMS.

Reduced to its essence, Plaintiff's Answering Brief presents no more than repetitive, unsupported allegations that each and every decision by Delaware Park was discriminatory, retaliatory, or somehow in violation of law. Indeed, according to Plaintiff, each of Delaware Park's alleged violations of the ADA, Title VII, the Delaware Workers' Compensation Act, and the FMLA is evidence of every other alleged violation. His boot-strapping theory goes too far. Plaintiff is required to present evidence specific to each of his claims; instead he has attempted to combine them so as to cobble together enough evidence to avoid summary judgment. Even then, his evidence consists entirely of his own argument that Delaware Park acted wrongfully. No matter how many times Plaintiff may say it, however, "[m]erely reciting that [discrimination or retaliation] was the reason for the decision does not make it so." *Billet v. CIGNA Corp.*, 940 F.2d 812, 816 (3d Cir. 1991), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 US. 502, 517-18 (1993).

## CONCLUSION

Wherefore, for the foregoing reasons, Delaware Park respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's proposed First Amended Complaint, in its entirety, with prejudice.

POTTER ANDERSON & CORROON LLP

By: _____

Wendy K. Voss (#3142)
Jennifer C. Wasson (#4933)
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899-0951

(302) 984-6000
wvoss@potteranderson.com – Email
jwasson@potteranderson.com - Email

*Attorneys for Defendant Delaware Park, L.L.C.*

Dated:  December 20, 2007
837855v1 / 14672-132

## CERTIFICATE OF SERVICE

I hereby certify this 20th day of December, 2007, that a true and correct copy of

the foregoing **REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT DELAWARE**

**PARK, L.L.C.'S MOTION FOR SUMMARY JUDGMENT** was electronically filed with

U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing

System) which will send notification of such filing that the document is available for viewing

and downloading via CM/ECF to the following counsel of record:

> Glenn A. Brown, Esquire
> Real World Law, PC
> 916 North Union Street, Suite #2
> Wilmington, DE  19805

I further certify this 20th day of December, 2007, that one (1) true and correct

copy of the above-mentioned document was sent via First Class U.S. Mail to the following:

> Frank Conley, Esquire
> The Conley Firm
> 7715 Crittendon Street, Suite 133
> Philadelphia, PA  19118

> Wendy K. Voss (#2874)
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, Sixth Floor
> 1313 North Market Street
> P.O. Box 951
> Wilmington, DE  19899
> (302) 984-6000 - Telephone
> (302) 658-1192 - Facsimile
> wvoss@potteranderson.com - Email

> *Attorneys for Defendant Delaware Park, L.L.C.*