# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

SAMI ALMAKHADHI,

    Plaintiff,

    v.

DELAWARE PARK LLC,

    Defendant.

:
:
:
:
:   No. 1:07-cv-00078-JJF
:
:
:
:
:
:
:
:

---

## PLAINTIFF SAMI ALMAKHADHI AND DEFENDANT DELAWARE PARK, L.L.C.'S PROPOSED JURY INSTRUCTIONS

---

**THE CONLEY FIRM**
Frank J. Conley, Esquire
*Pro hac vice*
7715 Cheltenham Avenue, Suite 113
Philadelphia, PA 19118
FConley@ConleyFirm.com
(215) 836-4789

**Real World Law**
Glenn Brown, Esquire
916 N. Union St #2
Wilmington, DE 19805
(302) 225-8340

*Attorneys for Plaintiff Sami Almakhadi*

Dated: February 4, 2008

POTTER ANDERSON & CORROON LLP
Wendy K. Voss (#3142)
Jennifer Wasson (#4933)
Hercules Plaza – Sixth Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware  19899
(302) 984-6000
wvoss@potteranderson.com – Email
jwasson@potteranderson.com - Email

*Attorneys for Defendant Delaware Park, L.L.C.*

# TABLE OF CONTENTS

SECTION I:  PRELIMINARY JURY INSTRUCTIONS ............................................................1

    1.1     INTRODUCTION ...........................................................................................1

    1.2     THE PARTIES AND THEIR CONTENTIONS .......................................1

    1.3     DUTIES OF THE JURY ................................................................................1

    1.4     EVIDENCE.....................................................................................................3

    1.5     DIRECT AND CIRCUMSTANTIAL EVIDENCE ..................................8

    1.6     CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING
            TESTIMONY ...............................................................................................11

    1.7     SUMMARY OF THE LAW ........................................................................12

    1.8     BURDEN OF PROOF ..................................................................................19

    1.9     CONDUCT OF THE JURY .........................................................................21

    1.10   COURSE OF THE TRIAL ..........................................................................23

SECTION II: DELAWARE PARK'S PROPOSED JURY INSTRUCTIONS AT THE CLOSE
OF EVIDENCE

A.      GENERAL INSTRUCTIONS ............................................................................25

    2.1     INTRODUCTION .........................................................................................25

    2.2     EVIDENCE DEFINED ................................................................................27

    2.3     DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................28

    2.4     CONSIDERATION OF EVIDENCE .........................................................29

    2.5     STATEMENTS OF COUNSEL ..................................................................30

    2.6     CREDIBILITY OF WITNESSES .............................................................31

    2.7     DISCREPANCIES IN TESTIMONY ........................................................35

    2.8     BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE .................37

2.9    ALL PERSONS EQUAL BEFORE THE LAW – INDIVIDUALS AND
CORPORATIONS ...............................................................................39

2.10    ADMONITION REGARDING SYMPATHY ......................................40

B.    INSTRUCTIONS ON APPLICABLE LAW ..................................................41

3.1    BUSINESS JUDGMENT ....................................................................41

3.2    AT-WILL EMPLOYMENT .................................................................44

3.3    ADA CLAIM —INTRODUCTORY INSTRUCTION........................45

3.4    ADA – DISPARATE TREATMENT CLAIM.......................................46

3.5    ADA – DEFINITION OF DISABILITY...............................................50

3.5.1.    SUBSTANTIALLY LIMITING IMPAIRMENT ....................50

3.5.2.    "REGARDED AS" DISABLED  .............................................54

3.5.3.    "RECORD OF" DISABILITY  [*If permitted by the Court*]...............56

3.6    ADA – NON-DISCRIMINATORY REASON/PRETEXT ...................58

3.6.1    ADA  -- REASONABLE ACCOMMODATION CLAIM .................62

3.6.2    ADA – DEFINITION OF "QUALIFIED INDIVIDUAL"  .................65

3.7    TITLE VII – INTRODUCTORY INSTRUCTION .............................68

3.8    TITLE VII – DISPARATE TREATMENT – PRETEXT CLAIM ....................70

3.9    TITLE VII – RETALIATION CLAIM  .................................................76

3.10    TITLE VII – HOSTILE WORK ENVIRONMENT
CLAIM [*If permitted by the Court*]  ......................................................82

3.11    TITLE VII – HOSTILE WORK ENVIRONMENT CLAIM – EMPLOYER'S
AFFIRMATIVE DEFENSE [*If claim permitted by the Court*] ..........................86

3.12    FMLA – INTRODUCTORY INSTRUCTION ....................................88

3.13    FMLA – EMPLOYER'S RIGHT TO PLACE EMPLOYEE ON LEAVE ..........91

3.14    FMLA – DISCRIMINATION CLAIM .................................................93

3.15    FMLA – INTERFERENCE CLAIM  [*If permitted by the Court*] .......................98

C.    INSTRUCTIONS ON DAMAGES .......................................................................100

4.1    EFFECT OF INSTRUCTION AS TO DAMAGES ............................................100

4.2    COMPENSATORY DAMAGES – ADA AND TITLE VII CLAIMS .............102

4.3    ADVISORY INSTRUCTION ON BACK PAY – ADA AND TITLE VII
CLAIMS ..............................................................................................................108

4.4    ADVISORY  INSTRUCTION  ON  FRONT  PAY  –  ADA  AND  TITLE  VII
CLAIMS ..............................................................................................................112

4.5    PUNITIVE DAMAGES – ADA AND TITLE VII CLAIMS ...........................116

4.6    NOMINAL DAMAGES – ADA AND TITLE VII CLAIMS ...........................121

4.7    COMPENSATORY DAMAGES  -- FMLA CLAIMS ......................................122

4.8    FMLA – NO RIGHT TO EMOTIONAL DISTRESS DAMAGES ..................128

4.9    FMLA – NO RIGHT TO PUNITIVE OR NOMINAL DAMAGES .................129

4.10    MITIGATION OF DAMAGES...........................................................................130

D.    INSTRUCTIONS ON DELIBERATION AND VERDICT...........................................134

5.1    DELIBERATION AND VERDICT ....................................................................134

5.2    VERDICT FORM................................................................................................136

5.3    COURT HAS NO OPINION...............................................................................137

## SECTION I:  PRELIMINARY JURY INSTRUCTIONS

**1.1**    **INTRODUCTION  [*JOINT*]**

Members of the jury:  Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

**1.2**    **THE PARTIES AND THEIR CONTENTIONS  [*JOINT*]**

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

The parties in this case are the plaintiff, Sami Almakhadhi ("ALL-MACK-HOD-EE"), and the defendant, Delaware Park L.L.C., also referred to as "Delaware Park," Mr. Almakhadhi's former employer.

In this case, the plaintiff, Mr. Almakhadhi, brings discrimination and retaliation claims against Delaware Park, which I will describe for you in a few minutes.   Delaware Park denies that its conduct toward Mr. Almakhadhi was in any way wrongful and denies that any of its actions were motivated by discrimination or retaliation.

If appropriate, you will be asked to determine the amount of money damages necessary to compensate Mr. Almakhadhi for any injuries you believe he sustained as a result of any unlawful conduct committed by Delaware Park.

**1.3**    **DUTIES OF THE JURY   [*JOINT*]**

So, let me begin with the general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are.  You and you alone will be the judges of the facts.  You will then have to apply those facts to the law as I explain it to you both during these preliminary instructions and at the close of the evidence.  You must follow that

1

law whether you agree with it or not.  In addition to instructing you about the law, at the close of

the evidence, I will provide you with instructions as to what the claims of the parties mean.

Again, of course, you are bound by your oath as jurors to follow these and all the instructions

that I give you, even if you personally disagree with them.  All the instructions are important,

and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel

toward one side or the other influence your decision in any way.  Also, do not let anything that I

may say or do during the course of the trial influence you.  Nothing that I may say or do is

intended to indicate, or should be taken by you as indicating, what your verdict should be.

As I have instructed, you are to consider only the evidence in the case.  But in your

consideration of the evidence, you are permitted to draw, from facts which you find have been

proved, such reasonable inferences as seem justified in the light of your experience.

Inferences are deductions or conclusions which reason and common sense lead the jury to

draw from facts which have been established by the evidence in the case.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007.  Devitt & Blackmar, Federal Jury Practice and Instructions (Civil Cases), ¶ 72.04 (1987) |

**1.4**    **EVIDENCE**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

The evidence from which you will find the facts will consist of the testimony of witnesses (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court—you may not ask questions).  Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Some of the testimony in this trial may be in Arabic, which will then be interpreted to English. The evidence you are to consider is only that provided through the official court interpreters. Although some of you may know Arabic, it is important that all jurors consider the same evidence. Therefore, you must accept the English interpretation provided by the official court interpreter. You must disregard any different meaning.

Certain things are not evidence and must not be considered by you.  I will list them for you now:

1.    Statements, arguments, and questions by lawyers are not evidence.

2.    Objections to questions are not evidence.

3.    Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.    Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

You should use your common sense in weighing the evidence.  Consider it in light of

3

your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted  by the rules of evidence, that lawyer may object.  This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence.  You should not be influenced by the fact that an objection is made.  Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence.  Do not consider any testimony or other evidence that gets struck or excluded.  Do not speculate about what a witness might have said or what an exhibit might have shown.

As I have instructed, you are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited to the bald statements of the witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You are permitted to draw, from facts that you find have been proved, such reasonable inferences as seem justified in the light of your experience.

4

Inferences are deductions or conclusions that reason and common sense lead the jury to draw from facts which have been established by the evidence in the case.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007; Devitt & Blackmar, Federal Jury Practice and Instructions, (Civil Cases), § 72.04 (1987. |
|---|---|

1.4    **<u>EVIDENCE</u>**

***[DEFENDANT'S PROPOSED INSTRUCTION]***

The evidence from which you will find the facts will consist of the testimony of witnesses (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court -- you may not ask questions).  Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you.  I will list them for you now:

1.    Statements, arguments, and questions by lawyers are not evidence.

2.    Objections to questions are not evidence.

3.    Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.    Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted  by the rules of evidence, that lawyer may object.  This simply means that the lawyer is

6

requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
| --- | --- |

**1.5    DIRECT AND CIRCUMSTANTIAL EVIDENCE**

***[PLAINTIFF'S PROPOSED INSTRUCTION]***

There are two kinds of evidence: direct and circumstantial.  An example of direct evidence is when a witness testifies about something that the witness knows through his own senses – something the witness has seen, felt, touched, or heard.  Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

This is a discrimination case. In cases of this sort, there is rarely direct evidence of discriminatory intent. In most such cases "specific intent to discriminate will not be demonstrated by 'smoking gun' evidence." This is because there will seldom be eyewitness testimony as to the employer's mental process. As a consequence, there is no requirement that Mr. Almakhahi submit direct evidence of discrimination. This is because discrimination is often subtle, because employers who discriminate may leave no written records revealing the forbidden motive and may communicate it orally to no one. Thus, you must assess the evidence carefully and thoroughly in order to determine whether you believe that discrimination was a motivating factor in this case.

Do not be concerned about whether evidence is "direct evidence" or "circumstantial evidence."  You should consider and weigh all of the evidence that is presented to you.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

8

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007; *Reeves v. Sanderson Products, Inc.,* 530 U.S. 133, 141 (2000); *U.S. Postal Service v. Aikens,* 460 U.S. 711, 717 (1983).. |

**1.5**    **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

[*DEFENDANT'S PROPOSED INSTRUCTION*]

There are two kinds of evidence: direct and circumstantial.  An example of direct evidence is when a witness testifies about something that the witness knows through his own senses – something the witness has seen, felt, touched, or heard.  Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

Do not be concerned about whether evidence is "direct evidence" or "circumstantial evidence."  You should consider and weigh all of the evidence that is presented to you.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
|---|---|

**1.6    CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY**

[*JOINT*]

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You are the sole judges of the credibility of the witnesses.  "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it.  In deciding what to believe, you may consider a number of factors, including the following:

(1)    the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2)    the quality of the witness's understanding and memory;

(3)    the witness's manner while testifying;

(4)    whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;

(5)    whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6)    how reasonable the witness's testimony is when considered in light of other evidence that you believe;

(7)    any other factors that bear on believability.

The weight of the evidence as to a fact does not depend on the number of witnesses who testify in support of that fact.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
|---|---|

11

**1.7**     **SUMMARY OF THE LAW**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberation and decision.  But in order to help you follow the evidence, I will now give you a brief summary of the claims Mr. Almakhadhi is alleging against Delaware Park:

In this case Mr. Almakhadhi makes claims based on several federal laws.  The first of these is known as the Americans with Disabilities Act, which will be referred to in these instructions as the ADA.

The purpose of the ADA is to eliminate employment discrimination against persons with disabilities. The ADA makes it unlawful for an employer to discriminate against an employee because the person is disabled, is perceived as having, or regarded as having, a disability, as well as those who have been misclassified as having disabilities.

Under the ADA, an employer may not discriminate against an employee in the terms or conditions of his employment on the basis of a disability. In order to prove that he has a disability under the ADA, Mr. Almakhadhi must show that he had a physical impairment, or a record of a physical impairment, or was regarded by Defendant as having a physical impairment that substantially limited his ability to perform one or more of her major life activities.

Major life activities are those activities that are of central importance to most people's daily lives. In determining whether an individual is substantially limited in a major life activity, the following factors should be considered: the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of the impairment.

.

Delaware Park denies that it took any action against Mr. Almakhadhi on the basis of any alleged disability. Further, Delaware Park asserts that Mr. Almakhadhi was not a disabled individual under the ADA while he was employed by Delaware Park because he did not have a physical impairment that substantially limited any of his major life activities and Delaware Park did not regard him as being disabled.

Mr. Almakhadhi also makes several claims under a Federal Civil Rights statute commonly known as "Title VII" that prohibits employers from discriminating against an employee in the terms and conditions of employment because of, among other things, the employee's race or national origin. This statute also prohibits an employer from retaliating against an employee after he or she has taken steps seeking to enforce his or her legal rights, such as making a discrimination complaint.

Mr. Almakhadhi also makes a claim under Delaware State law that Delaware Park retaliated against him for filing a worker's compensation claim.

In this case, Mr. Almakhadhi claims that Delaware Park failed to promote him, failed to give him a light duty assignment, and terminated his employment based on his race and national origin. He also alleges that these actions were retaliatory because he made complaints of discrimination and filed a worker's compensation claim.

Delaware Park denies that it discriminated or retaliated against Mr. Almakhadhi in any way.

Mr. Almakhadhi also has made a claim under the Family and Medical Leave Act (or FMLA). The FMLA grants eligible employees the right to take up to 12 weeks of leave during a 12 month period for various reasons, including a serious health condition that makes the employee unable to perform the functions of his job.

13

The FMLA also prohibits an employer from interfering with or discriminating against an employee because of his exercise of the right to a period of unpaid leave.

Specifically, Mr. Almakhadhi claims that after he took FMLA leave, Delaware Park retaliated against him by not promoting him, by not giving him a light duty assignment, and by terminating his employment, and that Delaware Park did so because he took the leave.  Delaware Park denies that its actions were related in any way to Mr. Almakhadhi's taking FMLA leave.

*If permitted by the Court:*    Mr. Almakhadhi also claims that Delaware Park denied him FMLA leave to which he was entitled. Delaware Park claims that Mr. Almakhadhi had already used all of his FMLA leave when he was terminated from employment.

*If permitted by the Court*:  [Mr. Almakhadhi also makes claims under the Federal Civil Rights statutes that prohibit employers from discriminating against their employees in the terms and conditions of their employment because of the employee's race and/or national origin.

More specifically, Mr. Almakhadhi claims that he was subjected to a hostile or abusive work environment because of racial harassment and harassment on account of his national origin, which are forms of prohibited employment discrimination. A work environment is hostile or abusive because of racial or national origin harassment if the Plaintiff was subjected to offensive acts or statements based on race or national origin and such acts or statements were unwelcome and had not been invited or solicited, directly or indirectly, by the Plaintiffs' own acts or statements. Mr. Almakhadhi claims that the statements and actions of several supervisors, including Karlyn Dixon and Stacey Suhr, created a hostile work environment and that their actions were based on his race and national origin.   Delaware Park denies that Ms. Dixon or Ms. Suhr's actions were in any way wrongful and denies that either was motivated in any way by Mr. Almakhadhi's race or national origin.

14

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007 Source: 42 U.S.C. §12112, EEOC Technical Assistance Manual on Title I of ADA; *School Board of Nassau County v. Arline*, 480 U.S. 273 (1987); *Williams v. Phila. Housing Auth.*, 2004 U.S. App. LEXIS 18151, n.6; *Van Zande v. State of Wisconsin*, 44 F.3d 538 (7th Cir. 1995); 29 U.S.C. §2601(b)(1) and (b)(2); *Sabbrese v. Lowe's Home Centers, Inc.,* 320 F. Supp. 2d 311, 321 (W.D.Pa. 2004). |

15

**1.7**    <u>**SUMMARY OF THE LAW**</u>

[***DEFENDANT'S PROPOSED INSTRUCTION***]

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberation and decision.  But in order to help you follow the evidence, I will now give you a brief summary of the claims Mr. Almakhadhi is alleging against Delaware Park:

In this case Mr. Almakhadhi makes claims based on several federal laws.  The first of these is known as the Americans with Disabilities Act, which will be referred to in these instructions as the ADA.

Under the ADA, an employer may not discriminate against an employee in the terms or conditions of his employment on the basis of a disability.  "Disability" is a defined term with a special meaning under the ADA and I will instruct you on the meaning of that term at the conclusion of the case. Mr. Almakhadhi's claims under the ADA are that Delaware Park failed to promote him, denied him a light duty assignment, and terminated him from employment because of his alleged disability.

Delaware Park denies that it took any action against Mr. Almakhadhi on the basis of any alleged disability.  Further, Delaware Park asserts that Mr. Almakhadhi was not a disabled individual under the ADA while he was employed by Delaware Park because he did not have a physical impairment that substantially limited any of his major life activities and Delaware Park did not regard him as being disabled.

Mr. Almakhadhi also makes several claims under a Federal Civil Rights statute, commonly known as "Title VII", that prohibits employers from discriminating against an employee in the terms and conditions of employment because of, among other things, the

employee's race or national origin. This statute also prohibits an employer from retaliating against an employee after he or she has engaged in an activity protected under the statute, such as making a discrimination complaint.

In this case, Mr. Almakhadhi claims that Delaware Park failed to promote him, failed to give him a light duty assignment, denied him a bonus, and terminated his employment based on his race and national origin. He also alleges that these actions were retaliatory because he made a complaint of discrimination.

Delaware Park denies that it discriminated or retaliated against Mr. Almakhadhi in any way.

Mr. Almakhadhi also has made a claim under the Family and Medical Leave Act (or FMLA), a Federal statute that prohibits an employer from interfering with or discriminating against an employee because of his exercise of the right to a period of unpaid leave for one of the following reasons: because of the employee's own serious health condition; where necessary to care for a family member with a serious health condition; because of the birth of a son or daughter; or because of the placement of a son or daughter with the employee for adoption or foster care.

Specifically, Mr. Almakhadhi claims that after he took FMLA leave, Delaware Park discriminated against him by not promoting him, by not giving him a light duty assignment, and by terminating his employment, and that Delaware Park did so because he took the leave. Delaware Park denies that its actions were related in any way to Mr. Almakhadhi's taking FMLA leave.

17

**If permitted by the Court:**  [Mr. Almakhadhi also claims that Delaware Park denied him FMLA leave to which he was entitled.  Delaware Park claims that Mr. Almakhadhi had already used all of the FMLA leave to which he was entitled when he was terminated from employment.]

**If permitted by the Court:**  [Finally, Mr. Almakhadhi claims that Delaware Park subjected him to a hostile work environment that was the result of harassment on the basis of his race and national origin.  Delaware Park denies that Mr. Almakhadhi was subjected to harassment or any wrongful act motivated by his race or national origin.]

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
|---|---|

**1.8**    **BURDEN OF PROOF**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

This is a civil case.  Here, Mr. Almakhadhi has the burden of proving his case by what is called a preponderance of the evidence.  That means the Mr. Almakhadhi has to produce evidence which, considered in light of all the facts, leads you to believe that what Mr. Almakhadhi claims is more likely true than not.  To put it differently, if you were to put Mr. Almakhadhi's and Delaware Park's evidence on opposite sides of a scale, you should find in Mr. Almakhadhi's favor if the evidence supporting his claims would make the scale tip on his side even to the slightest degreeIf Mr. Almakhadhi fails to meet this burden, the verdict must be for Delaware Park.  Mr. Almakhadhi must also prove his damages by a preponderance of the evidence.

In determining whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, Delaware Park has the burden of proving the elements of the defense by a preponderance of the evidence.  I will instruct you on the facts that will be necessary for you to make a finding on this affirmative defense.  An affirmative defense is proven if you find, after considering all the evidence in the case, that Delaware Park has succeeded in proving that the required facts are more likely so than not so.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
| --- | --- |

19

**1.8**    **BURDEN OF PROOF**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

This is a civil case.  Here, Mr. Almakhadhi has the burden of proving his case by what is called a preponderance of the evidence.  That means the Mr. Almakhadhi has to produce evidence which, considered in light of all the facts, leads you to believe that what Mr. Almakhadhi claims is more likely true than not.  To put it differently, if you were to put Mr. Almakhadhi's and Delaware Park's evidence on opposite sides of a scale, the evidence supporting Mr. Almakhadhi would have to make the scale tip somewhat on his side.  If Mr. Almakhadhi fails to meet this burden, the verdict must be for Delaware Park.  Mr. Almakhadhi must also prove his damages by a preponderance of the evidence.

In determining whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, Delaware Park has the burden of proving the elements of the defense by a preponderance of the evidence.  I will instruct you on the facts that will be necessary for you to make a finding on this affirmative defense.  An affirmative defense is proven if you find, after considering all the evidence in the case, that Delaware Park has succeeded in proving that the required facts are more likely so than not so.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
|---|---|

**1.9**     <u>**CONDUCT OF THE JURY**</u>  [*JOINT*]

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them.  In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided.  If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything pertaining to this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes.  A word of caution is in order.  There is always a tendency to attach undue importance to matters that one has written down.  Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in

this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day.  And, remember that they are for your own personal use.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
|---|---|

**1.10**   __COURSE OF THE TRIAL__

[**_PLAINTIFF'S PROPOSED INSTRUCTION_**]

This trial will proceed in the following manner:

(1)    These preliminary instructions to you.

(2)    Opening statements, which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence.  The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.  What is said in opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.

(3)    The presentation of the evidence which will include live witnesses, as well as documents and things.

(4)    My final instructions on the law to you.

(5)    The closing arguments of the lawyers which will be offered to help you make your determination.  As with opening statements, closing statements are not evidence.

(6)    Finally, your deliberations, where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal.  So, as the evidence comes in, you as jurors need to keep an open mind.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
|---|---|

1.10   **COURSE OF THE TRIAL**

[*DEFENDANT'S PROPOSED INSTRUCTION*]

This trial will proceed in the following manner:

(1)    These preliminary instructions to you.

(7)    Opening statements, which are intended to explain to you what each side intends
       to prove and are offered to help you follow the evidence.  The lawyers are not
       required to make opening statements at this time or they may defer this opening
       until it is their turn to present evidence.  What is said in opening statements is not
       evidence, but is simply an outline to help you understand what each party expects
       the evidence to show.

(8)    The presentation of the evidence which will include live witnesses and may also
       include previously recorded testimony, as well as documents and things.

(9)    My final instructions on the law to you.

(10)   The closing arguments of the lawyers which will be offered to help you make
       your determination.  As with opening statements, closing statements are not
       evidence.

(11)   Finally, your deliberations, where you will evaluate and discuss the evidence
       among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal.  So, as the
evidence comes in, you as jurors need to keep an open mind.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
|---|---|

# SECTION II:
# PROPOSED JURY INSTRUCTIONS AT THE CLOSE OF EVIDENCE

## A.    GENERAL INSTRUCTIONS

### 2.1    INTRODUCTION  [*JOINT*]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain the positions of the parties and the law that you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the jury, it is important that you bear in mind the distinction between your duties and my duties.  You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  You are the sole judges of the facts.  It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by

25

a preponderance of the evidence, Delaware Park is liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

| Authorities | Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

**2.2**    **EVIDENCE DEFINED**  [*JOINT*]

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked.  I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

| Authorities | Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

27

**2.3    DIRECT AND CIRCUMSTANTIAL EVIDENCE  [*JOINT*]**

You have heard the terms direct evidence and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

| Authorities | Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

**2.4**    **CONSIDERATION OF EVIDENCE** [*JOINT*]

You should use your common sense in weighing the evidence. Consider it in light of

your everyday experience with people and events, and give it whatever weight you believe it

deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you

are free to reach that conclusion.

| Authorities | Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

**2.5    <u>STATEMENTS OF COUNSEL</u>  [*JOINT*]**

A further word about statements and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

**2.6**    **CREDIBILITY OF WITNESSES**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

You are the sole judges of each witness's credibility.  You should consider each witness' means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness' biases, prejudices, or interests; the witness' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

It is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.  In determining the weight to give the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial.  You have the right to distrust such witness' testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness had made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

If you find that any witness willfully or corruptly testified falsely under oath, you have a right to distrust the witness' testimony in other particulars, and may therefore disregard all of that

31

witness' testimony as untruthful. You are not required to do so, but you may. You may also accept as true only those portions of the witness' testimony which you believe, and disregard the rest.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware; LAUB'S TRIAL GUIDE, § 586.1(2). |
|---|---|

**2.6**    **CREDIBILITY OF WITNESSES**

[***DEFENDANT'S PROPOSED INSTRUCTION***]

You are the sole judges of each witness's credibility.  You should consider each witness' means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness' biases, prejudices, or interests; the witness' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

It is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.  In determining the weight to give the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial.  You have the right to distrust such witness' testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness had made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware. |

**2.7**    <u>**DISCREPANCIES IN TESTIMONY**</u>  [***JOINT***]

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies or by the character of the testimony given, or by the evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters.  Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by the other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from an innocent error or intentional falsehood.

35

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

| Authorities | O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 105.01 (5th ed. 2001). |
|---|---|

## 2.8    BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE

*[PLAINTIFF'S PROPOSED INSTUCTION]*

This is a civil case. Here, Mr. Almakhadhi has the burden of proving his case by what is called a preponderance of the evidence. That means the Mr. Almakhadhi has to produce evidence which, considered in light of all the facts, leads you to believe that what Mr. Almakhadhi claims is more likely true than not. To put it differently, if you were to put Mr. Almakhadhi's and Delaware Park's evidence on opposite sides of a scale, you should find in Mr. Almakhadhi's favor if the evidence supporting his claims would make the scale tip on his side even to the slightest degree. If Mr. Almakhadhi fails to meet this burden, the verdict must be for Delaware Park. Mr. Almakhadhi must also prove his damages by a preponderance of the evidence.

