IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMI ALMAKHADHI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 1:07-cv-00078-JJF |
| v. | : | |
| | : | |
| DELAWARE PARK LLC, | : | |
| | : | |
| Defendant. | : | |

PROPOSED PRETRIAL ORDER

1. STATEMENT OF THE NATURE OF THE ACTION

As set forth in Plaintiff's Pro Se Complaint and his Proposed Amended Complaint, this is an action by Mr. Almakhadhi against his former employer, Defendant Delaware Park L.L.C. ("Delaware Park") seeking declaratory relief, punitive and compensatory damages, attorney's fees, and other relief because of Delaware Park's discrimination against him because of his national origin and race; Delaware Park's discrimination against him because of his disability; Delaware Park's retaliation against him because of his complaints about discrimination in the workplace; Delaware Park's retaliation against him because of his Family and Medical Leave Act ("FMLA") use; Delaware Park's interference with his FMLA rights; and Delaware Park's wrongful termination of his employment because he filed a worker's compensation claim.

Delaware Park denies that it discriminated or retaliated against Mr. Almakhadhi, or in any way treated him wrongfully.

In addition to Delaware Park's Answer, on November 27, 2007, Delaware Park filed its Motion for Summary Judgment. On November 28, 2007, Delaware Park filed a "Corrected" version of its Motion for Summary Judgment. Mr. Almakhadhi submitted his Answering Brief on December 13, 2007, and Delaware Park submitted its Reply on December 20, 2007.

2. THE STATUTORY BASIS OF FEDERAL JURISDICTION

On January 18, 2002, Mr. Almakhadhi began working for Defendant Delaware Park as a Booth Cashier at its business located at 777 Delaware Park Boulevard, Stanton, Delaware. The alleged discrimination was committed by Defendant's employees and agents, and occurred at its business. Mr. Almakhadhi has fulfilled all conditions precedent to the filing of this lawsuit.  Specifically, on September 29, 2006, the Delaware Department of Labor issued a Final Determination and Notice of Right to Sue.  Mr. Almakhadhi filed his original Complaint, pro se, within ninety days of that Notice. Accordingly, this court has original jurisdiction over Mr. Almakhadhi's federal law claims pursuant to 28 U.S.C. § 1331. This court has supplemental jurisdiction over Mr. Almakhadhi's state law claims pursuant to 28 U.S.C. § 1367.

**3.** **S**TATEMENT OF THE FACTS WHICH ARE ADMITTED AND REQUIRE NO PROOF

The parties reserve the right to modify this statement in accordance with the Court's rulings on pending motions and its further instructions.

(1)     The Plaintiff, Mr. Almakhadhi was born in Yemen, and emigrated with his wife to the United States in 1996.

(2)     Mr. Almakhadhi is Arab.

(3)     The Defendant, Delaware Park hosts thoroughbred horse racing and betting, a casino, a golf course, and several restaurants.

(4)     On January 18, 2002, Defendant hired Mr. Almakhadhi as a Booth Cashier. He worked in the Cage Operations Department, which supports Delaware Park's casino.

(5)     As a Booth Cashier, Mr. Almakhadhi was required to stand at a booth window, accept cash, coins, and coupons from customers, count the money, bag it, and carry the bagged money to the Satellite Cashier station, among other duties.

(6)     Mr. Almakhadhi injured himself at work in December 2003.

(7)     In May 2004, Mr. Almakhadhi reported to Delaware Park that he had injured his back, and Delaware Park filed a claim with its workers' compensation insurance carrier based on that report.

(8)     Mr. Almakhadhi's May 2004 worker's compensation claim was denied.

(9)     In June and July 2004, Mr. Almakhadhi worked as a Satellite Cashier for a period of three weeks.  Thereafter, he resumed his duties as a Booth Cashier.

(10)     In August 2004, Mr. Almakhadhi applied for intermittent leave as provided

by the Family and Medical Leave Act (or "FMLA") to care for his father, who was ill. Delaware Park granted this leave request.

(11)    Based on his years of service and other criteria, Mr. Almakhadhi was eligible for leave as provided by the FMLA.

(12)    Mr. Almakhadhi was entitled under the FMLA to a maximum of 12 weeks of unpaid FMLA leave in a twelve-month period.

(13)    When calculating FMLA leave, Delaware Park uses a rolling 12-month leave period looking forward.  The FMLA leave period for a given year begins on the first day an employee uses any FMLA leave during that year and ends 12 months from that date.

(14)    In January 2005, Mr. Almakhadhi applied for intermittent FMLA leave care for his wife, who was pregnant, and also requested two weeks of FMLA leave to care for his new baby. Delaware Park granted this leave request.

(15)    On January 16, 2005, Mr. Almakhadhi submitted an application to Delaware Park's Human Resources Department to transfer to the position of Main Bank Cashier, which was a promotional opportunity.

(16)    Mr. Almakhadhi's January 2005 application for Main Bank Cashier was forwarded by the Human Resources Department to the Cage Department for further consideration.  Mr. Almakhadhi was interviewed only after the successful candidate was selected.

(17)    Mr. Almakhadhi was not selected by his supervisors in the Cage Department for promotion to Main Bank Cashier.

(18)    On January 31, 2005, Mr. Almakhadhi submitted an application to Delaware Park's Human Resources Department to transfer to the position of Impress Supervisor, which was also a promotional opportunity.

(19)    Transfer applications are active for a period of 90 days, at which time they expire.  Mr. Almakhadhi's applications for transfer expired 90 days after they were submitted.

(20)    On February 14, 2005, Mr. Almakhadhi complained to Micki Nardo, Delaware Park's Director of Human Resources, that two employees had been selected for the Main Bank Cashier position instead of him and he thought it was due to discrimination. Mr. Almakhadhi also complained that Karlyn Dixon did not treat him in a respectful manner.

(21)    On March 14, 2005, Mr. Almakhadhi again complained to Ms. Nardo about

discrimination. Ms. Nardo advised Mr. Almakhadhi that she had found no evidence of discrimination and arranged a meeting between Mr. Almakhadhi, Ms. Dixon, and Kevin. DeLucia, which Ms. Nardo also attended, to discuss Mr. Almakhadhi's complaints and the reasons Mr. Almakhadhi was not selected for the Main Bank Cashier position.

(22)    Due to his back injury, Mr. Almakhadhi was out of work for the period April 13, 2005 to June 13, 2005, with the exception of a few days.

(23)    On or about April 29, 2005, Mr. Almakhadhi requested a light duty assignment because of his back injury.

(24)    Delaware Park denied Mr. Almakhadhi's request for light duty work and he was advised that Delaware Park did not believe he injured his back at work.

(25)    Assistant Manager of the Cage Department, Stacy Suhr, advised Mr. Almakhadhi to apply for FMLA leave.

(26)    On May 5, 2005, Mr. Almakhadhi applied for, and Delaware Park granted, FMLA leave for the period April 13 - June 13, 2005. Delaware Park advised Mr. Almakhadhi that his FMLA leave time would be exhausted effective June 13, 2005.

(27)    On the FMLA certification form completed by Mr. Almakhadhi's physician Dr. John Lawrence on May 5, 2005, Dr. Lawrence stated that Mr. Almakhadhi had aggravated a chronic back condition, indicated light duty with lifting of no more than 10 pounds would be appropriate, and that Mr. Almakhadhi was expected to return to baseline after approximately two months, assuming rehabilitation, physical therapy, and possible treatment by a specialist.

(28)    On May 27, 2005, Mr. Almakhadhi's physician at Mid-Atlantic Spine diagnosed a herniated lumbar disc and indicated that for four weeks he should not lift over 20 pounds, and should not engage in prolonged standing, or repetitive bending and twisting, among other restrictions on his work activity.

(29)    As of June 13, 2005, Mr. Almakhadhi had used a total of 12 weeks of FMLA leave.

(30)    On June 14, 2005, Mr. Almakhadhi returned to work from his FMLA leave, provided Delaware Park with a full release to work from Dr. Bohatiuk, a back specialist, and resumed his regular position.

(31)    When Mr. Almakhadhi returned to work, he worked on the morning shift. Previously, he had worked on the afternoon shift.

(32)    In July 2005, Mr. Almakhadhi wrote in the employee comments section of his

- 4 -

annual performance review that Ms. Dixon needed "to learn how to respect her emploees [sic] and stop discriminate me [sic] because of my worker's comp or my race."

(33)    Mr. Almakhadhi's comment on his July 2005 performance review was referred to the Human Resources Department, and Human Resources representative Frank Penta later discussed the complaint with Mr. Almakhadhi.

(34)    When he met with Mr. Penta, Mr. Almakhadhi complained that he had been passed over for the position of Impress Supervisor because of discrimination against him.    Mr. Penta suggested that Mr. Almakhadhi apply again for the position of Impress Supervisor.

(35)    On August 11, 2005, Mr. Almakhadhi applied again to transfer to the position of Impress Supervisor. Mr. Almakhadhi was one of five applicants and was not selected for the position.

(36)    The candidate selected for the Impress Supervisor position in August 2005 was Penny Payne.

(37)    On August 25, 2005, Mr. Almakhadhi was examined by Dr. John B. Townsend. The examination was a Defense Medical Examination, conducted at the request of Delaware Park's insurance carrier in regard to Mr. Almakhadhi's workers' compensation claim.

(38)    By letter dated August 25, 2005, Dr. Townsend made a report to Delaware Park's insurance carrier in which he opined that, if one accepted Mr. Almakhadhi's report of events,    Mr. Almakhadhi had injured his back at Delaware Park in December 2003.

