IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMI ALMAKHADHI, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | No. 07-78-JJF |
| : | |
| DELAWARE PARK, : | |
| : | **JURY TRIAL DEMANDED** |
| Defendant. : | |
| : | |

**FIRST AMENDED COMPLAINT**

Plaintiff Sami Almakhadhi files this Amended Complaint against his former employer, Defendant Delaware Park, seeking declaratory relief, punitive and compensatory damages, attorney's fees, and other relief because of Delaware Park's discrimination against him because of his national origin and race; Delaware Park's discrimination against him because of his disability; Delaware Park's retaliation against him because of his complaints about discrimination in the workplace; Delaware Park's retaliation against him because of his Family and Medical Leave Act ("FMLA") use; and Delaware Park's wrongful termination of him because he filed a worker's compensation claim.

Mr. Almakhadhi brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C.

- 2 -

§ 1981(a) ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, ("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"); and the Delaware Worker's Compensation Law, 19 DEL. CODE. ANN. § 2365.

### I. JURISDICTION AND VENUE

1. This court has original jurisdiction over Mr. Almakhadhi's federal law claims pursuant to 28 U.S.C. § 1331.

2. This court has supplemental jurisdiction over Mr. Almakhadhi's state law claim pursuant to 28 U.S.C. § 1367.

3. Mr. Almakhadhi has fulfilled all conditions precedent to the filing of this lawsuit. Specifically, on September 29, 2006, the Delaware Department of Labor issued a Final Determination and Notice of Right to Sue. Mr. Almakhadhi filed his original Complaint, pro se, within ninety days of that Notice.

### II. THE PARTIES

**A. Plaintiff Sami Almakhadhi**

4. At the time of filing his original Complaint, Plaintiff Sami Almakhadhi was a citizen and resident of the State of Maryland. He has since moved to the State of Delaware.

5. Mr. Almakhadhi was born in Yemen. He is an Arab. One of five children, Mr. Almakhadhi attended Sana'a' University in Yemen's capital city of Sana'a'.

There, he studied international relations, receiving a bachelor's degree in 1994. After receiving his degree, Mr. Almakhadhi worked as the University's Station Manager.

6. Mr. Almakhadhi married in 1995. In 1996, Mr. Almakhadhi and his wife decided to move to America to make a better life for their family. They settled in Newark, Delaware. Mr. Almakhadhi worked a variety of jobs to support his family, including gas station attendant, car salesman, and clerk in a Lion Food-Mart. He eventually worked for Defendant Delaware Park.

7. In 2006, Mr. Almakhadhi became a naturalized U.S. Citizen.

**B. Defendant Delaware Park**

8. Defendant Delaware Park is a gambling and casino operation. It hosts thoroughbred horse racing and betting, a casino, and a golf course. Delaware Park owns and operates its business at 777 Delaware Park Boulevard, Stanton, Delaware.

9. At all times relevant herein, Delaware Park acted by and through its agents, servants, and employees, each of whom acted in the course and scope of his or her employment with Delaware Park.

**III. FACTS**

10. The foregoing paragraphs are incorporated as if fully set forth herein.

11. On January 18, 2002, Mr. Almakhadhi began working for Defendant Delaware Park as a Booth Cashier. As a Booth Cashier, Mr. Almakhadhi handled

coins used by patrons of the casino, including the exchange of currency for coins and cashing casino chips.

12.   Mr. Almakhadhi performed his job in an exemplary manner.  He received high marks on his performance reviews and got along well with his co-workers.  Indeed, over the course of his employment Mr. Almakhadhi moved up the seniority chain until he was the seventh most senior Booth Cashier out of approximately thirty Booth Cashiers.

13.   Despite his hard work and dedication to both his job and his new country, Mr. Almakhadhi suffered continuous and on-going discrimination at work.  For example, a Satellite Cashier named Keisha told Mr. Almakhadhi that this was not his country.  Another, named Janet (Cashier Supervisor), referred to Mr. Almakhadhi as "the terrorist of Delaware Park."

14.   Mr. Almakhadhi had suffered discrimination in Yemen because his family is originally from Jordan.  Accordingly, he did his best to ignore the discrimination at Delaware Park and simply concentrate on improving his life and doing a good job.