The preponderance of the evidence does not depend on the number of witnesses or the number of exhibits used. If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party. In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received in evidence regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt. That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not Mr. Almakhadhi has met his burden of proof on various issues.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

**2.8    BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

This is a civil case. Mr. Almakhadhi has the burden of providing his claims and damages by what is called a preponderance of the evidence. Proof by a preponderance of the evidence means proof that something is more likely true than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not. To put it differently, if you were to put Mr. Almakhadhi's and Delaware Park's evidence on opposite sides of a scale, the evidence supporting Mr. Almakhadhi would have to make the scale tip somewhat on his side. If Mr. Almakhadhi fails to meet this burden, the verdict must be for Delaware Park. Mr. Almakhadhi must also prove his damages by a preponderance of the evidence.

The preponderance of the evidence does not depend on the number of witnesses or the number of exhibits used. If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party. In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received in evidence regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt. That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not Mr. Almakhadhi has met his burden of proof on various issues.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

**2.9    ALL PERSONS EQUAL BEFORE THE LAW – INDIVIDUALS AND CORPORATIONS  [*JOINT*]**

The case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  All persons stand equal before the law and are to be treated as equals.

As you know, Delaware Park is a corporation.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, large or small, stand equal before the law, and are to be treated as equals in a court of justice.  Therefore, you may not judge a corporation more harshly, or treat a corporation differently, than you would any other single individual.

| Authorities | Adapted from O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, §§ 103.11 & 103.12 (5th ed. 2001). |
|---|---|

**2.10**    <u>**ADMONITION REGARDING SYMPATHY**</u>  [*JOINT*]

Under your oath as jurors you are not to be swayed by sympathy.  You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence.  If you let sympathy interfere with your clear thinking there is a significant risk that you will not arrive at a just verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and impartial decision so that you will arrive at the just verdict.

| Authorities | 4 L. Sand, et. al., Modern Federal Jury Instructions, ¶ 71-10. |
|---|---|

40

**B.**   **INSTRUCTIONS ON APPLICABLE LAW**

**3.1**   **BUSINESS JUDGMENT**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

Employment discrimination laws are not intended to be a vehicle for judicial second-guessing of business decisions; nor are they intended to transform the courts into personnel managers.  An employer is entitled to make its own policy and business judgment, and may therefore, take an adverse employment action against an employee for reasons that the employer considers to be in its best interests.  An employer is entitled to make its own subjective personnel decisions, however misguided they may appear to you, and can take an adverse employment action against an employee for any non-discriminatory and non-retaliatory reason, good or bad, fair or unfair, and you may not second-guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of Delaware Park, even though you personally may not favor the decision or would have made a different decision under the circumstances.   Therefore, you should not find that an adverse employment action decision is unlawful just because you may disagree with Delaware Park's stated reasons, or because you believe that the decision was mistaken, harsh or unreasonable.

You must also consider whether or not Defendants' stated reasons for their actions are false, that is, a pretext for discrimination. In employment law, a reason becomes a pretext when it is not the real reason for the Defendant's action. Evidence of inconsistencies, contradictions, weaknesses, implausibility, or incoherencies in the employer's stated reason for its actions may demonstrate pretext.

If you find that Defendants' explanations are a pretext, you may, but are not required to, conclude that Defendant, in making up a false explanation for its actions, is trying to conceal the

41

true discriminatory reason. Thus, if you determine that the reasons articulated by Delaware Park

to explain the actions in question were not the actual reasons, you would be authorized but not

required to conclude that discrimination more likely than not was a motivating factor in

Delaware Park's actions.

| Authorities | Adapted from McNamara & Southerland, Federal Employment Jury Instructions, § 1:1130 (2005). *See, e.g.*, *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("Barring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain position."); *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[W]e do not sit as a super-personnel department that reexamines an entity's business decisions."); *Fuentes v. Perksie*, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit the employer's proffered reason [as pretextual], the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent."); *Reeves v. Sanderson Products, Inc.,* 530 U.S. 133, 146-47 (2000); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993); *Palmer v. Board of Regents,* 208 F.3d 969 (11th Cir. 2000); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1998); *Howard v. BP Oil Co, Inc.,* 32 F.3d 520, 526 (11th Cir. 1994); *Cooper-Houston v. Southern Ry. Co.,* 37 F.3d 603, 605 (11th Cir. 1994). |
|---|---|

**3.1**    **BUSINESS JUDGMENT**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

Employment discrimination laws are not intended to be a vehicle for judicial second-guessing of business decisions; nor are they intended to transform the courts into personnel managers. An employer is entitled to make its own policy and business judgment, and may therefore, take an adverse employment action against an employee for reasons that the employer considers to be in its best interests. So long as it does not act for an illegal purpose, an employer is entitled to make its own subjective personnel decisions, however misguided they may appear to you, and can take an adverse employment action against an employee for any non-discriminatory and non-retaliatory reason, good or bad, fair or unfair, and you may not second-guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of Delaware Park, even though you personally may not favor the decision or would have made a different decision under the circumstances. Therefore, you should not find that an adverse employment action decision is unlawful just because you might have made a different decision, or because you believe that the decision was mistaken, harsh or unreasonable.

| Authorities | Adapted from McNamara & Southerland, Federal Employment Jury Instructions, § 1:1130 (2005). *See, e.g., Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("Barring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain position."); *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[W]e do not sit as a super-personnel department that reexamines an entity's business decisions."); *Fuentes v. Perksie*, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit the employer's proffered reason [as pretextual], the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent."). |

## 3.2    AT-WILL EMPLOYMENT  [*JOINT*]

At all times, the employment relationship between Mr. Almakhadhi and Delaware Park was an "at will" employment relationship.  That means that Mr. Almakhadhi's employment was of no set duration, and either he or Delaware Park was free to end their employment relationship at any time, with or without notice, and with or without cause, as long as Delaware Park's reason for terminating Mr. Almakhadhi's employment was not based on discrimination or retaliation.

| Authorities | *See Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 101-103 (Del. 1992) ("[A]n employer has wide latitude in deciding how it conducts its business including employment undertakings….Employers have the "freedom to terminate an at-will employment contract for [their] own legitimate business, or even highly subjective, reasons"); *E.I. du Pont de Nemours & Co. v. Pressman,* 679 A.2d 436, 437 (Del. 1996) (Employment-at-will doctrine "generally permits the dismissal of employees without cause and regardless of motive."). |
|---|---|

**3.3**    **ADA CLAIM —INTRODUCTORY INSTRUCTION** [*JOINT*]

In this case Mr. Almakhadhi makes claims based on a federal law known as the Americans with Disabilities Act, which will be referred to in these instructions as the ADA.

Under the ADA, an employer may not deprive a qualified person with a disability of an employment opportunity because of that disability. An employer also may not discriminate against that individual in the terms or conditions of his employment on the basis of a disability. The term "disability" has a specific definition under the ADA and I will instruct you on the meaning of that term.

As you listen to these instructions, please keep in mind that many of the terms I will use, and you will need to apply, have a special meaning under the ADA. So please remember to consider the specific definitions I give you, rather than using your own opinion of what these terms mean.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |
|---|---|

45

**3.4**    **ADA – DISPARATE TREATMENT CLAIM**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

In this case Mr. Almakhadhi alleges that Delaware Park did not promote him to jobs for which he applied, did not assign him light duty work between September 2, 2005 through the time until Delaware Park first terminated his employment on February 12, 2006, and terminated his employment because of his alleged disability.

To prevail on each of his disability claims, Mr. Almakhadhi must prove the following by a preponderance of the evidence:

First: While employed by Delaware Park, Mr. Almakhadhi had a "disability" within the meaning of the ADA.

Second: Mr. Almakhadhi was a qualified individual able to perform the essential functions of the position.

Third: Mr. Almakhadhi's disability was a motivating factor in Delaware Park's not to promote him, not to assign him light duty work, and/or to terminate his employment.

In order for Mr. Almakhadhi to prove that Delaware Park violated the ADA, he must prove that he suffered an adverse employment action because of his disability. Evidence that Mr. Almakhadhi was treated differently because of his disability, and/or that Mr. Almakhadhi would have been able to continue to work if Delaware Park had accommodated his disability also supports his claim.

Each of Mr. Almakhadhi's claims for disability discrimination must be considered individually. Although these claims should all be considered using the elements I have just given you, they are independent of one another and a separate finding should be made as to each claim.

I will now provide you with more explicit instructions on the following statutory terms

46

that you will need to resolve each of these claims.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007; 42 U.S.C. § 12112(a); *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000).. |
|---|---|

3.4    **ADA – DISPARATE TREATMENT CLAIM**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

In this case Mr. Almakhadhi alleges that Delaware Park did not promote him to the Impress Supervisor position in August 2005, did not assign him light duty work in September 2005, and terminated his employment because of his alleged disability.

The Impress Supervisor position opening in August 2005 is the only promotional opportunity you should consider with regard to Mr. Almakhadhi's claim for disability discrimination. No other positions to which Mr. Almakhadhi applied are relevant to your consideration of this claim.

Similarly, the time period between September 2, 2005 and Mr. Almakhadhi's termination from employment is the only one you should consider with regard to Mr. Almakhadhi's claim for disability discrimination based on denial of a light duty assignment. Any other times when Mr. Almakhadhi was not given a light duty assignment are not relevant to your consideration of this claim.

To prevail on each of his disability claims, Mr. Almakhadhi must prove the following by a preponderance of the evidence:

First: While employed by Delaware Park, Mr. Almakhadhi had a "disability" within the meaning of the ADA.

Second: Mr. Almakhadhi was a qualified individual able to perform the essential functions of the position.

Third: Mr. Almakhadhi's alleged disability was a determinative factor in Delaware Park's not to promote him, not to assign him light duty work, and/or to terminate his employment.

Each of Mr. Almakhadhi's claims for disability discrimination must be considered individually. Although these claims should all be considered using the elements I have just given

48

you, they are independent of one another and a separate finding should be made as to each claim.

I will now provide you with more explicit instructions on the following statutory terms that you will need to resolve each of these claims.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |
|---|---|

**3.5**    **ADA -- DEFINITION OF DISABILITY**

**3.5.1**    **SUBSTANTIALLY LIMITING IMPAIRMENT**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

Under the ADA, the term "disability" means a physical impairment that "substantially limits" a "major life activity." I will now define some of these terms in more detail. Again, I remind you to consider the specific definitions I give you, and not to use your own opinions as to what these terms mean.

The term "physical impairment" means any condition that prevents the body from functioning normally. Under the ADA, the term "disability" includes a physical impairment that substantially limits a major life activity. Major life activities include functions such as performing manual tasks, walking, seeing, hearing, speaking, breathing, , and working. More generally, they include activities that are of central importance to daily life.

In this case Mr. Almakhadhi claims that he is "substantially limited" in the major life activities of standing, lifting, and working. Under the ADA, an impairment "substantially limits" a person's ability to perform an activity if it prevents or severely restricts that ability compared to the average person in the general population.

An impairment substantially limits Mr. Almakhadhi's ability to work if it significantly restricts him from performing a class of jobs, or a broad range of jobs in various classes, compared to someone with similar knowledge, skills, and training.. You must find that Mr. Almakhadhi is disabled if you find that because of the limits of Mr. Almakhadhi's education, language ability, and work experience, his lifting restrictions and leg problems limit him to a narrow range of jobs.

To decide if Mr. Almakhadhi's alleged impairment substantially limited his ability to

stand, lift, or work, you should consider the nature of the impairment and how severe it is, how long it is expected to last, and its expected long-term impact. Temporary conditions are not disabilities. Also, the fact that Mr. Almakhadhi's physicians imposed or continue to impose "light duty" restrictions, such as a lifting restriction, does not in itself demonstrate a substantial limitation on his ability to work. What matters is the specific effect of an impairment or condition on the life of Mr. Almakhadhi.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007; 29 C.F.R. § 1630.2(i); *Toyota Motor Mfg. Kentucky v. Williams*, 534 U.S. 184 (2002); *Webner v. Titan Distributing, Inc.*, 267 F.3d 828 (8th Cir. 2001) (individual's back problems limited ability to perform all but light duty tasks and, therefore, substantially limited major life activity of working).. |
| --- | --- |

### 3.5.1   SUBSTANTIALLY LIMITING IMPAIRMENT

*[DEFENDANT'S PROPOSED INSTRUCTION]*

Under the ADA, the term "disability" means a physical impairment that "substantially limits" a "major life activity." I will now define some of these terms in more detail. Again, I remind you to consider the specific definitions I give you, and not to use your own opinions as to what these terms mean.

The term "physical impairment" means any condition that prevents the body from functioning normally. Under the ADA, the term "disability" includes a physical impairment that substantially limits a major life activity. Major life activities include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, and working. More generally, they include activities that are of central importance to daily life.

In this case Mr. Almakhadhi claims that he is "substantially limited" in the major life activities of standing, lifting, and working. Under the ADA, an impairment "substantially limits" a person's ability to perform an activity if it prevents or severely restricts that ability compared to the average person in the general population.

An impairment substantially limits Mr. Almakhadhi's ability to work if it significantly restricts him from performing a class of jobs, or a broad range of jobs in various classes, compared to someone with similar knowledge, skills, and training. Merely demonstrating that an impairment prevents Mr. Almakhadhi from performing some or all of his job functions does not suffice to demonstrate a disability. In other words, being unable to work as a Booth Cashier at Delaware Park is not by itself a substantial limitation on the ability to work.

To decide if Mr. Almakhadhi's alleged impairment substantially limited his ability to stand, lift, or work, you should consider the nature of the impairment and how severe it is, how

long it is expected to last, and its expected long-term impact.   Temporary conditions are not

disabilities.   Also, the fact that Mr. Almakhadhi's physicians imposed or continue to impose

"light duty" restrictions, such as a lifting restriction, does not in itself demonstrate a substantial

limitation on his ability to work.  What matters is the specific effect of an impairment or

condition on the life of Mr. Almakhadhi.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007; 29 C.F.R. § 1630.2(i); *Toyota Motor Mfg. Kentucky v. Williams*, 534 U.S. 184 (2002);  *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996) (finding as a matter of law that 25-pound lifting restriction does not constitute a substantial limitation on the major life activity of working); *Panzullo v. Modell's PA, Inc.*, 968 F. Supp. 1022, 1024 (E.D. Pa. 1997) (granting motion for summary judgment on plaintiff's ADA claim, finding that neither a "general weightlifting or light-duty work limitation nor a restriction against performing heavy work per se constitutes a disability under the ADA"). |
|---|---|

### 3.5.2. "REGARDED AS" DISABLED

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

The ADA's definition of "disability" includes not only those persons who are actually disabled, but also those who are "regarded as" having a disability by their employer. The reason for this inclusion is to protect employees from being stereotyped by employers as unable to perform certain activities when in fact they are able to do so. Mr. Almakhadhi is "regarded as" disabled within the meaning of the ADA if he proves any of the following by a preponderance of the evidence:

1. Mr. Almakhadhi's physical impairment did not substantially limit him in his ability to perform any major life activity, but Delaware Park treated him as if it did; or

2. Mr. Almakhadhi had an impairment that substantially limited his ability to perform a major life activity only because of Delaware Park's attitude toward the impairment.

The mere fact that Delaware Park was aware that Mr. Almakhadhi had an impairment is insufficient to demonstrate that Delaware Park regarded Mr. Almakhadhi as disabled.

Even if you find that Mr. Almakhadhi was merely "regarded as" disabled by Delaware Park, he is nevertheless entitled to an accommodation under the ADA just as if you found him to be actually disabled under the ADA.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |
|---|---|

54

### 3.5.2. "REGARDED AS" DISABLED

*[DEFENDANT'S PROPOSED INSTRUCTION]*

The ADA's definition of "disability" includes not only those persons who are actually disabled, but also those who are "regarded as" having a disability by their employer. The reason for this inclusion is to protect employees from being stereotyped by employers as unable to perform certain activities when in fact they are able to do so. Mr. Almakhadhi is "regarded as" disabled within the meaning of the ADA if he proves any of the following by a preponderance of the evidence:

1. Mr. Almakhadhi's physical impairment did not substantially limit him in his ability to perform any major life activity, but Delaware Park treated him as if it did; or

2. Mr. Almakhadhi had an impairment that substantially limited his ability to perform a major life activity only because of Delaware Park's attitude toward the impairment.

The mere fact that Delaware Park was aware that Mr. Almakhadhi had an impairment is insufficient to demonstrate that Delaware Park regarded Mr. Almakhadhi as disabled.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007; *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) (affirming summary judgment for employer where plaintiff who walked with a limp could not show he was disabled or that his employer regarded him as such) (internal citations omitted). |
| --- | --- |

### 3.5.3. "RECORD OF" DISABILITY

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

Mr. Almakhadhi may also prove he is entitled to protection under the ADA by showing that Delaware Park had knowledge that he had a physical impairment that substantially limited one or more of his major life activities, even if he is not currently disabled under the ADA. Medical records, physician's reports, clinical records, treatment summaries, and medication charts may all constitute evidence of a record of a disability. This list of potential documentation is not exhaustive but should be used as a guideline. Oral information that provided Delaware Park with knowledge that Mr. Almakhadhi had a physical impairment that substantially limited one or more of his major life activities can also suffice. If Mr. Almakhadhi proves that Delaware Park had documentation or oral information indicating that his medical impairment substantially limited a major life activity such as standing, lifting, walking or working, then he is a disabled person entitled to the protection of the ADA.

| Authorities | 42 U.S.C. § 12112(a) and (b)(5)(A), 29 U.S.C. § 705 (20)(B)(iii); *Mash v. Xerox Corp.*, No. 98-506 2000 WL 1728250, at *7 (D.Del., April 11, 2000). |
|---|---|

### 3.5.3. "RECORD OF" DISABILITY  [*If permitted by the Court*]

[*DEFENDANT'S PROPOSED INSTRUCTION*]

The ADA definition of "disability" includes not only those persons who are actually disabled, but also those who have a "record of disability."  Mr. Almakhadhi has a "record of disability" if he proves by a preponderance of the evidence that he had a record of a physical impairment that substantially limited major life function, as I have defined those terms for you. This means that if Mr. Almakhadhi had a disability within the meaning of the ADA but was recovered or the disability was in remission at the time of the events in dispute, he still fits within the statutory definition because he had a record of disability.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |
|---|---|

3.6    **ADA – NON-DISCRIMINATORY REASON/PRETEXT**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

Mr. Almakhadhi is not required to prove that Delaware Park acted with the particular intent to violate his federal rights under the ADA. Moreover, Mr. Almakhadhi is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts. However, Mr. Almakhadhi must prove that he was disabled or that Delaware Park regarded him as disabled, and that Delaware Park acted with the intent to discriminate because of Mr. Almakhadhi's alleged disability.

To find that Delaware Park regarded Mr. Almakhadhi as disabled or acted with the intent to discriminate against him because of an alleged disability, you must find that Delaware Park was aware of Mr. Almakhadhi's alleged disability at the time it decided not to promote him, not to give him light duty, and to terminate his employment. If the relevant decision maker(s) at Delaware Park did not know about Mr. Almakhadhi's alleged disability at the time he or she made the employment decision that is the basis for his claim, then you must find for Delaware Park on that claim.

Delaware Park has given nondiscriminatory reasons for not promoting Mr. Almakhadhi, not giving him a light duty assignment during the months between September 2, 2005 and February 12, 2006, and terminating his employment. To show that Delaware Park's reasons for its actions are a pretext, or excuse, for discrimination, Mr. Almakhadhi must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in those reasons so as to make them unworthy of belief. If you disbelieve Delaware Park's explanations for its conduct, then you may, but need not, find that Mr. Almakhadhi has proved intentional

discrimination on the basis of a disability. You cannot find intentional discrimination simply because you disagree with the business judgment of Delaware Park or believe it is mistaken, harsh or unreasonable.  You are not to consider Delaware Park's wisdom. However, you may consider whether Delaware Park's reasons are merely a cover-up for discrimination.

Ultimately, you must decide whether Mr. Almakhadhi has proven that he is disabled or that Delaware Park regarded him as disabled, and that his disability or Delaware Park's belief thereof was a motivating factor in Delaware Park's decisions not to promote him, not to assign him light duty work, and to terminate his employment. In showing that Plaintiff's protected class was a motivating factor for Delaware Park's action, Mr. Almakhadhi is not required to prove that his race, and/or national origin, and/or disability was the sole motivation or even the primary motivation for Defendant's decision. Mr. Almakhadhi need only prove that one of his protected classes played a motivating part in Defendant's decision even though other factors may also have motivated Defendant.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007; *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). |

**3.6**    <u>**ADA – NON-DISCRIMINATORY REASON/PRETEXT**</u>

[*DEFENDANT'S PROPOSED INSTRUCTION*]

Mr. Almakhadhi is not required to prove that Delaware Park acted with the particular intent to violate his federal rights under the ADA. Moreover, Mr. Almakhadhi is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.  However, Mr. Almakhadhi must prove that he was disabled or that Delaware Park regarded him as disabled, and that Delaware Park acted with the intent to discriminate because of Mr. Almakhadhi's alleged disability.

To find that Delaware Park regarded Mr. Almakhadhi as disabled or acted with the intent to discriminate against him because of an alleged disability, you must find that Delaware Park was aware of Mr. Almakhadhi's alleged disability at the time it decided not to promote him, not to give him light duty, and to terminate his employment.  If the relevant decision maker(s) at Delaware Park did not know about Mr. Almakhadhi's alleged disability at the time he or she made the employment decision that is the basis for his claim, then you must find for Delaware Park on that claim.

Delaware Park has given nondiscriminatory reasons for not promoting Mr. Almakhadhi to the Impress Supervisor position in August 2005, not giving him a light duty assignment in the months between September 2, 2005 and February 12, 2006, and terminating his employment. To show that Delaware Park's reasons for its actions are a pretext, or excuse, for discrimination, Mr. Almakhadhi must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in those reasons so as to make them unworthy of belief.  If you disbelieve Delaware Park's explanations for its conduct, then you may, but need not, find that Mr.

Almakhadhi has proved intentional discrimination on the basis of a disability. You cannot find intentional discrimination simply because you disagree with the business judgment of Delaware Park or believe it is mistaken, harsh or unreasonable.  You are not to consider Delaware Park's wisdom. However, you may consider whether Delaware Park's reasons are merely a cover-up for discrimination.

Ultimately, you must decide whether Mr. Almakhadhi has proven that he is disabled or that Delaware Park regarded him as disabled, and that his disability was a determinative factor in Delaware Park's decision not to promote him, not to assign him light duty work, and to terminate his employment.  "Determinative factor" means that if not for Mr. Almakhadhi's alleged disability, one or more of these actions would not have occurred.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007; *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). |
|---|---|

### 3.6.1    REASONABLE ACCOMMODATION DEFINED

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

The ADA requires that employers like Delaware Park provide qualified disabled employees with reasonable accommodations, unless providing such an accommodation would cause an undue hardship. An accommodation is any change in the work environment or in the way things are customarily done that enables an individual with a disability to perform the essential functions of the job.

The ADA does not contain a bright line definition of what is a "reasonable" accommodation. It says that the term 'reasonable accommodation" may include-job restructuring, part-time or modified work schedules, reassignment  to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations for individuals with disabilities. A modification or adjustment to a job satisfies the reasonable accommodation requirement if it is effective. Thus, in Mr. Almakhadhi's case, he claims there were reasonable accommodations Delaware Park could have done, such as allowing him to carry only one bag of coins at a time, or work a different shift or a different job that did not require lifting beyond his medical restrictions.

| Authorities | 42 U.S.C. 12112(a)(5)(A); 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o); 29 C.F.R. § 1630.9; EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, p.3 (March 1999). |
|---|---|

### 3.6.1   ADA  -- REASONABLE ACCOMMODATION CLAIM

*[DEFENDANT'S PROPOSED INSTRUCTION]*

In this case, Mr. Almakhadhi claims that Delaware Park failed to provide him with a reasonable accommodation. The ADA provides that an employer may not deny employment opportunities to a qualified individual with a disability if that denial is based on the need of the employer to make reasonable accommodations to that individual's disability.

To prevail on this claim, Mr. Almakhadhi must prove all of the following by a preponderance of the evidence:

First: Mr. Almakhadhi has a "disability" within the meaning of the ADA.

Second: Mr. Almakhadhi is a "qualified individual" able to perform the essential functions of his job as a Booth Cashier.

Third: Mr. Almakhadhi requested an accommodation due to a disability, and that accommodation would  permit him to perform all the essential functions of his job.

Fourth: Providing the accommodation that Mr. Almakhadhi requested would have been reasonable, meaning that the costs of that accommodation would not have clearly exceeded its benefits.

Fifth:  Delaware Park failed to provide the accommodation that Mr. Almakhadhi requested or any other reasonable accommodation.

You must keep in mind that Delaware Park is not obligated to provide a specific accommodation simply because Mr. Almakhadhi requested it.  Mr. Almakhadhi may not insist on a particular accommodation if it would not be effective or is not reasonable.  If you find Mr. Almakhadhi was disabled and that he requested an accommodation, you must consider whether Delaware Park failed to provide him with a reasonable accommodation.

Under the ADA, a reasonable accommodation is one that permits the employee to perform all the essential functions of his job.   Note, however, that a "reasonable

63

accommodation" does not require Delaware Park to do any of the following:

    1. Change or eliminate any essential function of employment;

    2. Shift any essential function of employment to other employees;

    3. Create a new position for Mr. Almakhadhi;

    4. Promote Mr. Almakhadhi; or

    5. Reduce productivity standards.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |
|---|---|

**3.6.2    ADA – DEFINITION OF "QUALIFIED INDIVIDUAL"**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

A plaintiff under the ADA must be "qualified" for his job in order to be protected by the

Act. "Qualified" means that:

    a. the person meets the job's education, training, work experience, and skills
       requirements; and

    b. he can perform the "essential functions" of the job, either with or without
       "reasonable accommodation," as I just defined it.

The term "essential functions" means the fundamental duties of Mr. Almakhadhi's job.

The term "essential functions" does not include marginal functions of his job. It is up to you to

decide the essential functions of Mr. Almakhadhi's job. You should only consider Mr.

Almakhadhi's abilities at the time of his discharge.

| Authorities | 42 U.S.C. § 12102(8), 29 CFR § 1630.2(m); *Swanks v. WMATA*, 116 F.3d 582, 584 (D.C. Cir. 1997); *Bugg-Barber v. Randstad US, L.P.*, 271 F. Supp. 2d 120 (D.D.C. 2003). |
|---|---|

**3.6.2    ADA – DEFINITION OF "QUALIFIED INDIVIDUAL"**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

Under the ADA, Mr. Almakhadhi must establish that he was a "qualified individual." This means that he must show that he had the skill, experience, education, and other requirements for the Booth Cashier job and could do the job's "essential functions," either with or without a reasonable accommodation. If Mr. Almakhadhi cannot establish that he is qualified to perform the essential functions of his job even with a reasonable accommodation, then he is not a qualified individual under the ADA and you must return a verdict for Delaware Park, even if the reason Mr. Almakhadhi is not qualified is solely as a result of his disability. The ADA does not require an employer to hire or retain an individual who cannot perform the job with or without a reasonable accommodation.