(39)    Dr. Townsend's August 25, 2005 report included a Physical Capacities Evaluation of Mr. Almakhadhi, in which Dr. Townsend indicated that from August 25, 2005 and on an ongoing basis, Mr. Almakhadhi is subject to the following work restrictions: occasional lifting between 5 and 20 pounds and no lifting over 20 pounds; occasional bending, squatting, kneeling, and twisting; standing no more than 5-6 hours in an 8-hour day; and walking no more than 3-4 hours in an 8-hour day.  In a separate section of the report, he  indicated that Mr. Almakhadhi could perform light work,   including lifting of 20 pounds, with frequent lifting and carrying of up to 10 pounds.

(40)    On or about August 31, 2005, Delaware Park received a copy of Dr. Townsend's report, including the work restrictions he had recommended for Mr. Almakhadhi.

(41)    On September 1, 2005, Delaware Park sent Mr. Almakhadhi home from work

and asked him to provide a note from his doctor dated August 25, 2005 or later clarifying his current medical restrictions, if any.

(42)    On September 2, 2005, Mr. Almakhadhi provided Delaware Park with a note from Dr. Mary Leddy, which imposed the following work restrictions on Mr. Almakhadhi: no lifting greater than 20 pounds; no prolonged standing; and no repetitive bending or twisting.

(43)    Delaware Park sent Mr. Almakhadhi home from September 2, 2005 until his termination from employment, and told him to call in each day.

(44)Since late November 2005 Mr. Almakhadhi has received all compensation due to him under the Delaware Worker's Compensation Act.

(45)    After being sent home on September 2, 2005, Mr. Almakhadhi continued to receive medical insurance benefits and accrue vacation as though fully employed.

(46)    While out of work, Mr. Almakhadhi attended classes for and received his Commercial Driver's License (or "CDL").

(47)    On February 6, 2006, Mr. Almakhadhi contacted Delaware Park to request payment of his 2005 Christmas bonus.

(48)    Delaware Park paid Mr. Almakhadhi his 2005 Christmas bonus on February 8, 2006.

(49)    On February 8, 2006, Beverly Pope spoke with Mr. Almakhadhi by telephone and told him he needed to return to work by February 12, 2006 with a release to full duty.

(50)    Delaware Park terminated Mr. Almakhadhi's employment on February 12, 2006.

(51)    Delaware Park's regular practice is to advise employees who are on leave by letter if their employment has been terminated, and the date of such termination. Mr. Almakhadhi received no such notification from Delaware Park regarding a termination action effective on February 12, 2006.

(52)    Shannon DeLucia advised Mr. Almakhadhi by letter dated March 30, 2006 that he had been terminated from employment, effective March 10, 2006. Mr. Almakhadhi received this letter on or about April 4, 2006.

(53)    While on leave from Delaware Park, in October 2005, Mr. Almakhadhi applied for employment with 7-Eleven, as a Manager.

(54)    After his termination from employment with Delaware Park, Mr.

Almakhadhi made the following applications for employment:

- August 2006, American Infrastructure, CDL driver
- September 2006, DuPont Vespel Pencader Plant
- September 2006, Delaware Transit Corporation (DART), bus driver
- October 2006, Lowe's Home Improvement, cash office
- October 2006, Red Clay Consolidated School District, bus driver
- November 2006, Cecil County, MD, corrections officer
- 2006, Delaware, corrections officer
- May 2007, C&S Wholesale Grocers, fork lift operator

Mr. Almakhadhi was not offered any of these positions.

(55)    Other than working for one week at a pizza restaurant in October 2007, Mr. Almakhadhi has been unemployed since his discharge from Delaware Park.

(56)    Mr. Almakhadhi currently is collecting workers' compensation benefits payable due to his back injury at Delaware Park.

(57)    Delaware Park's employee handbook contains a policy on discrimination and harassment which, among other matters, instructs employees on how to make a complaint if they believe they have been the victim of harassment based on their race, national origin, or other protected factors.

(58)    Mr. Almakhadhi received copies of Delaware Park's employee handbook at the time he was hired and in April 2003.

(59)    Mr. Almakhadhi attended training conducted by Delaware Park regarding its discrimination and harassment policy in 2002 and 2004, which included instruction on where to report any complaint of harassment based on race, national origin, or other protected factors.

## 4.    STATEMENT OF THE ISSUES OF FACT WHICH ANY PARTY CONTENDS REMAIN TO BE LITIGATED

### (a) Plaintiff's Statement:

As set forth in Mr. Almakhadhi's Answering Brief to Delaware Park's Motion for Summary Judgment, Plaintiff has shown that there are sufficient undisputed facts to support all of his claims. Because Delaware Park argues that it had a non-discriminatory reason for its actions, the remaining issue Mr. Almakhadhi foresees is of credibility.

In addition to the above undisputed facts, at trial Mr. Almakhadhi will show the following facts supporting all of the legal claims alleged in his Proposed Amended Complaint:

(1)    Mr. Almakhadhi is a member of a protected class.

(2)    Mr. Almakhadhi became a Citizen in 2006.

(3)    Mr. Almakhadhi was qualified for his position.

(4)    Mr. Almakhadhi had two direct supervisors: Karlyn Dixon and Stacy Suhr.

(5)    Ms. Dixon and Ms. Suhr made hiring, firing, promotional, and all other decisions affecting Cage Operations.

(6)    During his employment with Delaware Park, Mr. Almakhadhi applied for at least 13 positions, for all of which he met the required experience and qualifications. (These positions are set forth in Mr. Almakhadhi's Answering Brief to Delaware Park's Motion for Summary Judgment.)

(7)    Mr. Almakhadhi injured himself at work in December 2003. Delaware Park refused to acknowledge Mr. Almakhadhi's injury for 16 months. During that time, Mr. Almakhadhi continued to work, taking FMLA to cover the time needed to treat his disabling injury.

(8)    Mr. Almakhadhi filed for worker's compensation.

(9)    Mr. Almakhadhi suffers a disability.

(10)    Mr. Almakhadhi has a record of disability.

(11)    Delaware Park regarded Mr. Almakhadhi as disabled.

(12)    After Delaware Park's medical expert determined that Mr. Almakhadhi had, in fact, injured himself while at work, Mr. Almakhadhi's supervisors refused to assign him light duty work as required by Delaware Park's doctor.

(13)    After it sent Mr. Almakhadhi home on September 2, 2006, and required him to call in each day to inquire about light duty assignments, Delaware Park made no effort to locate any light duty work for Mr. Almakhadhi.

(14)    Mr. Almakhadhi was able to perform his job with a reasonable accommodation.

(15)    Delaware Park denied Mr. Almakhadhi a reasonable accommodation.

- 8 -

(16)   Mr. Almakhadhi was harassed because of his race and national origin.

(17)   The harassment was unwelcome.

(18)   The harassment was severe and pervasive.

(19)   Delaware Park's supervisors engaged in the harassment and did nothing to stop it.

(20)   Mr. Almakhadhi was entitled to another 12 weeks of FMLA beginning August 11, 2005.

(21)   Delaware Park interfered with and denied Mr. Almakhadhi's FMLA rights.

(22)   Mr. Almakhadhi resisted Delaware Park's discrimination and harassment by, among other things, complaining to his supervisors and Delaware Park's Human Resources department.

(23)   As a result of Mr. Almakhadhi's complaints, Delaware Park retaliated against him.

(24)   Delaware Park terminated Mr. Almakhadhi's employment first on February 12, 2006, and again on March 10, 2006. Delaware Park's actions were willful and malicious.

(25)   Mr. Almakhadhi did not receive any notice about the termination of his employment. Instead, he discovered that his health care benefits had been cut off when he tried to obtain an antibiotic for his newborn son on March 29, 2006.

(26)   Employees outside Mr. Almakhadhi's protected classes were treated more favorably.

(27)   Mr. Almakhadhi has suffered damages.

**(b) Defendant's Statement**

The following statement includes any and all issues that may remain for trial after the Court's ruling on Plaintiff's motion to amend the complaint and Delaware Park's motion for summary judgment. Delaware Park reserves the right to modify this statement in accordance with the Court's rulings and further instructions.

(1)    Whether, while employed by Delaware Park, Plaintiff's back impairment substantially limited any of his major life activities such that he was disabled within the meaning of the ADA.

(2)    If Plaintiff suffered from a disability within the meaning of the ADA while employed by Delaware Park, the nature of that disability, when such disability arose, and whether Delaware Park had knowledge of such disability.

(3)    Whether Plaintiff was able to perform the duties of his position without risk of injury.

(4)    Whether Delaware Park regarded Plaintiff as being disabled within the meaning of the ADA.

*(5)*    Whether Plaintiff was advised prior to February 13, 2005 that he had not been selected for the position of Main Bank Cashier.  *[If not otherwise barred by the statute of limitations.]*

*(6)*    If Plaintiff was advised on or after February 13, 2005 that he had not been selected for the position of Main Bank Cashier, why Plaintiff was not selected for promotion to Main Bank Cashier and whether Plaintiff's May 2004 worker's compensation claim or prior use of FMLA leave was a determinative factor in that decision.  *[If not otherwise barred by the statute of limitations.]*

*(7)*    Why Delaware Park denied a light duty assignment to Plaintiff in April 2005, and whether Plaintiff's worker's compensation claims or prior use of FMLA leave was a determinative factor in that decision.  *[If not otherwise barred by the statute of limitations.]*

(8)    Who made the decision not to promote Plaintiff to the position of Impress Supervisor in August 2005.