15.   In December 2003 Mr. Almakhadhi suffered a work-related injury to his back.

16.   Mr. Almakhadhi reported his back injury to Delaware Park.

17.   Over the following months, Mr. Almakhadhi saw several doctors. Because of the difficulty in diagnosing back injury, it was not until after Mr. Almakhadhi

received an MRI in May 2004 that it was determined Mr. Almakhadhi had herniated a spinal disc at the L4-L5 level. Mr. Almakhadhi's doctor issued restrictions on his physical activity.

18. Even though Mr. Almakhadhi's doctor had identified an injury and provided restrictions, Delaware Park contested Mr. Almakhadhi's claim and refused to pay worker's compensation. Mr. Almakhadhi was compelled to obtain an attorney and appeal Delaware Park's refusal to pay benefits.

19. After his work-related injury, Delaware Park "promoted" Mr. Almakhadhi to a Satellite Cashier position to which he had applied prior to his injury. The Satellite Cashier position required lifting and standing beyond the restrictions imposed by Mr. Almakhadhi's doctor. Mr. Almakhadhi attempted to perform the job, but because the lifting and standing exacerbated his injury he requested to return to the Booth Cashier position. Upon information and belief, Delaware Park's reasons for assigning Mr. Almakhadhi to a Satellite Cashier position were to retaliate for his worker's compensation claim, and to show that Mr. Almakhadhi was not injured.

20. Despite Mr. Almakhadhi's best efforts to succeed at work, Delaware Park's discrimination prevented him from moving forward. In January 2005, Mr. Almakhadhi applied for the job of Impress Supervisor. This job was a promotion for which Mr. Almakhadhi was qualified, and which did not involve the heavy lifting

restricted by his doctor. Nevertheless, Mr. Almakhadhi's supervisors, Karlyn Dixon, Director of Accounting Operations, and Stacy Suhr, Assistant Manager of Cage Operations, refused to promote Mr. Almakhadhi under the pretext that Mr. Almakhadhi was not qualified, despite his years of experience as a booth cashier. Instead, upon information and belief, Ms. Dixon placed into the position two people: an 18 year old Security Officer, and an Impress Clerk. Neither of these persons had any supervisory experience.

21. Mr. Almakhadhi complained to Delaware Park's Human Resources Department about the discrimination against him. Delaware Park's investigation was pro forma. Indeed, Mr. Almakhadhi was not interviewed about the discrimination he had suffered. Instead, Human Resources personnel spoke to Mesdames Dixon and Suhr and relied on incorrect and inaccurate information provided by them. On February 14, 2005, Micki Nardo from Human Resources informed Mr. Almakhadhi that the Department had found no discrimination.

22. In February 2005, Mr. Almakhadhi applied for the position of Main Bank Cashier—a promotion for which he was qualified, and which would not have aggravated his work-related injury. Again, Mesdames Dixon and Suhr denied Mr. Almakhadhi's application. Notably, Ms. Dixon refused to interview Mr. Almakhadhi for the position until *after* she had filled it.

23. Again, Mr. Almakhadhi complained to Delaware Park's Human Resources Department about this discriminatory and retaliatory treatment. Again, Delaware Park dismissed cursorily Mr. Almakhadhi's allegations.

24. Because Mesdames Dixon and Suhr's discrimination and retaliation continued, Mr. Almakhadhi filed additional complaints with Delaware Park's Human Resources Department. Again, these complaints were perfunctorily denied.

25. Mesdames Dixon and Suhr increased their discriminatory and retaliatory actions following Mr. Almakhadhi's complaints. For example, Ms. Dixon would raise her voice and speak to Mr. Almakhadhi in a disrespectful manner in front of other employees and customers. Ms. Dixon did not treat other employees the same way. Mr. Almakhadhi again complained to Delaware Park's Human Resources Department about this discriminatory treatment, and again was denied any satisfaction.

26. Because of his work injury, Mr. Almakhadhi took FMLA leave between April 13, 2005 and June 13, 2005. (Mr. Almakhadhi had previously taken FMLA leave separately to care for his father, and his then-pregnant wife.) Because Delaware Park refused to pay worker's compensation, Mr. Almakhadhi had no income during this time.