In this case, Mr. Almakhadhi claims that he was able to perform the essential functions of his job by lifting only one coin bag at a time. Delaware Park contends that the essential functions of the Booth Cashier job included repeatedly lifting coin bags weighing twenty pounds and repeatedly squatting, bending and twisting, all of which Mr. Almakhadhi's doctors said he should not do.  It is Mr. Almakhadhi's burden to prove by a preponderance of the evidence that he was able to perform the essential functions of his job.  If Mr. Almakhadhi could not perform the repeated lifting, squatting, bending, or twisting required, then it is his burden to show that these functions were not essential to the Booth Cashier job.

The term "essential functions" does not include the marginal functions or activities required in the position.   Essential functions are a job's fundamental duties and activities. In deciding whether repeated lifting, squatting, bending, or twisting is essential to the Booth Cashier job, some factors you may consider include the following:

66

1)   Whether the performance of these functions or activities is the reason that the job exists;

2)   the amount of time spent on the job performing these functions or activities;

3) whether an employee in the Booth Cashier job is  hired for his or her ability to perform these functions or activities;

4) Delaware Park's judgment about what functions or activities are essential to the Booth Cashier job;

5) written job descriptions for Booth Cashier job;

6) the consequences of not requiring an employee to perform these activities in a satisfactory manner;

7) whether others who held the position of  Booth Cashier performed these activities; and

8) the terms of a collective bargaining agreement.

No one factor is necessarily controlling.   You should consider all of the evidence in deciding whether repeated lifting, squatting, twisting, or bending is essential to the Booth Cashier job.  If these functions or activities are essential to Mr. Almakhadhi's job, and he could not perform them even with a reasonable accommodation, then you must find for Delaware Park on this claim.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |
|---|---|

3.7    **TITLE VII – INTRODUCTORY INSTRUCTION**

   *[PLAINTIFF'S PROPOSED INSTRUCTION]*

In this case Mr. Almakhadhi makes several claims under a Federal Civil Rights statute that prohibits employers from discriminating against an employee in the terms and conditions of employment because of the employee's race, color, religion, sex, or national origin.

Specifically, Mr. Almakhadhi claims that Delaware Park subjected him to race  and national origin discrimination and adverse employment treatment with respect to the terms, conditions, privileges, and benefits of his employment when it created a hostile work environment,  failed to promote him when it promoted less qualified non Arabs, refused to provide him with light duty work, when it provided non-Arabs light duty, refused to provide him with leave that was provided to non-Arabs, refused to provide him bonuses that were paid to non-Arabs, and terminated his employment for reasons it does not terminate non_Arabs..

Delaware Park denies that Mr. Almakhadhi was discriminated against in any way.

I will now instruct you more fully on the issues you must address in this case with regard to race and national origin discrimination.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 5, May 2007. |
|---|---|

**3.7**    **TITLE VII – INTRODUCTORY INSTRUCTION**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

In this case Mr. Almakhadhi makes several claims under a Federal Civil Rights statute known as "Title VII" that prohibits employers from discriminating against an employee in the terms and conditions of employment because of the employee's race or national origin.

Specifically, Mr. Almakhadhi claims that Delaware Park did not promote him, did not give him a light duty assignment, failed to pay him a bonus, and terminated his employment because of his race and national origin.

Delaware Park denies that Mr. Almakhadhi was discriminated against in any way, and further denies that it failed to pay him a bonus.

I will now instruct you more fully on the issues you must address in this case with regard to race and national origin discrimination.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 5, May 2007. |
|---|---|

**3.8**    **TITLE VII – DISPARATE TREATMENT – PRETEXT CLAIM**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

In this case Mr. Almakhadhi alleges that Delaware Park discriminated against him because of his Arab race or because he originally is from the Middle East.  In order for Mr. Almakhadhi to recover on his discrimination claims against Delaware Park, he must prove that Delaware Park intentionally discriminated against him. This means that Mr. Almakhadhi must prove that his race or national origin was a motivating factor in Delaware Park's treatment of him, including its decisions not to promote him, not to give him a light duty assignment, not to give him FMLA leave, or to terminate his employment.

To prevail on each of his claims for race or national origin discrimination, Mr. Almakhadhi must prove the following by a preponderance of the evidence:

That Mr. Almakhadhi's race or national origin was a motivating factor in Delaware Park's decisions concerning his employment, including its decisions not to promote him, not to give him light duty assignments, to deny him leave, to deny his bonus payment, and/or to terminate his employment.

Each of Mr. Almakhadhi's claims for race and national origin discrimination must be considered individually.  Although these claims should all be considered using the elements I have just given you, they are independent of one another and a separate finding should be made as to each claim.

The following instructions apply to each of Mr. Almakhadhi's claims for race and national origin discrimination.  Mr. Almakhadhi is not required to prove that Delaware Park acted with the particular intent to violate his federal civil rights.  Mr. Almakhadhi also is not required to produce direct evidence of intent, such as statements admitting discrimination.

Intentional discrimination may be inferred from the existence of other facts. However, Mr. Almakhadhi must prove that Delaware Park acted with the intent to discriminate because of his race or national origin.

Intent involves the state of mind with which an act is done. It means the desire to bring about a result. If you find that the actions of the Defendants were with the desire to bring about a result, it is said to have intended that result.

Delaware Park has given nondiscriminatory reasons for not promoting Mr. Almakhadhi to Impress Supervisor in August 2005, not giving him a light duty assignment in September 2005, and terminating his employment. To show that Delaware Park's reasons for its actions are a pretext, or excuse, for discrimination, Mr. Almakhadhi must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in those reasons so as to make them unworthy of belief. You cannot find intentional discrimination simply because you disagree with the business judgment of Delaware Park or believe it is mistaken, harsh or unreasonable. You are not to consider Delaware Park's wisdom. However, you may consider whether Delaware Park's reasons are merely a cover-up for discrimination. If you disbelieve Delaware Park's explanations for its conduct, that is, that the explanations are not the true or real reasons for the Defendant's actions, but that instead the explanations are a pretext or cover for discrimination, then you may, but need not, infer that the Plaintiff was discriminated against in his employment because of his race or national origin and that Mr. Almakhadhi has proven intentional discrimination.

Ultimately, you must decide whether Mr. Almakhadhi has proven that his race or national origin was a motivating factor in Delaware Park's decisions concerning Mr. Almakhadhi's employment. In showing that his race or national origin was a motivating factor for Delaware

Park's action, Mr. Almakhadhi is not required to prove that his race or national origin was the sole motivation or even the primary motivation for Delaware Park's decision. Mr. Almakhadhi need only prove that his race or national origin played a motivating part in Delaware Park's decision even though other factors may also have motivated Delaware Park.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 5, May 2007; *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); *Fischer v. Maloney*, 373 N.E.2d 1215 (1978); *Clark v. New York Tel. Co.*, 52 A.D.2d 1030, aff'd 41 N.Y.2d 1069 (4th Dept. App. Div. May 14, 1976). |
|---|---|

**3.8**    **TITLE VII – DISPARATE TREATMENT – PRETEXT CLAIM**

[*DEFENDANT'S PROPOSED INSTRUCTION*]

In this case Mr. Almakhadhi alleges that Delaware Park discriminated against him because he is Arab.  In order for Mr. Almakhadhi to recover on his discrimination claims against Delaware Park, he must prove by a preponderance of the evidence that Delaware Park intentionally discriminated against him. This means that Mr. Almakhadhi must prove that his race or national origin was a determinative factor in Delaware Park's decisions not to promote him, not to give him a light duty assignment, to terminate his employment, or in regard to the disputed bonus.

Mr. Almakhadhi claims that Delaware Park discriminated against him because he was not promoted to the Impress Supervisor position in August 2005.  The Impress Supervisor position opening in August 2005 is the only promotional opportunity you should consider with regard to Mr. Almakhadhi's claim for race and/or national origin discrimination.  No other positions to which Mr. Almakhadhi applied are relevant to your consideration of this claim.

Similarly, the time period between September 2, 2005 and Mr. Almakhadhi's termination from employment is the only one you should consider with regard to Mr. Almakhadhi's claim for race and/or national origin discrimination based on denial of a light duty assignment.  Any other times when Mr. Almakhadhi was not given a light duty assignment are not relevant to your consideration of this claim.

To prevail on each of his claims for race or national origin discrimination, Mr. Almakhadhi must prove the following by a preponderance of the evidence:

That Mr. Almakhadhi's race or national origin was a determinative factor in Delaware Park's decision not to promote him, not to give him a light duty assignment, and/or to terminate

his employment.

Each of Mr. Almakhadhi's claims for race and national origin discrimination must be considered individually.  Although these claims should all be considered using the elements I have just given you, they are independent of one another and a separate finding should be made as to each claim.

The following instructions apply to each of Mr. Almakhadhi's claims for race and national origin discrimination.  Mr. Almakhadhi is not required to prove that Delaware Park acted with the particular intent to violate his federal civil rights.  Mr. Almakhadhi also is not required to produce direct evidence of intent, such as statements admitting discrimination.  Intentional discrimination may be inferred from the existence of other facts.  However, Mr. Almakhadhi must prove that Delaware Park acted with the intent to discriminate because of his race or national origin.

Delaware Park has given nondiscriminatory reasons for not promoting Mr. Almakhadhi to Impress Supervisor in August 2005, not giving him a light duty assignment in September 2005, and terminating his employment.  Delaware Park also has given a non-discriminatory reason for its treatment of Mr. Almakhadhi's bonus payment.  To show that Delaware Park's reasons for its actions are a pretext, or excuse, for discrimination, Mr. Almakhadhi must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in those reasons so as to make them unworthy of belief.  You cannot find intentional discrimination simply because you disagree with the business judgment of Delaware Park or believe it is mistaken, harsh or unreasonable.  You are not to consider Delaware Park's wisdom.  However, you may consider whether Delaware Park's reasons are merely a cover-up for discrimination.  If you disbelieve Delaware Park's explanations for its conduct, then you may,

but need not, find that Mr. Almakhadhi has proven intentional discrimination.

Ultimately, you must decide whether Mr. Almakhadhi has proven that his race or national origin was a determinative factor in Delaware Park's decision not to promote Mr. Almakhadhi to Impress Supervisor, not to give him a light duty assignment, and/or to terminate his employment. "Determinative factor" means that if not for Mr. Almakhadhi's white race or Middle Eastern origin, one or more of these actions would not have occurred.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 5, May 2007; *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). |
|---|---|

**3.9**    **TITLE VII – RETALIATION CLAIM**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

Mr. Almakhadhi claims that Delaware Park retaliated against him because of complaints he made about alleged race and/or national origin discrimination. You are instructed that those laws prohibiting discrimination in the work place also prohibit any retaliatory action being taken against an employee by an employer because the employee has asserted rights or made complaints under those laws. So, even if a complaint of discrimination against an employer is later found to be invalid or without merit, the employee cannot be penalized in retaliation for having made such a complaint if you find that the employee made the complaint as a means of seeking to enforce what the employee believed in good faith to be his lawful rights. To establish "good faith," however, it is insufficient for the Plaintiffs to merely allege that their belief in this regard was honest and bona fide; the allegations and the record must also establish that the belief, though perhaps mistaken, was objectively reasonable.

Informal complaints and protests can constitute activity protected from retaliation. "Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management. To determine if [a plaintiff alleging retaliation] sufficiently opposed discrimination, [the law] look[s] to the message being conveyed rather than the means of conveyance." *Moore v. City of Philadelphia,* 461 F.3d 331, 343 (3d Cir. 2006) (citations omitted).

The parties agree that Mr. Almakhadhi engaged in protected activity under the statute; in this case, by making complaints of discrimination to Delaware Park. The parties also agree that after Mr. Almakhadhi made complaints, he was not selected for promotion, was not assigned light duty, was denied leave, was not paid his bonus, and was terminated from employment.

Therefore, to prevail on his claims for retaliation, Mr. Almakhadhi must prove by a preponderance of the evidence that there was a causal connection between his complaint(s) of discrimination and Delaware Park's actions towards and treatment of him..

Each of Mr. Almakhadhi's claims for retaliation must be considered individually. Although these claims should all be considered using the elements I have just given you, they are independent of one another and a separate finding should be made as to each claim.

The following instructions apply to each of Mr. Almakhadhi's claims of retaliation. The connection between Mr. Almakhadhi's complaints and Delaware Park's adverse actions may be shown in several ways. For example, you may or may not find that there is a sufficient connection through the timing of the events; that is, did the action at issue follow shortly after Delaware Park became aware of a complaint that Mr. Almakhadhi made. Causation also may or may not be proven by antagonism shown toward Mr. Almakhadhi or a change in demeanor toward Mr. Almakhadhi after he made a complaint.

To prove a causal connection, however, an employee must show that the employer was aware of his protected activity when the adverse action occurred. This means that in order for you to find that Mr. Almakhadhi has established a causal connection between his complaints and Delaware Park's adverse employment actions against him, Mr. Almakhadhi must prove that the decision-makers responsible for these actions knew about his discrimination complaints when he or she made the decisions at issue. If the person or persons who made the decision at issue were unaware of his complaint(s) at the time the decision was made, Mr. Almakhadhi has not proven a causal connection between his complaint(s) and the decision, and you must find for Delaware Park on that claim.

Ultimately, you must decide whether Mr. Almakhadhi's complaint or complaints had a motivating effect on Delaware Park's adverse employment decisions. It is not necessary for the Plaintiff to prove that his complaints were the sole or exclusive reason for Defendant's actions. It is sufficient if Mr. Almakhadhi proves that his complaints motivated a consideration that made a difference in the Defendant's decision. In showing that his complaints were a motivating factor for Delaware Park's action, Mr. Almakhadhi is not required to prove that his complaints were the sole motivation or even the primary motivation for Delaware Park's decisions. Mr. Almakhadhi need only prove that his complaints played a motivating part in Delaware Park's decision even though other factors may also have motivated Delaware Park.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 5, May 2007); Eleventh Circuit Pattern Jury Instructions (Civil Cases); Federal Claims Instructions (Miscellaneous Issues, Retaliation) No 1.10.3 used as a model. |
|---|---|

**3.9**    **TITLE VII – RETALIATION CLAIM**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

Mr. Almakhadhi claims that Delaware Park retaliated against him by not promoting him, not giving him a light duty assignment, and terminating his employment, because of complaints he made about alleged race and/or national origin discrimination.

The Impress Supervisor position opening in August 2005 is the only promotional opportunity you should consider with regard to Mr. Almakhadhi's claim for retaliation. No other positions to which Mr. Almakhadhi applied are relevant to your consideration of this claim.

Similarly, the time period between September 2, 2005 and Mr. Almakhadhi's termination from employment is the only one you should consider with regard to Mr. Almakhadhi's claim for retaliation based on denial of a light duty assignment. Any other times when Mr. Almakhadhi was not given a light duty assignment are not relevant to your consideration of this claim.

The parties agree that Mr. Almakhadhi engaged in protected activity under the statute; in this case, by making a complaint of discrimination to Delaware Park. The parties also agree that after Mr. Almakhadhi made a complaint, he was not promoted in August 2005 to the position of Impress Supervisor, was not assigned light duty, and was terminated from employment. The parties dispute whether Mr. Almakhadhi was denied a bonus.

To prevail on his claims for retaliation, Mr. Almakhadhi must prove by a preponderance of the evidence that there was a causal connection between his complaint(s) of discrimination and the decisions or actions by Delaware Park that I have just described.

Each of Mr. Almakhadhi's claims for retaliation must be considered individually. Although these claims should all be considered using the elements I have just given you, they are independent of one another and a separate finding should be made as to each claim.

79

The following instructions apply to each of Mr. Almakhadhi's claims of retaliation. The connection between Mr. Almakhadhi's complaints and Delaware Park's adverse actions may be shown in several ways. For example, you may or may not find that there is a sufficient connection through the timing of the events; that is, did the action at issue follow shortly after Delaware Park became aware of a complaint that Mr. Almakhadhi made. Causation also may or may not be proven by antagonism shown toward Mr. Almakhadhi or a change in demeanor toward Mr. Almakhadhi after he made a complaint.

To prove a causal connection, however, an employee must show that the employer was aware of his protected activity when the adverse action occurred. This means that in order for you to find that Mr. Almakhadhi has established a causal connection between his complaints and Delaware Park's decisions regarding his bonus, not to promote him, not to give him a light duty assignment, and/or to terminate his employment, Mr. Almakhadhi must prove that the decision-makers responsible for these actions knew about his discrimination complaints when he or she made the decisions at issue. If the person or persons who made the decision at issue were unaware of his complaint(s) at the time the decision was made, Mr. Almakhadhi has not proven a causal connection between his complaint(s) and the decision, and you must find for Delaware Park on that claim.

Ultimately, you must decide whether Mr. Almakhadhi's complaint or complaints had a determinative effect on Delaware Park's decision regarding his bonus, not to promote him to Impress Supervisor in August 2005, not to assign him light duty work in September 2005, and/or to terminate his employment. "Determinative effect" means that if not for Mr. Almakhadhi's complaint or complaints, one or more of these actions would not have occurred.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 5, May 2007; *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (holding that, to make out a *prima facie* case of retaliation, the employer must be aware of plaintiff's protected activity); *Gordon v. National R.R. Passenger Corp.*, 564 F. Supp. 199, 204 (E.D. Pa. 1983) (same). |

**3.10    TITLE VII – HOSTILE WORK ENVIRONMENT CLAIM**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

Mr. Almakhadhi claims that he was subjected to a hostile work environment that was motivated by his race or national origin.  Delaware Park is liable for the actions of its employees with regard to Mr. Almakhadhi's claim of harassment if Mr. Almakhadhi proves all of the following elements by a preponderance of the evidence:

First: Mr. Almakhadhi was subjected to at least one instance of harassing conduct.

Second: Defendant's conduct was motivated by the fact that Mr. Almakhadhi is Arab or Middle Eastern.

Third: The conduct was so severe or pervasive that a reasonable person in Mr. Almakhadhi's position would find his or her work environment to be hostile or abusive. Fourth: Mr. Almakhadhi believed his work environment was hostile or abusive as a result of Defendant's conduct.

In determining whether a work environment is "hostile" you must look at all of the circumstances, which may include:

· The total environment of Mr. Almakhadhi's work area.

· The frequency of the offensive conduct.

· The severity of the conduct.

· The effect of the working environment on Mr. Almakhadhi's mental and emotional well-being.

· Whether the conduct was pervasive.

· Whether the conduct was physically threatening or humiliating.

· Whether the conduct was merely a tasteless remark.

·Whether the conduct unreasonably interfered with Mr. Almakhadhi's work performance.

Conduct that amounts only to ordinary socializing in the workplace, such as occasional

82

horseplay, occasional use of abusive language, tasteless jokes, and occasional teasing, does not constitute an abusive or hostile work environment. A hostile work environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar. In order to find a hostile work environment, you must find that Mr. Almakhadhi was harassed because of his Arab race or Middle Eastern origin. The harassing conduct may, but need not be, racial in nature. Rather, its defining characteristic is that the harassment complained of is linked to the victim's race or national origin. The key question is whether Mr. Almakhadhi, as an Arab person or a person of Middle Eastern origin, was subjected to harsh employment conditions which other employees outside of these protected classes were not.

It is important to understand that, in determining whether a hostile work environment existed at Delaware Park, you must consider the evidence from the perspective of a reasonable person in the same position. That is, you must determine whether a reasonable person would have been offended or harmed by the conduct in question. You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable person, who is simply one of normal sensitivity and emotional make-up.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |
|---|---|

**3.10    TITLE VII – HOSTILE WORK ENVIRONMENT CLAIM**

*[if permitted by the Court]  [DEFENDANT'S PROPOSED INSTRUCTION]*

Mr. Almakhadhi claims that he was subjected to harassment by his supervisors and that this harassment was motivated by his race or national origin.  Delaware Park is liable for such actions if Mr. Almakhadhi proves all of the following elements by a preponderance of the evidence:

First: Mr. Almakhadhi was subjected to at least one instance of harassing conduct between June 30, 2005 and his termination from employment.

Second: the harassing conduct was motivated by the fact that Mr. Almakhadhi is Arab.

Third: The harassment was so severe or pervasive that a reasonable person in Mr. Almakhadhi's position would find his or her work environment to be hostile or abusive.

Fourth: Mr. Almakhadhi believed his work environment was hostile or abusive as a result of Ms. Dixon's conduct.

In determining whether a work environment is "hostile" you must look at all of the circumstances, which may include:

· The total environment of Mr. Almakhadhi's work area.

· The frequency of the offensive conduct.

· The severity of the conduct.

· The effect of the working environment on Mr. Almakhadhi's mental and emotional well-being.

· Whether the conduct was pervasive.

· Whether the conduct was physically threatening or humiliating.

· Whether the conduct was merely a tasteless remark.

·Whether the conduct unreasonably interfered with Mr. Almakhadhi's work performance.

Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, occasional use of abusive language, tasteless jokes, and occasional teasing, does not constitute an abusive or hostile work environment. A hostile work environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar. In order to find a hostile work environment, you must find that Mr. Almakhadhi was harassed because of he is Arab. The harassing conduct may, but need not be, racial in nature. Rather, its defining characteristic is that the harassment complained of is linked to the victim's race or national origin. The key question is whether Mr. Almakhadhi, as an Arab, was subjected to harsh employment conditions which other employees outside of these protected classes were not.

It is important to understand that, in determining whether a hostile work environment existed at Delaware Park, you must consider the evidence from the perspective of a reasonable person in the same position. That is, you must determine whether a reasonable person would have been offended or harmed by the conduct in question. You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable person, who is simply one of normal sensitivity and emotional make-up.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |
|---|---|

**3.11    TITLE VII – HOSTILE WORK ENVIRONMENT CLAIM – EMPLOYER'S AFFIRMATIVE DEFENSE  [*JOINT*]**

If any of the above elements has not been proved by a preponderance of the evidence, your verdict must be for Delaware Park, and you need not proceed further in considering this claim. If you find that the elements have been proved, then you must consider Delaware Park's affirmative defense.  I will instruct you now on the elements of that affirmative defense.

You must find for Delaware Park if you find that Delaware Park has proved both of the following elements by a preponderance of the evidence:

First:    Delaware Park exercised reasonable care to prevent harassment in the workplace on the basis of race and national origin, and also exercised reasonable care to promptly correct any harassing behavior that did occur.

Second: Mr. Almakhadhi unreasonably failed to take advantage of any preventive or corrective opportunities provided by Delaware Park.

Proof of the four following facts will be enough to establish the first element that I just referred to, concerning prevention and correction of harassment:

1. Delaware Park had established a policy against harassment in the workplace on the basis of race and national origin.

2. That policy was fully communicated to its employees.

3. That policy provided a reasonable way for Mr. Almakhadhi to make a claim of harassment to higher management.

4. Reasonable steps were taken to correct any alleged harassment, if that complaint was raised by Mr. Almakhadhi.

On the other hand, proof that Mr. Almakhadhi did not follow a reasonable complaint procedure provided by Delaware Park will ordinarily be enough to establish that Mr. Almakhadhi unreasonably failed to take advantage of a corrective opportunity.

86

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |

**3.12    FMLA – INTRODUCTORY INSTRUCTION**

*[PLAINTIFF'S PROPOSED INSTRUCTION[*

In this case Mr. Almakhadhi has made a claim under the Family and Medical Leave Act, a federal statute that prohibits an employer from interfering with or discriminating against an employee because of that employee's exercise of the right granted in the Act to a period of unpaid leave for one of the following reasons:   because of a serious health condition; where necessary to care for a family member with a serious health condition; because of the birth of a son or daughter; or because of the placement of a son or daughter with the employee for adoption or foster care. An employee, if they qualify for leave under the FMLA, has an entitlement to that leave.

Specifically, Mr. Almakhadhi claims that Delaware Park discriminated against him for taking FMLA leave by taking adverse employment actions against him, including not promoting him, by denying him light duty assignments, and by terminating his employment. Delaware Park's refusal to let Mr. Almakhadhi return to work in September 2005 is an example of an adverse employment decision.

Mr. Almakhadhi also claims that as part of its discrimination and retaliation against him, Delaware Park denied him FMLA leave to which he was entitled in February 2006, when he was terminated from employment.

Delaware Park denies that its decisions were made because Mr. Almakhadhi took FMLA leave and denies that Mr. Almakhadhi was entitled to any additional leave at the time of his termination or that it denied him FMLA leave for any discriminatory or retaliatory reason.

I will now instruct you more fully on the issues that you must address with regard to this claim.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007. |
|---|---|

## 3.12    FMLA – INTRODUCTORY INSTRUCTION [1]

### *[DEFENDANT'S PROPOSED INSTRUCTION]*

In this case Mr. Almakhadhi has made a claim under the Family and Medical Leave Act, a federal statute that prohibits an employer from interfering with or discriminating against an employee because of that employee's exercise of the right granted in the Act to a period of unpaid leave for one of the following reasons:   because of a serious health condition; where necessary to care for a family member with a serious health condition; because of the birth of a son or daughter; or because of the placement of a son or daughter with the employee for adoption or foster care.

Specifically, Mr. Almakhadhi claims that Delaware Park discriminated against him for taking FMLA leave by not promoting him [*to the Main Bank Cashier position in January 2005 and*] to the Impress Supervisor position in August 2005, by denying him light duty assignments [*in April 2005 and*] in September 2005, and by terminating his employment.   Mr. Almakhadhi also claims that Delaware Park denied him FMLA leave to which he was entitled in February 2006, when he was terminated from employment.

Delaware Park denies that its decisions were made because Mr. Almakhadhi took FMLA leave and denies that Mr. Almakhadhi was entitled to any additional leave at the time of his termination.

I will now instruct you more fully on the issues that you must address with regard to this claim.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007. |
|---|---|

[1]    The Court's ruling on the applicable statute of limitations for Plaintiff's FMLA claims will determine whether the bracketed/italicized language is included or eliminated.