(9)    Whether the individual(s) who made the decision not to select Plaintiff for the position of Impress Supervisor in August 2005 knew of Plaintiff's prior complaints of discrimination, use of FMLA leave, or worker's compensation claims at the time of that decision.

(10)     Why Plaintiff was not selected for promotion to the position of Impress Supervisor in August 2005, and whether his alleged disability, race, national origin, internal complaints of discrimination, use of FMLA leave, or worker's compensation claim(s) was a determinative factor in that decision.

(11)     Whether Plaintiff was treated differently than other employees who were not in his protected class under Title VII when Delaware Park denied Plaintiff a light duty assignment in September 2005.

(12)     Who made the decision to deny Plaintiff light duty in September 2005.

(13)     Whether the individual(s) who made the decision to deny Plaintiff light duty in September 2005 knew of his internal complaints of discrimination at the time of that decision.

(14)     Why Plaintiff was not offered a light duty assignment in September 2005, and whether his alleged disability, race, national origin, internal complaints of discrimination, use of FMLA leave, or worker's compensation claim(s) was a determinative factor in that decision.

(15)     Whether Delaware Park knew about Plaintiff's alleged disability.

(16)     Whether Plaintiff requested, and/or Delaware Park denied, a reasonable accommodation.

(17)     Whether Plaintiff was treated differently than other employees not in his protected class under Title VII when his employment was terminated.

(18)     Who made the decision to terminate Plaintiff's employment.

(19)     Whether the individual(s) who made the decision to terminate Plaintiff's employment knew of Plaintiff's internal complaints of discrimination at the time of that decision.

(20)     Why Plaintiff was terminated from employment, and whether his alleged disability, race, national origin, internal complaints of discrimination, use of FMLA leave, or worker's compensation claim(s) was a determinative factor in that termination decision.

(21)     **[If such claim is permitted by the Court:]**

            A. Whether, at the time of his termination from employment, Plaintiff was entitled to additional FMLA leave.

            B. If Plaintiff was entitled to additional FMLA leave at the time of

his termination from employment, whether Delaware Park acted in good faith in not providing him with such leave.

(22)    [**If such claim is permitted by the Court:**]

A. Whether Plaintiff was subjected to cognizable harassment on the basis of his race or national origin.

B. If Plaintiff was subjected to cognizable harassment, whether he unreasonably failed to take advantage of Delaware Park's complaint, prevention, and remediation process.

(23)    Whether Plaintiff has suffered any loss of pay or other damage(s) due to the following:

a    the alleged wrongful denial(s) of light duty leave;
b.   the alleged wrongful failure(s) to promote; or
c.   the alleged wrongful termination of employment.

And [**if such claims are permitted by the Court**]:

d.   the alleged hostile work environment
e.   the alleged denial of FMLA leave

If so, the nature and amount of those damages.

(24)    Whether Plaintiff has failed to mitigate his damages, if any.

(25)    As to Plaintiff's Title VII and ADA claims, whether Delaware Park acted with such malice or reckless indifference that punitive damages may be awarded.

(26)    As to Plaintiff's FMLA claim(s), whether Delaware Park's actions were taken in good faith and therefore an award of liquidated damages is not appropriate.

**5.    STATEMENT OF THE ISSUES OF LAW WHICH ANY PARTY CONTENDS REMAIN TO BE LITIGATED**

**(a) Plaintiff's Statement:**

Mr. Almakhadhi prepared an extensive Answering Brief to Delaware Park's Motion for Summary Judgment discussing the disputed issues of law in this case, with relevant citations to authority. That Answering Brief is incorporated by reference. Because the Court has not yet ruled on Delaware Park's Motion for Summary

Judgment, all of elements of Mr. Almakhadhi's legal claims remain to be litigated. Defendant has set forth those elements below.

Mr. Almakhadhi makes the following objections to Delaware Park's Statement:

(i)  Concerning Defendant's Statement (14) below (Mr. Almakhadhi's Worker's Compensation Act Retaliation claim), Delaware Park waived any relation back argument under Rule 15 by failing to raise it when Mr. Almakhadhi filed his Motion for Leave to Amend, and instead provided its consent to the claim.

(ii) Concerning Defendant's Statement (19) below (Mr. Almakhadhi's FMLA claims), Delaware Park waived any relation back argument when it provided its consent to the retaliation portion of Mr. Almakhadhi's FMLA claim.

**(b)  Defendant's Statement:**

The following statement of issues of law that remain to be litigated includes any and all issues that may remain for trial after the Court's ruling on Plaintiff's motion to amend the complaint and Delaware Park's motion for summary judgment. Delaware Park reserves the right to modify this statement in accordance with the Court's rulings and further instructions.

AMERICANS WITH DISABILITIES ACT

(1)     Whether Plaintiff is "disabled" within the meaning of the ADA. See 42 U.S.C. § 12102(2); Toyota Motor Mfg. Kentucky, Inc. v. Williams, 534 U.S. 184 (2002).

(2)     Whether Plaintiff has adduced sufficient evidence to support a prima facie case of disability discrimination. See Raytheon Co. v. Hernandez, 540 U.S. 44(2003).

(3)     Whether Delaware Park has articulated legitimate, non-discriminatory reasons for not promoting Plaintiff in August 2005, not assigning Plaintiff light duty in September 2005, and terminating Plaintiff's employment. See id.

(4)     Whether Plaintiff has shown that Delaware Park's reasons for its actions are pretextual or, more likely than not, the result of discriminatory animus on the basis of his alleged disability. See id.

(5)     Whether Plaintiff has adduced evidence sufficient to support his claim for failure to accommodate.  See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319-20 (3d Cir. 1999).

(6)     Whether Delaware Park has established its affirmative defense that its actions were job related and consistent with business necessity due to the risk of injury to Plaintiff.   See Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73 (2002).

TITLE VII DISCRIMINATION

(7)     Whether Plaintiff has adduced sufficient evidence to support a prima facie case of race or national origin discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

(8)     Whether Delaware Park has articulated legitimate, non-discriminatory reasons for not promoting Plaintiff in August 2005, not assigning Plaintiff light duty in September 2005, and terminating Plaintiff's employment. See id.

(9)     Whether Plaintiff has shown that Delaware Park's reasons for its actions are pretextual or, more likely than not, the result of discriminatory animus on the

basis of his national origin, or race. See id.

<u>TITLE VII RETALIATION</u>

(10)    Whether Plaintiff has adduced sufficient evidence to support a prima facie case of retaliation in violation of Title VII. See Burlington N. & Santa Fe Ry. v. White, 126 S. Ct. 2405 (2006).

(11)    Whether Delaware Park has articulated legitimate, non-retaliatory reasons for not promoting Plaintiff in August 2005, not assigning Plaintiff light duty in September 2005, and terminating Plaintiff's employment. See id.

(12)    Whether Plaintiff has shown that Delaware Park's reasons for its actions are pretextual or, more likely than not, the result of retaliatory animus due to his internal complaints of race discrimination. See id.

(13)    Whether Plaintiff has shown that his protected activity had a determinative effect on Delaware Park's decisions not to promote him in August 2005, not to assign him light duty work in September 2005, and/or to terminate his employment. See Woodson v. Scott Paper Co., 109 F.3d 913, 935 (3d Cir. 1997).

<u>WORKERS' COMPENSATION ACT RETALIATION</u>

(14)    Whether Plaintiff's claims based on alleged harms prior to October 2,2005 are barred by the statute of limitations. This is an issue to be decided by the Court. See 19 Del. C. § 2365; Fed. R. Civ. P. 15(c).

(15)    Whether Plaintiff has adduced sufficient evidence to support a prima facie case of retaliation in violation of the Delaware Worker's Compensation Act. See Dunsmuir v. May Dep't Stores Co., 120 Fed. Appx. 927, 929 (3d Cir. 2005).

(16)    Whether Delaware Park has articulated a legitimate, non-retaliatory reason for its actions. See id.

(17)    Whether Plaintiff has shown that Delaware Park's reasons for its actions are pretextual or, more likely than not, the result of retaliatory animus due to his workers' compensation claim(s).  See id.

(18)    Whether Plaintiff has shown that his workers' compensation claim(s) had a determinative effect on Delaware Park's decisions not to promote him, not to assign him light duty work, and/or to terminate his employment. See id.

FMLA DISCRIMINATION/"RETALIATION"

(19)    Whether Plaintiff's claims based on alleged harms prior to October 2, 2005 are barred by the statute of limitations.  This is an issue to be decided by the Court. See 29 U.S.C. § 2617(c); Fed. R. Civ. P. 15(c).

(20)    Whether Plaintiff has adduced sufficient evidence to support a prima facie case of discrimination in violation of the FMLA.  See Constant v. Mellon Fin. Corp., 2007 WL 2570810 (3d Cir. Sept. 7, 2007).

(21)    Whether Delaware Park has articulated a legitimate, non-discriminatory reason for its actions.  See id.

(22)    Whether Plaintiff has shown that Delaware Park's reasons for its actions are pretextual or, more likely than not, the result of retaliatory animus due to Plaintiff's use of FMLA leave.  See id.

(23)    Whether Plaintiff has shown that his use of FMLA leave had a determinative effect on Delaware Park's decisions not to promote him, not to assign him light duty work, and/or to terminate his employment.  See id.