27. He returned to work on June 14, 2005.

- 8 -

28. Because of his excellent work performance, Delaware Park was unable to substantively discipline Mr. Almakhadhi. Instead, Mesdames Dixon and Suhr sought to harass Mr. Almakhadhi until he quit, or to terminate Mr. Almakhadhi's employment on a technicality.

29. The discrimination intensified after Mr. Almakhadhi was granted a hearing on his worker's compensation claim and Delaware Park finally acknowledged his injury. (As a result of his successful appeal, Mr. Almakhadhi received worker's compensation benefits for the period between September 1, 2005 and August 25, 2006.)

30. On September 2, 2005, Mr. Almakhadhi's doctor reiterated his work restrictions and Mr. Almakhadhi again requested light duty. Although Delaware Park routinely made light duty available for other employees, it refused to provide Mr. Almakhadhi any light duty work and sent him home. Delaware Park required him to call daily Mesdames Dixon and Suhr to check for light duty work. Mr. Almakhadhi was denied any such work.

31. In early February 2006, Delaware Park's Risk Management Department consulted with Mesdames Dixon and Suhr who decided to terminate Mr. Almakhadhi on the technicality that he had exhausted all of his available leave time. Notably, Delaware Park made its termination decision with no prior warning and no timely notification to Mr. Almakhadhi. Indeed, Mr. Almakhadhi only learned of

Delaware Park's termination of his employment after he was denied medical benefits for his infant son.

32. Delaware Park's reasons for its termination of Mr. Almakhadhi's employment are pretext for its discrimination and retaliation.

## COUNT I

**(Title VII—National Origin Discrimination; Hostile Work Environment; Retaliation)**

33. The foregoing paragraphs are incorporated as if fully set forth herein.

34. Based on the foregoing, Delaware Park has engaged in unlawful employment practices in violation of Title VII because of Mr. Almakhadhi's national origin, including, but not limited to, perpetuating a hostile work environment, subjecting Mr. Almakhadhi to unlawful national origin discrimination and harassment, subjecting Mr. Almakhadhi to more onerous working conditions after he complained about the discrimination and harassment, and terminating Mr. Almakhadhi's employment in retaliation for opposing the discrimination and harassment.

35. As a direct result of Delaware Park's unlawful discriminatory and retaliatory practices in violation of Title VII, Mr. Almakhadhi has, among other things, sustained lost earnings, severe emotional and psychological distress, loss of self esteem, and loss of future earnings power. Mr. Almakhadhi has also lost back pay, front pay, and interest due thereon.

## COUNT II

**(Title VII—Race Discrimination; Harassment;
Hostile Work Environment; Retaliation)**

36.  The foregoing paragraphs are incorporated as if fully set forth herein.

37.  Based on the foregoing, Delaware Park has engaged in unlawful practices in violation of Title VII because of Mr. Almakhadhi's race including, but not limited to, perpetuating a hostile work environment, subjecting Mr. Almakhadhi to unlawful race discrimination and harassment, subjecting Mr. Almakhadhi to more onerous working conditions after he complained about the discrimination and harassment, and terminating Mr. Almakhadhi's employment in retaliation for opposing racial discrimination and harassment.

38.  As a direct result of Delaware Park's unlawful discriminatory practices in violation of Title VII, Mr. Almakhadhi has sustained loss of earnings, severe emotional and psychological distress, loss of self esteem, loss of future earnings power, plus back pay, front pay, and interest due thereon.

## COUNT III

**(ADA - Has a Disability; Record of Having a
Disability; Regarded as Having a Disability)**

39.  The foregoing paragraphs are incorporated as if fully set forth herein.

40.  Because of the injury he suffered at Delaware Park, Mr. Almakhadhi has a physical impairment that substantially limits one or more of his major life activities;

has a record of such an impairment; and Delaware Park regarded him as having such an impairment.

41.   Among other effects on his major life activities, Mr. Almakhadhi's disability substantially limits his ability to stand for uninterrupted periods.