**3.13**   **FMLA – EMPLOYER'S RIGHT TO PLACE EMPLOYEE ON LEAVE**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

An employer is permitted to place an employee on FMLA leave if the employee is unable to perform the essential functions of his job.  The employer may place the employee on FMLA leave even if the employee prefers to be given another assignment or does not want the leave to count under the FMLA. If an employer decides to place an employee on FMLA leave, the law requires the employer to provide written notice of that decision to the employee

| Authorities | *Moss v. Formosa Plastics Corp.*, 99 F. Supp. 2d 737, 741 (M.D. La. 2000); *Love v. City of Dallas*, 1997 U.S. Dist. LEXIS 21982, at *17-18 (N.D. Tex. May 14, 1997). |
|---|---|

**3.13    FMLA – EMPLOYER'S RIGHT TO PLACE EMPLOYEE ON LEAVE**

   **[*DEFENDANT'S PROPOSED INSTRUCTION*]**

An employer is permitted to place an employee on FMLA leave if the employee is unable to perform the essential functions of his job.  The employer may place the employee on FMLA leave even if the employee prefers to be given another assignment or does not want the leave to count under the FMLA.  Therefore, you should not draw any adverse inferences from the fact that Delaware Park placed Mr. Almakhadhi on FMLA leave in April 2005 when his physicians had advised that he could not perform the essential functions of his job.  Instead, you must focus on whether Delaware Park discriminated against Mr. Almakhadhi because he previously had taken FMLA leave.

| Authorities | *Moss v. Formosa Plastics Corp.*, 99 F. Supp. 2d 737, 741 (M.D. La. 2000); *Love v. City of Dallas*, 1997 U.S. Dist. LEXIS 21982, at *17-18 (N.D. Tex. May 14, 1997). |
|---|---|

92

**3.14    FMLA – DISCRIMINATION CLAIM**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

In this case Mr. Almakhadhi alleges that he was retaliated against because he exercised his right to unpaid leave under the Family and Medical Leave Act and  that he was denied leave to which he was entitled as part of Delaware Park's pattern of discrimination and retaliation against him. Both parties agree that Mr. Almakhadhi took leave under the FMLA in 2004 to care for his father, and took FMLA leave again between April 13, 2005 and June 13, 2005 because of his back condition.

The parties also agree that Delaware Park did not promote Mr. Almakhadhi to any job to which he applied.  They also agree that Delaware Park did not assign Mr. Almakhadhi to light duty work, and that Delaware Park terminated Mr. Almakhadhi's employment. Therefore, to prevail on his claims under the FMLA, Mr. Almakhadhi must prove by a preponderance of the evidence:

The fact that Mr. Almakhadhi had previously taken FMLA leave was a motivating factor in Delaware Park's adverse employment actions against him, including its decisions not to promote him, not to give him a light duty assignment, and/or to terminate his employment.

Each of Mr. Almakhadhi's claims for discrimination under the FMLA must be considered individually.  Although these claims should all be considered using the elements I have just given you, they are independent of one another and a separate finding should be made as to each claim.

The following instructions apply to each of Mr. Almakhadhi's FMLA discrimination claims. Mr. Almakhadhi is not required to prove that Delaware Park acted with the particular intent to

violate his federal rights.  Mr. Almakhadhi also is not required to produce direct evidence of intent, such as statements admitting discrimination. However, Mr. Almakhadhi must prove that Delaware Park acted with the intent to discriminate against him because he took FMLA leave. Intent involves the state of mind with which an act is done. It means the desire to bring about a result. If you find that the actions of the Defendant were with the desire to bring about a result, it is said to have intended that result.

Delaware Park has given nondiscriminatory reasons for not promoting Mr. Almakhadhi, not giving him a light duty assignment, and terminating his employment.  If you disbelieve Delaware Park's explanations for its conduct, then you may, but need not, find that Mr. Almakhadhi has proved intentional discrimination. To show that Delaware Park's reasons for its actions are a pretext, or excuse, for discrimination, Mr. Almakhadhi must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in those reasons so as to make them unworthy of belief.  You cannot find intentional discrimination simply because you disagree with the business judgment of Delaware Park or believe it is mistaken, harsh or unreasonable.  You are not to consider Delaware Park's wisdom. However, you may consider whether Delaware Park's reasons are merely a cover-up for discrimination. It is not necessary for the Plaintiff to prove that his use of FMLA leave was the sole or exclusive reason for Defendant's actions, or even the primary motivation for Delaware Park's actions. It is sufficient if Mr. Almakhadhi proves that his use of FMLA leave was a motivating consideration that made a difference in the Defendant's decision.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007; *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); *Fischer v. Maloney*, 373 N.E.2d 1215 (1978); *Clark v. New York Tel. Co.*, 52 A.D.2d 1030, aff'd 41 N.Y.2d 1069 (4th Dept. App. Div. May 14, 1976). |

### 3.14    FMLA – DISCRIMINATION CLAIM[2]

*[DEFENDANT'S PROPOSED INSTRUCTION]*

In this case Mr. Almakhadhi alleges that he was discriminated against for exercising the right to unpaid leave under the Family and Medical Leave Act. In order for Mr. Almakhadhi to recover on this discrimination claim against Delaware Park, he must prove that Delaware Park intentionally discriminated against him. This means that Mr. Almakhadhi must prove that his prior exercise of the right to take FMLA leave was a determinative factor in Delaware Park's decision not to promote him, not to give him light duty, and/or to terminate his employment.

Both parties agree that Mr. Almakhadhi took leave under the FMLA in 2004 to care for his father, and took FMLA leave again between April 13, 2005 and June 13, 2005 because of his back condition.

The parties also agree that Delaware Park did not promote Mr. Almakhadhi to [*the Main Bank Cashier position in January 2005 or to*] the Impress Supervisor position in August 2005.  They also agree that Delaware Park did not assign Mr. Almakhadhi to light duty work [*in April 2005 or*] in September 2005, and that Delaware Park terminated Mr. Almakhadhi's employment.  Therefore, to prevail on his claims for discrimination under the FMLA, Mr. Almakhadhi must prove by a preponderance of the evidence:

The fact that Mr. Almakhadhi had previously taken FMLA leave was a determinative factor in Delaware Park's decisions not to promote him, not to give him a light duty assignment, and/or to terminate his employment.

Each of Mr. Almakhadhi's claims for discrimination under the FMLA must be

---

[2]      The Court's ruling on the applicable statute of limitations for Plaintiff's FMLA claims will determine whether the bracketed/italicized language is included or eliminated.

considered individually.  Although these claims should all be considered using the elements I have just given you, they are independent of one another and a separate finding should be made as to each claim.

The following instructions apply to each of Mr. Almakhadhi's FMLA discrimination claims.  Mr. Almakhadhi is not required to prove that Delaware Park acted with the particular intent to violate his federal rights.  Mr. Almakhadhi also is not required to produce direct evidence of intent, such as statements admitting discrimination. However, Mr. Almakhadhi must prove that Delaware Park acted with the intent to discriminate against him because he took FMLA leave.

Delaware Park has given nondiscriminatory reasons for not promoting Mr. Almakhadhi, not giving him a light duty assignment, and terminating his employment.  If you disbelieve Delaware Park's explanations for its conduct, then you may, but need not, find that Mr. Almakhadhi has proved intentional discrimination. To show that Delaware Park's reasons for its actions are a pretext, or excuse, for discrimination, Mr. Almakhadhi must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in those reasons so as to make them unworthy of belief.  You cannot find intentional discrimination simply because you disagree with the business judgment of Delaware Park or believe it is mistaken, harsh or unreasonable.  You are not to consider Delaware Park's wisdom. However, you may consider whether Delaware Park's reasons are merely a cover-up for discrimination.

Ultimately, you must decide whether Mr. Almakhadhi has proven that his taking leave under the Family Medical Leave Act was a determinative factor in its decisions not to promote him, not to give him a light duty assignment, and/or to terminate his employment.

96

"Determinative factor" means that if not for the fact that Mr. Almakhadhi took FMLA leave, one or more of these actions would not have occurred.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007; *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). |
|---|---|

3.15   **FMLA – INTERFERENCE CLAIM**   *[if permitted by the Court]*   [*JOINT*]

Mr. Almakhadhi claims that Delaware Park interfered with his right to take unpaid leave from work under the Family and Medical Leave Act by denying him FMLA leave to which he allegedly was entitled at the time of his termination.  The FMLA allows eligible employees to take up to 12 weeks of unpaid leave during a 12-month period.  In this case, the 12-month period began on the first day that Mr. Almakhadhi took FMLA leave and ended one year later.

Delaware Park denies that it interfered with Mr. Almakhadhi's FMLA rights in any way and claims that Mr. Almakhadhi had already used all of his 12 weeks of FMLA leave when he was terminated from employment.

The parties agree that Delaware Park was an employer covered by the FMLA and that Mr. Almakhadhi was eligible to take 12 weeks of FMLA leave during a 12-month period.  Therefore, to prevail on his interference claim, Mr. Almakhadhi must prove the following  by a preponderance of the evidence:

First:   Mr. Almakhadhi was entitled to FMLA leave at the time he was terminated from employment; that is, at the time of his discharge, Mr. Almakhadhi still had part or all of his 12 weeks of leave available under the FMLA.

Second: Delaware Park interfered with the exercise of Mr. Almakhadhi's right to unpaid leave by denying him the FMLA leave to which he was entitled.

It does not matter whether Delaware Park intended to violate the FMLA.  If Delaware Park denied Mr. Almakhadhi a right to which he was entitled under the FMLA, in this case, the right to additional FMLA leave, then you should find in favor of Mr. Almakhadhi.

Whether an employee is entitled to leave under the FMLA is determined on the first day of the employee's leave.  If an employee is not entitled to FMLA leave when his leave of absence begins, he is not entitled to FMLA leave at any time during that leave period.  In other words, an employee cannot become eligible for FMLA leave in the middle of an uninterrupted period of absence that was not initially covered under the FMLA.

Also, you cannot find that Delaware Park interfered with Mr. Almakhadhi's right to FMLA leave simply because Delaware Park imposes reporting obligations for employees who are on leave.  An employer does not interfere with an employee's right to take leave by establishing a policy requiring all employees to call in to report their whereabouts while on leave.

Finally, so long as an employer has provided the 12 weeks of leave required by the FMLA in any applicable 12-month period, the employer is not required to provide notice to the employee that his leave has been exhausted, unless the employee can show that he suffered some prejudice or harm by not receiving such a notice.  The employer also is not required to provide any additional leave once the 12-week period has been exhausted.  If an employee is unable to return to work at the end of the 12-week period of FMLA leave, the employee loses the protections of the FMLA.  This means that if an employee remains unable to perform the essential functions of his position after 12 weeks of leave, the employee has no right to restoration to his position, and his termination does not violate the FMLA.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007; *see* 29 C.F.R. § 825.214(b); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002); *Gibson v. Lafayette Manor, Inc.*, 2007 WL 951473 (W.D. Pa. Mar. 27, 2007); *Adly v. SuperValu, Inc.*, 2007 U.S. Dist. LEXIS 57011, at *11-12 (D. Minn. Aug. 3, 2007); *Sewall v. Chicago Transit Auth.*, 2001 U.S. Dist. LEXIS 330, at *5-6 (N.D. Ill. Jan. 16, 2001) . |

## C.    INSTRUCTIONS ON DAMAGES

## 4.1    <u>EFFECT OF INSTRUCTION AS TO DAMAGES</u>

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

Upon your consideration of the case, under the instructions I have given you, if you reach the conclusion Mr. Almakhadhi has proved by a preponderance of the evidence that he suffered harm in regard to one or more of his claims, then and only then should you give consideration to the question of damages and determine the amount of money, if any, to be awarded to Mr. Almakhadhi for that particular claim or claims.  You are instructed that Mr. Almakhadhi is not entitled to recover any damages merely because he was discharged from employment, and no liability on the part of Delaware Park may be inferred simply because this suit was brought.

Additionally, the fact that I am instructing you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case.  I am instructing you on damages so that you will have guidance only if you find in favor of Mr. Almakhadhi by a preponderance of the evidence.  If you find that Mr. Almakhadhi has not prevailed on a claim by a preponderance of the evidence, you should not consider the issue of damages for that claim.

| Authorities | Adapted from O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 106.02 (5th ed. 2001). |
|---|---|

**4.1**     **EFFECT OF INSTRUCTION AS TO DAMAGES**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

Upon your consideration of the case, under the instructions I have given you, if you reach

the conclusion Mr. Almakhadhi has proved by a preponderance of the evidence that he was

intentionally discriminated or retaliated against in regard to one or more of his claims, then and

only then should you give consideration to the question of damages and determine the amount of

money, if any, to be awarded to Mr. Almakhadhi for that particular claim or claims.  You are

instructed that Mr. Almakhadhi is not entitled to recover any damages merely because he was

discharged from employment, and no liability on the part of Delaware Park may be inferred

simply because this suit was brought.

Additionally, the fact that I am instructing you as to the proper measure of damages

should not be considered as indicating any view of mine as to which party is entitled to your

verdict in this case.  I am instructing you on damages so that you will have guidance only if you

find in favor of Mr. Almakhadhi by a preponderance of the evidence.  If you find that Mr.

Almakhadhi has not prevailed on a claim by a preponderance of the evidence, you should not

consider the issue of damages for that claim.

| Authorities | Adapted from O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 106.02 (5th ed. 2001). |
|---|---|

**4.2**    **COMPENSATORY DAMAGES -- ADA AND TITLE VII CLAIMS**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

If you find by a preponderance of the evidence that Delaware Park violated Mr. Almakhadhi's federally protected rights by subjecting him to harassment and/or a hostile working environment because of his race and/or national origin and/or retaliated against him for taking steps seeking to enforce his rights under Title VII of the Civil Rights Act of 1964, or that Delaware Park discriminated against Mr. Almakhadhi because of his alleged disability, or retaliated against him because he sought to enforce his legal rights concerning his alleged disability, then you must consider the issue of compensatory damages. Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence.

Compensatory damages are specifically provided for by law and are intended to compensate a victim of discrimination for his emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-monetary) losses. You must award Mr. Almakhadhi an amount that will fairly compensate him for any injury he actually sustained as a result of Delaware Park's conduct.

The damages that you award must be just, reasonable and fair compensation, no more and no less. The award of compensatory damages is meant to put Mr. Almakhadhi in the position he would have occupied if the discrimination had not occurred. Compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury - tangible and intangible. Thus, no evidence of the value of such intangible things as emotional pain and mental anguish has been or need be introduced. In that respect it is not value you are trying to determine, but an amount that will fairly compensate the Plaintiffs for those

claims of damage. There is no exact standard to be applied; any such award should be fair and just in the light of the evidence.

Mr. Almakhadhi must show that the harm he suffered would not have occurred without Delaware Park's actions. Mr. Almakhadhi must also show that Delaware Park's actions played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of Delaware Park's actions. This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether Delaware Park's actions were motivated by discrimination. In other words, even assuming that Delaware Park's actions were motivated by discrimination, Mr. Almakhadhi is not entitled to damages for an injury unless Delaware Park's discriminatory actions actually played a substantial part in bringing about that injury.

There can be more than one cause of an injury. To find that Delaware Park's actions caused Mr. Almakhadhi's injury, you need not find that Delaware Park's actions were the nearest cause, either in time or space. However, if Mr. Almakhadhi's injury was caused by a later, independent event that intervened between Delaware Park's actions and Mr. Almakhadhi's injury, Delaware Park is not liable unless the injury was reasonably foreseeable by Delaware Park.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Mr. Almakhadhi experienced as a consequence of Delaware Park's

actions. To be entitled to these damages, Mr. Almakhadhi must show actual injury to his mental state. Mr. Almakhadhi need not, however, submit evidence of the monetary value of such intangible things as pain and suffering. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

[*I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Mr. Almakhadhi would have earned, either in the past or in the future, if he had continued in employment with Delaware Park. These elements of recovery of wages that Mr. Almakhadhi would have received from Delaware Park are called "back pay" and "front pay". Under the applicable law, the determination of "back pay" and "front pay" is for the court.*][3]

As I instructed you previously, Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence. But the law does not require that Mr. Almakhadhi prove the amount of his losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007; Eleventh Circuit Pattern Jury Instructions (Civil Cases); Federal Claims Instructions 1.2.2; 42 U.S.C. § 1981a(b)(3). |
|---|---|

---

[3]     Bracketed/italicized language will be eliminated if the Court gives advisory instructions on back pay and front pay.

**4.2**    **COMPENSATORY DAMAGES -- ADA AND TITLE VII CLAIMS**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

If you find by a preponderance of the evidence that Delaware Park violated  Mr. Almakhadhi's federally protected rights against discrimination or retaliation based on his race, national origin, or alleged disability, then you must consider the issue of compensatory damages. You must award Mr. Almakhadhi an amount that will fairly compensate him for any injury he actually sustained as a result of Delaware Park's conduct. The damages that you award must be fair compensation, no more and no less. The award of compensatory damages is meant to put Mr. Almakhadhi in the position he would have occupied if the discrimination had not occurred. Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence.

Mr. Almakhadhi must show that the injury would not have occurred without Delaware Park's actions.  Mr. Almakhadhi must also show that Delaware Park's actions played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of Delaware Park's actions.  This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether Delaware Park's actions were motivated by discrimination. In other words, even assuming that Delaware Park's actions were motivated by discrimination, Mr. Almakhadhi is not entitled to damages for an injury unless Delaware Park's discriminatory actions actually played a substantial part in bringing about that injury.

There can be more than one cause of an injury.  To find that Delaware Park's actions caused Mr. Almakhadhi's injury, you need not find that Delaware Park's actions were the nearest cause, either in time or space. However, if Mr. Almakhadhi's injury was caused by a later, independent event that intervened between Delaware Park's actions and Mr. Almakhadhi's

injury, Delaware Park is not liable unless the injury was reasonably foreseeable by Delaware Park.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Mr. Almakhadhi experienced as a consequence of Delaware Park's actions. To be entitled to these damages, Mr. Almakhadhi must show actual injury to his mental state.   Mr. Almakhadhi need not, however, submit evidence of the monetary value of such intangible things as pain and suffering. There is no exact standard for fixing the compensation to be awarded for these elements of damage.   Any award you make should be fair in light of the evidence presented at the trial.

[*I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Mr. Almakhadhi would have earned, either in the past or in the future, if he had continued in employment with Delaware Park. These elements of recovery of wages that Mr. Almakhadhi would have received from Delaware Park are called "back pay" and "front pay". Under the applicable law, the determination of "back pay" and "front pay" is for the court.*][4]

As I instructed you previously, Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence. But the law does not require that Mr. Almakhadhi prove the

---

[4]     Bracketed/italicized language will be eliminated if the Court gives advisory instructions on back pay and front pay.

amount of his losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007. |
| --- | --- |

**4.3**    **ADVISORY INSTRUCTION ON BACK PAY – TITLE VII AND ADA CLAIMS**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

If you find that Delaware Park intentionally discriminated or retaliated against Mr. Almakhadhi, then you must determine the amount of damages that Delaware Park's actions have caused him. Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence.

You may award as actual damages an amount that reasonably compensates Mr. Almakhadhi for any lost wages and benefits, taking into consideration any increases in salary and benefits that Mr. Almakhadhi would have received from Delaware Park had he not been the subject of the alleged discrimination or retaliation.

Back pay damages, if any, apply from the time Mr. Almakhadhi first lost any pay due to discrimination or retaliation until the date of your verdict.  However, if you award damages, you must not award back pay for any time that Mr. Almakhadhi would not have been at work for reasons unrelated to discrimination.

You are further instructed that Mr. Almakhadhi has a duty to mitigate his damages--that is, he is required to make reasonable efforts under the circumstances in seeking substantially equivalent employment to reduce his damages. Substantially equivalent employment is that which would have afforded Mr. Almakhadhi virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status. In seeking to mitigate damages, however, Mr. Almakhadhi is only required to exercise reasonable diligence. In other words, the law simply requires a reasonable, good faith effort. Mr. Almakhadhi does not have to be successful, nor is he required to go into another line of work, accept a demotion, or take a demeaning position. Indeed, Mr. Almakhadhi need not to seek employment which is not

108

consonant with his particular skills, background, and experience or which involve conditions that are substantially more onerous than the position he held with the Defendant.

It is Delaware Park's burden to prove by a preponderance of the evidence, any lack of diligence on Mr. Almakhadhi's part, the existence of substantially equivalent employment, and the amount, if any, by which any back pay award should be reduced. So if Delaware Park persuades you, by a preponderance of the evidence, that Mr. Almakhadhi failed to obtain substantially equivalent job opportunities that were reasonably available to him, you must reduce the award of damages by the amount of the wages that Mr. Almakhadhi reasonably would have earned if he had obtained those opportunities.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007; *see Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1101 (3d Cir. 1995); *Weaver v. Casa Gallardo*, 922 F.2d 1515 (11th Cir. 1991); *EEOC v. Guardian Pools*, 828 F.2d 1507 (11th Cir. 1987); *Sellers v. Delgado Community College*, 839 F.2d 1132 (5th Cir. 1988); *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228 (7th Cir. 1986); *Goss v. Exxon Office Systems*, 747 F.2d 885 (3rd Cir. 1984); *Stone v. D.A. & S. Oil Well Servicing, Inc.*, 624 F.2d 142 (10th Cir. 1980); *EEOC v. Molle Chevrolet*, 1992 WL 443562 (W.D. Mo. 1993). |

## 4.3    ADVISORY INSTRUCTION ON BACK PAY – TITLE VII AND ADA CLAIMS

### *[DEFENDANT'S PROPOSED INSTRUCTION]*

If you find that Delaware Park intentionally discriminated or retaliated against Mr. Almakhadhi, then you must determine the amount of damages that Delaware Park's actions have caused him. Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence.

You may award as actual damages an amount that reasonably compensates Mr. Almakhadhi for any lost wages and benefits, taking into consideration any increases in salary and benefits that Mr. Almakhadhi would have received from Delaware Park had he not been the subject of the alleged discrimination or retaliation.

Back pay damages, if any, apply from the time Mr. Almakhadhi first lost any pay due to discrimination or retaliation until the date of your verdict. However, if you award damages, you must not award back pay for any time that Mr. Almakhadhi would not have been at work for reasons unrelated to discrimination.

Also, if you award back pay for any period of time during which Mr. Almakhadhi was not at work but was receiving workers' compensation benefits, you are instructed to deduct from the back pay figure the workers' compensation benefits that Mr. Almakhadhi received during that time. [5]

---

[5]  Mr. Almakhadhi notes that the collateral source rule prohibits this portion of Defendant's Proposed instruction. Giles v. General Elec. Co., 245 F.3d 474, 494-95 & n.37 (5th Cir. 2001); Dunning v. United Parcel Serv., 471 F.Supp.2d 795t 813 (E.D.Mich. 2007) (citing Hamlin v. Charter Twp. of Flint, 165 F.3d 426t 433-36 (6th Cir.1999) (observing that "[a]pplying the collateral source rule in the employment discrimination context prevents the discriminatory employer from avoiding liability and experiencing a windfall and also promotes the deterrence functions of discrimination.)

You are further instructed that Mr. Almakhadhi has a duty to mitigate his damages--that is, he is required to make reasonable efforts under the circumstances to reduce his damages.  It is Delaware Park's burden to prove that Mr. Almakhadhi has failed to mitigate. So if Delaware Park persuades you, by a preponderance of the evidence, that Mr. Almakhadhi failed to obtain substantially equivalent job opportunities that were reasonably available to him, you must reduce the award of damages by the amount of the wages that Mr. Almakhadhi reasonably would have earned if he had obtained those opportunities.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007; *see Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1101 (3d Cir. 1995); *Shomide v. ILC Dover, Inc.*, 2007 WL 3348293 (D. Del. Nov. 9, 2007); *Mason v. The Ass'n for Indep. Growth*, 817 F. Supp. 550, 557-58 (E.D. Pa. 1993). |
| --- | --- |

## 4.4  ADVISORY INSTRUCTION ON FRONT PAY — TITLE VII AND ADA CLAIMS

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

You may determine separately a monetary amount equal to the present value of any future wages and benefits that Mr. Almakhadhi would reasonably have earned from Delaware Park had the alleged discrimination or retaliation not occurred, for the period from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits Mr. Almakhadhi will receive from other employment during that time. Mr. Almakhadhi has the burden of proving these damages by a preponderance of the evidence.

If you find that Mr. Almakhadhi is entitled to recovery of future earnings from Delaware Park, you nonetheless should not make an award for any period of time during which Mr. Almakhadhi is unable to work and would not be paid any wages.  Front pay is an alternative to reinstatement, so front pay is not an available remedy for a plaintiff who is unable to work.

You must further reduce any award to its present value by considering the interest that Mr. Almakhadhi could earn on the amount of the award if he made a relatively risk-free investment.  You must make this reduction because an award of an amount representing future loss of earnings is more valuable to Mr. Almakhadhi if he receives it today than if it were received at the time in the future when it would have been earned.  It is more valuable because Mr. Almakhadhi can earn interest on it for the period of time between the date of the award and

112

the date he would have earned the money.  So you should decrease the amount of any award for

loss of future earnings by the amount of interest that Mr. Almakhadhi can earn on that amount in

the future.

| | |
|---|---|
| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007; *see Shomide v. ILC Dover, Inc.*, 2007 WL 3348293 (D. Del. Nov. 9, 2007) (internal citations omitted). |

**4.4    ADVISORY INSTRUCTION ON FRONT PAY — TITLE VII AND ADA CLAIMS**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

You may determine separately a monetary amount equal to the present value of any future wages and benefits that Mr. Almakhadhi would reasonably have earned from Delaware Park had the alleged discrimination or retaliation not occurred, for the period from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits Mr. Almakhadhi will receive from other employment during that time. Mr. Almakhadhi has the burden of proving these damages by a preponderance of the evidence.

If you find that Mr. Almakhadhi is entitled to recovery of future earnings from Delaware Park, you nonetheless should not make an award for any period of time during which Mr. Almakhadhi is unable to work and would not be paid any wages.  Front pay is an alternative to reinstatement, so front pay is not an available remedy for a plaintiff who is unable to work.

Also, if you find that Mr. Almakhadhi is entitled to recovery of future earnings from Delaware Park, then you must deduct from your award any workers' compensation benefits that Mr. Almakhadhi reasonably expects to receive during that time period.[6]

You must further reduce any award to its present value by considering the interest that Mr. Almakhadhi could earn on the amount of the award if he made a relatively risk-free

---

[6] Mr. Almakhadhi notes that the collateral source rule prohibits this portion of Defendant's Proposed instruction. *Giles v. General Elec. Co.*, 245 F.3d 474, 494-95 & n.37 (5th Cir. 2001); *Dunning v. United Parcel Serv.*, 471 F.Supp.2d 795t 813 (E.D.Mich. 2007) (citing *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426t 433-36 (6th Cir.1999) (observing that "[a]pplying the collateral source rule in the employment discrimination context prevents the discriminatory employer from avoiding liability and experiencing a windfall and also promotes the deterrence functions of discrimination.)

investment.  You must make this reduction because an award of an amount representing future loss of earnings is more valuable to Mr. Almakhadhi if he receives it today than if it were received at the time in the future when it would have been earned.  It is more valuable because Mr. Almakhadhi can earn interest on it for the period of time between the date of the award and the date he would have earned the money.  So you should decrease the amount of any award for loss of future earnings by the amount of interest that Mr. Almakhadhi can earn on that amount in the future.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007; *see Shomide v. ILC Dover, Inc.*, 2007 WL 3348293 (D. Del. Nov. 9, 2007) (internal citations omitted). |

**4.5**     **PUNITIVE DAMAGES – ADA AND TITLE VII CLAIMS**

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

Mr. Almakhadhi claims the acts of Delaware Park were done with malice or reckless indifference to the Mr. Almakhadhi's federally protected rights against discrimination and retaliation on the basis of his race, national origin, and/or alleged disability. Mr. Almakhadhi alleges that as a result there should be an award of what are called "punitive" damages. A jury may award punitive damages to punish Delaware Park, or to deter Delaware Park and others like Delaware Park from committing such conduct in the future. The the jury may award punitive damages even if the plaintiff suffered no actual injury, and so received nominal rather than compensatory damages.