FMLA INTERFERENCE/DENIAL OF LEAVE  [**if permitted by the Court**]

(24)    Whether Plaintiff was entitled to and denied additional FMLA leave. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 891 (2002).

(25)    If so, whether Delaware Park's actions in denying such leave were made in good faith.  See 29 U.S.C. § 2617(a)(1)(A)(iii).

TITLE VII HOSTILE WORK ENVIRONMENT  [**if permitted by the Court**]

(26)    Whether Plaintiff exhausted his administrative remedies as to his hostile work environment claim. This is an issue to be decided by the Court. See Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997).

(27)    Whether Plaintiff has adduced sufficient evidence to show that he was subjected to a hostile work environment on the basis of race/national origin. See Harris v. Forklift Sys., Inc., 510 U.S. 17(1993).

(28)    Whether Delaware Park exercised reasonable care to prevent and correct any harassing behavior.  See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).

(29)    Whether Plaintiff unreasonably failed to take advantage of Delaware Park's preventive or corrective opportunities.  See id.

DAMAGES

(30)    Whether Plaintiff has shown he suffered any cognizable damages.

(31)    Whether Delaware Park has shown that Plaintiff failed to meet his obligation to mitigate any damages.  See 42 U.S.C. § 2000e-5(g)(l).

(32)    Whether Plaintiff has shown that he is entitled to punitive damages pursuant to Title VII or the ADA.  See 42 U.S.C. § 1981a(a)(l)-(2), 1981a(b)(l).

(33)    Whether Delaware Park has shown that Plaintiff is not is entitled to liquidated damages pursuant to the FMLA. This is an issue to be decided by the Court.  See 29 U.S.C. § 2617(1)(A)(iii).

(34)    Whether Plaintiff is entitled to any equitable remedy.  See 42 U.S.C. § 2000e-5(g)(1).


**6. LIST OF PRE-MARKED EXHIBITS WHICH EACH PARTY INTENDS TO OFFER AT TRIAL WITH A SPECIFICATION OF THOSE WHICH WILL BE ADMITTED IN EVIDENCE WITHOUT OBJECTION, THOSE THAT WILL BE OBJECTED TO AND THE FEDERAL RULE OF EVIDENCE IN SUPPORT OF SAID OBJECTION AND THE FEDERAL RULE OF EVIDENCE RELIED UPON BY THE PROPONENT OF THE EXHIBIT.**

### (a) Joint Exhibits

| Exhibit Number | Description |
| --- | --- |
| J1 | Delaware Park's Worker's Compensation Policy and Procedure handbook (DP0078-DP0094) |
| J2 | Delaware Park's Employment Practices (DP0095-DP0097; DP 0183-DP0185)) |
| J3 | 5-20-04 Report of Injury (DP0039) |

| Exhibit Number | Description |
|---|---|
| J4 | 2-22-05 Incident Report<br>(DP0030-DP0032) |
| J5 | 3-15-05 Incident Report<br>(DP0033-DP0035) |
| J6 | 4-13-05 Note from Christiana Hospital Emergency Department<br>(DP0880) |
| J7 | 5-2-05 Application for FMLA<br>(DP0874) |
| J8 | 5-5-05 Letter from Delaware Park's Benefits Department concerning FMLA time<br>(DP0042) |
| J9 | 8-3-05 Incident Report<br>(DP0028-DP0029) |
| J10 | 8-25-05 Report by Dr. John Townsend<br>(DP0777-DP0780) |
| J11 | 8-29-05 Letter from G. Heckler to L. West Concerning Mr. Almakhadhi's work related injuries<br>(DP0108-DP0111) |
| J12 | 8-31-05 E-mail from Judy Passmore to Sheryl Cartwright<br>(DP0043) |

| Exhibit Number | Description |
| --- | --- |
| J13 | 9-2-05 E-mail from Sheryl Cartwright to Leo West (DP0044-DP0047) |
| J14 | 9-2-05 Note from Dr. Mary C. Leddy re work restrictions (DP0105) |
| J15 | 2-09-06 E-mail chain begun by Beverly Pope (DP0100-DP101) |
| J16 | 2-13-06 E-mail from A. Sheats to K. Dixon (DP0653) |
| J17 | E-mail from A. Sheats to K. Dixon (DP0654) |
| J18 | 2-14-06 E-mail from A. Sheats to K. Dixon (DP0655) |
| J19 | 3-9-06 E-mail chain begun by Cindy Irwin (DP0656-DP0657) |
| J20 | 3-10-06 Personnel Action Notice (DP0658) |
| J21 | 3-30-06 Letter from Shannon DeLucia to Mr. Almakhadhi (DP0149) |

| Exhibit Number | Description |
|---|---|
| J22 | 4-3-06 Letter re Employment Dates (DP0652) |
| J23 | Collected letters re FMLA Exhaustion (DP0150-DP0160; DP0669-DP0670) |
| J24 | Denials of Light Duty Requests DP0099 |

**(b) Plaintiff's List:**

Plaintiff intends to introduce the following exhibits during the trial of this matter. Additionally, Mr. Almakhadhi reserves his right to use at trial any exhibits identified by Delaware Park, any exhibits Delaware Park introduces into evidence at trial, and any exhibits necessary to rebut Delaware Park's evidence. Likewise, in addition to the ones identified below, Mr. Almakhadhi reserves his right to introduce any of the pleadings (and/or their exhibits) filed in this case. This list does not include demonstrative exhibits that may be prepared for trial.

| Exhibit Number | Description | FRE Relied Upon | Objection/FRE Relied Upon |
|---|---|---|---|
| P1 | Delaware Park's Employee Handbook (Potentially DP0112-DP0142) | 401; 901(a); 901(b)(4); 902(7) | |
| P2 | 9-13-06 Letter from Delaware Park to DDOL (DP0161-DP0181) | 401; 901(a); 902(7) | |
| P3 | Delaware Park's Worker's Compensation Policy and Procedure handbook (DP0078-DP0094) | 401; 901(a); 901(b)(4); 902(7) | |
| P4 | Delaware Park's 6-30-06 Response to DDOL Charge (DP0001-DP0053) | 401; 901(a); 902(7) | |
| P5 | 6-30-06 Statement of Karlyn Dixon (DP0018-0022) | 401; 901(a); 902(11)(A); 801(d)(2) | |
| P6 | 6-30-06 Statement of Shannon DeLucia (DP0013-0017) | 401; 901(a); 902(11)(A); 801(d)(2) | |
| P7 | Booth Cashier Job Description (DP0023) | 401; 901(a); 901(b)(4); 902(7) | |

| Exhibit Number | Description | FRE Relied Upon | Objection/FRE Relied Upon |
|---|---|---|---|
| P8 | Collective Bargaining Agreement between UFCW and Delaware Park (DP0186-DP202) | 401; 901(a); 901(b)(4); 902(7) | |
| P9 | 6-21-05 Performance Report (DP0036-DP0038) | 401; 901(a); 901(b)(4); 902(11)(A); 801(d)(2) | |
| P10 | Defendant's Responses to Mr. Almakhadhi's First Set of Interrogatories | 401; 801(d)(2); 901(a); 901(b)(4) | Delaware Park objects to the extent the responses contain information barred by the statute of limitations. Delaware Park further objects to the inclusion of irrelevant and/or argumentative requests. FRE 402, 403. |
| P11 | Defendant's Responses to Mr. Almakhadhi's First Requests for Admission | 401; 801(d)(2); 901(a); 901(b)(4) | Delaware Park objects to the extent the responses contain information barred by the statute of limitations. Delaware Park further objects to the inclusion of irrelevant and/or argumentative requests. FRE 402, 403. |

| Exhibit Number | Description | FRE Relied Upon | Objection/FRE Relied Upon |
|---|---|---|---|
| P12 | 11-16-07 Letter from W. Voss to F. Conley concerning substantive discovery response changes (B13) | 401; 801(d)(2); 901(a); 901(b)(4) | Delaware Park objects, as the information contained in this response is collateral to the issues in the case and outside the relevant time period. FRE 402, 403. |
| P13 | 12-5-07 Letter from W. Voss to F. Conley concerning substantive discovery response changes (B17) | 401; 801(d)(2); 901(a); 901(b)(4) | Delaware Park objects to the extent the letter contains information barred by the statute of limitations. FRE 402, 403. |
| P14 | Delaware Park's Approvals for Light Duty Requests (DP0098) | 401; 801(d)(2); 901(a); 901(b)(4); 902(7) | |
| P15 | 7-29-04 Payroll Adjustment Request (DP0534) | 401; 801(d)(2); 901(a); 901(b)(4); 902(11) | |
| P16 | 2-17-04 Employee Evaluation (DP0636) | 401; 801(d)(2); 901(a); 901(b)(4); 902(7); 902(11) | Delaware Park objects, as the document is incomplete. See DP0631-637. FRE 403. |
| P17 | 4-19-02 Employee Evaluation (DP0650) | 401; 801(d)(2); 901(a); 901(b)(4); 902(7); 902(11) | Delaware Park objects, as the document is incomplete. See DP0645-651. FRE 403. |
| P18 | 4-21-05 Service Award (DP0651a) | 401; 801(d)(2); 901(a); 901(b)(4); 902(7); 902(11) | |
| P19 | Medical Records from Dr. George Bohatiuk (DP0691-DP0703) | 401; 803(6); 901(a); 901(b)(4); 902(11)(A) | |