42.   Among other effects on his major life activities, Mr. Almakhadhi's disability substantially limits his ability to twist and lift.

43.   Delaware Park willfully refused to provide Mr. Almakhadhi promotions, light duty work, or both, because of his disability, because of his record of having a disability, and because it regarded him as unable to perform a broad class of jobs.

44.   As a direct result of Delaware Park's intentional and unlawful discriminatory employment practices in violation of the ADA, Mr. Almakhadhi sustained permanent and irreparable harm.  Because of the loss of his employment, Mr. Almakhadhi suffered a loss of earnings and the value of certain benefits, the loss of future earning power, back pay, front pay and interest due thereon.

45.   As a further direct result of Delaware Park's intentional and unlawful discriminatory employment practices in violation of the ADA, Mr. Almakhadhi suffered, among other things, severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT IV

### (FMLA—Retaliation)

46. The foregoing paragraphs are incorporated as if fully set forth herein.

47. Mr. Almakhadhi took a medical leave of absence pursuant to the Family and Medical Leave Act for work-related injuries.

48. In violation of the FMLA, Delaware Park retaliated against Mr. Almakhadhi for taking medical leave by terminating pretextually his employment.

49. As a direct result of Delaware Park's intentional and unlawful practices in violation of the FMLA, Mr. Almakhadhi sustained permanent and irreparable harm. Because of the loss of his employment, Mr. Almakhadhi suffered, among other things, a loss of earnings and the value of certain benefits, the loss of future earning power, back pay, front pay and interest due thereon.

## COUNT V

### (Delaware Worker's Compensation Act—Wrongful Termination)

50. The foregoing paragraphs are incorporated as if fully set forth herein.

51. Delaware Park terminated Mr. Almakhadhi's employment because he filed a worker's compensation claim.

52. Delaware Park's retaliatory actions were in violation of the Delaware Worker's Compensation Act.

53. As a direct result of Delaware Park's intentional and unlawful practices in violation of the Delaware Worker's Compensation Act, Mr. Almakhadhi sustained permanent and irreparable harm. Because of the loss of his employment, Mr. Almakhadhi suffered, among other things, a loss of earnings and the value of certain benefits, the loss of future earning power, back pay, front pay and interest due thereon.

## IV. PRAYER FOR RELIEF

54. The foregoing paragraphs are incorporated as if fully set forth herein.

**WHEREFORE**, Mr. Almakhadhi requests that this Court enter a judgment in his favor and against Delaware Park and order:

a. That Delaware Park compensate, reimburse, and otherwise make Mr. Almakhadhi whole for any pay and benefits he would have received (including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority) had it not been for Delaware Park's illegal actions.

b. That Delaware Park reinstate Mr. Almakhadhi to the position to which he would have been entitled had he not been subjected to Delaware Park's unlawful discrimination, including a rate of pay, pay increases, promotions, benefits, bonuses, insurance, training, seniority and other emoluments of employment that he would have received.

- 14 -

    c.  An award of actual damages as well as damages for the pain, suffering, inconvenience, mental anguish, humiliation, loss of employment, and other non-pecuniary losses caused by Delaware Park's actions.

    d.  An award of punitive damages in an amount believed by the Court or the trier of fact to punish appropriately Delaware Park for its deliberate, malicious, and outrageous conduct and to deter it and other employers from engaging in such misconduct in the future.

    e.  An award of liquidated damages under the Family and Medical Leave Act.

    f.  That Delaware Park pay $3,000 to the Workers' Compensation Fund.

    g.  An award of attorney's fees and costs.

    h.  Any such other and further relief as this Court deems appropriate.

## V. Jury Demand

Mr. Almakhadhi demands a trial by jury.

> Respectfully submitted,
>
> /s/ Frank Conley
> _____
> Frank J. Conley, Esquire
> *Pro hac vice*
> **THE CONLEY FIRM**
> 7715 Cheltenham Avenue, Suite 113
> Philadelphia, PA 19118
> (215) 836-4789
>
> /s/ Glenn Brown
> _____
> Glenn Brown, Esquire
> Real World Law
> 916 N. Union St #2
> Wilmington, DE 19805
> (302) 225-8340

Date: 15 February 2008