An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of Delaware Park personally acted with malice or reckless indifference to Mr. Almakhadhi's federally protected rights against discrimination or retaliation on the basis of his race, national origin, and/or disability. An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

But even if you make a finding that there has been an act of discrimination with malice or reckless disregard of Mr. Almakhadhi's federal rights, you cannot award punitive damages if Delaware Park proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law, by adopting policies and procedures designed to prevent unlawful discrimination such as that suffered by Mr. Almakhadhi.

An award of punitive damages is discretionary; that is, if you find that the legal

116

requirements for punitive damages are satisfied and that Delaware Park has not proved that it made a good-faith attempt to comply with the law, then you may decide to award punitive damages, or you may decide not to award them.  I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages.  The purposes of punitive damages are to punish Delaware Park for a malicious or reckless disregard of federal rights, or to deter Delaware Park and others like Delaware Park from doing similar things in the future, or both.  Thus, you may consider whether to award punitive damages to punish Delaware Park.  You should also consider whether actual damages standing alone are sufficient to deter or prevent Delaware Park from again performing any wrongful acts it may have performed.  Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those Delaware Park may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award.  That is, in deciding the amount of punitive damages, you should consider the degree to which Delaware Park should be punished for its wrongful conduct, and the degree to which an award of one sum or another will deter Delaware Park or others from committing similar wrongful acts in the future. The amount of punitive damages to be awarded does not have to be proportional to compensatory damages awarded. You may weigh the conduct of Defendant against the amount of damages that would deter such future conduct.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007. |

**4.5**    **PUNITIVE DAMAGES – ADA AND TITLE VII CLAIMS**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

Mr. Almakhadhi claims the acts of Delaware Park were done with malice or reckless indifference to the Mr. Almakhadhi's federally protected rights against discrimination and retaliation on the basis of his race, national origin, and/or alleged disability.  Mr. Almakhadhi alleges that as a result there should be an award of what are called "punitive" damages. A jury may award punitive damages to punish Delaware Park, or to deter Delaware Park and others like Delaware Park from committing such conduct in the future.

An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of Delaware Park personally acted with malice or reckless indifference to Mr. Almakhadhi's federally protected rights against discrimination or retaliation on the basis of his race, national origin, and/or disability.  An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

But even if you make a finding that there has been an act of discrimination with malice or reckless disregard of Mr. Almakhadhi's federal rights, you cannot award punitive damages if Delaware Park proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law, by adopting policies and procedures designed to prevent unlawful discrimination such as that suffered by Mr. Almakhadhi.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied and that Delaware Park has not proved that it made a good-faith attempt to comply with the law, then you may decide to award punitive

damages, or you may decide not to award them. I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish Delaware Park for a malicious or reckless disregard of federal rights, or to deter Delaware Park and others like Delaware Park from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish Delaware Park. You should also consider whether actual damages standing alone are sufficient to deter or prevent Delaware Park from again performing any wrongful acts it may have performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those Delaware Park may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which Delaware Park should be punished for its wrongful conduct, and the degree to which an award of one sum or another will deter Delaware Park or others from committing similar wrongful acts in the future.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007. |
|---|---|

**4.6**    **NOMINAL DAMAGES – ADA AND TITLE VII CLAIMS  [*JOINT*]**

If you return a verdict for Mr. Almakhadhi, but Mr. Almakhadhi has failed to prove actual injury and therefore is not entitled to compensatory damages, then you must award nominal damages of $ 1.00.

A person whose federal rights against discrimination or retaliation based on race, national origin, or disability were violated is entitled to recognition of that violation, even if he suffered no actual injury.  Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

However, if you find actual injury, you must award compensatory damages (as I instructed you), rather than nominal damages.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 5, and May 2007. |
|---|---|

**4.7**     <u>**COMPENSATORY DAMAGES  -- FMLA CLAIMS**</u>

*[PLAINTIFF'S PROPOSED INSTRUCTION]*

If you find that Delaware Park has violated Mr. Almakhadhi's rights under the Family and Medical Leave Act, then you must determine the amount of damages that Delaware Park's actions have caused Mr. Almakhadhi.  Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence.

You must award as actual damages an amount that reasonably compensates Mr. Almakhadhi for any lost wages and benefits, taking into consideration any increases in salary and benefits that Mr. Almakhadhi would have received from Delaware Park had Mr. Almakhadhi's FMLA rights not been violated.

In this case, Mr. Almakhadhi alleges that Defendant willfully violated the Family and Medical Leave Act. If Mr. Almakhadhi proves to you by a preponderance of the evidence that Delaware Park's violation of the Family and Medical Leave Act was willful, then this will have an effect on the damages that you must award. I will explain this effect in a minute, but first I will provide you more information on what it means for a violation to be  "willful."

You must find [defendant's] violation of the Family and Medical Leave Act to be willful if Mr. Almakhadhi proves by a preponderance of the evidence that Delaware Park knew or showed reckless disregard for whether its denial of his FMLA leave was prohibited by the law. To establish willfulness it is not enough to show that Defendant acted negligently. If you find that Defendant did not know, or knew only that the law was potentially applicable, and did not act in reckless disregard for whether its conduct was prohibited by the law, then Defendant's conduct was not willful.

If you find that Delaware Park's violation of the Family and Medical Leave Act was willful, then you must award Mr. Almakhadhi the amount of his lost wages and benefits during the period starting February 12, 2004 through the date of your verdict. However, if you find that Delaware Park violated the FMLA, but did not do so willfully, you must award Mr. Almakhadhi the amount of his lost wages and benefits during the period starting February 12, 2005 through the date of your verdict.

You must reduce any award of damages for lost wages and benefits by the amount of the expenses that [plaintiff] would have incurred in making those earnings. If you award damages for lost wages, you are instructed to deduct from this figure whatever wages Mr. Almakhadhi has obtained from other employment during this period. However, please note that you should not deduct social security benefits, unemployment compensation and pension benefits from an award of lost wages.

However, if you award Mr. Almakhadhi damages for lost wages, you must not award damages for any time that Mr. Almakhadhi would not have been at work for reasons unrelated to discrimination.

You are further instructed that Mr. Almakhadhi has a duty to mitigate his damages--that is, Mr. Almakhadhi is required to make reasonable efforts under the circumstances in seeking substantially equivalent employment to reduce his damages. Substantially equivalent employment is that which would have afforded Mr. Almakhadhi virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status. In seeking to mitigate damages, however, Mr. Almakhadhi is only required to exercise reasonable diligence. In other words, the law simply requires a reasonable, good faith effort. Mr. Almakhadhi does not have to be successful, nor is he required to go into another line of work, accept a demotion, or

123

take a demeaning position. Indeed, Mr. Almakhadhi need not to seek employment which is not consonant with his particular skills, background, and experience or which involve conditions that are substantially more onerous than the position he held with the Defendant.

It is Delaware Park's burden to prove by a preponderance of the evidence, any lack of diligence on Mr. Almakhadhi's part, the existence of substantially equivalent employment, and the amount, if any, by which any back pay award should be reduced. So if Delaware Park persuades you, by a preponderance of the evidence, that Mr. Almakhadhi failed to obtain substantially equivalent job opportunities that were reasonably available to him, you must reduce the award of damages by the amount of the wages that Mr. Almakhadhi reasonably would have earned if he had obtained those opportunities.  The Family and Medical Leave Act provides that if an employee is unable to prove that the employer's violation of the Act caused the employee to lose any wages, benefits or other compensation, then that employee may recover other monetary losses sustained as a direct result of  the employer's violation of the Act.

So in this case, if you find that Delaware Park has violated Mr. Almakhadhi's rights under the FMLA, and yet you also find that Mr. Almakhadhi has not proved the loss of any wages, benefits or other compensation as a result of this violation, then you must determine whether Mr. Almakhadhi has suffered any other monetary losses as a direct result of the violation. Other monetary losses may include the cost of providing the care that gave rise to the need for a leave. Mr. Almakhadhi has the burden of proving these monetary losses by a preponderance of the evidence.

Under the law, Mr. Almakhadhi's recovery for these other monetary damages can be no higher than the amount that he would have made in wages or salary for a twelve-week period during his employment. So you must limit your award for these other monetary damages, if any,

to that amount. You must also remember that if Mr. Almakhadhi has proved damages for lost wages, benefits or other compensation, then you must award those damages only and  Mr. Almakhadhi may not recover any amount for any other monetary damages suffered as a result of Defendant's violations of the FMLA.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, and May 2007; *see Weaver v. Casa Gallardo*, 922 F.2d 1515 (11th Cir. 1991); *EEOC v. Guardian Pools*, 828 F.2d 1507 (11th Cir. 1987); *Sellers v. Delgado Community College*, 839 F.2d 1132 (5th Cir. 1988); *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228 (7th Cir. 1986); *Goss v. Exxon Office Systems*, 747 F.2d 885 (3rd Cir. 1984); *Stone v. D.A. & S. Oil Well Servicing, Inc.*, 624 F.2d 142 (10th Cir. 1980); *EEOC v. Molle Chevrolet*, 1992 WL 443562 (W.D. Mo. 1993). |

**4.7**      **COMPENSATORY DAMAGES  -- FMLA CLAIMS**

*[DEFENDANT'S PROPOSED INSTRUCTION]*

If you find that Delaware Park has violated Mr. Almakhadhi's rights under the Family and Medical Leave Act, then you must determine the amount of damages that Delaware Park's actions have caused Mr. Almakhadhi.  Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence.

You must award as actual damages an amount that reasonably compensates Mr. Almakhadhi for any lost wages and benefits, taking into consideration any increases in salary and benefits that Mr. Almakhadhi would have received from Delaware Park had Mr. Almakhadhi's FMLA rights not been violated.

However, if you award Mr. Almakhadhi damages for lost wages, you must not award damages for any time that Mr. Almakhadhi would not have been at work for reasons unrelated to discrimination.  Also, if you award damages for lost wages for any period of time during which Mr. Almakhadhi was not at work but was receiving workers' compensation benefits, you are instructed to deduct from your award the workers' compensation benefits that Mr. Almakhadhi received during that time. [ [7] ]

You are further instructed that Mr. Almakhadhi has a duty to mitigate his damages--that is, Mr. Almakhadhi is required to make reasonable efforts under the circumstances to reduce his

---

[7]  Mr. Almakhadhi notes that the collateral source rule prohibits this portion of Defendant's Proposed instruction. *Giles v. General Elec. Co.*, 245 F.3d 474, 494-95 & n.37 (5th Cir. 2001); *Dunning v. United Parcel Serv.*, 471 F.Supp.2d 795t 813 (E.D.Mich. 2007) (citing *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426t 433-36 (6th Cir.1999) (observing that "[a]pplying the collateral source rule in the employment discrimination context prevents the discriminatory employer from avoiding liability and experiencing a windfall and also promotes the deterrence functions of discrimination.)

damages.  It is Delaware Park's burden to prove that Mr. Almakhadhi has failed to mitigate. So if Delaware Park persuades you, by a preponderance of the evidence, that Mr. Almakhadhi failed to obtain substantially equivalent job opportunities that were reasonably available to him, you must reduce the award of damages by the amount of the wages that Mr. Almakhadhi reasonably would have earned if he had obtained those opportunities.

In assessing damages under the FMLA, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, and May 2007; *see Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1101 (3d Cir. 1995); *Gibson v. Lafayette Manor, Inc.*, 2007 WL 951473 (W.D. Pa. Mar. 27, 2007); *Mason v. The Ass'n for Indep. Growth*, 817 F. Supp. 550, 557-58 (E.D. Pa. 1993). |
|---|---|

**4.8**    **FMLA – NO RIGHT TO EMOTIONAL DISTRESS DAMAGES**  [*JOINT*]

The Family and Medical Leave Act does not allow Mr. Almakhadhi to recover for any mental or emotional distress or pain and suffering that may have been caused by Delaware Park's violation of the Act. So I instruct you that if you find in favor of Mr. Almakhadhi on his FMLA claim(s), you are not to award him any damages for emotional distress or pain and suffering.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007. |
|---|---|

**4.9**     **FMLA – NO RIGHT TO PUNITIVE OR NOMINAL DAMAGES**

***[DEFENDANT'S PROPOSED INSTRUCTION]***

Punitive damages cannot be recovered under the Family and Medical Leave Act.  Neither

can nominal damages (of $1.00), which are designed to recognize a violation of a plaintiff's

federal rights when there is no actual injury.  Thus, should you find for Mr. Almakhadhi on his

FMLA claim(s), you cannot award these types of damages.  [8]

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007. |
|---|---|

---

[8]  Mr. Almakhadhi objects to this instruction as unnecessary and prejudicial, as well as incorrect. Title 29 U.S.C. § 2617 provides for a mandatory award by the Court of liquidated damages for any award under the FMLA made by the jury. Because there is no issue for the jury to decide concerning the availability or amount of these damages, this instruction can only serve to confuse the jury and prejudice Mr. Almakhadhi.

**4.10    MITIGATION OF DAMAGES**

***[PLAINTIFF'S PROPOSED INSTRUCTION]***

Mr. Almakhadhi has a duty to mitigate any damages you find that he have suffered by using reasonable diligence in seeking substantially equivalent employment. Substantially equivalent employment is that which would have afforded Plaintiff virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status.

In seeking to mitigate damages, however, Mr. Almakhadhi is only required to exercise reasonable diligence. In other words, the law simply requires a reasonable, good faith effort. Mr. Almakhadhi does not have to be successful, nor is he required to go into another line of work, accept a demotion, or take a demeaning position. Indeed, Mr. Almakhadhi need not seek employment which is not consonant with his particular skills, background, and experience or which involves conditions that are substantially more onerous than the position he held with the Defendant.

Likewise, there is no obligation on a Plaintiff to accept, perform well in or remain employed at jobs that are not substantially equal to the job he held with the Defendant. In other words, Plaintiffs had no obligation to accept, perform well in, or remain at jobs that were not virtually identical in terms of promotional opportunities, compensation, job responsibilities, working conditions, and status to the job he held with the Defendant.

You are instructed that it is Delaware Park's burden to prove, by a preponderance of the evidence, any lack of diligence on Plaintiff's part, the existence of substantially equivalent employment, and the amount, if any, by which any damage award should be reduced..

If you determine that Mr. Almakhadhi is entitled to damages but that he failed to seem

130

substantially equivalent employment, you must reduce these damages by:

1.     what Mr. Almakhadhi earned and

2.     what Mr. Almakhadhi could have earned by making a reasonable effort to obtain

       substantially equivalent employment during the period from his discharge on

       February 12, 2006 until the date of the trial.

You must not compensate Mr. Almakhadhi for any portion of his damages resulting from

his failure to make reasonable efforts to reduce his damages.

| Authorities | Adapted from O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 170.65 (5th ed. 2001); *Ford Motor Co. v. EEOC*, 102 S.Ct. 3057 (1982); *Weaver v. Casa Gallardo*, 922 F.2d 1515 (11th Cir. 1991); *Walters v. City of Atlanta*, 803 F.2d 1135 (11th Cir. 1986); *Nord v. U.S. Steel Corp.*, 758 F.2d 1462 (11th Cir. 1985); *Spulak v. K Mart Corp.*, 894 F.2d 1150 (10th Cir. 1990); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1252 (11th Cir. 1997); *EEOC v. Guardian Pools*, 828 F.2d 1507 (11th Cir. 1987); *Sellers v. Delgado Community College*, 839 F.2d 1132 (5th Cir. 1988); *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228 (7th Cir. 1986); *Goss v. Exxon Office Systems*, 747 F.2d 885 (3rd Cir. 1984); *Stone v. D.A. & S. Oil Well Servicing, Inc.*, 624 F.2d 142 (10th Cir. 1980); *Sparks v. Griffin*, 460 F.2d 433 (5th Cir. 1972). |

**4.10**    **MITIGATION OF DAMAGES**

***[DEFENDANT'S PROPOSED INSTRUCTION]***

Mr. Almakhadhi must mitigate his damages, meaning that he must make every reasonable effort to minimize or reduce his damages for loss of compensation by seeking employment. Delaware Park must prove by a preponderance of the evidence that Mr. Almakhadhi failed to mitigate his damages for loss of compensation.

If you determine that Mr. Almakhadhi is entitled to damages, you must reduce these damages by:

1.    what Mr. Almakhadhi earned and

2.    what Mr. Almakhadhi could have earned by reasonable effort during the period from his discharge until the date of the trial.

Mr. Almakhadhi must accept employment that is "of a like nature." In determining whether employment is "of a like nature," you may consider:

1.    the type of work;

2     the hours worked;

3.    the compensation;

4.    the job security;

5.    the working conditions; and

6.    other conditions of employment.

You must decide whether Mr. Almakhadhi acted reasonably in not seeking or accepting a particular job. If you determine Mr. Almakhadhi did not make reasonable efforts to obtain another similar job, you must decide whether any damages resulted from his failure to do so.

You must not compensate Mr. Almakhadhi for any portion of his damages resulting from his failure to make reasonable efforts to reduce his damages.

| Authorities | Adapted from O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 170.65 (5th ed. 2001). |
|---|---|

**D.**    **INSTRUCTIONS ON DELIBERATION AND VERDICT**

**5.1**    **DELIBERATION AND VERDICT  [*JOINT*]**

How you conduct your deliberations is up to you.  But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges - judges of the facts, not me.  Your sole interest is to seek the truth from the evidence in that case.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

134

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through the foreperson, who by custom of this court is juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

| Authorities | Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

135

**5.2    VERDICT FORM   [*JOINT*]**

I have prepared a special verdict form for you to use in recording your decision.  The special verdict form is made up of questions concerning the important issues in this case.  You must follow the instruction on the form carefully, you must answer each question, and your answers must be unanimous and must reflect the conscientious judgment of each juror.

The fact that there is a category or blank for a certain type of damages does not require you to enter any number in the blank.  Further, the fact that I have instructed you as to a particular element of damages does not mean that the Mr. Almakhadhi is entitled to recover that element of damages.  The amounts and types of damages, if any, are solely your decision.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware. |
| --- | --- |

**5.3**    **COURT HAS NO OPINION**  [*JOINT*]

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in favor of either party.  You must decide the case yourselves based on the evidence presented.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

SAMI ALMAKHADHI,

    Plaintiff,

        v.

DELAWARE PARK LLC,

    Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 1:07-cv-00078-JJF

---

## PLAINTIFF SAMI ALMAKHADHI AND DEFENDANT DELAWARE PARK, L.L.C.'S PROPOSED JURY INSTRUCTIONS

### *REDLINE VERSION*

---

**THE CONLEY FIRM**
Frank J. Conley, Esquire
*Pro hac vice*
7715 Cheltenham Avenue, Suite 133
Philadelphia, PA 19118
(215) 836-4789

Glenn Brown, Esquire
**Real World Law**
916 N. Union St #2
Wilmington, DE 19805
(302) 225-8340

*Attorneys for Plaintiff Sami Almakhadi*

Dated: February 4, 2008

POTTER ANDERSON & CORROON LLP
Wendy K. Voss (#3142)
Jennifer Wasson (#4933)
Hercules Plaza – Sixth Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware  19899
(302) 984-6000
wvoss@potteranderson.com – Email
jwasson@potteranderson.com - Email

*Attorneys for Defendant Delaware Park, L.L.C.*

# TABLE OF CONTENTS

SECTION I:  PRELIMINARY JURY INSTRUCTIONS ................................................................

    1.1     INTRODUCTION ...................................................................................................

    1.2     THE PARTIES AND THEIR CONTENTIONS

    1.3     DUTIES OF THE JURY .......................................................................................

    1.4     EVIDENCE...........................................................................................................

    1.5     DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................................

    1.6     CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY..

    1.7     SUMMARY OF THE LAW ..................................................................................

    1.8     BURDEN OF PROOF ...........................................................................................

    1.9     CONDUCT OF THE JURY ..................................................................................

    1.10    COURSE OF THE TRIAL ...................................................................................

SECTION II: DELAWARE PARK'S PROPOSED JURY INSTRUCTIONS AT THE CLOSE
OF EVIDENCE

A.     GENERAL INSTRUCTIONS ...............................................................................

    2.1     INTRODUCTION ...................................................................................................

    2.2     EVIDENCE DEFINED .........................................................................................

    2.3     DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................................

    2.4     CONSIDERATION OF EVIDENCE ....................................................................

    2.5     STATEMENTS OF COUNSEL .............................................................................

    2.6     CREDIBILITY OF WITNESSES .........................................................................

    2.7     BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE......................

    2.8     ALL PERSONS EQUAL BEFORE THE LAW – INDIVIDUALS AND
         CORPORATIONS.................................................................................................

2.9    DISCREPANCIES IN TESTIMONY ........................................................................

2.10    ADMONITION REGARDING SYMPATHY ........................................................

B.    INSTRUCTIONS ON APPLICABLE LAW ........................................................................

3.1    BUSINESS JUDGMENT ……………………………………………………….

3.2    AT-WILL EMPLOYMENT ........................................................................

3.3    ADA CLAIM —INTRODUCTORY INSTRUCTION ............................................

3.4    ADA – DISPARATE TREATMENT CLAIM ........................................................

3.5    ADA – DEFINITION OF DISABILITY ........................................................

3.5.1.  SUBSTANTIALLY LIMITING IMPAIRMENT ........................................

3.5.2.  "REGARDED AS" DISABLED  ........................................................

3.6    ADA – NON-DISCRIMINATORY REASON/PRETEXT ....................................

3.7    TITLE VII – INTRODUCTORY INSTRUCTION ................................................

3.8    TITLE VII – DISPARATE TREATMENT – PRETEXT CLAIM ........................

3.9    TITLE VII – RETALIATION CLAIM  ........................................................

3.10    TITLE VII – HOSTILE WORK ENVIRONMENT CLAIM ................................

3.11    TITLE VII – HOSTILE WORK ENVIRONMENT CLAIM – EMPLOYER'S AFFIRMATIVE DEFENSE ........................................................................

3.12    FMLA – INTRODUCTORY INSTRUCTION ........................................................

3.13    FMLA – EMPLOYER'S RIGHT TO PLACE EMPLOYEE ON LEAVE ..............

3.14    FMLA – DISCRIMINATION CLAIM ........................................................

3.15    FMLA – INTERFERENCE CLAIM  ........................................................

C.    INSTRUCTIONS ON DAMAGES ........................................................................

4.1    EFFECT OF INSTRUCTION AS TO DAMAGES ................................................

4.2    COMPENSATORY DAMAGES – ADA AND TITLE VII CLAIMS ..................

4.3    ADVISORY INSTRUCTION ON BACK PAY – ADA AND TITLE VII CLAIMS……..

4.4    ADVISORY INSTRUCTION ON FRONT PAY – ADA AND TITLE VII CLAIMS…..

4.5    PUNITIVE DAMAGES – ADA AND TITLE VII CLAIMS ..................................

4.6    NOMINAL DAMAGES – ADA AND TITLE VII CLAIMS .................................

4.7    COMPENSATORY DAMAGES  -- FMLA CLAIMS ............................................

4.8    FMLA – NO RIGHT TO EMOTIONAL DISTRESS DAMAGES .........................

4.9    FMLA – NO RIGHT TO PUNITIVE OR NOMINAL DAMAGES .......................

4.10   MITIGATION OF DAMAGES...................................................................................

D.     INSTRUCTIONS ON DELIBERATION AND VERDICT.................................................

5.1    DELIBERATION AND VERDICT ...........................................................................

5.2    VERDICT FORM .....................................................................................................

5.3    COURT HAS NO OPINION.....................................................................................

# SECTION I:  PRELIMINARY JURY INSTRUCTIONS

## 1.1     INTRODUCTION

Members of the jury:  Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

## 1.2     THE PARTIES AND THEIR CONTENTIONS

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

The parties in this case are the plaintiff, Sami Almakhadhi, and the defendant, Delaware Park L.L.C., also referred to as "Delaware Park," Mr. Almakhadhi's former employer.

In this case, the plaintiff, Mr. Almakhadhi, brings discrimination and retaliation claims against Delaware Park, which I will describe for you in a few minutes.   Delaware Park denies that its conduct toward Mr. Almakhadhi was in any way wrongful and denies that any of its actions were motivated by discrimination or retaliation.

If appropriate, you will be asked to determine the amount of money damages necessary to compensate Mr. Almakhadhi for any injuries you believe he sustained as a result of any unlawful conduct committed by Delaware Park.

## 1.3     DUTIES OF THE JURY

So, let me begin with the general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are.  You and you alone will be the judges of the facts.  You will then have to apply those facts to the law as I explain it to you both during these preliminary instructions and at the close of the evidence.  You must follow that law whether you agree with it or not.  In addition to instructing you about the law, at the close of

4

the evidence, I will provide you with instructions as to what the claims of the parties mean.

Again, of course, you are bound by your oath as jurors to follow these and all the instructions

that I give you, even if you personally disagree with them.  All the instructions are important,

and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel

toward one side or the other influence your decision in any way.  Also, do not let anything that I

may say or do during the course of the trial influence you.  Nothing that I may say or do is

intended to indicate, or should be taken by you as indicating, what your verdict should be.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
|---|---|

5

1.4    **EVIDENCE**

The evidence from which you will find the facts will consist of the testimony of

witnesses (the testimony of witnesses consist of the answers of the witnesses to questions posed

by the attorneys or the court -- you may not ask questions).  Evidence will also consist of

documents and other things received into the record as exhibits, and any facts that the lawyers

agree to or stipulate to or that I may instruct you to find.

Some of the testimony in this trial will be in Arabic, which will then be interpreted to

English. The evidence you are to consider is only that provided through the official court

interpreters. Although some of you may know Arabic, it is important that all jurors consider the

same evidence. Therefore, you must accept the English interpretation provided by the official

court interpreter. You must disregard any different meaning

Certain things are not evidence and must not be considered by you.  I will list them for

you now:

    1.      Statements, arguments, and questions by lawyers are not evidence.

    2.      Objections to questions are not evidence.

    3.      Testimony that the court has excluded or told you to disregard is not evidence and

            must not be considered.