| Exhibit Number | Description | FRE Relied Upon | Objection/FRE Relied Upon |
|---|---|---|---|
| P20 | 6-26-06 Report by Dr. John Townsend (DP0770-DP0072) | 401; 801(d)(2); 803(6); 901(a); 901(b)(4) 902(7); 902(11)(A) | Delaware Park objects, as the exhibit is outside the relevant time period, irrelevant to the decisions at issue, unknown to Delaware Park, cumulative, and prejudicial.  FRE 402, 403. |
| P21 | 3-6-06 Report by Dr. John Townsend (DP0774-DP0776) | 401; 801(d)(2); 803(6); 901(a); 901(b)(4) 902(7); 902(11)(A) | Delaware Park objects, as the exhibit is outside the relevant time period, irrelevant to the decisions at issue, unknown to Delaware Park, cumulative, and prejudicial.  FRE 402, 403. |
| P22 | 5-2-05 E-mail from N. Cook to C. Irwin Concerning 2005 FMLA (DP0868) | 401; 801(d)(2); 901(a); 901(b)(4) 902(7); 902(11)(A) | |
| P23 | 5-6-05 E-mail from N. Cook to C. Irwin and S. Suhr Concerning 2005 FMLA (DP0866) | 401; 801(d)(2); 901(a); 901(b)(4) 902(7); 902(11)(A) | |
| P24 | 4-18-05 Note from Dr. Lawrence concerning time off from work (DP0881) | 401; 803(6); 901(b)(4);902(11)(A) | |

| Exhibit Number | Description | FRE Relied Upon | Objection/FRE Relied Upon |
|---|---|---|---|
| P25 | Medical Records from Dr. Richard McCay (DP0672-DP0690) | 401; 803(6); 901(a); 901(b)(4); 902(11)(A) | Delaware Park objects, as some of the information contained in this exhibit is outside the relevant time period. Delaware Park further objects to this exhibit as irrelevant to the decisions at issue, unknown to Delaware Park, cumulative, and prejudicial. FRE 402, 403. |
| P26 | Medical Records from Dr. Bruce Katz (DP0707-DP0714; DP0733-DP0744)) | 401; 803(6); 901(a); 901(b)(4); 902(11)(A) | Delaware Park objects, as the exhibit is outside the relevant time period, irrelevant to the decisions at issue, unknown to Delaware Park, cumulative, and prejudicial. FRE 402, 403. |
| P27 | Medical Records from Mid-Atlantic Pain Institute (DP0715-DP0728) | 401; 803(6); 901(a); 901(b)(4); 902(11)(A) | Delaware Park objects, as the exhibit is outside the relevant time period, irrelevant to the decisions at issue, unknown to Delaware Park, cumulative, and prejudicial. FRE 402, 403. |

| Exhibit Number | Description | FRE Relied Upon | Objection/FRE Relied Upon |
|---|---|---|---|
| P28 | Medical Records from Dr. Pawan Rastogi (DP0755-DP0763) | 401; 803(6); 901(a); 901(b)(4); 902(11)(A) | Delaware Park objects, as the exhibit is outside the relevant time period, irrelevant to the decisions at issue, unknown to Delaware Park, cumulative, and prejudicial.  FRE 402, 403. |
| P29 | 9-11-06 Letter from Delaware Park to DDOL (DP0054-DP0470) | 401; 901(a); 902(7) | |
| P30 | FMLA Bargaining Unit Policy (DP0872-DP0873) | 401; 901(a); 901(b)(4); 902(7) | |
| P31 | 12-15-04 FMLA Notice Letter (DP0902) | 401; 801(d)(2); 901(a); 901(b)(4); 902(7); 902(11) | |
| P32 | Light Duty 5-18-05 through 3-10-06 (DP0919) | 401; 801(d)(2); 901(a); 901(b)(4); 902(7); 902(11) | Delaware Park objects to the extent this information should be included with its response to Interrogatory No. 3A. FRE 403. |
| P33 | Medical Records from Dr. Peter Bandera (DP0782-DP0791) | 401; 803(6); 901(a); 901(b)(4); 902(11)(A) | Delaware Park objects, as the exhibit is outside the relevant time period, irrelevant to the decisions at issue, unknown to Delaware Park, cumulative, and prejudicial.  FRE 402, 403. |

| Exhibit Number | Description | FRE Relied Upon | Objection/FRE Relied Upon |
|---|---|---|---|
| P34 | 11-26-07 Affidavit of Beverly Pope (A22-A26) | 401; 901(a); 902(11)(A); 801(d)(2) | |
| P35 | Attendance History (DP0537-DP0539a) | 401; 801(d)(2); 901(a); 901(b)(4); 902(7) | |
| P36 | Requests for Transfers (DP0205-DP0399) | 401; 801(d)(2); 901(a); 901(b)(4); 902(7); 902(11) | |
| P37 | Plaintiff's Personnel File (DP0471-DP0662) | 401; 801(d)(2); 901(a); 901(b)(4); 902(7); 902(11) | Delaware Park objects to the extent that exhibit is irrelevant, duplicative, and/or contains proprietary business information. FRE 402, 403. |
| P38 | 8-31-05 E-mail from K. Dixon to M. Joswick, et al. | 401; 801(d)(2); 901(a); 901(b)(4) 902(7); 902(11)(A) | |
| P39 | 2-24-06 Letter from Delaware park to Joshua Dean (DP0158) | 401; 801(d)(2); 901(a); 901(b)(4); 902(7); 902(11) | |
| P40 | 4-7-06 Letter from C. Carroll to Plaintiff re Conversion Privilege | 401; 901(a); 902(7) | Delaware Park objects, as this exhibit is irrelevant and was never produced to Delaware Park during discovery. FRE 402, 403. |

| Exhibit Number | Description | FRE Relied Upon | Objection/FRE Relied Upon |
|---|---|---|---|
| P41 | 10-9-07 Letter from A. Caruso to Plaintiff re Dental Benefits | 401; 901(a); 901(b)(4); 902(7) | Delaware Park objects, as this exhibit is irrelevant and was never produced to Delaware Park during discovery.  FRE 402, 403. |
| P42 | 2-20-07 Statement from Walgreens re Medical Benefits | 401; 901(a); 901(b)(4); 902(7) | Delaware Park objects, as this exhibit is irrelevant and was never produced to Delaware Park during discovery.  FRE 402, 403. |

**(c) Defendant's List:**

Delaware Park reserves the right to use or introduce any thing identified as a potential trial exhibit by Plaintiff. Delaware Park reserves the right not to offer any thing that it has listed as an exhibit, or to offer only a part of a listed exhibit. Delaware Park disclaims any obligation to identify exhibits to be used solely for purposes of cross-examination or rebuttal. Delaware Park reserves the right to supplement its exhibit list seasonally. This list does not include demonstrative exhibits that may be prepared for trial.

| Exhibit Number | Description | FRE Relied Upon | Objection / FRE Relied Upon |
|---|---|---|---|
| D1 | Delaware Park's Attendance Policy Bates Nos. DP0122-DP0126 | 402, 803(6), 901(b)(4) | Because the Court has not yet ruled on Mr. Almakhadhi's Motion for Leave to Amend; Mr. Almakhadhi's two Motions to Compel Discovery and for Sanctions; and Delaware Park's Motion for Summary Judgment, Mr. Almakhadhi objects to all of Delaware Park's Exhibits to the extent that as a result of the Court's later rulings an exhibit is outside the relevant time period. Mr. Almakhadhi respectfully reserves his right to additionally object to any of Defendant's proffered exhibits either by Motion in Limine or at trial. |

| | | | |
|---|---|---|---|
| D2 | Collective Bargaining Agreement Between Delaware Park LLC and UFCW Effective January 18, 2002 through January 18, 2006 | 402, 803(6), 901(b)(4) | |
| D3 | Plaintiff's Acknowledgments for Employee Handbook Dated January 18, 2003 and April 14, 2003 Bates Nos. DP0562 and DP0553 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| D4 | Plaintiff's Acknowledgments for Discrimination and Harassment Training Dated March 13, 2002 and June 30, 2004 Bates Nos. DP0558 and DP0546 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| D5 | Job Descriptions for Booth Cashier, Satellite Cashier, Main Bank Cashier and Impress Supervisor Bates Nos. DP0023, DP0147, DP0148 and DP0792 | 402, 803(6), 901(b)(4) | |

| | | | |
|---|---|---|---|
| D6 | Plaintiff's Employment Application Dated December 19, 2001 Bates No. DP0383-DP0387 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| D7 | Employee Counseling Notices Bates Nos. DP0610-DP0618 | 402, 803(6), 901(b)(4) | |
| D8 | Plaintiff's Performance Evaluation (90 days) From January 18, 2002 – April 18, 2002 Dated April 19, 2002 Bates Nos. DP0645-DP0651 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| D9 | Plaintiff's Performance Evaluation From January 18, 2002 – January 18, 2003 Dated January 9, 2003 Bates Nos. DP0638-DP0644 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| D10 | Plaintiff's Performance Evaluation From January 18, 2003 – January 18, 2004 Dated February 17, 2004 Bates Nos. DP0631-DP0637 | 402, 801(d)(2), 803(6), 901(b)(4) | |