    4.      Anything you may have seen or heard outside the courtroom is not evidence and

            must be disregarded.  You are to decide the case solely on the evidence presented

            here in the courtroom.

You should use your common sense in weighing the evidence.  Consider it in light of

your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

As I have instructed, you are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited to the bald statements of the witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You are permitted to draw, from facts which you find have been proved, such reasonable inferences as seem justified in the light of your experience.

7

Inferences are deductions or conclusions which reason and common sense lead the jury to draw from facts which have been established by the evidence in the case.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007;1. Devitt & Blackmar, Federal Jury Practice and Instructions, (Civil Cases), § 72.04 (1987). |
|---|---|

8

**1.5    DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two kinds of evidence: direct and circumstantial.  An example of direct evidence is when a witness testifies about something that the witness knows through his own senses – something the witness has seen, felt, touched, or heard.  Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

This is a discrimination case. In cases of this sort, there is rarely direct evidence of discriminatory intent. In most such cases "specific intent to discriminate will not be demonstrated by 'smoking gun' evidence." This is because there will seldom be eyewitness testimony as to the employer's mental process. As a consequence, there is no requirement that Mr. Almakhahi submit direct evidence of discrimination. This is because discrimination is often subtle, because employers who discriminate may leave no written records revealing the forbidden motive and may communicate it orally to no one. Thus, you must assess the evidence carefully and thoroughly in order to determine whether you believe that discrimination was a motivating factor in this case.

Do not be concerned about whether evidence is "direct evidence" or "circumstantial evidence."  You should consider and weigh all of the evidence that is presented to you.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007 *Reeves v. Sanderson Products, Inc.,* 530 U.S. 133, 141 (2000); *U.S. Postal Service v. Aikens,* 460 U.S. 711, 717 (1983).. |
|---|---|

**1.6    CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You are the sole judges of the credibility of the witnesses.  "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it.  In deciding what to believe, you may consider a number of factors, including the following:

(1)    the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2)    the quality of the witness's understanding and memory;

(3)    the witness's manner while testifying;

(4)    whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;

(5)    whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6)    how reasonable the witness's testimony is when considered in light of other evidence that you believe;

(7)    any other factors that bear on believability.

   The weight of the evidence as to a fact does not depend on the number of witnesses who testify in support of that fact.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007;Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction [*4]  No. 3.6 (2001). |
|---|---|

**1.7    SUMMARY OF THE LAW**

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberation and decision.  But in order to help you follow the evidence, I will now give you a brief summary of the claims Mr. Almakhadhi is alleging against Delaware Park:

In this case Mr. Almakhadhi makes claims based on several federal laws.  The first of these is known as the Americans with Disabilities Act, which will be referred to in these instructions as the ADA.

The purpose of the ADA is to eliminate employment discrimination against persons with disabilities. The ADA makes it unlawful for an employer to discriminate against an employee because the person is disabled, is perceived as having, or regarded as having, a disability, as well as those who have been misclassified as having disabilities.

Under the ADA, an employer may not discriminate against an employee in the terms or conditions of his employment on the basis of a disability.  In order to prove that he has a disability under the ADA, Mr. Almakhadhi must show that he had a physical impairment, or a record of a physical impairment, or was regarded by Defendant as having a physical impairment that substantially limited his ability to perform one or more of her major life activities.

Major life activities are those activities that are of central importance to most people's daily lives. In determining whether an individual is substantially limited in a major life activity, the following factors should be considered: the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of the impairment.

"Disability" is a defined term with a special meaning under the ADA and I will instruct you on the meaning of that term at the conclusion of the case. Mr. Almakhadhi's claims under

11

~~the ADA are that Delaware Park failed to promote him, denied him a light duty assignment, and terminated him from employment because of his back condition~~.

Delaware Park denies that it took any action against Mr. Almakhadhi on the basis of any alleged disability.  Further, Delaware Park asserts that Mr. Almakhadhi was not a disabled individual under the ADA while he was employed by Delaware Park because he did not have a physical impairment that substantially limited any of his major life activities and Delaware Park did not regard him as being disabled.

Mr. Almakhadhi also makes several claims under a Federal Civil Rights statute commonly known as "Title VII" that prohibits employers from discriminating against an employee in the terms and conditions of employment because of, among other things, the employee's race~~, color, religion, sex,~~ or national origin. This statute also prohibits an employer from retaliating against an employee after he or she has taken steps seeking to enforce his or her legal rights~~engaged in an activity protected under the statute~~, such as making a discrimination complaint.

Mr. Almakhadhi also makes a claim under Delaware State law that Delaware Park retaliated against him for filing a worker's compensation claim.

In this case, Mr. Almakhadhi claims that Delaware Park failed to promote him, failed to give him a light duty assignment, and terminated his employment based on his race and national origin.  He also alleges that these actions were retaliatory because he made ~~a~~ complaint(s) of discrimination and filed a worker's compensation claim.

Delaware Park denies that it discriminated or retaliated against Mr. Almakhadhi in any way.

Mr. Almakhadhi also has made a claim under the Family and Medical Leave Act (or

12

FMLA)~~.~~ The FMLA grants eligible employees the right to take up to 12 work weeks of leave during a 12 month period for various reasons, including a serious health condition that makes the employee unable to perform the functions of his job.

~~a Federal statute that~~that the FMLA also prohibits an employer from interfering with or discriminating against an employee because of his exercise of the right to a period of unpaid leave ~~for one of the following~~several ~~reasons:  because of the employee's own serious health condition; where necessary to care for a family member with a serious health condition; or because of the birth of a son or daughter; or because of the placement of a son or daughter with the employee for adoption or foster care~~.

Specifically, Mr. Almakhadhi claims that after he took FMLA leave, Delaware Park ~~discriminated~~ retaliated against him by not promoting him, by not giving him a light duty assignment, and by terminating his employment, and that Delaware Park did so because he took the leave.  Delaware Park denies that its actions were related in any way to Mr. Almakhadhi's taking FMLA leave.

*If permitted by the Court:*  Mr. Almakhadhi also claims that Delaware Park denied him FMLA leave to which he was entitled. Delaware Park claims that Mr. Almakhadhi had already used all of his FMLA leave when he was terminated from employment.

*If permitted by the Court*:  [Mr. Almakhadhi also ~~claims~~ makes claims under the Federal Civil Rights statutes that prohibit employers from discriminating against their employees in the terms and conditions of their employment because of the employee's race and/or national origin.

More specifically, Mr. Almakhadhi claims that he was subjected to a hostile or abusive work environment because of racial harassment and harassment on account of his national origin, which are forms of prohibited employment discrimination. A work environment is hostile or

13

abusive because of racial or national origin harassment if the Plaintiff was subjected to offensive acts or statements based on race or national origin and such acts or statements were unwelcome and had not been invited or solicited, directly or indirectly, by the Plaintiffs' own acts or statements. Mr. Almakhadhi claims that the statements and actions of several supervisors , including actions of Karlyn Dixon and Stacey Suhr, one of his supervisors, created a hostile work environment and that her their actions were based on his race and national origin. Delaware Park denies that Ms. Dixon or Ms. Suhr's actions were in any way wrongful and denies that she either was motivated in any way by Mr. Almakhadhi's race or national origin.]

*If permitted by the Court:*  [Finally, Mr. Almakhadhi claims that Delaware Park denied him FMLA leave to which he was entitled.  Delaware Park claims that Mr. Almakhadhi had already used all of his FMLA leave when he was terminated from employment.]

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007; 42 U.S.C. §12112, EEOC Technical Assistance Manual on Title I of ADA; School Board of Nassau County v. Arline, 480 U.S. 273 (1987); Williams v. Philadelphia Housing Authority, 2004 U.S. App. LEXIS 18151, n.6; Van Zande v. State of Wisconsin, 44 F.3d 538 (7th Cir. 1995); Authority: 29 U.S.C. §2601(b)(1) and (b)(2); *Sabbrese v. Lowe's Home Centers, Inc.,* 320 F. Supp. 2d 311, 321 (W.D.Pa. 2004). |

**1.8    BURDEN OF PROOF**

This is a civil case.  Here, Mr. Almakhadhi has the burden of proving his case by what is called a preponderance of the evidence.  That means the Mr. Almakhadhi has to produce evidence which, considered in light of all the facts, leads you to believe that what Mr. Almakhadhi claims is more likely true than not.  To put it differently, if you were to put Mr. Almakhadhi's and Delaware Park's evidence on opposite sides of a scale, you should find in Mr. Almakhadhi's favor if the evidence supporting ~~Mr. Almakhadhi~~his claims would ~~have to~~ make the scale tip ~~somewhat~~ on his side even to the slightest degree. If Mr. Almakhadhi fails to meet this burden, the verdict must be for Delaware Park.  Mr. Almakhadhi must also prove his damages by a preponderance of the evidence.

In determining whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, Delaware Park has the burden of proving the elements of the defense by a preponderance of the evidence.  I will instruct you on the facts that will be necessary for you to make a finding on this affirmative defense.  An affirmative defense is proven if you find, after considering all the evidence in the case, that Delaware Park has succeeded in proving that the required facts are more likely so than not so.

~~Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case.~~

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
|---|---|

15

**1.9**     <u>**CONDUCT OF THE JURY**</u>

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them.  In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided.  If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything pertaining to this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes.  A word of caution is in order.  There is always a tendency to attach undue importance to matters ~~which~~ that one has written down.  Some testimony ~~which~~ that is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in

this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day.  And, remember that they are for your own personal use.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
|---|---|

**1.10    COURSE OF THE TRIAL**

This trial will proceed in the following manner:

(1)     These preliminary instructions to you.

(2)     Opening statements, which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence. The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence. What is said in opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.

(3)     The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things.

(4)     My final instructions on the law to you.

(5)     The closing arguments of the lawyers which will be offered to help you make your determination. As with opening statements, closing statements are not evidence.

(6)     Finally, your deliberations, where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal. So, as the evidence comes in, you as jurors need to keep an open mind.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 1, May 2007. |
| --- | --- |

# SECTION II: PROPOSED JURY INSTRUCTIONS AT THE CLOSE OF EVIDENCE

## A.     GENERAL INSTRUCTIONS

## 2.1     INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain the positions of the parties and the law that you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the jury, it is important that you bear in mind the distinction between your duties and my duties.  You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  You are the sole judges of the facts.  It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by

19

a preponderance of the evidence, Delaware Park is liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them.  You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy.  You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  You must accept them despite how you feel about their wisdom.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

| Authorities | Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

**2.2**    **EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked.  I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

| Authorities | Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

**2.3**    **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

You have heard the terms direct evidence and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

| Authorities | Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

**2.4    <u>CONSIDERATION OF EVIDENCE</u>**

You should use your common sense in weighing the evidence.  Consider it in light of

your everyday experience with people and events, and give it whatever weight you believe it

deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you

are free to reach that conclusion.

| Authorities | Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|-------------|---------------------------------------------------------------------------------------------|

**2.5**    **STATEMENTS OF COUNSEL**

A further word about statements and arguments of counsel.  The attorney's statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

**2.6**     **CREDIBILITY OF WITNESSES**

You are the sole judges of each witness's credibility.  You should consider each witness'

means of knowledge; strength of memory; opportunity to observe; how reasonable or

unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been

contradicted; the witness' biases, prejudices, or interests; the witness' manner or demeanor on

the witness stand; and all circumstances that, according to the evidence, could affect the

credibility of the testimony.

It is your duty and privilege to believe the testimony that, in your judgment, is most

believable and disregard any testimony that, in your judgment, is not believable.  In determining

the weight to give the testimony of a witness, you should ask yourself whether there is evidence

tending to prove that the witness testified falsely about some important fact, or, whether there

was evidence that at some other time the witness said or did something, or failed to say or do

something that was different from the testimony he or she gave at trial.  You have the right to

distrust such witness' testimony in other particulars and you may reject all or some of the

testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that

the witness was not telling the truth.  People may tend to forget some things or remember other

things inaccurately.  If a witness had made a misstatement, you must consider whether it was

simply an innocent lapse of memory or an intentional falsehood, and that may depend upon

whether it concerns an important fact or an unimportant detail.

If you find that any witness willfully or corruptly testified falsely under oath, you have a

right to distrust the witness' testimony in other particulars, and may therefore disregard all of that

witness' testimony as untruthful. You are not required to do so, but you may. You may also

accept as true only those portions of the witness' testimony which you believe, and disregard the rest.

This instruction applies to all witnesses.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware; LAUB'S TRIAL GUIDE, § 586.1(2). |
|---|---|

**2.7**    **DISCREPANCIES IN TESTIMONY**

You are the sole judges of the credibility of the witnesses and the weight ~~of~~ their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies or by the character of the testimony given, or by the evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters.  Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by the other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from an innocent error or intentional falsehood.

27

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

| Authorities | O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 105.01 (5th ed. 2001). |
| --- | --- |

**2.8    BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE**

This is a civil case.  Here, Mr. Almakhadhi has the burden of proving his case by what is called a preponderance of the evidence.  That means the Mr. Almakhadhi has to produce evidence which, considered in light of all the facts, leads you to believe that what Mr. Almakhadhi claims is more likely true than not.  To put it differently, if you were to put Mr. Almakhadhi's and Delaware Park's evidence on opposite sides of a scale, you should find in Mr. Almakhadhi's favor if the evidence supporting his claims would make the scale tip on his side even to the slightest degree. If Mr. Almakhadhi fails to meet this burden, the verdict must be for Delaware Park.  Mr. Almakhadhi must also prove his damages by a preponderance of the evidence.

~~This is a civil case.  Mr. Almakhadhi has the burden of providing his claims and damages by what is called a preponderance of the evidence.  Proof by a preponderance of the evidence means proof that something is more likely true than not.  It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not.~~

The preponderance of the evidence does not depend on the number of witnesses or the number of exhibits used.  If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party.  In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received in evidence regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt.  That burden does not apply in a civil case and you should therefore put it out

of your mind in considering whether or not Mr. Almakhadhi has met his burden of proof on various issues.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

## 2.9    ALL PERSONS EQUAL BEFORE THE LAW – INDIVIDUALS AND CORPORATIONS

The case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  All persons stand equal before the law and are to be treated as equals.

As you know, Delaware Park is a corporation.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, large or small, stand equal before the law, and are to be treated as equals in a court of justice.  Therefore, you may not judge a corporation more harshly, or treat a corporation differently, than you would any other single individual.

| Authorities | Adapted from O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, §§ 103.11 & 103.12 (5th ed. 2001). |
|---|---|

**2.10**  **ADMONITION REGARDING SYMPATHY**

Under your oath as jurors you are not to be swayed by sympathy.  You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence.  If you let sympathy interfere with your clear thinking there is a significant risk that you will not arrive at a just verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and impartial decision so that you will arrive at the just verdict.

| | |
|---|---|
| Authorities | 4 L. Sand, et. al., Modern Federal Jury Instructions, ¶ 71-10. |

**B.**    **INSTRUCTIONS ON APPLICABLE LAW**

**3.1**    **BUSINESS JUDGMENT**

Employment discrimination laws are not intended to be a vehicle for judicial second-guessing of business decisions; nor are they intended to transform the courts into personnel managers.  An employer is entitled to make its own policy and business judgment, and may therefore, take an adverse employment action against an employee for reasons that the employer considers to be in its best interests.  An employer is entitled to make its own subjective personnel decisions, however misguided they may appear to you, and can take an adverse employment action against an employee for any non-discriminatory and non-retaliatory reason, good or bad, fair or unfair, and you may not second-guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of Delaware Park, even though you personally may not favor the decision or would have made a different decision under the circumstances.   Therefore, you should not find that an adverse employment action decision is unlawful just because you may disagree with Delaware Park's stated reasons, or because you believe that the decision was mistaken, harsh or unreasonable.

        You must also consider whether or not Defendants' stated reasons for their actions are false, that is, a pretext for discrimination. In employment law, a reason becomes a pretext when it is not the real reason for the Defendant's action. Evidence of inconsistencies, contradictions, weaknesses, implausibility, or incoherencies in the employer's stated reason for its actions may demonstrate pretext.

    If you find that Defendants' explanations are a pretext, you may, but are not required to, conclude that Defendant, in making up a false explanation for its actions, is trying to conceal the true discriminatory reason. Thus, if you determine that the reasons articulated by Delaware Park

33

to explain the actions in question were not the actual reasons, you would be authorized but not required to conclude that discrimination more likely than not was a motivating factor in Delaware Park's actions.

**AUTHORITIES:**

| | |
|---|---|
| Authorities | Adapted from McNamara & Southerland, Federal Employment Jury Instructions, § 1:1130 (2005).  *See, e.g.*, *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("Barring discrimination, a company has the right make business judgments on employee status, particularly when the decis involves subjective factors deemed essential to certain position.");  *Brewe v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[W do not sit as a super-personnel department that reexamines an entity's business decisions."); *Fuentes v. Perksie*, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit the employer's proffered reason [as pretextual], the plaintif cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motiva the employer, not whether the employer is wise, shrewd, prudent or competent.").  *Reeves v. Sanderson Products, Inc.,* 530 U.S. 133, 146-47 (2000); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993); *Pal v. Board of Regents,* 208 F.3d 969 (11th Cir. 2000); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1998); *Howard v. BP Oil Co, In 32 F.3d 520, 526 (11th Cir. 1994); *Cooper-Houston v. Southern Ry. Co.,* F.3d 603, 605 (11th Cir. 1994). |

## 3.2    AT-WILL EMPLOYMENT

At all times, the employment relationship between Mr. Almakhadhi and Delaware Park was an "at will" employment relationship.  That means that Mr. Almakhadhi's employment was of no set duration, and either he or Delaware Park was free to end their employment relationship at any time, with or without notice, and with or without cause, as long as ~~the Delaware Park's~~ reason ~~for terminating Mr. Almakhadhi's employment~~ was not based on ~~unlawful~~ discrimination or retaliation.

~~That Mr. Almakhadhi disagreed with Delaware Park's employment decisions does not mean that Delaware Park discriminated or retaliated against him.~~

| Authorities | *See Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 101-103 (Del. 1992) ("[A]n employer has wide latitude in deciding how it conducts its business including employment undertakings….Employers have the "freedom to terminate an at-will employment contract for [their] own legitimate business, or even highly subjective, reasons"); *E.I. du Pont de Nemours & Co. v. Pressman,* 679 A.2d 436, 437 (Del. 1996) (Employment-at-will doctrine "generally permits the dismissal of employees without cause and regardless of motive."). |
|---|---|

### 3.3     ADA CLAIM —INTRODUCTORY INSTRUCTION

In this case Mr. Almakhadhi makes claims based on a federal law known as the Americans with Disabilities Act, which will be referred to in these instructions as the ADA.

Under the ADA, an employer may not deprive a qualified person with a disability of an employment opportunity because of that disability. An employer also may not discriminate against that individual in the terms or conditions of his employment on the basis of a disability. The term "disability" has a specific definition under the ADA and I will instruct you on the meaning of that term.

As you listen to these instructions, please keep in mind that many of the terms I will use, and you will need to apply, have a special meaning under the ADA. So please remember to consider the specific definitions I give you, rather than using your own opinion of what these terms mean.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |
|---|---|

36

3.4    **ADA – DISPARATE TREATMENT CLAIM**

In this case Mr. Almakhadhi alleges that Delaware Park did not promote him to ~~the Impress Supervisor position in August 2005~~jobs for which he applied, did not assign him light duty work ~~in~~ between September 2, 2005 through the time until Delaware Park first terminated his employment on February 12, 2006, and terminated his employment because of his alleged disability.

~~The Impress Supervisor position opening in August 2005 is the only promotional opportunity you should consider with regard to Mr. Almakhadhi's claim for disability discrimination. No other positions to which Mr. Almakhadhi applied are relevant to your consideration of this claim.~~

~~Similarly, the time period between September 2, 2005 and Mr. Almakhadhi's termination from employment is the only one you should consider with regard to Mr. Almakhadhi's claim for disability discrimination based on denial of a light duty assignment. Any other times when Mr. Almakhadhi was not given a light duty assignment are not relevant to your consideration of this claim.~~

To prevail on each of his disability claims, Mr. Almakhadhi must prove the following by a preponderance of the evidence:

First: While employed by Delaware Park, Mr. Almakhadhi had a "disability" within the meaning of the ADA.

Second: Mr. Almakhadhi was a qualified individual able to perform the essential functions of the position.

Third: Mr. Almakhadhi's ~~alleged~~ disability was a ~~determinative~~ motivating factor in

37

Delaware Park's not to promote him, not to assign him light duty work, and/or to terminate his employment.

In order for Mr. Almakhadhi to prove that Delaware Park violated the ADA, he must prove that he suffered an adverse employment action because of his disability. Evidence that Mr. Almakhadhi was treated differently because of his disability, and/or that Mr. Almakhadhi would have been able to continue to work if Delaware Park had accommodated his disability also supports his claim.

Each of Mr. Almakhadhi's claims for disability discrimination must be considered individually. Although these claims should all be considered using the elements I have just given you, they are independent of one another and a separate finding should be made as to each claim.

I will now provide you with more explicit instructions on the following statutory terms that you will need to resolve each of these claims.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007; 42 U.S.C. § 12112(a); Reeves v. Sanderson Plumbing, 530 U.S. 133 (2000). |
|---|---|

3.5    **ADA -- DEFINITION OF DISABILITY**

3.5.1    **SUBSTANTIALLY LIMITING IMPAIRMENT**

Under the ADA, the term "disability" means a physical impairment that "substantially limits" a "major life activity." I will now define some of these terms in more detail. Again, I remind you to consider the specific definitions I give you, and not to use your own opinions as to what these terms mean.

The term "physical impairment" means any condition that prevents the body from functioning normally. Under the ADA, the term "disability" includes a physical impairment that substantially limits a major life activity. Major life activities include functions such as ~~caring for one's self,~~ performing manual tasks, walking, seeing, hearing, speaking, breathing, ~~learning,~~ and working. More generally, they include activities that are of central importance to daily life.

In this case Mr. Almakhadhi claims that he is "substantially limited" in the major life activities of standing, lifting, and working. Under the ADA, an impairment "substantially limits" a person's ability to perform an activity if it prevents or severely restricts that ability compared to the average person in the general population.

An impairment substantially limits Mr. Almakhadhi's ability to work if it significantly restricts him from performing a class of jobs, or a broad range of jobs in various classes, compared to someone with similar knowledge, skills, and training. ~~Merely demonstrating that an impairment prevents Mr. Almakhadhi from performing some or all of his job functions does not suffice to demonstrate a disability. In other words, being unable to work as a Booth Cashier at Delaware Park is not by itself a substantial limitation on the ability to work.~~ You must find that Mr. Almakhadhi is disabled if you find that because of the limits of Mr. Almakhadhi's education, language ability, and work experience, his lifting restrictions and leg problems limit him to a

narrow range of jobs.

　　　　To decide if Mr. Almakhadhi's alleged impairment substantially limited his ability to stand, lift, or work, you should consider the nature of the impairment and how severe it is, how long it is expected to last, and its expected long-term impact. Temporary conditions are not disabilities. Also, the fact that Mr. Almakhadhi's physicians imposed or continue to impose "light duty" restrictions, such as a lifting restriction, does not in itself demonstrate a substantial limitation on his ability to work. What matters is the specific effect of an impairment or condition on the life of Mr. Almakhadhi.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007; 29 C.F.R. § 1630.2(i); *Toyota Motor Mfg. Kentucky v. Williams*, 534 U.S. 184 (2002); *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996) (finding as a matter of law that 25-pound lifting restriction does not constitute a substantial limitation on the major life activity of working); *Panzullo v. Modell's PA, Inc.*, 968 F. Supp. 1022, 1024 (E.D. Pa. 1997) (granting motion for summary judgment on plaintiff's ADA claim, finding that neither a "general weightlifting or light-duty work limitation nor a restriction against performing heavy work per se constitutes a disability under the ADA"); Webner v. Titan Distributing, Inc., 267 F.3d 828 (8th Cir. 2001) (individual's back problems limited ability to perform all but light duty tasks and, therefore, substantially limited major life activity of working). |

### 3.5.2. "REGARDED AS" DISABLED

The ADA's definition of "disability" includes not only those persons who are actually disabled, but also those who are "regarded as" having a disability by their employer. The reason for this inclusion is to protect employees from being stereotyped by employers as unable to perform certain activities when in fact they are able to do so. Mr. Almakhadhi is "regarded as" disabled within the meaning of the ADA if he proves any of the following by a preponderance of the evidence:

1. Mr. Almakhadhi's physical impairment did not substantially limit him in his ability to perform any major life activity, but Delaware Park treated him as if it did; or

2. Mr. Almakhadhi had an impairment that substantially limited his ability to perform a major life activity only because of Delaware Park's attitude toward the impairment.

The mere fact that Delaware Park was aware that Mr. Almakhadhi had an impairment is insufficient to demonstrate that Delaware Park regarded Mr. Almakhadhi as disabled.

Even if you find that Mr. Almakhadhi was merely "regarded as" disabled by Delaware Park, he is nevertheless entitled to an accommodation under the ADA just as if you found him to be actually disabled under the ADA.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007; *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) (affirming summary judgment for employer where plaintiff who walked with a limp could not show he was disabled or that his employer regarded him as such) (internal citations omitted). |
| --- | --- |

### RECORD OF DISABILITY DEFINED

Mr. Almakhadhi may also prove he is entitled to protection under the ADA by showing that Delaware Park had knowledge that he had a physical impairment that substantially limited one or more of his major life activities, even if he is not currently disabled under the ADA. Medical records, physician's reports, clinical records, treatment summaries, and medication charts may all constitute evidence of a record of a disability. This list of potential documentation is not exhaustive but should be used as a guideline. Oral information that provided Delaware Park with knowledge that Mr. Almakhadhi had a physical impairment that substantially limited one or more of his major life activities can also suffice. If Mr. Almakhadhi proves that Delaware Park had documentation or oral information indicating that his medical impairment substantially limited a major life activity such as standing, lifting, walking or working, then he is a disabled person entitled to the protection of the ADA.

Authorities: 42 U.S.C. § 12112(a) and (b)(5)(A), 29 U.S.C. § 705 (20)(B)(iii); Mash v. Xerox Corp., No. 98-506 2000 WL 1728250, at *7 (D.Del., April 11, 2000).

### REASONABLE ACCOMMODATION DEFINED

The ADA requires that employers like Delaware Park provide qualified disabled employees with reasonable accommodations, unless providing such an accommodation would cause an undue hardship. An accommodation is any change in the work environment or in the way things are customarily done that enables an individual with a disability to perform the essential functions of the job.