| | | | |
|---|---|---|---|
| D11 | Plaintiff's Performance Evaluation<br>From January 18, 2004 – January 18, 2005<br>Dated December 17, 2004<br>Bates Nos. DP0627-DP0630 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| D12 | Plaintiff's Performance Evaluation<br>From January 18, 2005 – July 18, 2005<br>Dated June 21, 2005<br>Bates Nos. DP0624-DP0626 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| D13 | Booth Operations Daily Log<br>Dated December 8, 2003<br>Bates Nos. DP0794-DP0796 | 402, 803(6), 901(b)(4) | |
| D14 | K. May Employee Counseling Notice<br>Dated December 12, 2003<br>Bates No. DP0793 | 402, 803(6), 901(b)(4) | |
| D15 | Christiana Care Family Medical Center Report of Examination of Plaintiff<br>Dated March 12, 2004<br>DP0040-DP0041 | 402, 803(4), 901(b)(4) | |

| D16 | Payroll Adjustment Request (PAR) Dated July 29, 2004 Bates No. DP0534 | 402, 803(6), 901(b)(4) | |
| D17 | List of Applicants for the Positions of Main Bank Cashier and Impress Supervisor, 1/2005 – 5/2006 Bates No. DP0204 | 402, 803(6), 901(b)(4) | |
| D18 | R. Pawley Request for Transfer to Main Bank Position and Related Documents Dated January 12, 2005 Bates No. DP0224-DP0235 | 402, 803(6), 901(b)(4) | |
| D19 | J. Hinton Request for Transfer to Main Bank Position and Related Documents Dated January 16, 2005 Bates No. DP0247-DP0264 | 402, 803(6), 901(b)(4) | |
| D20 | Plaintiff's Request for Transfer to Main Bank Position Dated January 16, 2005 Bates Nos. DP0245-0246 | 402, 801(d)(2), 803(6), 901(b)(4) | |

| D21 | Plaintiff's January 18, 2005 Application for FMLA Leave re:  Wife's Pregnancy & Childbirth, Certifications, and Related Correspondence Bates Nos. DP0890-DP0901 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| D22 | S. Suhr Notes of Meeting with Plaintiff Held February 18, 2005 Bates No. DP0027 | 402, 803(6), 901(b)(4) | |
| D23 | Emails Regarding Plaintiff's Injury and Status Dated April 2005 Bates Nos. DP0661-DP0662 | 402, 803(6), 901(b)(4) | |
| D24 | Plaintiff's FMLA Application,  Dated May 2, 2005 and Certification by John Lawrence, MD Dated May 5, 2005, and related documents. Pl. Dep. Exh. 2 DP0872-DP0879 | 402, 801(d)(2), 803(4), 803(6), 901(b)(4) | |
| D25 | Mid Atlantic Spine Report Regarding Plaintiff's Restrictions Dated May 17, 2005 Plaintiff's Deposition Ex. 4 | 402, 803(4), 803(6), 901(b)(4) | |

| | | |
|---|---|---|
| D26 | Dr. Bohatiuak's Report re: Examination of Plaintiff Dated June 1, 2005 | 402, 803(4), 803(6), 901(b)(4) | |
| D27 | Dr. Bohatiuak's Note Releasing Plaintiff to Full-Time Full Duty Work Dated June 12, 2005 Bates No. DP0660 | 402, 803(6), 901(b)(4) | |
| D28 | Dr. Bohatiuak's Report re: Examination of Plaintiff Dated June 13, 2005 | 402, 803(4), 803(6), 901(b)(4) | |
| D29 | Plaintiff's Staff Performance Review Evaluation Period Ending July 18, 2005 Bates Nos. DP0036-DP0038 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| D30 | Emails re:  Plaintiff's Work Restrictions and Status Dated August 2005 Bates Nos. DP0106-DP0107 | 402, 803(6), 901(b)(4) | |
| D31 | Plaintiff's Request for Transfer to Impress Supervisor Position and Related Documents Dated August 11, 2005 Bates No. DP0376-DP0382 | 402, 801(d)(2), 803(6), 901(b)(4) | |

| D32 | P. Payne Request for Transfer to Impress Supervisor Dated August 14, 2005 Bates No. DP0388-DP0399 | 402, 803(6), 901(b)(4) | |
|-----|-----|-----|-----|
| D33 | Report of Dr. Townsend of Examination of Plaintiff Dated August 25, 2005 Bates Nos. DP0777-DP0780 | 402, 803(4), 803(6), 901(b)(4) | |
| D34 | Notes of Surgical Discussion Dated November 11, 2005 Bates No. DP0049 | 402, 801(d)(2), 803(4), 803(6), 901(b)(4) | |
| D35 | Dr. Khella Letter re: Examination of Plaintiff Dated January 12, 2006 Bates Nos. DP0745-DP0746 | 402, 801(d)(2), 803(4), 803(6), 901(b)(4) | |
| D36 | January 12, 2006 Excerpt from Dr. Khella's Appointment Book Bates No. DP0781 | 402, 803(6), 901(b)(4) | |
| D37 | Payroll Adjustment Request (PAR) Re: Plaintiff's 2005 Christmas Bonus Dated Feb. 8, 2006 Bates No. DP0531 | 402, 803(6), 901(b)(4) | |

| D38 | Plaintiff's Payslip Dated February 8, 2006 | 402, 803(6), 901(b)(4) | |
|-----|---------------------------------------------|------------------------|---|
| D39 | Correspondence re: Plaintiff's Applications for Employment Produced by Plaintiff August 14, 2007 (Ex. C) | 402, 801(d)(2), 803(6), 901(b)(4) | |
| D40 | List of Employees Terminated from Employment after Exhaustion of Leave Bates No. DP0061 | 402, 803(6), 901(b)(4) | |
| D41 | Undated letter from Plaintiff to Whom It May Concern re: FMLA Exhaustion, Eligibility Plaintiff's Deposition Exhibit No. 19 | 402, 801(d)(2), 901(b)(4) | |
| D42 | Plaintiff's Responses to Defendant's First Request for Admissions Dated August 14, 2007 | 402, 801(d)(2), 901(b)(4) | |

**7.  THE NAMES OF ALL WITNESSES INTENDED TO BE CALLED TO TESTIFY**

### (a) Plaintiff's Witnesses

Mr. Almakhadhi intends to call the following witnesses during the trial of this matter. Additionally, Mr. Almakhadhi reserves the right to call any witness identified by Delaware Park and/or called by Delaware Park.

| | **Witness** |
|---|---|
| 1. | Sami Almakhadhi<br>5513 Limerick Circle, Unit 43<br>Wilmington, DE 19808 |
| 2. | Amatalrahman Almakhadhi<br>5513 Limerick Circle, Unit 43<br>Wilmington, DE 19808 |
| 3. | Karlyn Dixon<br>Delaware Park Racetrack & Slots<br>777 Delaware Park Boulevard<br>Wilmington, DE  19807 |
| 4. | Stacy Suhr<br>Delaware Park Racetrack & Slots<br>777 Delaware Park Boulevard<br>Wilmington, DE  19807 |
| 5. | Sheryl Cartwright<br>Delaware Park Racetrack & Slots<br>777 Delaware Park Boulevard<br>Wilmington, DE  19807 |
| 6. | Shannon DeLucia<br>Delaware Park Racetrack & Slots<br>777 Delaware Park Boulevard<br>Wilmington, DE  19807 |
| 7. | Kevin DeLucia<br>Delaware Park Racetrack & Slots<br>777 Delaware Park Boulevard<br>Wilmington, DE  19807 |
| 8. | Frank Penta<br>Delaware Park Racetrack & Slots<br>777 Delaware Park Boulevard<br>Wilmington, DE  19807 |

| | **Witness** |
|---|---|
| 9. | Roberta Evans<br>P.O. Box 365<br>Elkins, WV 26241 |
| 10. | Micki Nardo<br>120 Talbot Drive<br>Landenberg, PA 19350 |
| 11. | Beverly Pope<br>Delaware Park Racetrack & Slots<br>777 Delaware Park Boulevard<br>Wilmington, DE  19807 |
| 12. | Dr. John Townsend<br>Neurology Associates<br>774 Christiana Rd Ste 201, Newark, DE |
| 13. | Holly Lea<br>325 Jacobs Loop<br>Bear, DE 19701 |
| 14. | Mamun Korashi<br>244 Cayman Ct.<br>Wilmington, DE 19808 |
| 15. | Mir Hadelli<br>4874 W. Brigantine Ct.<br>Wilmington, DE 19808 |
| 16. | Hayes Antoinette<br>28 Shadwell Ct.<br>New Castle, DE 19720 |
| 17. | MarySue Porter<br>800 Principio Road<br>Port Deposit, MD 21904 |

| | Witness |
|---|---|
| 18. | Judith Passmore<br>Delaware Park Racetrack & Slots<br>777 Delaware Park Boulevard<br>Wilmington, DE 19807 |
| 19. | Nicole Cook<br>73 W. Stephen Dr.<br>Newark, DE 19713 |
| 20. | Yosef Moqbel<br>218 Stanbridge Road<br>Holmes, PA 19043 |
| 21. | Dr. George Bohatiuk<br>500 Christiana Medical Center<br>Newark, DE 19702 |

**(b) Defendant's Witnesses**

      1.      Sheryl Cartwright
             Delaware Park Racetrack & Slots
             777 Delaware Park Boulevard
             Wilmington, DE  19807

      2.      Shannon DeLucia
             Delaware Park Racetrack & Slots
             777 Delaware Park Boulevard
             Wilmington, DE  19807

      3.      Karlyn Dixon
             Delaware Park Racetrack & Slots
             777 Delaware Park Boulevard
             Wilmington, DE  19807

      4.      Nancy Myshko
             Delaware Park Racetrack & Slots
             777 Delaware Park Boulevard
             Wilmington, DE  19807

      5.      Beverly Pope
             Delaware Park Racetrack & Slots
             777 Delaware Park Boulevard
             Wilmington, DE  19807

      6.      Stacy Suhr
             Delaware Park Racetrack & Slots
             777 Delaware Park Boulevard
             Wilmington, DE  19807

      7.      Micki Nardo
             120 Talbot Drive
             Landenberg, PA 19350

Defendant reserves the right to call as witnesses at trial any witness identified by Plaintiff.