The ADA does not contain a bright line definition of what is a "reasonable" accommodation. It says that the term 'reasonable accommodation" may include-job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of

42

equipment or devices, . . . and other similar accommodations for individuals with disabilities. A modification or adjustment to a job satisfies the reasonable accommodation requirement if it is effective. Thus, in Mr. Almakhadhi's case, he claims there were reasonable accommodations Delaware Park could have done, such as allowing him to carry only one bag of coins at a time, or work a different shift or a different job that did not require lifting beyond his medical restrictions.

Authority: 42 U.S.C. 12112(a)(5)(A); 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o); 29 C.F.R. § 1630.9; EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, p.3 (March 1999).

**3.6    ADA – NON-DISCRIMINATORY REASON/PRETEXT**

Mr. Almakhadhi is not required to prove that Delaware Park acted with the particular intent to violate his federal rights under the ADA. Moreover, Mr. Almakhadhi is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts. However, Mr. Almakhadhi must prove that he was disabled or that Delaware Park regarded him as disabled, and that Delaware Park acted with the intent to discriminate because of an Mr. Almakhadhi's alleged disability.

To find that Delaware Park regarded Mr. Almakhadhi as disabled or acted with the intent to discriminate against him because of an alleged disability, you must find that Delaware Park was aware of Mr. Almakhadhi's alleged disability at the time it decided not to promote him, not to give him light duty, and to terminate his employment. If the relevant decision maker(s) at Delaware Park did not know about Mr. Almakhadhi's alleged disability at the time he or she made the employment decision that is the basis for his claim, then you must find for Delaware

43

Park on that claim.

Delaware Park has given nondiscriminatory reasons for not promoting Mr. Almakhadhi to the Impress Supervisor position in August 2005, not giving him a light duty assignment in during the months between September 2, 2005 and February 12, 2006, and terminating his employment. To show that Delaware Park's reasons for its actions are a pretext, or excuse, for discrimination, Mr. Almakhadhi must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in those reasons so as to make them unworthy of belief.  If you disbelieve Delaware Park's explanations for its conduct, then you may, but need not, find that Mr. Almakhadhi has proved intentional discrimination on the basis of a disability. You cannot find intentional discrimination simply because you disagree with the business judgment of Delaware Park or believe it is mistaken, harsh or unreasonable.  You are not to consider Delaware Park's wisdom. However, you may consider whether Delaware Park's reasons are merely a cover-up for discrimination.

Ultimately, you must decide whether Mr. Almakhadhi has proven that he is disabled or that Delaware Park regarded him as disabled, and that his disability or Delaware Park's belief thereof was a determinative motivating factor in Delaware Park's decisions not to promote him, not to assign him light duty work, and to terminate his employment. In showing that Plaintiff's protected class was a motivating factor for Delaware Park's action, Mr. Almakhadhi is not required to prove that his race, and/or national origin, and/or disability was the sole motivation or even the primary motivation for Defendant's decision. Mr. Almakhadhi  need only prove that one of his protected classes played a motivating part in Defendant's decision even though other factors may also have motivated Defendant.

"Determinative factor" means that if not for Mr. Almakhadhi's alleged disability, or

Delaware Park's beliefs about Mr. Almakhadhi's disability, one or more of these actions would not have occurred.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007; *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). |
|---|---|

45

## 3.7    TITLE VII – INTRODUCTORY INSTRUCTION

In this case Mr. Almakhadhi makes several claims under a Federal Civil Rights statute that prohibits employers from discriminating against an employee in the terms and conditions of employment because of the employee's race, color, religion, sex, or national origin.

Specifically, Mr. Almakhadhi claims that Delaware Park subjected him to race and national origin discrimination and adverse employment treatment with respect to the terms, conditions, privileges, and benefits of his employment when it created a hostile work environment, failed to promote him when it promoted less qualified non Arabs, refused to provide him with light duty work, when it provided non-Arabs light duty, refused to provide him with leave that was provided to non-Arabs, refused to provide him bonuses that were paid to non-Arabs, and terminated his employment for reasons it does not terminate non_Arabs.did not promote him, did not give him a light duty assignment, and terminated his employment because of his race and national origin.

Delaware Park denies that Mr. Almakhadhi was discriminated against in any way.

I will now instruct you more fully on the issues you must address in this case with regard to race and national origin discrimination.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 5, May 2007. |
|---|---|

46

**3.8**    **TITLE VII – DISPARATE TREATMENT – PRETEXT CLAIM**

In this case Mr. Almakhadhi alleges that Delaware Park discriminated against him because of his ~~white~~ Arab race or because he originally is from the Middle East.  In order for Mr. Almakhadhi to recover on his discrimination claims against Delaware Park, he must prove that Delaware Park intentionally discriminated against him. This means that Mr. Almakhadhi must prove that his race or national origin was a ~~determinative~~ motivating factor in Delaware Park's treatment of him, including its decisions not to promote him, not to give him a light duty assignment, not to give him FMLA leave, or to terminate his employment.

~~Mr. Almakhadhi claims that Delaware Park discriminated against him because he was not promoted to the Impress Supervisor position in August 2005.  The Impress Supervisor position opening in August 2005 is the only promotional opportunity you should consider with regard to Mr. Almakhadhi's claim for race and/or national origin discrimination.  No other positions to which Mr. Almakhadhi applied are relevant to your consideration of this claim.~~

~~Similarly, the time period between September 2, 2005 and Mr. Almakhadhi's termination from employment is the only one you should consider with regard to Mr. Almakhadhi's claim for race and/or national origin discrimination based on denial of a light duty assignment.  Any other times when Mr. Almakhadhi was not given a light duty assignment are not relevant to your consideration of this claim.~~

To prevail on each of his claims for race or national origin discrimination, Mr. Almakhadhi must prove the following by a preponderance of the evidence:

That Mr. Almakhadhi's race or national origin was a ~~determinative~~ motivating factor in Delaware Park's decisions concerning his employment,  including its decisions ~~not~~ to promote him, not to give him ~~a~~ light duty assignment, to deny him leave, to deny his

47

bonus payment, and/or to terminate his employment.

Each of Mr. Almakhadhi's claims for race and national origin discrimination must be considered individually.  Although these claims should all be considered using the elements I have just given you, they are independent of one another and a separate finding should be made as to each claim.

The following instructions apply to each of Mr. Almakhadhi's claims for race and national origin discrimination.  Mr. Almakhadhi is not required to prove that Delaware Park acted with the particular intent to violate his federal civil rights.  Mr. Almakhadhi also is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.  However, Mr. Almakhadhi must prove that Delaware Park acted with the intent to discriminate because of his race or national origin.

Intent involves the state of mind with which an act is done. It means the desire to bring about a result. If you find that the actions of the Defendants were with the desire to bring about a result, it is said to have intended that result.

Delaware Park has given nondiscriminatory reasons for not promoting Mr. Almakhadhi to Impress Supervisor in August 2005, not giving him a light duty assignment in September 2005, and terminating his employment.  To show that Delaware Park's reasons for its actions are a pretext, or excuse, for discrimination, Mr. Almakhadhi must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in those reasons so as to make them unworthy of belief.  You cannot find intentional discrimination simply because you disagree with the business judgment of Delaware Park or believe it is mistaken, harsh or unreasonable.  You are not to consider Delaware Park's wisdom. However, you may consider

48

whether Delaware Park's reasons are merely a cover-up for discrimination.  If you disbelieve Delaware Park's explanations for its conduct, that is, that the explanations are not the true or real reasons for the Defendant's actions, but that instead the explanations are a pretext or cover for discrimination, then you may, but need not, infer that the Plaintiff was discriminated against in his employment because of his race or national origin and find that Mr. Almakhadhi has proven intentional discrimination.

Ultimately, you must decide whether Mr. Almakhadhi has proven that his race or national origin was a determinative motivating factor in Delaware Park's decisions concerning Mr. Almakhadhi's employment. not to promote Mr. Almakhadhi to Impress Supervisor, not to give him a light duty assignment, and/or to terminate his employment. In showing that his race or national origin was a motivating factor for Delaware Park's action, Mr. Almakhadhi is not required to prove that his race or national origin was the sole motivation or even the primary motivation for Delaware Park's decision. Mr. Almakhadhi need only prove that his race or national origin played a motivating part in Delaware Park's decision even though other factors may also have motivated Delaware Park. "Determinative factor" means that if not for Mr. Almakhadhi's white Arab race or Middle Eastern origin, one or more of these actions would not have occurred.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 5, May 2007; *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); Fischer v. Maloney, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978); Clark v. New York Tel. Co., 52 A.D.2d 1030, 384 N.Y.S.2d 562, *aff'd* 41 N.Y.2d 1069 (4th Dept. App. Div. May 14, 1976). |
|---|---|

## 3.9     TITLE VII – RETALIATION CLAIM

Mr. Almakhadhi claims that Delaware Park retaliated against him ~~by not promoting him, not giving him a light duty assignment, and terminating his employment,~~ because of complaints he made about alleged race and/or national origin discrimination. You are instructed that those laws prohibiting discrimination in the work place also prohibit any retaliatory action being taken against an employee by an employer because the employee has asserted rights or made complaints under those laws. So, even if a complaint of discrimination against an employer is later found to be invalid or without merit, the employee cannot be penalized in retaliation for having made such a complaint if you find that the employee made the complaint as a means of seeking to enforce what the employee believed in good faith to be his lawful rights.  To establish "good faith," however, it is insufficient for the Plaintiffs to merely allege that their belief in this regard was honest and bona fide; the allegations and the record must also establish that the belief, though perhaps mistaken, was objectively reasonable.

Informal complaints and protests can constitute activity protected from retaliation. "Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management. To determine if [a plaintiff alleging retaliation] sufficiently opposed discrimination, [the law] look[s] to the message being conveyed rather than the means of conveyance." *Moore v. City of Philadelphia,* 461 F.3d 331, 343 (3d Cir. 2006) (citations omitted).

~~The Impress Supervisor position opening in August 2005 is the only promotional opportunity you should consider with regard to Mr. Almakhadhi's claim for retaliation.  No other positions to which Mr. Almakhadhi applied are relevant to your consideration of this claim.~~

~~Similarly, the time period between September 2, 2005 and Mr. Almakhadhi's termination~~

50

~~from employment is the only one you should consider with regard to Mr. Almakhadhi's claim for retaliation based on denial of a light duty assignment. Any other times when Mr. Almakhadhi was not given a light duty assignment are not relevant to your consideration of this claim.~~

The parties agree that Mr. Almakhadhi engaged in protected activity under the statute; in this case, by making ~~a \~~ complaints of discrimination to Delaware Park. The parties also agree that after Mr. Almakhadhi made ~~a~~ complaints, he was not selected for promotion, was not assigned light duty, was denied leave, was not paid his bonus, and was terminated from employment. Therefore, to prevail on his claims for retaliation, Mr. Almakhadhi must prove by a preponderance of the evidence that there was a causal connection between his complaint(s) of discrimination and Delaware Park's actions towards and treatment of him. ~~decision not to promote him to the Impress Supervisor position in August 2005, not to give him a light duty assignment in September 2005, and/or to terminate his employment.~~

Each of Mr. Almakhadhi's claims for retaliation must be considered individually. Although these claims should all be considered using the elements I have just given you, they are independent of one another and a separate finding should be made as to each claim.

The following instructions apply to each of Mr. Almakhadhi's claims of retaliation. The connection between Mr. Almakhadhi's complaints and Delaware Park's adverse actions may be shown in several ways. For example, you may or may not find that there is a sufficient connection through the timing of the events; that is, did the action at issue follow shortly after Delaware Park became aware of a complaint that Mr. Almakhadhi made. Causation also may or may not be proven by antagonism shown toward Mr. Almakhadhi or a change in demeanor toward Mr. Almakhadhi after he made a complaint.

To prove a causal connection, however, an employee must show that the employer was

51

aware of his protected activity when the adverse action occurred.  This means that in order for

you to find that Mr. Almakhadhi has established a causal connection between his complaints and

Delaware Park's ~~decisions not to promote him, not to give him a light duty assignment, and/or to~~

~~terminate his employment~~adverse employment actions against him, Mr. Almakhadhi must prove

that the decision-makers responsible for these actions knew about his discrimination complaints

when he or she made the decisions at issue.  If the person or persons who made the decision at

issue were unaware of his complaint(s) at the time the decision was made, Mr. Almakhadhi has

not proven a causal connection between his complaint(s) and the decision, and you must find for

Delaware Park on that claim.

Ultimately, you must decide whether Mr. Almakhadhi's complaint or complaints had a

~~determinative~~ motivating effect on Delaware Park's ~~decision not to promote him to Impress~~

~~Supervisor in August 2005, not to assign him light duty work in September 2005, and/or to~~

~~terminate his employment.~~adverse employment decisions. It is not necessary for the Plaintiff to

prove that his complaints were the sole or exclusive reason for Defendant's actions. It is

sufficient if Mr. Almakhadhi proves that his complaints ~~were a determinative~~motivated a

consideration that made a difference in the Defendant's decision. In showing that his complaints

were a motivating factor for Delaware Park's action, Mr. Almakhadhi is not required to prove

that his complaints were the sole motivation or even the primary motivation for Delaware Park's

decisions. Mr. Almakhadhi need only prove that his compalints played a motivating part in

Delaware Park's decision even though other factors may also have motivated Delaware Park.

~~"Determinative effect" means that if not for Mr. Almakhadhi's complaint or complaints, one or~~

~~more of these actions would not have occurred.~~

**AUTHORITIES:**

1. Eleventh Circuit Pattern Jury Instructions (Civil Cases); Federal Claims Instructions (Miscellaneous Issues, Retaliation)  [*13]  No 1.10.3 used as a model.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 5, May 2007; *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (holding that, to make out a *prima facie* case of retaliation, the employer must be aware of plaintiff's protected activity); *Gordon v. National R.R. Passenger Corp.*, 564 F. Supp. 199, 204 (E.D. Pa. 1983) (same); Eleventh Circuit Pattern Jury Instructions (Civil Cases); Federal Claims Instructions (Miscellaneous Issues, Retaliation) No 1.10.3 used as a model. |
|---|---|

**3.10    TITLE VII – HOSTILE WORK ENVIRONMENT CLAIM**
**_[if permitted by the Court]_**

Mr. Almakhadhi claims that he was subjected to ~~harassment by Karlyn Dixon~~a hostile work environment ~~and~~ that ~~this harassment~~ was motivated by his race or national origin. Delaware Park is liable for the actions of ~~Ms. Dixon~~its employees with regard to Mr. Almakhadhi's claim of harassment if Mr. Almakhadhi proves all of the following elements by a preponderance of the evidence:

First: Mr. Almakhadhi was subjected to at least one instance of harassing conduct ~~by Ms. Dixon between June 30, 2005 and his termination from employment in February 2006~~.

Second: ~~Ms. Dixon's~~Defendant's conduct was motivated by the fact that Mr. Almakhadhi is ~~white~~ Arab or Middle Eastern.

Third: The conduct was so severe or pervasive that a reasonable person in Mr. Almakhadhi's position would find his or her work environment to be hostile or abusive.

Fourth: Mr. Almakhadhi believed his work environment was hostile or abusive as a result of ~~Ms. Dixon's~~Defendant's conduct.

In determining whether a work environment is "hostile" you must look at all of the circumstances, which may include:

· The total environment of Mr. Almakhadhi's work area.

· The frequency of the offensive conduct.

· The severity of the conduct.

· The effect of the working environment on Mr. Almakhadhi's mental and emotional well-being.

· Whether the conduct was pervasive.

· Whether the conduct was physically threatening or humiliating.

· Whether the conduct was merely a tasteless remark.

·Whether the conduct unreasonably interfered with Mr. Almakhadhi's work performance.

Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, occasional use of abusive language, tasteless jokes, and occasional teasing, does not constitute an abusive or hostile work environment. A hostile work environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar. In order to find a hostile work environment, you must find that Mr. Almakhadhi was harassed because of his ~~white~~ Arab race or Middle Eastern origin. The harassing conduct may, but need not be, racial in nature. Rather, its defining characteristic is that the harassment complained of is linked to the victim's race or national origin. The key question is whether Mr. Almakhadhi, as ~~a white~~an Arab person or a person of Middle Eastern origin, was subjected to harsh employment conditions which other employees outside of these protected classes were not.

It is important to understand that, in determining whether a hostile work environment existed at Delaware Park, you must consider the evidence from the perspective of a reasonable person in the same position. That is, you must determine whether a reasonable person would have been offended or harmed by the conduct in question. You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively

55

classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable person, who is simply one of normal sensitivity and emotional make-up.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |
|---|---|

**3.11    TITLE VII – HOSTILE WORK ENVIRONMENT CLAIM – EMPLOYER'S AFFIRMATIVE DEFENSE**
[*if permitted by the Court*]

If any of the above elements has not been proved by a preponderance of the evidence, your verdict must be for Delaware Park, and you need not proceed further in considering this claim. If you find that the elements have been proved, then you must consider Delaware Park's affirmative defense. I will instruct you now on the elements of that affirmative defense.

You must find for Delaware Park if you find that Delaware Park has proved both of the following elements by a preponderance of the evidence:

First: Delaware Park exercised reasonable care to prevent harassment in the workplace on the basis of race and national origin, and also exercised reasonable care to promptly correct any harassing behavior that did occur.

Second: Mr. Almakhadhi unreasonably failed to take advantage of any preventive or corrective opportunities provided by Delaware Park.

Proof of the four following facts will be enough to establish the first element that I just referred to, concerning prevention and correction of harassment:

1. Delaware Park had established a policy against harassment in the workplace on the basis of race and national origin.

2. That policy was fully communicated to its employees.

3. That policy provided a reasonable way for Mr. Almakhadhi to make a claim of harassment to higher management.

4. Reasonable steps were taken to correct any alleged harassment, if that complaint was raised by Mr. Almakhadhi.

On the other hand, proof that Mr. Almakhadhi did not follow a reasonable complaint

57

procedure provided by Delaware Park will ordinarily be enough to establish that Mr.

Almakhadhi unreasonably failed to take advantage of a corrective opportunity.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 9, May 2007. |
|---|---|

**3.12**    **FMLA – INTRODUCTORY INSTRUCTION** [1]

      In this case Mr. Almakhadhi has made a claim under the Family and Medical Leave Act, a federal statute that prohibits an employer from interfering with or discriminating against an employee because of that employee's exercise of the right granted in the Act to a period of unpaid leave for one of the following reasons:   because of a serious health condition; where necessary to care for a family member with a serious health condition; because of the birth of a son or daughter; or because of the placement of a son or daughter with the employee for adoption or foster care.  An employee, if they qualify for leave under the FMLA, has an entitlement to that leave.

      Specifically, Mr. Almakhadhi claims that Delaware Park discriminated against him for taking FMLA leave by taking adverse employment actions against him, including not promoting him [*to the Main Bank Cashier position in January 2005 and*] to the Impress Supervisor position in August 2005, by denying him light duty assignments [*in April 2005 and*] in September 2005, and by terminating his employment. Delaware Park's refusal to let Mr. Almakhadhi return to work in September 2005 is an example of an adverse employment decision.

      Mr. Almakhadhi also claims that as part of its discrimination and retaliation against him, Delaware Park denied him FMLA leave to which he was entitled in February 2006, when he was terminated from employment.

      Delaware Park denies that its decisions were made because Mr. Almakhadhi took FMLA leave and denies that Mr. Almakhadhi was entitled to any additional leave at the time of his termination or that it denied him FMLA leave for any discriminatory or retaliatory reason.

---

[1]    The Court's ruling on the applicable statute of limitations for Plaintiff's FMLA claims will determine whether the bracketed/italicized language is included or eliminated.

I will now instruct you more fully on the issues that you must address with regard to this claim.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007. |
|---|---|

### 3.13    <u>FMLA – EMPLOYER'S RIGHT TO PLACE EMPLOYEE ON LEAVE</u>

An employer is permitted to place an employee on FMLA leave if the employee is unable to perform the essential functions of his job.  The employer may place the employee on FMLA leave even if the employee prefers to be given another assignment or does not want the leave to count under the FMLA. If an employer decides to place an employee on FMLA leave, the law requires the employer to provide written notice of that decision to the employee. Therefore, you should not draw any adverse inferences from the fact that Delaware Park placed Mr. Almakhadhi on FMLA leave in April 2005 when his physicians had advised that he could not perform the essential functions of his job.  Instead, you must focus on whether Delaware Park discriminated against Mr. Almakhadhi because he previously had taken FMLA leave.

| Authorities | *Moss v. Formosa Plastics Corp.*, 99 F. Supp. 2d 737, 741 (M.D. La. 2000); *Love v. City of Dallas*, 1997 U.S. Dist. LEXIS 21982, at *17-18 (N.D. Tex. May 14, 1997). |
|---|---|

## 3.14   **FMLA – ~~DISCRIMINATION~~ RETALIATION CLAIM**[2]

In this case Mr. Almakhadhi alleges that he was ~~discriminated~~ retaliated against ~~for~~ because he ~~exercising~~ exercised ~~the~~ his right to unpaid leave under the Family and Medical Leave Act and  that he was denied leave to which he was entitled as part of Delaware Park's pattern of discrimination and retaliation against him. ~~In order for Mr. Almakhadhi to recover on this discrimination claim against Delaware Park, he must prove that Delaware Park intentionally discriminated against him. This means that Mr. Almakhadhi must prove that his prior exercise of the right to take FMLA leave was a determinative factor in Delaware Park's decision not to promote him, not to give him light duty, and/or to terminate his employment.~~

Both parties agree that Mr. Almakhadhi took leave under the FMLA in 2004 to care for his father, and took FMLA leave again between April 13, 2005 and June 13, 2005 because of his back condition.

The parties also agree that Delaware Park did not promote Mr. Almakhadhi to

[*the Main Bank Cashier position in January 2005 or to*] the Impress Supervisor position in August 2005**any job to which he applied**.  They also agree that Delaware Park did not assign Mr. Almakhadhi to light duty work [*in April 2005 or*] in September 2005, and that Delaware Park terminated Mr. Almakhadhi's employment.   Therefore, to prevail on his claims ~~for discrimination~~ under the FMLA, Mr. Almakhadhi must prove by a preponderance of the evidence:

The fact that Mr. Almakhadhi had previously taken FMLA leave was a ~~determinative~~ motivating

---

2      The Court's ruling on the applicable statute of limitations for Plaintiff's FMLA claims will determine whether the bracketed/italicized language is included or eliminated.

factor in Delaware Park's adverse employment actions against him, including its decisions not to promote him, not to give him a light duty assignment, and/or to terminate his employment.

Each of Mr. Almakhadhi's claims for discrimination under the FMLA must be considered individually.  Although these claims should all be considered using the elements I have just given you, they are independent of one another and a separate finding should be made as to each claim.

The following instructions apply to each of Mr. Almakhadhi's FMLA discrimination claims. Mr. Almakhadhi is not required to prove that Delaware Park acted with the particular intent to violate his federal rights.  Mr. Almakhadhi also is not required to produce direct evidence of intent, such as statements admitting discrimination. However, Mr. Almakhadhi must prove that Delaware Park acted with the intent to discriminate against him because he took FMLA leave.

Intent involves the state of mind with which an act is done. It means the desire to bring about a result. If you find that the actions of the Defendant were with the desire to bring about a result, it is said to have intended that result.

Delaware Park has given nondiscriminatory reasons for not promoting Mr. Almakhadhi, not giving him a light duty assignment, and terminating his employment.  If you disbelieve Delaware Park's explanations for its conduct, then you may, but need not, find that Mr. Almakhadhi has proved intentional discrimination. To show that Delaware Park's reasons for its actions are a pretext, or excuse, for discrimination, Mr. Almakhadhi must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in those reasons so as to make them unworthy of belief.  You cannot find intentional discrimination simply because you disagree with the business judgment of Delaware Park or believe it is mistaken, harsh or

unreasonable.  You are not to consider Delaware Park's wisdom. However, you may consider whether Delaware Park's reasons are merely a cover-up for discrimination. It is not necessary for the Plaintiff to prove that his use of FMLA leave was the sole or exclusive reason for Defendant's actions, or even the primary motivation for Delaware Park's actions. It is sufficient if Mr. Almakhadhi proves that his use of FMLA leave was a motivating consideration that made a difference in the Defendant's decision.

~~Ultimately, you must decide whether Mr. Almakhadhi has proven that his taking leave under the Family Medical Leave Act was a  determinative factor in its decisions not to promote him, not to give him a light duty assignment, and/or to terminate his employment.~~

~~"Determinative factor" means that if not for the fact that Mr. Almakhadhi took FMLA leave, one or more of these actions would not have occurred.~~

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007; *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); Fischer v. Maloney, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978); Clark v. New York Tel. Co., 52 A.D.2d 1030, 384 N.Y.S.2d 562, *aff'd* 41 N.Y.2d 1069 (4th Dept. App. Div. May 14, 1976).. |
|---|---|

**3.15**    **FMLA – INTERFERENCE CLAIM**   *[if permitted by the Court]*

Mr. Almakhadhi claims that Delaware Park interfered with his right to take unpaid leave from work under the Family and Medical Leave Act by denying him FMLA leave to which he allegedly was entitled at the time of his termination.  The FMLA allows eligible employees to take up to 12 weeks of unpaid leave during a 12-month period.  In this case, the 12-month period began on the first day that Mr. Almakhadhi took FMLA leave and ended one year later.

Delaware Park denies that it interfered with Mr. Almakhadhi's FMLA rights in any way and claims that Mr. Almakhadhi had already used all of his 12 weeks of FMLA leave when he was terminated from employment.

The parties agree that Delaware Park was an employer covered by the FMLA and that Mr. Almakhadhi was eligible to take 12 weeks of FMLA leave during a 12-month period. Therefore, to prevail on his interference claim, Mr. Almakhadhi must prove the following  by a preponderance of the evidence:

First:   Mr. Almakhadhi was entitled to ~~additional~~ FMLA leave at the time he was terminated from employment; that is, at the time of his discharge, Mr. Almakhadhi still had part or all of his 12 weeks of leave available under the FMLA.

Second: Delaware Park interfered with the exercise of Mr. Almakhadhi's right to unpaid leave by denying him the FMLA leave to which he was entitled.

It does not matter whether Delaware Park intended to violate the FMLA.  If Delaware Park denied Mr. Almakhadhi a right to which he was entitled under the FMLA, in this case, the right to additional FMLA leave, then you should find in favor of Mr. Almakhadhi.

Whether an employee is entitled to leave under the FMLA is determined on the first day of the employee's leave.  If an employee is not entitled to FMLA leave when his leave of absence begins, he is not entitled to FMLA leave at any time during that leave period.  In other words, an employee cannot become eligible for FMLA leave in the middle of an uninterrupted period of absence that was not initially covered under the FMLA.

Also, you cannot find that Delaware Park interfered with Mr. Almakhadhi's right to FMLA leave simply because Delaware Park imposes reporting obligations for employees who are on leave.  An employer does not interfere with an employee's right to take leave by establishing a policy requiring all employees to call in to report their whereabouts while on leave.