Delaware Park objects to Plaintiff's proposed witness Amatalrahman Almakhadhi, as she has not been designated in Plaintiff's Rule 26(a) disclosures or otherwise through discovery as having  personal knowledge of the events at issue or as a potential witness.  Delaware Park further objects to Plaintiff's proposed witnesses

Holly Lea and Mir Hadelli, as they were not employed by Delaware Park during the relevant time period and could have no personal knowledge of the events at issue. Delaware Park also objects to Plaintiff's proposed witnesses Dr. Townsend and Dr. Bohatiuk, to the extent Plaintiff intends to proffer them as experts in this case.

8.  **BRIEF STATEMENT OF WHAT PLAINTIFF INTENDS TO PROVIDE IN SUPPORT OF PLAINTIFF'S CLAIMS**

Mr. Almakhadhi will provide documents and testimony showing Delaware Park's systematic and continuous discrimination and retaliation against him. Specifically, Mr. Almakhadhi will show that Delaware Park, by and through its employees and supervisors, including but not limited to Micki Nardo, Shannon DeLucia, Karlyn Dixon, and Stacy Suhr, discriminated and retaliated against Mr. Almakhadhi because of his race and national origin, and in retaliation for his worker's compensation claim and his disability. Mr. Almakhadhi will show that Delaware Park's unlawful acts included violating Title VII, the FMLA, the ADA, and Delaware state law.

9.  **BRIEF STATEMENT OF WHAT THE DEFENDANT INTENDS TO PROVE AS A DEFENSE[1]**

The following statement includes any and all issues that may remain for trial after the Court's ruling on Plaintiff's motion to amend the complaint and Delaware Park's motion for summary judgment.  Delaware Park reserves the right to modify this statement in accordance with the Court's rulings and further instructions.

(1)  Plaintiff cannot prevail on his claim(s) under the ADA because Plaintiff did not suffer from a disability within the meaning of the ADA and/or Delaware Park had no knowledge of such disability, and Plaintiff was not regarded as disabled by Delaware Park.

(2)  Plaintiff cannot prevail on his claim(s) under the ADA because Plaintiff was unable to perform the duties of his position without significant risk of injury; Delaware Park's decision not to assign him light duty in September 2005 and to terminate his employment was job-related and consistent with business necessity.

(3)  Plaintiff cannot prevail on his claims under the ADA because he neither asked for nor was denied a reasonable accommodation.

(4)  Plaintiff cannot prevail on his claim(s) under the ADA because Delaware Park did not know of or consider his alleged disability in its decisions to not promote Plaintiff in August 2005, not assign him light duty in September 2005, and to terminate his employment.

(5)  Plaintiff's claim(s) regarding Delaware Park's decision not to promote him to Main Bank Cashier or Impress Supervisor in February 2005 is barred by the statute of limitations because Plaintiff was advised prior to February 13, 2005

---

[1]  Mr. Almakhadhi objects to Defendant's "Brief Statement" as an attempt to reargue its Motion for Summary Judgment.

that he had not been selected for the position.

(6)    Plaintiff cannot prevail on his claim(s) regarding Delaware Park's decision not to promote him to Main Bank Cashier in February 2005 because Delaware Park made that decision for legitimate business reasons, i.e., it promoted the individuals it believed were best qualified for the position and did not consider Plaintiff's prior use of FMLA leave nor his May 2004 worker's compensation claim in making that decision.

(7)    Plaintiff cannot prevail on his claim(s) regarding Delaware Park's decision not to assign him light duty work in April 2005 because Delaware Park made that decision for legitimate business reasons, i.e., it believed Plaintiff had not been injured at work and Delaware Park reserves light duty assignments for individuals who are injured at work. Delaware Park did not consider Plaintiff's prior use of FMLA leave and did not make this decision in retaliation for his worker's compensation claims.

(8)    Plaintiff cannot prevail on his retaliation claim(s) regarding Delaware Park's decision not to promote him to Impress Supervisor in August 2005 because Beverly Pope made the decision and was unaware of Plaintiff's prior complaints of discrimination, worker's compensation claim, or the nature of his leave.

(9)    Plaintiff cannot prevail on his claim(s) regarding Delaware Park's decision not to promote him to Impress Supervisor in August 2005 because Ms. Pope made that decision for legitimate business reasons, i.e., she determined Penny Payne was a better qualified candidate than Plaintiff for the position and selected her for that reason. Ms. Pope did not consider Plaintiff's race or national origin, alleged disability, prior complaints of discrimination, use of FMLA leave or worker's compensation claims.

(10)    Plaintiff cannot prevail on his Title VII retaliation claim regarding Delaware Park's decision not to assign him to light duty in September 2005 because Shannon DeLucia made that decision and was unaware of Plaintiff's prior complaints of discrimination.

(11)    Plaintiff cannot prevail on his claim(s) regarding Delaware Park's decision not to assign him to light duty in September 2005; Ms. DeLucia made that decision for legitimate business reasons, i.e., due to the risk of injury to Plaintiff and the difficulty in identifying appropriate light duty work. Ms. DeLucia did not consider Plaintiff's race or national origin in making that decision, and did not do so in retaliation for Plaintiff's prior complaints of discrimination, use of FMLA leave or worker's compensation claims.

(12)    Plaintiff cannot prevail on his Title VII retaliation claim(s) regarding Delaware Park's decision to terminate his employment, because Ms. DeLucia made that decision and was unaware of Plaintiff's prior complaints of discrimination.

(13)    Plaintiff cannot prevail on his claim(s) regarding Delaware Park's decision to terminate his employment; Ms. DeLucia made that decision for legitimate business reasons, i.e., Plaintiff's continuing inability to fully perform the duties of his job after he had exhausted all available leave.  Ms. DeLucia did not consider Plaintiff's race or national origin in making that decision, or complaints of discrimination, and did not do so in retaliation for Plaintiff's use of FMLA leave or worker's compensation claims.

(14)    Plaintiff cannot prevail on his [proposed] FMLA interference/denial claim because he was not entitled to any additional FMLA leave or benefits at the time of his termination from employment.

(15)    Plaintiff cannot prevail on his [proposed] hostile environment claim because he was not subjected to cognizable harassment on the basis of his race or national origin.  If Plaintiff was subjected to harassment, he unreasonably failed to take advantage of Delaware Park's complaint, prevention, and remediation process.

(16)    Plaintiff suffered no cognizable damages.

(17)    Plaintiff failed to mitigate any alleged damages.

(18)    Delaware Park did not act with malice or reckless indifference, and Plaintiff is not entitled to an award of punitive damages under Title VII or the ADA.

(19)    Delaware Park acted in good faith, and Plaintiff is not entitled to an award of liquidated damages under the FMLA.

**10.    STATEMENTS BY COUNTER CLAIMANTS OR CROSS-CLAIMANTS COMPARABLE TO THAT REQUIRED OF PLAINTIFF.**

Not applicable to the instant litigation.


**11.    ANY AMENDMENTS OF THE PLEADINGS DESIRED**

**(a) Plaintiff's Statement:**

Because of deficiencies in Mr. Almakhadhi's Pro Se Complaint, on October 2, 2006, Mr. Almakhadhi filed a Motion for Leave to Amend his Pro Se Complaint. On October

22, 2007, Delaware Park filed its Answering Brief. On November 1, 2007, Mr. Almakhadhi filed his Reply Brief. Briefing is complete.

As set forth in full in Mr. Almakhadhi's Motion for Leave to Amend his Pro Se Complaint, Mr. Almakhadhi seeks to make the following amendments:

| Pro Se Complaint | Proposed Amendment | Defendant's Objection |
|---|---|---|
| Count I (National Origin Discrimination) | Hostile work environment; discrimination; harassment[2]; retaliation | Delaware Park does not object to the discrimination or retaliation claims, but objects to the Harassment/ Hostile Work Environment claim. Delaware Park objects to any Title VII claim(s) based on events occurring prior to June 30, 2005. |
| Count III (Race Discrimination) | Hostile work environment; discrimination; harassment; retaliation | Delaware Park does not object to the discrimination or retaliation claims, but objects to the Harassment/ Hostile Work Environment claim. Delaware Park objects to any Title VII claim(s) based on events occurring prior to June 30, 2005. |

---

[2]    Notwithstanding its inappropriate attempt here to combine the separate claims of "harassment" and "hostile work environment" into one, it is Plaintiff's position that Delaware Park waived any objections to all of Mr. Almakhadhi's harassment claims when it did not raise them in its October 22, 2007 Partial Opposition to Mr. Almakhadhi's Motion for Leave to Amend.