Finally, so long as an employer has provided the 12 weeks of leave required by the FMLA in any applicable 12-month period, the employer is not required to provide notice to the employee that his leave has been exhausted, unless the employee can show that he suffered some prejudice or harm by not receiving such a notice.  The employer also is not required to provide any additional leave once the 12-week period has been exhausted.  If an employee is unable to return to work at the end of the 12-week period of FMLA leave, the employee loses the protections of the FMLA.  This means that if an employee remains unable to perform the essential functions of his position after 12 weeks of leave, the employee has no right to restoration to his position, and his termination does not violate the FMLA.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007; *see* 29 C.F.R. § 825.214(b); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002); *Gibson v. Lafayette Manor, Inc.*, 2007 WL 951473 (W.D. Pa. Mar. 27, 2007); *Adly v. SuperValu, Inc.*, 2007 U.S. Dist. LEXIS 57011, at *11-12 (D. Minn. Aug. 3, 2007); *Sewall v. Chicago Transit Auth.*, 2001 U.S. Dist. LEXIS 330, at *5-6 (N.D. Ill. Jan. 16, 2001) . |

**C.      INSTRUCTIONS ON DAMAGES**

**4.1      EFFECT OF INSTRUCTION AS TO DAMAGES**

Upon your consideration of the case, under the instructions I have given you, if you reach the conclusion Mr. Almakhadhi has proved by a preponderance of the evidence that he ~~was intentionally discriminated or retaliated against~~suffered harm in regard to one or more of his claims, then and only then should you give consideration to the question of damages and determine the amount of money, if any, to be awarded to Mr. Almakhadhi for that particular claim or claims.  You are instructed that Mr. Almakhadhi is not entitled to recover any damages merely because he was discharged from employment, and no liability on the part of Delaware Park may be inferred simply because this suit was brought.

Additionally, the fact that I am instructing you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case.  I am instructing you on damages so that you will have guidance only if you find in favor of Mr. Almakhadhi by a preponderance of the evidence.  If you find that Mr. Almakhadhi has not prevailed on a claim by a preponderance of the evidence, you should not consider the issue of damages for that claim.

| Authorities | Adapted from O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 106.02 (5th ed. 2001). |
|---|---|

**4.2**      **COMPENSATORY DAMAGES -- ADA AND TITLE VII CLAIMS**

If you find by a preponderance of the evidence that Delaware Park violated   Mr. Almakhadhi's federally protected rights by subjecting him to harassment and/or a hostile working environment because of his race and/or national origin and/or retaliated against him for taking steps seeking to enforce his rights under Title VII of the Civil Rights Act of 1964against discrimination or retaliation based on his race, national origin, or that Delaware Park discriminated against Mr. Almakhadhi because of his alleged disability, or retaliated against him because he sought to enforce his legal rights concerning his alleged disability, then you must consider the issue of compensatory damages. Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence.

Compensatory damages are specifically provided for by law and are intended to compensate a victim of discrimination for his emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-monetary) losses. –You must award Mr. Almakhadhi an amount that will fairly compensate him for any injury he actually sustained as a result of Delaware Park's conduct.

The damages that you award must be just, reasonable and fair compensation, no more and no less. The award of compensatory damages is meant to put Mr. Almakhadhi in the position he would have occupied if the discrimination had not occurred. Compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury - tangible and intangible. Thus, no evidence of the value of such intangible things as emotional pain and mental anguish has been or need be introduced. In that respect it is not value you are trying to determine, but an amount that will fairly compensate the Plaintiffs for those

claims of damage. There is no exact standard to be applied; any such award should be fair and just in the light of the evidence. ~~Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence.~~

Mr. Almakhadhi must show that the ~~injury~~ harm he suffered would not have occurred without Delaware Park's actions.  Mr. Almakhadhi must also show that Delaware Park's actions played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of Delaware Park's actions.  This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether Delaware Park's actions were motivated by discrimination. In other words, even assuming that Delaware Park's actions were motivated by discrimination, Mr. Almakhadhi is not entitled to damages for an injury unless Delaware Park's discriminatory actions actually played a substantial part in bringing about that injury.

There can be more than one cause of an injury.  To find that Delaware Park's actions caused Mr. Almakhadhi's injury, you need not find that Delaware Park's actions were the nearest cause, either in time or space. However, if Mr. Almakhadhi's injury was caused by a later, independent event that intervened between Delaware Park's actions and Mr. Almakhadhi's injury, Delaware Park is not liable unless the injury was reasonably foreseeable by Delaware Park.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss

of enjoyment of life that Mr. Almakhadhi experienced as a consequence of Delaware Park's actions. To be entitled to these damages, Mr. Almakhadhi must show actual injury to his mental state. Mr. Almakhadhi need not, however, submit evidence of the monetary value of such intangible things as pain and suffering. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

[*I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Mr. Almakhadhi would have earned, either in the past or in the future, if he had continued in employment with Delaware Park. These elements of recovery of wages that Mr. Almakhadhi would have received from Delaware Park are called "back pay" and "front pay". Under the applicable law, the determination of "back pay" and "front pay" is for the court.*]**3**

As I instructed you previously, Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence. But the law does not require that Mr. Almakhadhi prove the amount of his losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

~~In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.~~

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007; Eleventh Circuit Pattern Jury Instructions (Civil Cases); Federal Claims Instructions 1.2.2 (modified); 42 U.S.C. ß1981a(b)(3) (modified). |
|---|---|

---

3    Bracketed/italicized language will be eliminated if the Court gives advisory instructions on back pay and front pay.

**4.3**     **ADVISORY INSTRUCTION ON BACK PAY – TITLE VII AND ADA CLAIMS**

If you find that Delaware Park intentionally discriminated or retaliated against Mr. Almakhadhi, then you must determine the amount of damages that Delaware Park's actions have caused him. Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence.

You may award as actual damages an amount that reasonably compensates Mr. Almakhadhi for any lost wages and benefits, taking into consideration any increases in salary and benefits that Mr. Almakhadhi would have received from Delaware Park had he not been the subject of the alleged discrimination or retaliation.

Back pay damages, if any, apply from the time Mr. Almakhadhi first lost any pay due to discrimination or retaliation until the date of your verdict. However, if you award damages, you must not award back pay for any time that Mr. Almakhadhi would not have been at work for reasons unrelated to discrimination.

~~Also, if you award back pay for any period of time during which Mr. Almakhadhi was not at work but was receiving workers' compensation benefits, you are instructed to deduct from the back pay figure the workers' compensation benefits that Mr. Almakhadhi received during that time.~~

(The collateral source rule prohibits this instruction: Giles v. General Elec. Co.t 245 F.3d 474, 494-95 & n.37 (5th Ciro 2001); Dunning v. United Parcel Serv., 471 F.Supp.2d 795t 813 (E.D.Mich. 2007) (citing Hamlin v. Charter Twp. of Flint, 165 F.3d 426t 433-36 (6th Cir.1999) (observing that "[a]pplying the collateral source rule in the employment discrimination context prevents the discriminatory employer from avoiding liability and experiencing a windfallt and also promotes the deterrence functions of discrimination )

You are further instructed that Mr. Almakhadhi has a duty to mitigate his damages--that is,

he is required to make reasonable efforts under the circumstances in seeking substantially equivalent employment to reduce his damages. Substantially equivalent employment is that which would have afforded Mr. Almakhadhi virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status. In seeking to mitigate damages, however, Mr. Almakhadhi is only required to exercise reasonable diligence. In other words, the law simply requires a reasonable, good faith effort. Mr. Almakhadhi does not have to be successful, nor is he required to go into another line of work, accept a demotion, or take a demeaning position. Indeed, Mr. Almakhadhi need not to seek employment which is not consonant with his particular skills, background, and experience or which involve conditions that are substantially more onerous than the position he held with the Defendant.

It is Delaware Park's burden to prove that Mr. Almakhadhi has failed to mitigate by a preponderance of the evidence, any lack of diligence on Mr. Almakhadhi's part, the existence of substantially equivalent employment, and the amount, if any, by which any back pay award should be reduced. So if Delaware Park persuades you, by a preponderance of the evidence, that Mr. Almakhadhi failed to obtain substantially equivalent job opportunities that were reasonably available to him, you must reduce the award of damages by the amount of the wages that Mr. Almakhadhi reasonably would have earned if he had obtained those opportunities.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007; *see Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1101 (3d Cir. 1995); *Shomide v. ILC Dover, Inc.*, 2007 WL 3348293 (D. Del. Nov. 9, 2007); *Mason v. The Ass'n for Indep. Growth*, 817 F. Supp. 550, 557-58 (E.D. Pa. 1993); *Weaver v. Casa Gallardo,* 922 F.2d 1515 (11th Cir. 1991); *EEOC v. Guardian Pools,* 828 F.2d 1507 (11th Cir. 1987); *Sellers v. Delgado Community College,* 839 F.2d 1132 (5th Cir. 1988); *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228 (7th Cir. 1986); *Goss v. Exxon Office Systems,* 747 F.2d 885 (3rd Cir. 1984); *Stone v. D.A. & S. Oil Well Servicing, Inc.,* 624 F.2d 142 |

| | (10th Cir. 1980); *EEOC v. Molle Chevrolet,* 1992 WL 443562 (W.D. Mo. 1993). |
|---|---|

**4.4**    **ADVISORY INSTRUCTION ON FRONT PAY — TITLE VII AND ADA CLAIMS**

You may determine separately a monetary amount equal to the present value of any future wages and benefits that Mr. Almakhadhi would reasonably have earned from Delaware Park had the alleged discrimination or retaliation not occurred, for the period from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits Mr. Almakhadhi will receive from other employment during that time. Mr. Almakhadhi has the burden of proving these damages by a preponderance of the evidence.

If you find that Mr. Almakhadhi is entitled to recovery of future earnings from Delaware Park, you nonetheless should not make an award for any period of time during which Mr. Almakhadhi is unable to work and would not be paid any wages.  Front pay is an alternative to reinstatement, so front pay is not an available remedy for a plaintiff who is unable to work.

~~Also, if you find that Mr. Almakhadhi is entitled to recovery of future earnings from Delaware Park, then you must deduct from your award any workers' compensation benefits that Mr. Almakhadhi reasonably expects to receive during that time period.~~

(The collateral source rule prohibits this instruction: Giles v. General Elec. Co.t 245 F.3d 474, 494-95 & n.37 (5th Ciro 2001); Dunning v. United Parcel Serv., 471 F.Supp.2d 795t 813 (E.D.Mich. 2007) (citing Hamlin v. Charter Twp. of Flint, 165 F.3d 426t 433-36 (6th Cir.1999) (observing that "[a]pplying the collateral source rule in the employment discrimination context prevents the discriminatory employer from avoiding liability and experiencing a windfallt and also promotes the deterrence functions of discrimination )

You must further reduce any award to its present value by considering the interest that Mr. Almakhadhi could earn on the amount of the award if he made a relatively risk-free investment.  You must make this reduction because an award of an amount representing future

loss of earnings is more valuable to Mr. Almakhadhi if he receives it today than if it were received at the time in the future when it would have been earned.  It is more valuable because Mr. Almakhadhi can earn interest on it for the period of time between the date of the award and the date he would have earned the money.  So you should decrease the amount of any award for loss of future earnings by the amount of interest that Mr. Almakhadhi can earn on that amount in the future.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007; *see Shomide v. ILC Dover, Inc.*, 2007 WL 3348293 (D. Del. Nov. 9, 2007) (internal citations omitted). |
| --- | --- |

**4.5     PUNITIVE DAMAGES – ADA AND TITLE VII CLAIMS**

Mr. Almakhadhi claims the acts of Delaware Park were done with malice or reckless indifference to the Mr. Almakhadhi's federally protected rights against discrimination and retaliation on the basis of his race, national origin, and/or alleged disability.  Mr. Almakhadhi alleges that as a result there should be an award of what are called "punitive" damages. A jury may award punitive damages to punish Delaware Park, or to deter Delaware Park and others like Delaware Park from committing such conduct in the future. The jury may award punitive damages even if the plaintiff suffered no actual injury, and so received nominal rather than compensatory damages.

An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of Delaware Park personally acted with malice or reckless indifference to Mr. Almakhadhi's federally protected rights against discrimination or retaliation on the basis of his race, national origin, and/or disability.  An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

But even if you make a finding that there has been an act of discrimination with malice or reckless disregard of Mr. Almakhadhi's federal rights, you cannot award punitive damages if Delaware Park proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law, by adopting policies and procedures designed to prevent unlawful discrimination such as that suffered by Mr. Almakhadhi.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied and that Delaware Park has not proved that it

made a good-faith attempt to comply with the law, then you may decide to award punitive damages, or you may decide not to award them.  I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages.  The purposes of punitive damages are to punish Delaware Park for a malicious or reckless disregard of federal rights, or to deter Delaware Park and others like Delaware Park from doing similar things in the future, or both.  Thus, you may consider whether to award punitive damages to punish Delaware Park.  You should also consider whether actual damages standing alone are sufficient to deter or prevent Delaware Park from again performing any wrongful acts it may have performed.  Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those Delaware Park may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award.  That is, in deciding the amount of punitive damages, you should consider the degree to which Delaware Park should be punished for its wrongful conduct, and the degree to which an award of one sum or another will deter Delaware Park or others from committing similar wrongful acts in the future.  The amount of punitive damages to be awarded does not have to be proportional to compensatory damages awarded. You may weigh the conduct of Defendant against the amount of damages ~~which~~that would deter such future conduct.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapters 5, 9, May 2007; Kolstad v. American Dental Association, 527 U.S. 526 (1999); Deters v. Equifax Credit Information Services, Inc., 202 F.3d 1262 (10th Cir. 2000). |

**4.6    NOMINAL DAMAGES – ADA AND TITLE VII CLAIMS**

If you return a verdict for Mr. Almakhadhi, but Mr. Almakhadhi has failed to prove actual injury and therefore is not entitled to compensatory damages, then you must award nominal damages of $ 1.00.

A person whose federal rights against discrimination or retaliation based on race, national origin, or disability were violated is entitled to recognition of that violation, even if he suffered no actual injury.  Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

However, if you find actual injury, you must award compensatory damages (as I instructed you), rather than nominal damages.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 5, and May 2007. |

**4.7**     **COMPENSATORY DAMAGES  -- FMLA CLAIMS**

If you find that Delaware Park has violated Mr. Almakhadhi's rights under the Family and Medical Leave Act, then you must determine the amount of damages that Delaware Park's actions have caused Mr. Almakhadhi.  Mr. Almakhadhi has the burden of proving damages by a preponderance of the evidence.

You must award as actual damages an amount that reasonably compensates Mr. Almakhadhi for any lost wages and benefits, taking into consideration any increases in salary and benefits that Mr. Almakhadhi would have received from Delaware Park had Mr. Almakhadhi's FMLA rights not been violated.

In this case, Mr. Almakhadhi alleges that Defendant willfully violated the Family and Medical Leave Act. If  Mr. Almakhadhi proves to you by a preponderance of the evidence that Delaware Park's violation of the Family and Medical Leave Act was willful, then this will have an effect on the damages that you must award. I will explain this effect in a minute, but first I will provide you more information on what it means for a violation  to be  "willful."

You must find [defendant's] violation of the Family and Medical Leave Act to be willful if Mr. Almakhadhi proves by a preponderance of the evidence that Delaware Park knew or showed reckless disregard for whether its denial of his FMLA leave was prohibited by the law. To establish willfulness it is not enough to show that Defendant acted negligently. If you find that Defendant did not know, or knew only that the law was potentially applicable, and did not act in reckless disregard for whether its conduct was prohibited by the law, then Defendant's conduct was not willful.

79

_____ If you find that Delaware Park's violation of the Family and Medical Leave Act was willful, then you must award Mr. Almakhadhi the amount of his lost wages and benefits during the period starting February 12, 2004 through the date of your verdict. However, if you find that Delaware Park violated the FMLA, but did not do so willfully, you must award Mr. Almakhadhi the amount of his lost wages and benefits during the period starting February 12, 2005 through the date of your verdict.

_____ You must reduce any award of damages for lost wages and benefits by the amount of the expenses that [plaintiff] would have incurred in making those earnings. If you award damages for lost wages, you are instructed to deduct from this figure whatever wages Mr. Almakhadhi has obtained from other employment during this period.  However, please note that you should not deduct social security benefits, unemployment compensation and pension benefits from an award of lost wages.

However, if you award Mr. Almakhadhi damages for lost wages, you must not award damages for any time that Mr. Almakhadhi would not have been at work for reasons unrelated to discrimination. ~~Also, if you award damages for lost wages for any period of time during which Mr. Almakhadhi was not at work but was receiving workers' compensation benefits, you are instructed to deduct from your award the workers' compensation benefits that Mr. Almakhadhi received during that time.~~

(The collateral source rule prohibits this instruction: Giles v. General Elec. Co.t 245 F.3d 474, 494-95 & n.37 (5th Ciro 2001); Dunning v. United Parcel Serv., 471 F.Supp.2d 795t 813 (E.D.Mich. 2007) (citing Hamlin v. Charter Twp. of Flint, 165 F.3d 426t 433-36 (6th Cir.1999) (observing that "[a]pplying the collateral source rule in the employment discrimination context prevents the discriminatory employer from avoiding liability and experiencing a windfallt and also promotes the deterrence functions of discrimination-)

You are further instructed that Mr. Almakhadhi has a duty to mitigate his damages--that is, Mr. Almakhadhi is required to make reasonable efforts under the circumstances in seeking substantially equivalent employment to reduce his damages. Substantially equivalent employment is that which would have afforded Mr. Almakhadhi virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status. In seeking to mitigate damages, however, Mr. Almakhadhi is only required to exercise reasonable diligence. In other words, the law simply requires a reasonable, good faith effort. Mr. Almakhadhi does not have to be successful, nor is he required to go into another line of work, accept a demotion, or take a demeaning position. Indeed, Mr. Almakhadhi need not to seek employment which is not consonant with his particular skills, background, and experience or which involve conditions that are substantially more onerous than the position he held with the Defendant.

It is Delaware Park's burden to prove by a preponderance of the evidence, any lack of diligence on Mr. Almakhadhi's part, the existence of substantially equivalent employment, and the amount, if any, by which any back pay award should be reduced.that Mr. Almakhadhi has failed to mitigate. So if Delaware Park persuades you, by a preponderance of the evidence, that Mr. Almakhadhi failed to obtain substantially equivalent job opportunities that were reasonably available to him, you must reduce the award of damages by the amount of the wages that Mr. Almakhadhi reasonably would have earned if he had obtained those opportunities.

In assessing damages under the FMLA, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

The Family and Medical Leave Act provides that if an employee is unable to prove that the employer's violation of the Act caused the employee to lose any wages, benefits or other compensation, then that employee may recover other monetary losses sustained as a direct result of the employer's violation of the Act.

So in this case, if you find that Delaware Park has violated Mr. Almakhadhi's rights under the FMLA, and yet you also find that Mr. Almakhadhi has not proved the loss of any wages, benefits or other compensation as a result of this violation, then you must determine whether Mr. Almakhadhi has suffered any other monetary losses as a direct result of the violation. Other monetary losses may include the cost of providing the care that gave rise to the need for a leave. Mr. Almakhadhi has the burden of proving these monetary losses by a preponderance of the evidence.

Under the law, Mr. Almakhadhi's recovery for these other monetary damages can be no higher than the amount that he would have made in wages or salary for a twelve-week period during his employment. So you must limit your award for these other monetary damages, if any, to that amount. You must also remember that if Mr. Almakhadhi has proved damages for lost wages, benefits or other compensation, then you must award those damages only and Mr. Almakhadhi may not recover any amount for any other monetary damages suffered as a result of Defendant's violations of the FMLA.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, and May 2007; *see Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1101 (3d Cir. 1995); *Gibson v. Lafayette Manor, Inc.*, 2007 WL 951473 (W.D. Pa. Mar. 27, 2007); *Mason v. The Ass'n for Indep. Growth*, 817 F. Supp. 550, 557-58 (E.D. Pa. 1993); *Weaver v. Casa Gallardo,* 922 F.2d 1515 (11th Cir. 1991); *EEOC v. Guardian Pools,* 828 F.2d 1507 (11th Cir. 1987); *Sellers v. Delgado Community College,* 839 F.2d 1132 (5th Cir. 1988); *Wheeler v.* |

|  | *Snyder Buick, Inc.,* 794 F.2d 1228 (7th Cir. 1986); *Goss v. Exxon Office Systems,* 747 F.2d 885 (3rd Cir. 1984); *Stone v. D.A. & S. Oil Well Servicing, Inc.,* 624 F.2d 142 (10th Cir. 1980); *EEOC v. Molle Chevrolet,* 1992 WL 443562 (W.D. Mo. 1993). |

**4.8**    **FMLA – NO RIGHT TO EMOTIONAL DISTRESS DAMAGES**

The Family and Medical Leave Act does not allow Mr. Almakhadhi to recover for any mental or emotional distress or pain and suffering that may have been caused by Delaware Park's violation of the Act. So I instruct you that if you find in favor of Mr. Almakhadhi on his FMLA claim(s), you are not to award him any damages for emotional distress or pain and suffering.

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007. |
|---|---|

## 4.9     FMLA – NO RIGHT TO PUNITIVE OR NOMINAL DAMAGES

Punitive damages cannot be recovered under the Family and Medical Leave Act.  Neither can nominal damages (of $1.00), which are designed to recognize a violation of a plaintiff's federal rights when there is no actual injury.  Thus, should you find for Mr. Almakhadhi on his FMLA claim(s), you cannot award these types of damages.

(This instruction is not necessary. 29 U.S.C. § 2617 provides for a mandatory award of liquidated damages for any award under the FMLA. There is no issue for the jury to decide concerning the availability or amount of these damages. The court simply doubles the award of damages found by the jury. )

| Authorities | Adapted from the Third Circuit's Model Civil Jury Instructions, Chapter 10, May 2007. |
|---|---|

**4.10    MITIGATION OF DAMAGES**

Mr. Almakhadhi has a duty to mitigate any damages you find that he have suffered by using reasonable diligence in seeking substantially equivalent employment. Substantially equivalent employment is that which would have afforded Plaintiff virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status.

In seeking to mitigate damages, however, Mr. Almakhadhi is only required to exercise reasonable diligence. In other words, the law simply requires a reasonable, good faith effort. Mr. Almakhadhi does not have to be successful, nor is he required to go into another line of work, accept a demotion, or take a demeaning position. Indeed, Mr. Almakhadhi need not seek employment which is not consonant with his particular skills, background, and experience or which involves conditions that are substantially more onerous than the position he held with the Defendant.

Likewise, there is no obligation on a Plaintiff to accept, perform well in or remain employed at jobs that are not substantially equal to the job he held with the Defendant. In other words, Plaintiffs had no obligation to accept, perform well in, or remain at jobs that were not virtually identical in terms of promotional opportunities, compensation, job responsibilities, working conditions, and status to the job he held with the Defendant. must mitigate his damages, meaning that he must make every reasonable effort to minimize or reduce his damages for loss of compensation by seeking employment. You are instructed that it is Delaware Park's burden to prove, by a preponderance of the evidence, any lack of diligence on Plaintiff's part, the existence of substantially equivalent employment, and the amount, if any, by which any damage award should be reduced. Delaware Park must prove by a preponderance of

86

~~the evidence that Mr. Almakhadhi failed to mitigate his damages for loss of compensation~~.

If you determine that Mr. Almakhadhi is entitled to damages but that he failed to seem substantially equivalent employment, you must reduce these damages by:

1.    what Mr. Almakhadhi earned and

2.    what Mr. Almakhadhi could have earned by making a reasonable effort to obtain substantially equivalent employment during the period from his discharge on February 12, 2006 until the date of the trial.

~~Mr. Almakhadhi must accept employment that is "of a like nature." In determining whether employment is "of a like nature," you may consider:~~

~~1.    the type of work;~~

~~2    the hours worked;~~

~~3.    the compensation;~~

~~4.    the job security;~~

~~5.    the working conditions; and~~

~~6.    other conditions of employment.~~

~~You must decide whether Mr. Almakhadhi acted reasonably in not seeking or accepting a particular job. If you determine Mr. Almakhadhi did not make reasonable efforts to obtain another similar job, you must decide whether any damages resulted from his failure to do so.~~

You must not compensate Mr. Almakhadhi for any portion of his damages resulting from his failure to make reasonable efforts to reduce his damages.

| | |
|---|---|
| Authorities | Adapted from O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 170.65 (5th ed. 2001); *Ford Motor Co. v. EEOC,* 102 S.Ct. 3057 (1982); *Weaver v. Casa Gallardo,* 922 F.2d 1515 (11th Cir. 1991); *Walters v. City of Atlanta,* 803 F.2d 1135 (11th Cir. 1986); *Nord v. U.S. Steel Corp.,* 758 F.2d 1462 (11th Cir. 1985); *Spulak v. K Mart Corp.,* 894 F.2d 1150 (10th Cir. 1990); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.* 117 F.3d 1244, 1252 (11th Cir. 1997); *EEOC v. Guardian Pools,* 828 F.2d 1507 (11th Cir. 1987); *Sellers v. Delgado Community College,* 839 F.2d 1132 (5th Cir. 1988); *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228 (7th Cir. 1986); *Goss v. Exxon Office Systems,* 747 F.2d 885 (3rd Cir. 1984); *Stone v. D.A. & S. Oil Well Servicing, Inc.,* 624 F.2d 142 (10th Cir. 1980); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.* 117 F.3d 1244, 1252 (11th Cir. 1997); *Sparks v. Griffin,* 460 F.2d 433 (5th Cir. 1972). |

**D.**     **INSTRUCTIONS ON DELIBERATION AND VERDICT**

**5.1**     **DELIBERATION AND VERDICT**

How you conduct your deliberations is up to you.  But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges - judges of the facts, not me.  Your sole interest is to seek the truth from the evidence in that case.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through the foreperson, who by custom of this court is juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

| Authorities | Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

**5.2      VERDICT FORM**

I have prepared a special verdict form for you to use in recording your decision.  The special verdict form is made up of questions concerning the important issues in this case.  You must follow the instruction on the form carefully, you must answer each question, and your answers must be unanimous and must reflect the conscientious judgment of each juror.

The fact that there is a category or blank for a certain type of damages does not require you to enter any number in the blank.  Further, the fact that I have instructed you as to a particular element of damages does not mean that the Mr. Almakhadhi is entitled to recover that element of damages.  The amounts and types of damages, if any, are solely your decision.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|

## 5.3     **COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in favor of either party.  You must decide the case yourselves based on the evidence presented.

| Authorities | Adapted from Uniform Jury Instructions in the United States District Court for the District of Delaware. |
|---|---|