Likewise, it is Plaintiff's position that Delaware Park waived any relation back arguments under Rule 15 by failing to raise them when Mr. Almakhadhi filed his Motion for Leave to Amend, and instead provided its consent to certain of his substantive claims.

| Pro Se Complaint | Proposed Amendment | Defendant's Objection |
|---|---|---|
| | Count V (ADA)<br>Disabled<br>Record of Disability<br>Regarded as Disabled | Delaware Park objects to Plaintiff's "record of disability" claim, as Plaintiff has adduced no evidence to sustain a "record of disability"; this purported claim relies on the same facts as his "currently disabled" claim. |
| | Count VII (FMLA)<br>Improper Denial of Leave;<br>Retaliation | Delaware Park does not object to Plaintiff's FMLA retaliation claim, but objects to Plaintiff's improper denial of leave claim.<br>Delaware Park further objects to any FMLA claim(s) based on events occurring prior to October 2, 2005. [3] |
| | Count VIII (Delaware Worker's Compensation Act) | Delaware Park further objects to any FMLA claim(s) based on events occurring prior to October 2, 2005. |

Additionally, although Mr. Almakhadhi withdrew his proposed corollary state claims (Counts II, IV, and VI) without prejudice, Mr. Almakhadhi remains willing to further brief the issue of the Court's jurisdiction over those claims if the Court so orders.

   **(b) Defendant's Statement:**

---

[3]  It is Delaware Park's position that it appropriately raised the issue of the timeliness of Plaintiff's proposed claims under the FMLA and Delaware Worker's Compensation Act and whether such claims related back to Plaintiff's original *pro se* complaint in its Motion for Partial Summary Judgment.

Plaintiff seeks to amend the complaint in accordance with his Motion for Leave to Amend his Pro Se Complaint, filed October 2, 2007 (D.I. 41). Defendant incorporates herein its objections to that motion, as set forth in its Answering Brief, filed on October 22, 2007. (D.I. 43) In addition, Delaware Park objects to Plaintiff's "record of disability" claim, as Plaintiff has adduced no evidence to sustain a "record of disability" claim and relies on the same facts to support this claim as his "currently disabled" claim.

In the event the Court denies Delaware Park's motion for summary judgment and grants Plaintiff's motion to amend, in whole or in part, and/or to conform the pleadings with the evidence, Defendant reserves the right to add defenses to its Answer to the (Amended) Complaint, including but not limited to the following:

1. Some or all of Plaintiff's claims are barred by the applicable statute of limitations.

2. Defendant would have taken the same employment action(s) under any circumstances, and Plaintiff cannot show "but for" causation of retaliation/discrimination under Title VII, the FMLA, or Delaware Worker's Compensation Act.

3. Defendant had in place an accessible and effective policy for reporting and resolving complaints of harassment, and Plaintiff unreasonably failed to avail himself of that preventative or remedial procedure.

4. Some or all of Plaintiff's ADA claims are barred because Delaware Park's actions were job related and consistent with business necessity; Plaintiff was not qualified for the position and was unable to perform the duties of his position without presenting a direct threat of injury to himself.

**12. CERTIFICATION THAT TWO WAY COMMUNICATION HAS OCCURRED BETWEEN PERSONS HAVING AUTHORITY IN A GOOD FAITH EFFORT TO EXPLORE THE RESOLUTION OF THE CONTROVERSY BY SETTLEMENT**

**(a) Plaintiff's Statement:**

Upon entry into this case, counsel for Mr. Almakhadhi made repeated good faith overtures to Delaware Park concerning resolution of this matter by settlement, as well as discussing options for mediation or a settlement conference. Delaware Park has not responded to any of those overtures. Indeed, in response to Mr. Almakhadhi's efforts to spark settlement talks, Delaware Park's counsel stated that Judge Thynge was no longer available and therefore a settlement conference was impossible. Mr. Almakhadhi thereafter expressed his willingness to explore whatever options were available. Since then, Mr. Almakhadhi has repeatedly raised the issue of settlement discussions,

including in several letters and e-mails. Delaware Park has not responded to Mr. Almakhadhi's good faith efforts, other than to protract and obstruct this litigation, multiplying its costs. Accordingly, because Delaware Park has refused to engage in settlement discussions, counsel for Mr. Almakhadhi is unable to certify that "two way communication" has occurred concerning settlement.

**(a) Defendant's Statement:**

The parties engaged in settlement discussions when Plaintiff was a *pro se* litigant and again when Plaintiff initially retained counsel.  Delaware Park disputes Plaintiff's recitation of the relevant history, specifically with regard to Plaintiff's counsel's "repeated good faith overtures" and Delaware Park's denial of same.  Counsel for Delaware Park has at no time foreclosed the possibility of further discussion of settlement, and invited Plaintiff's counsel to engage in such discussion when they initially spoke.

Defendant certifies that it has, through persons having authority, acted in good faith to explore the resolution of the controversy by settlement, but has been unable to do so.

**13.**     **A**NY OTHER MATTERS DEEMED APPROPRIATE

**(a) Plaintiff's Statement:**

*(1)   Mr. Almakhadhi's Motions to Compel Discovery and for Sanctions*

Because Delaware Park's responses to Mr. Almakhadhi's First Set of discovery requests were lacking, on November 14, 2007, Mr. Almakhadhi filed a Motion to Compel Discovery and for Sanctions.

Because Delaware Park failed to respond to Mr. Almakhadhi's Second Set of Discovery Requests, on November 21, 2007, Mr. Almakhadhi filed his Second Motion to Compel Discovery and for Sanctions.

Briefing is complete on both the First and Second Motions to Compel and for Sanctions.

*(2)   Sequestration of Witnesses*

Pursuant to Federal Rule of Evidence 615, Mr. Almakhadhi requests that the Court sequester the witnesses.

*(3)   Interpreter at Trial*

Mr. Almakhadhi anticipates that he will need to use an interpreter at trial.

*(4) Testimony by Telephone*

Mr. Almakhadhi anticipates that the unavailability of out-of-state witnesses may necessitate that they testify by telephone pursuant to Fed. R. Civ. P. 43(a).

*(5) Mr. Almakhadhi's Response to Defendant's Statement (b)(3)(b.)*

Since Mr. Almakhadhi's first complaints of discrimination to Delaware Park, Defendant has been on notice of the continuing nature of its violations and explored them throughout discovery.

*(6) Award of Liquidated Damages Pursuant to 29 U.S.C. § 2617*

If the Jury makes an award under the FMLA, 29 U.S.C. § 2617 provides for a mandatory award of liquidated damages by the court.

**(b) Defendant's Statement:**

- 51 -

(1)    Delaware Park incorporates herein its responses to Plaintiff's motions to compel.

(2)    *Amendment of the Pretrial Order, Proposed Jury Instructions, Voir Dire, and Special Verdict Forms*

If amendment of this Pretrial Order, or the parties' proposed Jury Instructions, Voir Dire, and/or Special Verdict Forms or Interrogatories is required to conform the Order or other submissions to the Court's ruling(s) on Plaintiff's Motion to Amend/Correct the Complaint and/or Delaware Park's Motion for Summary Judgment, Delaware Park requests leave of Court to make such amendment(s) on a schedule to be determined by the Court.

(2)    *Pretrial Motions and Motions in Limine*

Pretrial Motions and Motions in Limine, if any, shall be filed no later than 45 days prior to trial, or on a schedule to be determined by the Court, and shall be limited to ten (10) pages.  Answering briefs shall be limited to ten (10) pages.  Reply briefs, if any, shall be limited to five (5) pages.  Briefing shall be conducted pursuant to D. Del. LR 7.1.2(b).  Compliance with D. Del. LR 7.1.1 shall not be required.

(3)    *Claims/Issues To Be Tried To The Court*

a.  Whether Plaintiff exhausted his administrative remedies in regard to his claim under Title VII alleging he was subjected to a hostile work environment. Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997).

b.  Plaintiff's Worker's Compensation Retaliation Claim.  See 19 Del. C. § 2365; State v. Cahill, 443 A.2d 497 (Del. 1982).

c.  Plaintiff's prayers for back pay and front pay under Title VII, liquidated damages under the FMLA, and other equitable relief.  Spencer v. Wal-Mart Stores, Inc. 469 F.3d 311, 316 (3d Cir. 2006); 29 U.S.C. § 2617(1)(A)(iii).

(4)    *Delaware Park's Response to Plaintiff's Proposed Use of Translator*

Delaware Park objects to Plaintiff's request for a translator as unnecessary and prejudicial.  Among other things, this dispute concerns Plaintiff's communications with various members of Delaware Park management, and all such communications were in English.  Moreover, Plaintiff's deposition testimony, *pro se* discovery requests and responses, and other pleadings demonstrate that Plaintiff is reasonably proficient in English and a translator is not needed.  If the Court is inclined to grant Plaintiff's

request for a translator, however, Delaware Park reserves the right to object based on Plaintiff's failure to properly qualify the proposed translator pursuant to FRE 604.

This order shall control the subsequent course of the action unless modified by the Court to prevent manifest injustice.

IT IS SO ORDERED this _____ day of _____, 2008.


_____
                                                                                  J.

Respectfully submitted,

/s/ Frank Conley

Frank J. Conley, Esquire
*Pro hac vice*
**THE CONLEY FIRM**
7715 Cheltenham Avenue, Suite 133
Philadelphia, PA 19118
(215) 836-4789
*Attorney for Plaintiff Sami Almakhadi*


/s/ Glenn Brown

Glenn Brown, Esquire
**Real World Law**
916 N. Union St #2
Wilmington, DE 19805
(302) 225-8340
*Attorney for Plaintiff Sami Almakhadi*


/s/ Wendy K. Voss

Wendy K. Voss (#3142)
Jennifer C. Wasson (#4933)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000 – Telephone
(302) 658-1192 – Facsimile
wvoss@potteranderson.com - Email
jwasson@potteranderson.com - Email
*Attorneys for Defendant Delaware Park, L.L.C.*


Date:  3 February 2008